## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC, <br><br> Plaintiff, <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION), <br><br> Defendant. | Civil Action No. 1:14-cv-14176-ADB |

## PROPOSED REPLY MEMORANDUM IN SUPPORT OF
## PROPOSED DEFENDANT-INTERVENORS' MOTION TO INTERVENE

SFFA and Harvard (the "Parties") each have filed responses to the motion to intervene in which they argue that Movants fail to satisfy the requirements for intervention as of right. These arguments, however, misstate the applicable legal standards under Rule 24(a)(2). Movants' interests in the outcome of this case are both sufficient to justify intervention and distinct from Harvard's. Like the defendant-intervenors in *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999), the only Court of Appeals decision squarely on point, Movants fulfill all four requirements for intervention as of right. The Parties' suggestion that Movants participate as *amici* is therefore inapposite: "The right to file a brief as *amicus curiae* is no substitute for the right to intervene as a party in the action under Rule 24(a)(2)." *Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996).

When the Court applies the correct legal tests for the requirements of Rule 24(a), it will arrive at the same conclusion as did the Sixth Circuit in *Grutter*: the students whose lives and educational prospects will be most affected by Harvard's right to consider race in admissions must be allowed to intervene to defend that right.  *Grutter*, 188 F.3d at 401.  In contrast, the district court's order denying intervention in *Fisher* did not explain its determination that the defendant university would adequately represent the student-movants' interests.  *See* Order, *Fisher v. University of Texas at Austin*, Case No. 08-00263, at *2 (W.D. Tex. Aug. 11, 2008) (Docket No. 83).  Accepting that Movants meet all four requirements for intervention by right, the Court must grant their motion and allow them to participate as full parties.

Even if Movants could not satisfy, as they do, all four requirements for intervention as of right, Movants should be granted leave to intervene permissively based on their unique ability to develop issues relevant to the Court's decision at every stage of the litigation.  Participation by Movants merely as *amici* would deprive the Court of the full benefit of Movants' contribution to the record and would deprive Movants of the ability to protect their interests.  The Parties' arguments to the contrary are unavailing.

## I.    MOVANTS ARE ENTITLED TO INTERVENTION AS OF RIGHT.

In arguing that Movants do not satisfy all four requirements for intervention as of right, the Parties rely upon incorrect legal tests.  First, Plaintiff overstates the "interest" requirement, raising the irrelevant contention that Movants could not independently sue Harvard over its admissions policy.  Second, both Plaintiff and Harvard misstate the test for inadequacy of representation.  Third, Plaintiff is wrong to suggest that the timeliness of Movants' motion is measured by the time or expense they would add to discovery.

### A. Movants' Interests Are Protectable Within the Meaning of Rule 24(a)(2) and Movants Could Establish Article III Standing If It Were Necessary.

Plaintiff incorrectly suggests that Rule 24(a)(2) requires that the outcome of the litigation must impair Movants' "legal rights". *See* Pl.'s Opp. 3-5. But there is no requirement that the "interest" required by Rule 24(a)(2) be a legal right that a would-be intervenor could vindicate in a separate lawsuit. In fact, the advisory committee's note on the rule indicates just the opposite: "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene". Fed. R. Civ. P. 24 advisory committee's note; *see also Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) (noting that Rule 24 "refers to impairment 'as a practical matter.' Thus, the court is not limited to consequences of a strictly legal nature.").

In fact, the First Circuit, in *Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992), rejected the "legal interest" argument Plaintiff proffers here. In that case, the plaintiffs were conservation groups that had sued the government requesting the pertinent agency to alter its regulations. The plaintiffs opposed the motion to intervene of several regulated entities that sought to defend the status quo, arguing that the movants' mere "economic" interests were not "legally cognizable." *Id.* at 41. The First Circuit rejected that argument, holding that the regulated entities must be allowed to intervene because they "are the real targets of the suit and are the subjects of the regulatory plan. Changes in the rules will affect the proposed intervenors' business, both immediately and in the future." *Id.* at 43 (citing *Natural Res. Def. Council, Inc.*, 578 F.2d 1341); *see also Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 205-06 (1st Cir. 1998) (recognizing potential economic harm to a putative intervenor as an interest).

In this case, the applicant-Movants are the real targets of Plaintiff's suit because they are the prospective beneficiaries of Harvard's current admissions plan.  The changes to that plan that Plaintiff seeks will adversely affect Movants' undeniable interests in being admitted to Harvard.

Because Movants do not need to demonstrate that they could vindicate a legal interest by suing one of the parties to the litigation, the Supreme Court's decision in *Schuette v. Coal. to Defend Affirmative Action, Integration & Immigrant Rights & Fight for Equal. By Any Means Necessary (BAMN)*, 134 S. Ct. 1623 (2014), on which Plaintiff heavily relies, is irrelevant. Movants concede they have no constitutional right to have their race considered by Harvard.  But Movants are entitled to protect their interests in Harvard's right to consider race in admissions regardless of whether Harvard is legally compelled to do so.  The injunctive relief Plaintiff seeks would have a direct, immediate, and harmful effect upon Movants by preventing Harvard from considering race in admissions.  Because Harvard's right to consider race is inextricably linked to benefits that will accrue to Movants, Movants have satisfied the "interest" test of Fed. R. Civ. P. 24(a)(2).

Plaintiff is also incorrect that Movants could not appeal an adverse determination in this case for lack of Article III standing.  *See* Pl.'s Opp. 5.  The First Circuit has reserved judgment, as has the Supreme Court, on whether Article III standing is required of defendant-intervenors. *See Cotter v. Mass. Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 33-34 (1st Cir. 2000) (citing *Diamond v. Charles*, 476 U.S. 54 (1986)); *cf. City of Lockhart v. United States*, 460 U.S. 125, 130 (1983) (noting probable jurisdiction where defendant-intervenor continued to defend the case on appeal after the original defendant decided not to).  But, even assuming that Article III standing would become necessary if Harvard settled or acquiesced in an adverse judgment and Movants appealed, the First Circuit has held that the concrete interest that gives

rise to a right to intervene is sufficient to confer standing on a defendant-intervenor.  In *Cotter*, in response to the appellee's challenge to the standing of defendant-intervenor to appeal a ruling that had impaired its interests, the court explained that "in the ordinary case, an applicant who satisfies the 'interest' requirement of the intervention rule is almost always going to have a sufficient stake in the controversy to satisfy Article III as well."  *Id.* at 33-34.  Similarly, in *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104 (1st Cir. 1999), the First Circuit held that the "rather modest requirements of Article III" were amply satisfied by defendant-intervenors' "concrete stake in the outcome" of the case even though they were mere beneficiaries of a government policy that the plaintiffs there sought to change.  *Id.* at 109-11.  Likewise here, Movants have a concrete stake in the outcome of the case as actual or prospective beneficiaries of Harvard's admissions policy, and could therefore appeal any judgment adverse to them.

### B. Harvard May Not Adequately Represent Movants' Interests.

Both Parties argue that Harvard will adequately represent underrepresented minority students.  *See* Pl.'s Opp. 5-7; Harvard's Response 3-7.  Plaintiff does so despite its contention that Harvard has a long history of failing to act in the best interest of minority students.  *See* Compl. ¶¶ 35-124.  But neither Party allows for the possibility—which is all that Rule 24(a)(2) requires—that Harvard "may" fail to represent zealously the student beneficiaries of the admissions policy in lieu of the myriad other constituents that Harvard must serve.  *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("the burden of making that showing should be treated as minimal"); *accord Patch*, 136 F.3d at 207.

Both Parties also argue that, because Movants seek to vindicate Harvard's right to consider race in admissions, Movants have the same "ultimate objective" or "goals" as Harvard.  *See* Pl.'s Opp. 6; Harvard's Response 1.  Both rely on the First Circuit's statement that "in cases

where the intervenor's ultimate objective matches that of the named party, a rebuttable presumption of adequate representation applies," *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006), *accord Daggett*, 172 F.3d at 111.  But this statement cannot bear the weight that the Parties place upon it.  Indeed, in *Fernandez* itself, the court held that the putative intervenor in that case satisfied the "minimal" showing required, and stated that the district court focused too narrowly on the solely "illustrative" grounds of "adversity of interest, collusion, or nonfeasance" for rebutting the adequate representation presumption.  *Id.* The court stressed the case-specific nature of this inquiry and discouraged district courts from identifying only a limited number of "cubbyholes" for inadequate representation claims.  *Id.* (citing *Maine v. United States Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001) and *Mass. Food Assoc. v. Mass. Alcohol Beverages Control Comm'n*, 197 F.3d 560, 567 n.5 (1st Cir. 1999)).  The court also cited the reasoning of the First Circuit in another case that "'without a perfect identify of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party.'"  *Id.* at 547 (quoting *Tell v. Trustees of Dartmouth Coll.*, 145 F.3d 417, 419 (1st Cir. 1998)).

Movants do not have the same ultimate objective as Harvard:  their interests diverge from Harvard's in at least two ways.  First, applicant-Movants seek to protect their interests not only in a diverse student body, but also in the individual consideration that may be afforded to their own applications under Harvard's current admissions policy.  An admissions process that puts increased emphasis on the SAT or that fails to recognize the contributions of students who have diverse racial and ethnic backgrounds would impair applicant-Movants' access to Harvard. Second, although Harvard seeks to protect its right to use race in admissions, Harvard has several policies—such as Early Action, legacy admissions, and heavy reliance on SAT scores—that it

must defend notwithstanding their adverse impact on minorities.  Movants are the only party that will argue that one justification for considering race and ethnicity in college admissions is to remedy the adverse impact that legacy preferences, Early Action, and heavy reliance on the SAT have on the diversity profile of the admitted class.  These differences in priorities were sufficient reason to find a risk of inadequate representation in *Grutter*.  *See* 188 F.3d at 401 (intervenors had "legitimate and reasonable concerns about whether the University will present particular defenses of the contested race-conscious admissions policies" including "the disparate impact of some current admissions criteria").

Harvard urges the Court not to follow *Grutter* because Sixth Circuit precedent "defin[es] a far less stringent standard for inadequacy than the First Circuit has applied."  Harvard's Response 7 n.3.  The lenient standard for inadequacy of representation, however, does not vary by circuit.  The Supreme Court has stated definitively that the burden is "minimal."  *Trbovich*, 404 U.S. at 538 n.10.  Moreover, both the First Circuit and Sixth Circuit look to whether the named party would advance each of the movant's potential arguments.  *See B. Fernandez & Hnos., Inc.*, 440 F.3d at 546 (that proposed intervenors would emphasize different arguments was a reason to find a risk of inadequate representation); *Grutter*, 188 F.3d at 401.   In *Fernandez*, the First Circuit cited to *Daggett* to explain that because of the proposed intervenor's "direct interest" in preventing injunctive relief for the Plaintiff, "the burden . . . to show inadequate representation is lighter than if its interest was 'thin and widely shared.'"  *B. Fernandez & Hnos., Inc.*, 440 F.3d at 546 (citing *Daggett*, 172 F.3d at 113-14).  In contrast to *Daggett*, Movants are not claiming that Harvard represents "broader" public interests at some abstract level; rather, Movants point to specific, divergent arguments that Harvard, as a private institution, plans to make that would adversely impact Movants' direct interests in the outcome

of this case.  *See Daggett*, 172 F.3d at 113-14.  This is more than just a difference in "litigation strategy," as Harvard has styled it.  *See* Harvard's Response 2, 5-6.

The record reflects that Harvard is unlikely to argue that achieving a critical mass of underrepresented minority students is necessary to achieve diversity.  Although it filed *amicus* briefs supporting affirmative action in *Regents of the Univ. of California v. Bakke*, *Grutter v. Bollinger*, and *Fisher v. Univ. of Texas at Austin* (see Answer, Docket No. 17, ¶¶ 133, 139, 143), in neither *Grutter* nor *Fisher* did Harvard contend that a critical mass of minority students will reduce racial isolation and the spokesperson status of minority students.  And in its 1977 brief in *Bakke*, Harvard referred only once to racial isolation, and then only in the appendix to its brief, which includes a copy of the Harvard College Admissions policy.  *See* Brief for Columbia Univ., Harvard Univ., Stanford Univ., and the Univ. of Pennsylvania as Amici Curiae at 3, *Bakke*, 438 U.S. 265 (No. 76-811).

In contrast, Movants intend to argue that a race-conscious admissions policy is necessary to achieve a critical mass of underrepresented minority students that effectively reduces racial isolation.  Because there is a concrete risk that Harvard will not take this position, as it has not done so in three separate Supreme Court cases, Movants have satisfied the Rule 24(a)(2) requirement that Harvard may not adequately represent their interests.

### C.        The Motion to Intervene Was Timely Filed.

Plaintiffs argue Movants' motion was not timely because, if granted, it will prejudice the discovery schedule.  Pl.'s Opp. 8.  But it is irrelevant to intervention by right whether Movants' participation would add time or expense to discovery if it was not the late filing of the motion that caused that purported prejudice.  Plaintiff was not prejudiced in the setting of the discovery schedule because Movants filed the motion to intervene before the April 30, 2015 scheduling

conference.  Plaintiff was therefore on notice and had the full opportunity to argue for the longer discovery schedule that it purports to need.

## II.   PERMISSIVE INTERVENTION IS PREFERABLE TO RELEGATING MOVANTS TO AMICI.

The orthodox view of the *amicus curiae* role "is, that of an *impartial* friend of the court— *not an adversary party in interest in the litigation*."  *United States v. Michigan*, 940 F.2d 143, 164-65 (6th Cir. 1991) (citing *Miller-Wohl Co. v. Comm'r of Labor & Indus., State of Montana*, 694 F.2d 203, 204 (9th Cir. 1982)).  When "a real party in interest" needs to proceed in an adversarial fashion in order to protect its interests, it requires the "litigating status" of an intervenor.  *Id.* at 165.  As the Supreme Court has explained, "an amicus—with the exception of the right to file a brief—might be unable adequately to present all the relevant data to the court." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205, 216 (1965).  An *amicus* cannot file pleadings; create, extend, or enlarge an issue before the court; challenge the validity of testimony; or challenge an injunction while it remains in effect.  *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995); *United States v. Michigan*, 940 F.2d at 165.  These limitations, if imposed on Movants, would preclude them from assisting to develop a full record, including by gathering evidence, providing expert testimony, and raising issues that no other party might want to raise. For example, Movants would want to present evidence of the discriminatory effects of the SAT and facts regarding the financial aid needs of underrepresented minorities.

Additionally, as *amici*, Movants would not be able to participate in any pre-judgment settlement, nor could they appeal an adverse decision.  *See United States v. City of Los Angeles*, 288 F.3d 391, 400 (9th Cir. 2002).  Movants need these powers in case Harvard has different settlement considerations or less appetite for appeal.

Courts sometimes request *amicus* briefs in lieu of granting intervention when the movant would not be affected by the outcome of the case itself but rather by the *stare decisis* effect of the outcome. *See, e.g.*, *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 533 (7th Cir. 1988) ("We conclude that *stare decisis* effects may satisfy the standard of Rule 24(a)(2) only when the putative intervenor's position so depends on facts specific to the case at hand that participation as *amicus curiae* is inadequate to convey essential arguments to the tribunal.") (citing *FDIC v. Jennings*, 816 F.2d 1488, 1492 (10th Cir. 1987), for the proposition that "intervention [is] not allowed when factual differences dilute the effect of *stare decisis* and intervention might complicate the case").   Here, Movants are future Harvard applicants and current Harvard students and the effect of the outcome of the case is specific to them.   That Movants have some additional stake in the *stare decisis* effect on every private university subject to Title VI regulations is only a supplementary reason to allow them to intervene.   Relegating Movants to *amici* would therefore be inappropriate.

Plaintiff and Harvard both argue that the Court should exercise its discretion in granting permissive intervention in order to prevent discovery from becoming unwieldy in this case.   *See* Pl.'s Opp. 1-2; Harvard's Response 7-10.   Movants reiterate that they have already stipulated they will abide by the Court's May 4, 2015 Scheduling Order; therefore, any concern over timing is unwarranted.   Furthermore, Movants do not expect to need additional fact discovery beyond what the Parties plan—Movants seek only the right to be present and involved in the planned fact discovery so as to fully develop issues, such as the discriminatory effect of the SAT and Harvard's history of discrimination against underrepresented minorities, that one or another party may not have the incentive to explore.   Movants note that the district court in *Grutter* managed

discovery and a full trial with intervenors both efficiently and effectively, and there is no reason to doubt that this Court can do the same.

Finally, Harvard's concern over the sensitive nature of applicant information is unwarranted. Whatever protective order that would resolve this concern with the Plaintiff could apply equally to the Movants. Thus, if confidential information regarding other Harvard College students and applicants is revealed under a protective order only to counsel, and not to their clients, Movants' counsel can abide by those same terms.

## III.   CONCLUSION

For the reasons given above, and in Proposed Defendant-Intervenors' opening memorandum, the Motion to Intervene should be granted.

Respectfully submitted,

Dated: May 15, 2015

/s/ Rahsaan D. Hall
Rahsaan D. Hall, BBO # 645369
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS AND ECONOMIC JUSTICE
294 Washington St. Suite 443
Boston, MA 02108
Tel: (617) 988-0608
rhall@lawyerscom.org

/s/ Jon M. Greenbaum
Jon M. Greenbaum, DC Bar # 489887 (*pro hac* motion pending)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, DC 20005
Tel: (202) 662-8600
jgreenbaum@lawyerscommittee.org

ATTORNEYS FOR PROPOSED
DEFENDANT-INTERVENORS

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Local Rule 5.2(b), I hereby certify that this document filed through the ECF system on May 15, 2015 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Rahsaan D. Hall
Rahsaan D. Hall
