UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC. | * * * | |
| Plaintiff, | * * | |
| v. | * * | 14-cv-14176-ADB |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION) | * * * * | |
| Defendant. | * | |

### MEMORANDUM AND ORDER ON PROPOSED DEFENDANT-INTERVENORS' MOTION TO INTERVENE

BURROUGHS, D.J.

## I.      INTRODUCTION

In this action, Plaintiff Students for Fair Admissions, Inc. ("SFFA") alleges that

Defendant Harvard College ("Harvard") employs racially and ethnically discriminatory policies

and procedures in administering its undergraduate admissions program, in violation of Title VI

of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment to

the United States Constitution. SFFA's Complaint sets forth two types of allegations. First,

SFFA asserts that the general manner in which Harvard considers race in its undergraduate

admissions program violates the Equal Protection Clause. As opposed to using race as a mere

"plus" factor in admissions decisions, SFFA alleges that Harvard engages in prohibited "racial

balancing." Second, SFFA alleges that Harvard's policies invidiously discriminate against Asian-

American applicants in particular. Because Harvard allegedly limits the number of Asian-

American applicants to whom it will offer admission every year, SFFA contends that those

applicants are forced to compete against each other for a limited number of openings. Consequently, a large number of otherwise highly qualified Asian-American applicants are allegedly denied admission to Harvard on the basis of their race or ethnicity.[1] Harvard denies these allegations, insists that its admissions policies fully comply with federal law, and maintains its intention to mount a vigorous defense to SFFA's claims.

Presently before the Court is a Motion to Intervene in Defense of Harvard's Admission Policy, which was filed on April 29, 2015 [ECF No. 30]. The movants and proposed intervenors are nine minority high-school students who intend to apply for admission to Harvard College at some time in the future (the "Future Applicants"), and five minority college students who are currently enrolled in Harvard's full-time undergraduate program (the "Harvard Students") (collectively, the "Students"). In contrast to SFFA, these Students support Harvard's consideration of race in its admissions process, and they seek to intervene "in order to ensure that Harvard retains the right to consider race in its admissions decisions to the full extent allowed by law." [ECF No. 31, p. 3]. For the reasons set forth herein, the Court finds that the Students do not meet the criteria for intervention as of right pursuant to Fed. R. Civ. P. 24(a), and it declines to allow permissive intervention pursuant to Fed. R. Civ. P. 24(b). Consequently, the Court will deny the Students' Motion to Intervene, but allow them to participate in this litigation as *amici curiae*.

## II.     RELEVANT FACTS

SFFA filed its Complaint with this Court on November 17, 2014, and Harvard filed its Answer on February 18, 2015. On May 4, 2015, the Court issued a Scheduling Order governing

---

[1] SFFA purports to be a coalition of applicants and prospective applicants to institutions of higher education, along with their parents and other individuals. It further alleges to have at least one Asian-American student member who applied for and was denied admission to Harvard's 2014 entering class [Complaint ¶¶ 12-24, ECF No. 1].

the timing of discovery, dispositive motions, and other matters. At this point, the case has not advanced beyond the early stages of discovery. On April 29, 2015, the Students filed their Motion to Intervene with the Court [ECF No. 30], along with a supporting Memorandum of Law [ECF No. 31]. In addition, each of the Students filed a declaration explaining their purported interest in this case [ECF No. 31-1].

**The Future Applicants**

Movant M.B. is a high school junior, who identifies as African American and Caucasian. Movant K.C. is a high school sophomore and identifies as a Native American. Movant Y.D. is a high school junior and a member of the Oneida Tribe. Y.D. identifies as Native American. Movant G.E. is a high school freshman and an enrolled member of the Gila River Indian Community. G.E. identifies as Native American. Movant A.G. is a high school junior of Hispanic and Filipino descent. Movant I.G. is a high school freshman and is also of Hispanic and Filipino descent. Movant R.H. is an African American high school junior. Movant J.L. is a high school sophomore and states that his or her tribal affiliation is Jemez Pueblo and Zuni Tribe. J.L. identifies as Native American. Movant R.S. is a high school freshman and identifies as Native American, of the Confederated Tribes of the Umatilla Indian Reservation.

These students' declarations detail their impressive academic accomplishments, high grade-point-averages, involvement in extracurricular programs, and participation in activities related to their cultural and ethnic heritage. In addition, each student expresses a desire to experience a racially diverse environment in college, and a belief that his or her own unique cultural and ethnic background will contribute to the educational experiences of his or her peers. Further, each of these students states that he or she intends to apply for admission to Harvard's

undergraduate program, and to apply for financial aid. None, however, claims to have submitted an application to Harvard at this point in time.

**The Harvard Students**

Movant Sarah Cole is a full-time undergraduate student at Harvard, who identifies as Black or African American. Movant Fadhal Moore is a full-time undergraduate student at Harvard and identifies as African American. Movant Arjini Kumari Nawal is full-time undergraduate student at Harvard, who identifies as Asian American, of Sri Lankan descent. Movant Itzel Libertad Vasquez-Rodriguez is a full-time undergraduate student at Harvard College. She identifies as Native American and Latina, of Mexican Ancestry. Movant Keyanna Wigglesworth is a full-time undergraduate student at Harvard, who describes her race and ethnicity as Black American. Each of these students professes to experience academic and/or personal benefits from Harvard's racially diverse student body, and each believes that his or her education would be harmed if Harvard stopped considering race in its admissions policy. Each student also states that he or she would like to see an increase in the number and diversity of underrepresented minority groups admitted to Harvard.

## III.      SUMMARY OF THE STUDENTS' POSITION

The Students argue that Harvard must remain free to address the underrepresentation of certain racial and ethnic minority groups in its student body, so as to secure for these students access to opportunities associated with attending Harvard. Further, the Students believe they are in the best position to advance these interests, because their educational goals, career aspirations, and life experiences would be adversely affected if Harvard were prohibited from considering race in its admissions process. They seek to intervene because they believe that Harvard may not adequately represent their interests in this litigation, for a number of reasons. First, the Students

wish to emphasize certain arguments that they fear Harvard may not present to the Court. For example, the Students believe that Harvard should remain free to consider race and ethnicity in order to offset the disparate impact of certain other aspects of Harvard's admissions policy – including Harvard's consideration of so-called "legacy" applicants whose parents may have attended Harvard; the school's Early Action admissions program; and its reliance on SAT scores as a factor in admission. Each of these policies or criteria, the Students argue, has a negative impact on the admission of minority applicants. Accordingly, the Students want to argue that Harvard's continued use of race and ethnicity in its admissions process is critical to offsetting the disparate impact of such programs. And because Harvard is unlikely to concede that its own admissions policies have adverse effects on minority applicants, the Students argue that Harvard does not adequately represent their interests in this regard [ECF No. 31 pp. 4-5]. In addition, the Students claim that they will argue – and that Harvard is unlikely to argue – that achieving a "critical mass" of minority students is necessary to reduce the racial isolation of minority students on campus [ECF No. 42 p. 8].

Second, the Students suggest that Harvard's defense of its admissions procedures "may be affected by concern over its public perception or by the need to serve myriad constituencies such as alumni, faculty, and the academic community . . . ." Essentially, the Students argue that Harvard would not be as zealous an advocate as they, and "[t]o the extent Harvard would seek to settle or would otherwise avoid politically sensitive topics," their intervention would ensure that those arguments are presented as fully and forcefully as possible [ECF No. 31 p. 5].

Third, the Students claim that Harvard lacks the ability to defend its race-conscious admissions policy adequately because "Harvard, as an institution, does not have the personal experiences that Movants do with respect to race and ethnicity." [ECF No. 31 p. 14].

The Students argue that these considerations entitle them to intervene in this matter as of right, pursuant to Fed. R. Civ. P. 24(a). Alternatively, they argue that the Court should allow permissive intervention pursuant to Fed. R. Civ. P. 24(b).

## IV. SUMMARY OF SFFA AND HARVARD'S POSITIONS

Both SFFA and Harvard oppose the Students' full-fledged intervention in this action, and both argue that the Students are not entitled to intervene as of right under Fed. R. Civ. P. 24(a). Harvard submits that intervention is not warranted because Harvard will adequately represent the Students' interests [ECF No. 38]. SFFA agrees, and it further argues that the Students lack a "demonstrated interest" in this litigation, and that the Students' motion to intervene was not timely filed [ECF No. 37]. In addition, both parties are concerned that full-scale intervention could interfere with the expeditious and orderly resolution of this case, by adding additional parties, broadening the scope of discovery, and engendering delays. Harvard has also cited concerns for the privacy of its students and applicants, which would be exacerbated by the intervention of additional parties.

However, neither SFFA nor Harvard opposes a more limited form of participation by the Students. SFFA suggests that the Students be permitted to participate as *amici curiae* [ECF No. 37 pp. 9-10]. Harvard submits that if the Court permits intervention, it should limit the Students' participation to the submission of briefs, the presentation of their own declarations, and participation in any oral argument that the Court may choose to hear. Alternatively, Harvard is not opposed to the Students' participation as *amici curiae*, as suggested by SFFA [ECF No. 38 pp. 8-10].

## V.  ANALYSIS

### A.  Legal Standard

The Federal Rules of Civil Procedure contemplate two types of motions to intervene: intervention as of right, as set forth in Fed. R. Civ. P. 24(a), and permissive intervention, pursuant to Fed. R. Civ. P. 24(b). R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 8 (1st Cir. 2009). "The differences are significant." Id. Faced with a motion to intervene as of right, the court must apply a four-factor test, and its discretion is "somewhat more constrained than in the case of a motion for permissive intervention." Id. In contrast, when deciding whether permissive intervention is warranted under Fed. R. Civ. P. 24(b), the district court "can consider almost any factor rationally relevant," and "enjoys very broad discretion" in allowing or denying the motion. Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999).

#### 1.  Fed. R. Civ. P. 24(a) – Intervention as of Right

Federal Rule of Civil Procedure 24(a) provides an "authoritative recipe" that lists the "essential ingredients" for intervention as of right. Ungar v. Arafat, 634 F.3d 46, 50 (1st Cir. 2011). In the absence of a federal statute providing for a right to intervene, and on a timely motion, the court must permit anyone to intervene who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). "It follows that a would-be intervenor must demonstrate that: (i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to

protect this interest; and (iv) no existing party adequately represents its interest." <u>Ungar</u>, 634 F.3d at 50.

Although "[e]ach of these requirements must be fulfilled, [and] failure to satisfy any one of them defeats intervention as of right," <u>id.</u> at 51, the "inherent imprecision of Rule 24(a)(2)'s individual elements dictates that they 'be read not discretely, but together,' and always in keeping with a commonsense view of the overall litigation." <u>Pub. Serv. Co. of N.H. v. Patch</u>, 136 F.3d 197, 204 (1st Cir. 1998) (citation omitted). Further, the First Circuit has noted that deciding whether each of these requirements has been met "requires a series of judgment calls—a balancing of factors that arise in highly idiosyncratic factual settings." <u>Ungar</u>, 634 F.3d at 51.

### 2. Fed. R. Civ. P. 24(b) – Permissive Intervention

In contrast to the four-factor test for intervention as of right, permissive intervention has only two criteria. Upon a timely motion, the court has discretion to allow permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." <u>Daggett</u>, 172 F.3d at 112-13; <u>see</u> Fed. R. Civ. P. 24(b)(1)(B).[2] Permissive intervention, however, is "wholly discretionary," and when exercising its discretion, the court may consider "almost any factor rationally relevant . . . ." <u>Daggett</u>, 172 F.3d at 113. In addition, Rule 24(b)(3) expressly provides that the court must consider "whether intervention will prejudice the existing parties or delay the action." Fed. R. Civ. P. 24(b)(3); <u>see</u> <u>Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State St. Bank & Trust Co.</u>, 290 F.R.D. 11, 14 (D. Mass. 2013).

---

[2] In addition, the claim or defense asserted by the proposed intervenor must be supported by independent jurisdictional grounds. <u>Int'l Paper Co. v. Inhabitants of Town of Jay, Me.</u>, 887 F.2d 338, 346 (1st Cir. 1989).

**B. The Students' Motion to Intervene Is Timely**

As a threshold matter, the Court finds that the Students' Motion to Intervene is timely for purposes of Fed. R. Civ. P. 24(a) and (b). Rule 24's timeliness inquiry "is inherently fact-sensitive and depends on the totality of the circumstances." R & G Mortgage Corp., 584 F.3d at 7. Generally, the court should consider

> (i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.

Id. (citation omitted).

SFFA argues that the Students' motion is untimely because they waited more than five months after the Complaint was filed to move for intervention. SFFA further submits that the existing parties would be prejudiced by the Students' delay, as the Court has already entered a scheduling order setting discovery deadlines, which would need to be modified to accommodate the proposed-intervenors. These arguments are not sufficiently persuasive. In evaluating the timeliness of a motion to intervene, "the status of the litigation at the time of the request for intervention is 'highly relevant.'" Id. (quoting Banco Popular de Puerto Rico v. Greenblatt, 964 F.2d 1227, 1231 (1st Cir. 1992)). Although SFFA filed its Complaint in this case on November 17, 2014, Harvard did not answer the Complaint until February 18, 2015. The Students filed their Motion to Intervene on April 29, 2015, before an initial scheduling conference had taken place, and before the Court had issued the Scheduling Order. The Court does not find this to be an unreasonable delay. Furthermore, if the Students were permitted to intervene, any corresponding adjustments to the Scheduling Order would not prejudice the parties, as this case is in the very early stages of discovery. Compare Glass Dimensions, Inc., 290 F.R.D. at 15 (denying motion to

intervene as untimely, where intervention would require, among other things, re-opening fact and expert discovery and re-briefing summary judgment), with Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 64-65 (1st Cir. 2008) (finding that nine-month delay was not untimely, in part because the case had not progressed beyond its initial stages and no discovery had taken place). Under these circumstances, the Court finds that the Students' Motion is timely.

### C. The Students Lack a Sufficiently Protectable Interest to Warrant Intervention as of Right

To satisfy intervention as of right, however, Fed. R. Civ. P. 24(a) also requires a proposed intervenor to demonstrate "an interest relating to the property or transaction that is the subject of the action," and that the disposition of the action "may, as a practical matter impair or impede the movant's ability to protect its interest . . . ." Fed. R. Civ. P. 24(a)(2). Although the interest requirement has eluded precise definition, the First Circuit has established some guidelines. At a bare minimum, the proposed intervenor must show that it has a "significantly protectable interest," Patch, 136 F.3d at 205 (quoting Donaldson v. United States, 400 U.S. 517, 531 (1971)), "that is 'direct, not contingent.'" Id. (quoting Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 638 (1st Cir. 1989)). Further, the intervenor's claim must "bear a sufficiently close relationship to the dispute between the original litigants." Travelers Indem. Co., 884 F.2d at 638 (internal quotations and citation omitted).

In this case, because the proposed intervenors are comprised of two distinct groups (nine Future Applicants to Harvard, and five current Harvard Students), and because each group's purported interest in this matter is slightly different, the question of "interest" must be analyzed separately for each group.

### 1. Future Applicants

The Court agrees with SFFA that the Future Applicants do not have a direct, protectable interest in this litigation that warrants intervention as of right under Rule 24(a). As a practical matter, although each of the Future Applicants has stated his or her intent to apply to Harvard at some point in the future, none of them has even a pending application. Therefore, there is little that distinguishes the proposed intervenors currently before the Court from any other minority student in America, or indeed, the world, who may potentially be affected by Harvard's consideration or non-consideration of race and ethnicity in its admissions decisions, if he or she should decide to apply. This is not a case where the proposed intervenors "belong to a small group, quite distinct from the ordinary run of citizens," who would be affected directly by the outcome of the case. Daggett, 172 F.3d at 110. These students' purported interests in Harvard's admissions policies are simply too removed, too speculative, and too contingent, to justify intervention as of right under Rule 24(a).

The First Circuit's holding in Public Service Co. of New Hampshire v. Patch is instructive in this regard. 136 F.3d 197 (1st Cir. 1998). In Patch, a citizens' group of several hundred residential and commercial electricity consumers sought to intervene in an action brought by utility companies against the state of New Hampshire's public utilities commission. Id. at 203-04. Although the intervenors argued that they had an interest in the outcome of the litigation, because it would affect their ability to obtain lower utility rates, the First Circuit found that this theory "operates at too high a level of generality," as "every electricity consumer in New Hampshire . . . yearns for lower electric rates." Id. at 205. Further, the court found that the interest articulated by the consumers had an "overly contingent quality," where the intervenors "root their professed economic interest in an as yet unrealized expectancy of lower electric

rates." Id. at 205-06. The court noted that this was not a case "in which ongoing litigation directly threatens an economic right or benefit presently enjoyed by any would-be intervenor." Id. at 205.  Here, like the New Hampshire consumer group in Patch, the purported interests of the Future Applicants in Harvard's continued consideration of race and ethnicity in its admissions process are too general and too contingent to warrant intervention as of right.

The Court also finds that the Future Applicants' purported interest is not sufficiently "protectable" to warrant intervention as of right. The Students concede that they have "no constitutional right to have their race considered by Harvard," assuming that they eventually apply [ECF No. 42, p. 4]. They argue, however, that they are nonetheless "entitled to protect their interests in Harvard's right to consider race in admissions regardless of whether Harvard is legally compelled to do so." [Id.]. This argument is not persuasive. As the Students seem to acknowledge, this interest is indirect, as it is derivative of Harvard's right to consider race in its admissions process.[3]

Nor do the Students have a protectable interest that is on-par with that of the Plaintiff in this case. SFFA's claims in this action derive from their members' constitutional right to be *free* from unlawful discrimination based on race. It does not follow, however, that all prospective applicants have an equally protectable interest in the school's continued consideration of race in its admissions policies, or that they may maintain a legal claim in support of those practices. In other words, the Plaintiff's interest in preventing Harvard from considering race in its admissions decisions is qualitatively different from the proposed-intervenors' interest in supporting Harvard's admissions policies. The former gives rise to a constitutional claim, while the latter does not.

_____

[3] And, to the extent that the Students share in Harvard's interest, that interest is adequately represented by Harvard, as will be discussed, *infra*.

Similarly, the Future Applicants also lack a protectable interest in obtaining the many benefits of a Harvard education, or Harvard's financial aid program. To borrow from the language of Article III standing, "the 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla., 508 U.S. 656, 666 (1993).[4] Although the Court understands why the Future Applicants are interested in the outcome of this litigation, their interest is not a significantly protectable one that warrants intervention. See Travelers Indem. Co., 884 F.2d at 638 (citing Flynn v. Hubbard, 782 F.2d 1084, 1092 (1st Cir. 1986) (Coffin, J., concurring) (noting that interest must be "direct, substantial, [and] legally protectable")).

In addition, though the Students argue that courts "routinely" grant intervention as of right to parties "seeking to protect their interests in race-conscious programs from which they benefit," [ECF No. 31 p. 10], the cases they cite are largely distinguishable. See, e.g., Johnson v. San Francisco Unified Sch. Dist., 500 F.2d 349, 352 (9th Cir. 1974) (per curiam) (parents of children of Chinese ancestry had a right to intervene in action challenging compulsory desegregation program in their public school district); Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex., 19 F.3d 992, 994 (5th Cir. 1994) (group of city firefighters had right to intervene

---

[4] This Court recognizes that neither the Supreme Court nor the First Circuit has expressly decided whether the "interest" referred to in Rule 24(a) requires a proposed intervenor to possess Article III standing. See Daggett, 172 F.3d at 109 (citing Diamond v. Charles, 476 U.S. 54, 68-69 & n.21 (1986) (declining to resolve the issue)); see also Igartua v. United States, 636 F.3d 18, 19 (1st Cir. 2011). The First Circuit has noted, however, that although the two concepts may not be identical, "the 'interest' required under Rule 24(a) has some connection to the interest that may give the party a sufficient stake in the outcome to support standing under Article III." Daggett, 172 F.3d at 110. The First Circuit has also suggested that while it may not be impossible for an intervenor to demonstrate a Rule 24(a) interest without possessing Article III standing, such cases would be "unusual" and involve "peculiar circumstances." Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers, 219 F.3d 31, 34 (1st Cir. 2000).

in action, where consent decree would affect their promotional opportunities). In <u>Johnson</u>, the intervenors were not simply "potential" applicants to a private university and possible beneficiaries of its resources – they were established residents of a public school district, whose children would be compelled to follow the district's reassignment policies. 500 F.2d at 352. In <u>City of Dallas,</u> the intervenors were firefighters, presently employed by the city, whose opportunities for promotional advancement would be immediately and directly impacted by the outcome of a racial discrimination suit. 19 F.3d at 994-95. Thus, these intervenors' interests were not speculative, indirect, or contingent.

The Students also rely heavily on <u>Grutter v. Bollinger</u>, in which the Sixth Circuit held, in circumstances very similar to these, that prospective minority applicants had a substantial interest in an action challenging the University of Michigan's admissions policy, and a corresponding right to intervene in the litigation. 188 F.3d 394. The Court has carefully reviewed the <u>Grutter</u> opinion, and notes that the Sixth Circuit applied, in its own words, "a 'rather expansive notion of the interest sufficient to invoke intervention of right'" under Rule 24(a). 188 F.3d at 398. This is in contrast to a more restrictive test employed by some other circuits, which rejects interests that are "speculative, indirect, or contingent." <u>Conservation Law Found. of N.e. v. Mosbacher</u>, 966 F.2d 39, 42 (1st Cir. 1992) (discussing different Circuits' approaches to the "interest" required for intervention). The First Circuit has declined to adopt either of these approaches, and opts instead for a fact-based, case-by-case determination. <u>See id.</u> at 41-42. Consistent with the pragmatic approach counseled by the First Circuit, and cognizant of its instruction to analyze the elements of Rule 24(a) intervention "in keeping with a commonsense view of the overall litigation," <u>Patch</u>, 136 F.3d at 204, the Court finds that the Future Applicants

do not, on these facts, have a sufficient interest in this litigation to warrant intervention as of right under Rule 24(a).

### 2. Harvard Students

The current Harvard Students are in a different posture. In contrast to the Future Applicants, these students were admitted to Harvard, chose to matriculate, and are currently enrolled in the full-time undergraduate program at the College. Therefore, they have no remaining interest in Harvard's continued consideration of race and ethnicity with respect to their own applications. Rather, their purported interest is in continuing to enjoy the academic and personal benefits that they believe arise out of Harvard's racially diverse student body, and their desire to see an increase in the number and diversity of underrepresented minority groups admitted to Harvard [ECF. No. 31-1, Exhibits 1.10-1.14]. Although this interest is less speculative and less contingent than the interest articulated by the Future Applicants, it is still not a significantly protectable interest. For the same reasons that the Future Applicants lack a protectable interest in Harvard's continued consideration of race in its admissions policies, so too do the current Harvard Students.[5] Further, to the extent that the current Harvard Students have any interest in the continued consideration of race in Harvard's admissions process, they have not established that Harvard may not adequately represent those interests, as more fully set forth below.

### D. The Students Have Not Established Inadequate Representation

Both Harvard and SFFA argue that the Students are not entitled to intervene as of right, because the Students have not demonstrated that Harvard may not adequately represent their

---

[5] Although the Students rely on Conservation Law Foundation of New England, Inc. v. Mosbacher, 966 F.2d 39 (1st Cir. 1992), for the proposition that intervention as of right does not require a "legally cognizable" interest [ECF No. 42, p.3], the Mosbacher case does not stand for this principle.

interests. The Court agrees. The Students claim that their ultimate goal in this litigation is to "ensure that Harvard retains the right to consider race in its admissions decisions to the full extent allowed by law." [ECF no. 31 p. 3]. Harvard shares this same objective and intends to mount a "vigorous defense" of its admissions policies [ECF No. 38 p. 1]. Where, as here, "the goals of the applicants are the same as those of the plaintiff or defendant," "adequate representation is presumed." Daggett, 172 F.3d at 111. Although the Students advance several arguments in support of Harvard's inadequacy, none of these arguments is persuasive, and all are speculative. Cf. Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Comm'n, 197 F.3d 560, 567 (1st Cir. 1999) (noting that burden of overcoming a presumption of adequacy is on the would-be intervenor). In short, the Students have not sufficiently rebutted the presumption of adequacy.

First, the Students suggest that their interests would not be adequately represented should Harvard decide to settle this suit, or decline to appeal an unfavorable outcome. However, merely speculating about this possibility does not establish inadequacy. See Daggett, 172 F.3d at 112 (noting that there was no indication Attorney General would "compromise or would decline to appeal if victory were only partial"). Harvard has argued that it would be "inconceivable" for Harvard to accede to SFFA's demands [ECF No. 38, p. 4], and the Court agrees that this possibility currently appears to be "extremely remote." Patch, 136 F.3d at 208. Moreover, in the unlikely event that Harvard settled this action or failed to appeal, the Students could renew their motion to intervene at that point in time. See Massachusetts Food Ass'n, 197 F.3d at 568; Daggett, 172 F.3d at 112.

In addition, the Students allege that even if Harvard is not inclined to settle, it may want to "avoid politically sensitive topics" surrounding racial and ethnic diversity when defending its

admissions policies. In other words, the zealousness and thoroughness of Harvard's defense may be compromised by "concern over its public perception or by the need to serve myriad constituencies such as alumni, faculty, and the academic community, who may all have differing opinions about the propriety of the goal of achieving racial and ethnic diversity." [ECF No. 31 p. 5]. The Students, however, do not cite any evidence to substantiate this fear. Further, courts have held that "[i]t is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests. Little Rock Sch. Dist. v. N. Little Rock Sch. Dist., 378 F.3d 774, 780 (8th Cir. 2004). Thus, subtle differences in approach or rationale in pursuit of a common goal do not demonstrate inadequacy.

The Students further argue that Harvard lacks the ability to defend its race-conscious admissions policy adequately because "Harvard, as an institution, does not have the personal experiences that Movants do with respect to race and ethnicity." [ECF No. 31 p. 14]. This argument is also unavailing. Harvard is perfectly capable of gathering and presenting evidence of its students' interests and experiences, and it is not necessary for these Students to intervene as full-fledged litigants for this to occur. See Daggett, 172 F.3d at 113 (noting that there was "no obvious reason why" the state defendant could not offer the testimony of the proposed intervenors, treating them as friendly witnesses). However, to the extent that the Students' individual experiences and viewpoints may be enlightening, the Court is more than willing to permit the Students to participate as *amici curiae*, and to submit these views through declarations, substantive briefs and, in appropriate cases, oral argument.

Next, the Students identify specific arguments that they claim Harvard is unlikely to make in this litigation, and that the Students wish to present to the Court. For example, although the Students support Harvard's continued consideration of race and ethnicity, they oppose other

aspects of Harvard's admissions policies and programs, including (1) Harvard's reliance on SAT

scores; (2) the school's "early admission" program; and (3) the so-called "legacy" factor,

pursuant to which Harvard sometimes considers whether an applicant's parent(s) are alumni of

the school. The Students wish to argue that all of these policies have a negative impact on

minority applicants' chances for admission, and that Harvard should be able to consider race and

ethnicity in its admissions decisions in order to offset or "remedy" the disparate impact of these

criteria [ECF No. 31 pp. 2, 5, 13-14]. As a preliminary matter, the Students do not clearly

explain why this "remedy" theory would be a constitutionally sufficient reason to uphold

Harvard's admissions practices.[6] Furthermore, the Students' interest in exposing the allegedly

disparate impact of other admissions criteria is already represented in this case, if not by

Harvard, then by SFFA. For example, SFFA alleges in its Complaint that Harvard's alleged use

of "legacy" preferences, as well as other policies, has a disparate impact on minorities, and it

suggests that Harvard can achieve diversity in its student body without using race as a factor in

admissions decisions, by simply eliminating policies such as legacy preferences. [Complaint ¶¶

341-355, ECF No. 1]. Thus, such issues are likely to surface over the course of discovery, even

absent the Students' intervention.

---

[6] In the context of school admissions cases, the Supreme Court has recognized that achieving the educational benefits of a more diverse student body may be a compelling interest justifying the use of racial classifications. See Fisher v. Univ. of Texas at Austin, 133 S. Ct. 2411, 2417, 186 L. Ed. 2d 474 (2013) (citing Grutter v. Bollinger, 539 U.S. 306, 325 (2003)). The Court, however, has also suggested that a university may not employ racial classifications to remediate past instances of discrimination or injustice, because a "university's 'broad mission [of] education' is incompatible with making the 'judicial, legislative, or administrative findings of constitutional or statutory violations' necessary to justify remedial racial classification." Id. at 2417 (alteration in original) (quoting Regents of Univ. of California v. Bakke, 438 U.S. 265, 308-09 (1978) (opinion of Powell, J.)).

The Court is also unpersuaded by the Students' argument that "[t]he record reflects that Harvard is unlikely to argue that achieving a critical mass of underrepresented minority students is necessary to achieve diversity," and to "reduce racial isolation and the spokesperson status of minority students." [ECF No. 42 p. 8]. In support of this statement, the Students cite the absence of such arguments in Harvard's *amicus* briefs filed in other school admissions cases, such as Regents of the University of California v. Bakke, 438 U.S. 265 (1978); Grutter v. Bollinger, 539 U.S. 306 (2003); and Fisher v. University of Texas at Austin, 133 S.Ct. 2411 (2013). Critically, however, Harvard's admissions policies were not being challenged in those cases. The fact that Harvard did not emphasize a particular argument in an *amicus* brief does not plausibly suggest that it will fail to do so in this case, which mounts a full-scale challenge to its own admissions policies. Further, the Court notes that any unique arguments the Students wish to advance can be submitted via *amicus* briefs and their personal declarations. See Massachusetts Food Ass'n, 197 F.3d at 568 (noting that *amici curiae* can advise the court of missing arguments).

Overall, the Students have identified only relatively minor, and very speculative divergences in interests, which do not establish that Harvard's representation may be inadequate. Although the burden of showing inadequacy has been described as a "minimal" one, B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 545 (1st Cir. 2006), this does not mean that raising a mere possibility of inadequacy triggers an automatic right to intervene. Because the elements of Rule 24(a) intervention must be considered holistically, Patch, 136 F.3d at 204, the required showing of inadequacy "tend[s] to vary depending on the strength of the interest [at stake]." Daggett, 172 F.3d at 113. "Courts might require very little 'inadequacy' if the would-be intervenor's home were at stake and a great deal if the interest were thin and widely shared." Id. at 113-14. Here, the Court has found that the Students lack a significantly

protectable interest in this litigation. But even assuming that they possessed some limited interest, it would fall on the "thin and widely shared" end of the spectrum. Id. Given the relative weakness of the Students' purported interests, the potential inadequacies they cite are not sufficiently compelling to warrant intervention as of right. The Students' Motion to Intervene as of right pursuant to Fed. R. Civ. P. 24(a) is therefore DENIED.

### E. The Court Declines to Allow Permissive Intervention

In the alternative, the Students have moved for permissive intervention under Fed. R. Civ. P. 24(b), which provides that a court may allow intervention upon a timely motion, "when an applicant's claim or defense and the main action have a question of law or fact in common." Daggett, 172 F.3d at 112-13; see Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention, however, is "wholly discretionary," and the court should consider "whether intervention will prejudice the existing parties or delay the action." Glass Dimensions, Inc., 290 F.R.D. at 14; see Fed. R. Civ. P. 24(b)(3).

The Court declines to allow permissive intervention here, for a number of reasons. First, as discussed earlier in this Memorandum, Harvard should adequately represent the interests of both the Future Applicants and the Harvard Students in this litigation. Second, both SFFA and Harvard have objected to the Students' full-fledged intervention, citing concerns for expediency, and, in Harvard's case, privacy. Harvard is also concerned that the Future Applicants could become privy to the inner workings of Harvard's admissions process, which could pose an unfair advantage. The Court shares the parties' concerns. In their moving papers, the Students suggest that if permitted to intervene, they will be "present and involved" in fact discovery, and that they may gather evidence and present expert testimony beyond that sought by the parties [ECF No. 42 pp. 9-10]. In all likelihood, allowing fourteen Students to intervene as parties would further

complicate proceedings, lengthen the discovery process, add expense, and significantly delay the ultimate resolution of this case. See Massachusetts Sch. of Law at Andover, Inc. v. United States, 118 F.3d 776, 782 (D.C. Cir. 1997) (noting that the "delay or prejudice" standard referenced in Rule 24(b) captures "all the possible drawbacks of piling on parties; the concomitant issue proliferation and confusion will result in delay as parties and court expend resources trying to overcome the centrifugal forces springing from intervention, and prejudice will take the form not only of the extra cost but also of an increased risk of error").

In sum, the Court finds that the Students' intervention would add undue delay, cost, and complexity to these proceedings, and that such intervention is unwarranted where Harvard adequately represents the Students' interests. See State v. Dir., U.S. Fish & Wildlife Serv., 262 F.3d 13, 21 (1st Cir. 2001) (affirming denial of permissive intervention, where district court felt that intervention "would delay and complicate matters"); Daggett, 172 F.3d at 113 (deferring to district court's judgment on whether permissive intervention would cause disruption and delay). Consequently, the Students' Motion to Intervene pursuant to Fed. R. Civ. P. 24(b) is also DENIED.

### F. Amicus Curiae Status

Although the Students may not intervene in this case as parties, the Court will permit the Students to participate as *amici curiae*. The role of an *amicus curiae*, meaning "friend of the court," is to "assist the court 'in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision.'" Sierra Club v. Wagner, 581 F.Supp.2d 246, 250 n.1 (D.N.H. 2008) (quoting Newark Branch, N.A.A.C.P. v. Town of Harrison, N.J., 940 F.2d 792, 808 (3d Cir. 1991)). The Court finds that

*amicus* status will be sufficient for the Students to present their views and arguments in this case. As *amici curiae*, the Students will be permitted to submit their own declarations, file substantive briefs on dispositive motions, and participate in oral arguments on those motions.

The Students argue that *amicus* status is not sufficient, because an *amicus* cannot "file pleadings; create, extend, or enlarge an issue before the court; challenge the validity of testimony; . . . challenge an injunction while it remains in effect;" gather evidence; or provide expert testimony [ECF No. 42 p. 9]. Although this is not entirely accurate, the Court takes their point. Nonetheless, the Students have not demonstrated any significantly protectable interest, or sufficiently inadequate representation, to justify their full-scale participation in discovery. Further, the Court has declined to permit discretionary intervention precisely because the addition of fourteen additional parties propounding discovery, presenting expert testimony, cross-examining witnesses, and participating in all other aspects of the adversary process would inevitably slow and unduly complicate the progress of this litigation.

The Students also note that as *amici*, they would not have the right to appeal an adverse decision. That may be true, but the Students would arguably lack standing to appeal even if the Court were to permit intervention. "[A]n intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art[icle] III." <u>Diamond v. Charles</u>, 476 U.S. 54, 68 (1986); <u>see</u> <u>Rio Grande Silvery Minnow v. Keys</u>, 46 F. App'x 929, 932-33 (10th Cir. 2002) (unpublished) (holding that intervenors-appellants lacked Article III standing to appeal, where they lacked injury in fact). The issue of Article III standing, however, is not presently before the Court. In the unlikely event that Harvard declined to appeal from an unfavorable decision, the

would-be intervenors could renew their motion to intervene at that time. See Massachusetts Food Ass'n, 197 F.3d at 568; Daggett, 172 F.3d at 112.

## VI.    CONCLUSION

For the foregoing reasons, the Proposed Intervenors' Motion to Intervene [ECF No. 30] is DENIED; however, the Proposed Intervenors are granted leave to participate in this action as *amici curiae* as follows: (1) a*mici curiae* may, through their counsel, submit a brief or memorandum of law not to exceed 30 pages, exclusive of exhibits, on any dispositive motion in this case; (2) *amici curiae* may, through their counsel, participate in oral argument on any dispositive motion in this case; (3) *amici curiae* may submit personal declarations or affidavits in support of their memorandum of law, which may be accorded evidentiary weight if otherwise proper; (4) as appropriate, the Defendant may take full advantage of *amici curiae's* offers of resources, evidence, or assistance, where doing so would help Defendant in preparation for and during trial. However, *amici curiae* will not be granted leave to propound discovery, participate in depositions, obtain copies of documents requested in discovery, or otherwise participate in discovery in this case. Nor will *amici curiae* be permitted to participate in expert discovery or present expert testimony. Should this case proceed to trial, *amici curiae* may file a motion to participate in the proceedings, and the Court will consider the appropriate scope of participation at that time.

**SO ORDERED.**

Dated: June 15, 2015

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE
