IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br><br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION), <br><br> Defendant. | Civil Action No. 1:14-cv-14176-ADB |

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO MOTION TO STAY

Plaintiff Students for Fair Admissions, Inc. ("SFFA") respectfully submits this supplemental memorandum to respond to issues raised by the Court at the hearing of July 21, 2015, regarding the Motion for Stay filed by Defendant President and Fellows of Harvard College ("Harvard").

I.   **Harvard's Stay Motion Should Be Denied In Its Entirety.**

SFFA continues to believe that Harvard's request for a stay pending a decision in *Fisher v. University of Texas at Austin*, No. 14-981 ("*Fisher II*"), is baseless. As SFFA has explained, its members face undeniable hardship if the adjudication of their civil rights claims is delayed for even one additional admissions cycle. *See* SFFA Opposition (Dkt. 71), at 3-5.  In its last-minute reply, Harvard offered pages of speculation about which admissions cycle is most likely to be affected by an adverse decision. Reply at 3-5. But in the end, Harvard does not (and cannot) deny that a one-year stay is likely to affect at least *some* of SFFA's 16,000 members—to say nothing of the thousands of Asian-

1

American applicants who seek admission to the university each year.[1] And, try as it might, Harvard cannot escape the Supreme Court's requirement that the proponent of a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).  This is no "misstatement" of the governing legal standard; indeed, the First Circuit reads *Landis* precisely as SFFA does. *See Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir 1983) (noting that "[t]he Supreme Court has indicated, however, that to be entitled to a stay, a party must demonstrate a clear case of hardship if there is a danger that the stay will damage the other party") (citing *Landis*).

Moreover, *Fisher II* will, at most, affect only the legal standard by which *some* of SFFA's claims about Harvard's consideration of race may be judged.  It will not affect SFFA's claims for invidious discrimination or racial balancing.  SFFA made this point in its Opposition, *see id.* at 13, and at the status conference, and Harvard has not contested it.  These claims alone require the same type of fact discovery about Harvard's actual practices, and the effect they have on Asian-American admissions. Even with respect to those claims for which *Fisher II* may provide some general guidance, any Supreme Court

---

[1] Harvard's attempt to minimize the impact of a stay on SFFA's membership relies in part on the initial disclosure by SFFA of nine student members (in addition to three sets of parents) from a variety of past or future Harvard admissions cycles.  Given the exponential growth in SFFA's membership during the past year, SFFA continues to identify and, as necessary, will disclose additional members who have applied, or intend to reply, to Harvard during the pendency of this case. Nor does Harvard cite any authority to support its suggestion that this Court may only consider the harm to SFFA's current membership when determining whether to issue a stay.  Reply at 4 n.3. To the contrary, the First Circuit has identified "the interests of third parties" as a factor for the Court to consider when contemplating a discretionary stay. *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004).

decision will not—and cannot—change the *facts* about how Harvard is using race. Indeed, Harvard has failed to articulate *any* actual example of how a decision in *Fisher II* could change the scope of fact discovery in this case, despite having had three chances to do so (in its Opening Memo, its Reply, and at the July 21 status conference). As a result, Harvard has fallen far short of demonstrating any hardship, much less a "clear case of hardship," that would justify a stay in this case.

Harvard's strategy is transparent. Having had a civil rights complaint filed with the Department of Education by dozens of Asian-American groups dismissed because those claims will be adjudicated in this litigation,[2] it now seeks to put the entire case on ice for one year. It then lays the groundwork for further delay, asserting the possibility that it will need to "review" and potentially "revise" its admissions policies after *Fisher II*, even as it conspicuously reserves the right to argue that *Fisher II* is wholly inapplicable to its own admissions policies. Opening Memo (Dkt 59) at 2 n.1. And still Harvard has yet to make its first production of documents, and hopes to avoid any actual inquiry into the way it actually uses race in the decision-making process. These are not the actions of a party that welcomes any scrutiny of its admissions practices. This Court should not aid Harvard in its efforts to delay, and in doing so condemn at least another year's worth of applicants to an ongoing violation of their civil rights. The motion should be denied, and the case should proceed.[3]

---

[2] *See, e.g.,* Molly Boigon, *Why the Education Dept. Dismissed a Discrimination Complaint Against Harvard*, WGBH (July 8, 2015), *available at* http://www.pbs.org/newshour/rundown/education-department-dismisses-discrimination-complaint-harvard/

[3] At the status conference, the Court raised the question whether the pending appeal of this Court's order denying a motion of intervention deprived it of jurisdiction.

**II.     If the Court Believes Harvard's Claim That *Fisher II* Is Reasonably Likely To Render All Discovery Unnecessary, A Complete Stay Should Be Granted.**

As noted, Harvard has failed to articulate any specific category of pending discovery that is (a) not equally relevant to SFFA's claims that are not implicated at all by *Fisher II*; and (b) will not eventually be required post-*Fisher II* for evaluation of SFFA's other claims.  Instead, Harvard's primary contention is that it should be allowed to avoid the burden of discovery in its entirety because *Fisher II* may actually moot this entire case.  Reply at 8 n. 10; see also Opening Memo at 6.

Of course, there is no realistic basis for assuming that *Fisher II* will have so sweeping an impact.  The briefing in that case makes clear that neither party in *Fisher II* expects the Court to overrule *Grutter v. Bollinger*, 539 U.S. 306 (2003), and the Supreme Court has twice indicated that the *Fisher* litigation does not present that question.  *See Fisher*, 133 S. Ct. at 2421; *Schuette v. BAMN*, 134 S. Ct. 1623, 1630 (2014).  Moreover, even if the Supreme Court were to take such a dramatic step, Harvard has specifically reserved the right to challenge whether *Fisher II* controls its admissions process.  Opening Memo at 2 n.1.  As a result, there is no basis to assume that *Fisher II* will create such a dramatic change in the law so as to render all discovery moot.

---

Although "[a]n order flatly denying a motion to intervene in a judicial proceeding is an immediately appealable collateral order," *Rhode Island v. U.S.E.P.A.*, 378 F.3d 19, 26 (1st Cir. 2004), this Court is deprived of jurisdiction only over matters related to the order on appeal.  "Even after the appeal is filed the district court retains authority to decide matters not inconsistent with the pendency of the appeal," *United States v. Hurley*, 63 F.3d 1, 23 (1st Cir. 1995)   Indeed, the intervenors conceded in this Court that they "do not expect to need additional fact discovery beyond what the Parties plan," *See* Reply Memorandum in Support of Proposed Defendant-Intervenors' Motion to Intervene (Dkt 42) at 10.  In any event, the appeal is likely to be complete long before the current discovery deadline closes.  The pending appeal of the denial of the motion to intervene thus provides no support for any stay.

4

But if this Court really believes that there is a realistic chance *Fisher II* will moot this case in its entirety, then the Court should clearly state so, stay discovery completely, and avoid imposing the burden of any discovery on any of the parties. In that event, SFFA respectfully reiterates its request for a written decision so it may pursue appellate remedies to defend the rights of its members who will suffer prejudice from any delay in their ability to apply to or transfer to Harvard.

**III.   If the Court Believes a Partial Stay is Appropriate, Discovery Should Be Evenhanded And Help The Parties Meaningfully Move Their Cases Forward.**

As set forth above, SFFA does not consider a partial stay an appropriate or workable solution to this case. But if the Court nonetheless decides that a partial stay of discovery is appropriate (notwithstanding Harvard's inability to articulate any particular category of discovery that would be affected by a decision in *Fisher II*) the focus should be, as the Court indicated during the status conference, on moving the case forward so that it can proceed quickly to summary judgment (and trial, if necessary) after *Fisher II* is issued.

With that goal in mind, SFFA firmly believes that any partial discovery must provide its experts with the opportunity to make use of the anticipated eleven-month delay by providing them with sufficient data to conduct preliminary analysis of Harvard's actual admissions process. Any partial stay, then, should *at a minimum*, require:

• **Production of a preliminary sample of application files.** Both parties and the Court have recognized that *some* production of application files is necessary and inevitable in this case. The parties already have invested substantial time in briefing the question of how many files are appropriate to support statistically defensible conclusions

about how Harvard scores applications for undergraduate admissions. Once those files are turned over, SFFA's expert will need time to analyze their content and determine what they suggest about Harvard's admissions practices (as well as whether statistics principles require a larger sample). To the extent there are privacy concerns or redaction questions associated with the production of any files, these issues could also be addressed (and litigated, if necessary) during the partial stay. Given the time that process could take, the inevitability of discovery of these files, and the importance of these files to expert analysis of key factual issues in this case, any stay should permit the production of the preliminary sample, in whatever amount the Court decides, to proceed.

- **Production of electronic admissions databases.** Harvard has repeatedly agreed in writing to produce individual and aggregate admissions data that it maintains in electronic format. These data are readily accessible and can be produced without inordinate delay or burden. Both parties agree that the data are relevant and will further enable experts to prepare their analysis and identify the extent to which the files and the data complement or contradict one another.[4]

This type of preliminary discovery would allow the experts and parties to make meaningful progress during the period while *Fisher II* is pending, while still (temporarily) sparing Harvard from compliance with a substantial portion of its discovery obligations. Under this approach, Harvard would be able to delay the production of *any* email or other electronically-stored information, even though this eventually (and inevitably) will represent a substantial portion of the discovery in this case. It also would

---

[4] In its meet-and-confer session following the status conference, counsel for Harvard offered to produce the list of fields in the database, but firmly resisted the suggestion that it should produce the data itself. Perusing a list of database fields will not t would hardly suffice to move this case forward.

delay discovery into policy areas that might be impacted, however slightly, by *Fisher II*, such as the extent to which Harvard has considered race-neutral alternatives to achieving its diversity goals.

To be sure, there are other categories of basic policy, guidance and training materials that Harvard no doubt should produce under a partial stay—indeed, that it should have produced weeks, if not months, ago. But the limited discovery identified above is the minimum necessary to enable SFFA to make any significant progress during a year-long stay. Otherwise, SFFA believes the Court should issue a reasoned order granting a full stay, which would allow SFFA to pursue the appellate remedies necessary to protect the rights of members for whom a delay in discovery may preclude them from ever obtaining a fair consideration of their application to attend Harvard.

Finally, to the extent that Harvard may suggest that a "partial" stay should nonetheless permit it to engage in full discovery, and even motion practice, on SFFA's associational standing, while at the same time avoiding even a limited inquiry into *any* applicant-specific information, Harvard is really seeking a *unilateral* stay of discovery. There is no basis whatsoever for any approach that would impose the full burdens of discovery on SFFA, while at the same time permitting Harvard to avoid almost any burden itself, particularly when the stay is sought largely on the basis that the entire case could be resolved in SFFA's favor.

Such one-sided discovery orders are routinely rejected on grounds of basic fairness. *See, e.g., Inland Am. (LIP) SUB, LLC v. Lauth*, No. 109-CV-00893-SEB-JMS, 2010 WL 670546, at *2 (S.D. Ind. Feb. 19, 2010) (rejecting request because "Defendants want to be able to conduct discovery on their counterclaims, while denying Plaintiff the

7

ability to conduct discovery on its claim"); *Bank of Am. v. Veluchamy*, No. 09C5109, 2010 WL 1693108, at *4 (N.D. Ill. Apr. 26, 2010) (noting that "it would be unfair to impose a one-sided stay that would allow Counterplaintiffs to pursue discovery, while preventing Bank of America from engaging in the discovery necessary to defend against the nine-count counterclaim brought by Counterplaintiffs"); *Pendergest-Holt v. Certain Underwriters at Lloyd's of London & Arch Specialty Ins. Co.*, No. CIV.A H-09-3712, 2010 WL 3199355, at *3 (S.D. Tex. Aug. 11, 2010) (rejecting a stay of discovery that was "one-sided and would impose an undue hardship" on other party).  This asymmetrical discovery would be particularly inappropriate when a partial stay would frustrate the ability of a civil-rights plaintiff to obtain injunctive relief vindicating their right to be free form unlawful racial discrimination. In the unlikely event the Court were to consider that sort of so one-sided an approach, SFFA would request a temporary stay of *that* order, so it could seek emergency relief from the First Circuit.

*   *   *

Given SFFA's members' strong interest in having their applications reviewed without the improper use of race, and Harvard's utter failure to identify any specific discovery request that will be affected by a decision in *Fisher* II, SFFA respectfully urges the Court to simply deny the motion and permit the parties to resume building the full record necessary to determine just how Harvard uses race in its undergraduate admissions program.  At the summary judgment stage, with the benefit of any *legal* guidance provided by *Fisher II*, this Court can determine whether Harvard is able to carry its burden in light of its practices below. A partial stay is particularly inappropriate, given the all-or-nothing nature of Harvard's wholly speculative argument that *Fisher II* could

8

do away with the use of race altogether.  But if the Court is determined to issue a partial stay, it should do so in a manner that ensure evenhanded discovery and permits a meaningful inquiry into Harvard's actual use of race in considering at least a subset of its applicants.  Anything else is functionally equivalent to a full stay at best, and an inappropriate unilateral stay at worst.

Respectfully submitted,

/s/ William S. Consovoy
_____

| | |
|---|---|
| Paul M. Sanford<br>BBO #566318<br>Benjamin C. Caldwell<br>BBO #67506<br>BURNS & LEVINSON LLP<br>One Citizens Plaza, Suite 1100 Providence, RI  02903<br>Tel: 617-345-3000<br>Fax: 617-345-3299<br>psanford@burnslev.com<br>bcaldwell@burnslev.com<br><br><br><br><br>Dated: July 28, 2015 | William S. Consovoy<br>Thomas R. McCarthy<br>J. Michael Connolly<br>CONSOVOY MCCARTHY PARK PLLC<br>3033 Wilson Boulevard<br>Suite 700<br>Arlington, Virginia 22201<br>Tel: 703.243.4923<br>Fax: 703.243.4923<br>will@consovoymccarthy.com<br>tom@consovoymccarthy.com<br>mike@consovoymccarthy.com<br><br>Patrick Strawbridge<br>BBO #678274<br>CONSOVOY MCCARTHY PARK PLLC<br>Ten Post Office Square<br>Boston, MA 02109<br>Tel: 617.227.0548<br>patrick@consovoymccarthy.com<br><br>*Counsel for Plaintiff Students for Fair Admissions, Inc.* |

**CERTIFICATE OF SERVICE**

In accordance with Local Rule 5.2(b), I hereby certify that I filed the preceding document through the ECF system, and that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                             s/ Patrick Strawbridge_____