UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No: 1:14-cv-14176 |
| | ) |
| PRESIDENT AND FELLOWS OF HARVARD | ) |
| COLLEGE (HARVARD CORPORATION) | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO PROPOSED DEFENDANT-INTERVENORS'
MOTION FOR STAY PENDING APPEAL**

Plaintiff Students for Fair Admissions, Inc. ("SFFA") submits this opposition to the motion for stay pending appeal of Proposed Defendant-Intervenors (the "Proposed Intervenors").

## INTRODUCTION

In *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989), Justice Kennedy considered joining the call for a ban on non-remedial racial preferences, but declined to do so. He agreed that the "moral imperative of racial neutrality is the driving force of the Equal Protection Clause." *Id*. at 518 (Kennedy, J., concurring in part and concurring in the judgment). But Justice Kennedy was willing to permit a "less absolute rule … based on the proposition that any racial preference must face the most rigorous scrutiny by the courts" and expressed confidence that, "in application, the strict scrutiny standard will operate in a manner generally consistent with the imperative of race neutrality, because it forbids the use even of narrowly drawn racial classifications except as a last resort." *Id*. at 519. Justice Kennedy cautioned, however, that he would reconsider that stance if his prediction proved wrong. "Structural protections may be necessities if moral imperatives are to be obeyed." *Id*. at 518.

1

In this case, strict scrutiny is proving to be no match for the tactics of an elite university with limitless financial resources and an unbreakable commitment to shrouding its use of racial preferences in secrecy. This suit was filed on November 17, 2014. Ninth months later, Harvard has yet to disclose *any* documents concerning its admissions practices. It has not produced its training materials, diversity policies, any relevant communications, names of alumni interviewers, aggregate statistical data, individualized applicant data, daily reports it uses at key junctures in the decision process, or application files—even those of SFFA members, let alone a statistically significant sample of files.

Instead, Harvard has engaged in a campaign of obfuscation and strategic delay. For example, after insisting on an extraordinarily robust protective order, which took months to negotiate, it nonetheless has repeatedly asserted privacy concerns as an excuse for not producing relevant documents. Similarly, Harvard initially sought to limit its production of admissions files based on the assertion that a statistically significant sample was sufficient for expert review. When that sample became due, however, Harvard claimed that it really meant a representative sample. When its proposed sample was revealed to be unrepresentative, Harvard claimed it was not an issue because it would produce database records that included the necessary information. When SFFA informed Harvard that these database records were the subject of a pending document request and should be produced, Harvard refused to comply based on the pendency of its request for a stay. And, just today, Harvard argues that production of databases is problematic because of overstated FERPA concerns and because SFFA's request to produce documents Harvard *has already agreed to produce* is somehow procedurally improper. At this point, Harvard has not only effectively granted itself a stay, it has demonstrated that it will go to any length to hide its race-based policies from scrutiny.

Now, the Proposed Intervenors claim that a stay is needed to protect their rights. They have made this request notwithstanding the fact that their intervention motion was denied over a month ago, that their chances of prevailing on appeal are remote, and that no discovery interest will be impaired if this case proceeds, particularly because the First Circuit is likely to expedite their appeal (as they requested). It is clear that Harvard and the Proposed Intervenors share the strategy of delaying this lawsuit at all costs, hoping that the *Fisher II* decision has some overlap with this action (which it will not), and then declaring that this case is moot without making any material changes to Harvard's policies. This strategy may seem expedient, but it is only proving that strict scrutiny is not workable in practice.

Unfortunately, Harvard and the Proposed Intervenors have learned the wrong lesson from *Fisher*. By hearing the case a second time, the Supreme Court has made clear that the individual right to equal protection is paramount and it will not permit judicial review that is "strict in theory but feeble in fact." *Fisher v. Univ. of Texas at Austin*, 133 S. Ct. 2411, 2421 (2013). Yet Harvard and the Proposed Intervenors have no regard for the rights of SFFA's members, and they seek precisely the kind of toothless scrutiny that will raise serious questions about the durability of racial preferences. In the end, the only way to preserve even limited use of racial preferences is to be utterly transparent so that applicants, parents, the public, and the courts can be sure "that the reasons for any racial classification are clearly identified and unquestionably legitimate." *Id.* at 2419. Absent judicial intervention, though, it is clear Harvard will not. If the right of SFFA's members to have their day in court is prejudiced because of delaying tactics, and if SFAA is continually frustrated in its attempts to secure basic discovery, structural protection will become constitutionally necessary. SFFA respectfully requests that this Court deny the Proposed Intervenors' request for a stay.

**ARGUMENT**

I. **THE PROPOSED INTERVENORS' NOTICE OF APPEAL DID NOT DIVEST THE DISTRICT COURT OF JURISDICTION OVER THIS CASE.**

The Proposed Intervenors argue that their notice of appeal divested this Court of jurisdiction over discovery and other pre-trial matters. Br. at 2-3. This overstates and misapplies the law. Entry of a notice of appeal "divests the District Court of jurisdiction to adjudicate any matter *relating to the appeal*." *United States v. Distasio*, 820 F.2d 20, 23 (1st Cir. 1987) (emphasis added); *see also United States v. Mala*, 7 F.3d 1058, 1060-61 (1st Cir. 1993) (noting that an appeal "divests a district court of authority to proceed with respect to any matter *touching upon, or involved in, the appeal*") (emphasis added and citations omitted).[1] The district court "retains authority to decide matters *not inconsistent with the pendency of the appeal*." *United States v. Hurley*, 63 F.3d 1, 23 (1st Cir. 1995) (emphasis added) (explaining that the purpose of the rule—*i.e.*, that entry of a notice of appeal divests the district court of jurisdiction over matters related to the appeal—is to avoid "interference and inconsistency," and suggesting that it is unwise "to extend this [rule] further than its own rationale").

Here, the Proposed Intervenors' appeal concerns their legal right to join this litigation as interested parties. Any decisions this Court may issue regarding discovery, such as motions to compel, are not "related to," do not "touch upon," and need not be "inconsistent with" the issue on appeal of the Proposed Intervenors' interest in the litigation and whether they would be adequately represented by Harvard. Thus, the Proposed Intervenors' filing of a notice of appeal

---

[1] The Proposed Intervenors overstate the general principle articulated in *United States v. Mala*, 7 F.3d 1058 (1st Cir. 1993), and *United States v. Brooks*, 145 F.3d 446 (1st Cir. 1998). In *Mala*, the First Circuit explicitly distinguished between ordinary interlocutory appeals, such as the Proposed Intervenors' appeal here, and a "final order or an interlocutory order made immediately appealable by statute," *Mala*, 7 F.3d at 1060-61, such as the one at issue in *Brooks*. See *Brooks*, 145 F.3d at 457 (noting that the case was limited to "the specific question … whether a district court, after it receives notice of a properly filed section 3731 appeal, nonetheless may swear a jury and start the trial").

does not divest this Court of jurisdiction over the ongoing litigation.[2] To hold otherwise would permit potentially all interlocutory appeals to bring district court proceedings to a halt, a result contrary to the history of the statute and rules. *See generally* 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3921.2 (3d ed. 1999). Moreover, a stay of fact discovery would be particularly inappropriate here because the Proposed Intervenors stated previously that they have limited interest in fact discovery. *See infra* at 6.

## II. A STAY WOULD CAUSE HARM TO SFFA'S MEMBERS AND WOULD NOT SERVE JUDICIAL ECONOMY.

Any delay in the litigation causes substantial harm to SFFA's members, several of whom have lost or will soon lose the opportunity to apply for admission to Harvard free from racial discrimination. Nonetheless, the Proposed Intervenors waited nearly a full month after this Court denied their intervention motion before bringing their appeal and belatedly made this request for a stay of the entire case pending their futile appeal. And while they now profess a desire to expedite their appeal, their proposed schedule hardly does so. The combination of the stay request, the slow appeal, and the request for expedition that will not achieve that result causes substantial harm to SFFA's members—civil-rights plaintiffs who continue to be denied their right to a non-discriminatory admissions process. Tellingly, the Proposed Intervenors make no serious effort to weigh "the harm the stay will cause the non-moving party" and fail even to acknowledge the harm to SFFA's members. *See Garcia v. Vera-Monroig*, 296 F.3d 13, 16-17 (1st Cir. 2002).

Moreover, the Proposed Intervenors are highly unlikely to succeed on the merits. Notwithstanding their attempt to lower the standard to a "reasonable possibility" of success on

---

[2] The Proposed Intervenors' rely extensively on *Maine v. Norton*, 148 F. Supp. 2d 81 (D. Me. 2001). With respect, *Norton* is incorrect for the reasons set forth above. Because the *Norton* court's decision went beyond the scope of the rule as articulated by the First Circuit (and did so without citing any direct authority), it is not binding or persuasive authority here.

appeal, they make no serious attempt, nor can they, to argue that this Court abused its discretion. Indeed, the Court carefully considered and correctly concluded that the Proposed Intervenors did not have a sufficiently protectable interest in the litigation and, even if they did, that such interests would be adequately represented by Harvard. *See* Op. at 16-20.

The Proposed Intervenors greatly exaggerate their interest in fact discovery. They express a concern that they "will miss out on participating as parties in the early development of the case, including the ability to participate fully in discovery, motion practice, and other advocacy on the numerous issues that might arise in the courts of pretrial preparation of the case." Br. at 8. But this is inconsistent with their prior representations that they "do not expect to need fact discovery beyond what the Parties plan" and that they "seek only the right to be present and involved in the planned fact discovery." Reply Memo in Support of Proposed Defendant-Intervenors' Motion to Intervene at 10. In any event, they articulate no specific matter on which Harvard has failed to represent their interests, much less in a way that will make it "impossible to 'unscramble the egg.'" Br. at 8. It is difficult to see how the exchange of discovery requests and responses without the involvement of the Proposed Intervenors would cause them irreparable harm.

Even if the Proposed Intervenors were to win their appeal, they would not suffer harm because they could simply catch up at that point. Given the pace of discovery thus far, it is unlikely that any discovery will take place that the Proposed Intervenors could not easily catch up on. As a result of Harvard's delay tactics, the parties remain mired in motions practice at the outset of document discovery, so depositions, third-party discovery, and expert work also remain stalled. Given the Proposed Intervenors' efforts to expedite their appeal, it is unlikely that any progress in this case would cause them serious harm.

## CONCLUSION

For the foregoing reasons, SFFA respectfully requests that the Court deny the Proposed Intervenors' motion for a stay pending appeal.

Respectfully submitted,

Dated: August 14, 2015

By: /s/ William S. Consovoy

Paul M. Sanford BBO #566318
Benjamin C. Caldwell BBO #675061 BURNS & LEVINSON LLP
One Citizens Plaza, Suite 1100
Providence, RI 02903
Tel: 617-345-3000
Fax: 617-345-3299
psanford@burnslev.com
bcaldwell@burnslev.com

William S. Consovoy
Thomas R. McCarthy
J. Michael Connolly
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
Tel: 703-243-4923
Fax: 703.243.4923
will@consovoymccarthy.com
tom@consovoymccarthy.com
mike@consovoymccarthy.com

Patrick Strawbridge
BBO #678274
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
Tel: 617-227-0548
patrick@consovoymccarthy.com

*Counsel for Plaintiff SFFA*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Patrick Strawbridge