Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 1 of 15

 Consovoy McCarthy Park PLLC

Ten Post Office Square
8th Floor South PMB #706
Boston, MA  02109
617.227.0548
www.consovoymccarthy.com

January 27, 2016

Hon. Allison D. Burroughs
U.S. District Court, District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

Re:  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
No. 1:14-cv-14176-ADB

Dear Judge Burroughs,

Plaintiff Students for Fair Admissions, Inc. ("SFFA") respectfully submits this letter in advance of the status conference scheduled for this Thursday, January 28, 2016. Currently before the Court are three main areas of dispute, which the parties have previously briefed or on which they have reached an impasse after conferring as required by L.R. 7.1(a)(2):

(1) The scope of permissible discovery pending the Supreme Court's decision in *Fisher v. University of Texas*, No. 14-981 ("*Fisher II*");

(2) Harvard's misuse of the Stipulated Protective Order Regarding Disclosure and Use of Discovery Materials entered by this Court on June 25, 2015 (the "Protective Order"); and

(3) Harvard's refusal to provide a substantial amount of information from its admissions database that appears on its face to be relevant to this litigation, and which was the subject of the Court's order of October 9, 2015 (the "October 9 Order").

As described below, Harvard appears to be avoiding compliance with the Court's orders in an effort to obstruct and delay progress in this case. SFFA respectfully requests that this Court scrutinize Harvard's unreasonable and irresponsible assertions of confidentiality, irrelevance, and privacy, and enforce (and/or amend) the Protective Order and the October 9 Order.

Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 2 of 15

Hon. Allison D. Burroughs
January 27, 2016
Page 2

## 1. Scope of Discovery Pending the *Fisher* Stay

The Supreme Court heard oral argument in *Fisher II* on December 9, 2015, and a decision is expected by late June. Regardless of the outcome of that case, the facts about how Harvard uses race in its admissions process will be central in this case. Accordingly, there is no reason to delay inevitable discovery any further.[1]

Consistent with this understanding of the limited impact of *Fisher II*, the Court stated in the October 9 Order that its inclination was "to allow discovery to proceed, but not require Harvard to produce individual student or applicant files." Pursuant to this "general guideline," SFFA submitted a proposal for discovery during the *Fisher* stay that would allow the case to move forward. *See* Doc. No. 112. That proposal included the following:

- Document Production. The parties should proceed with production of e-mail and other document discovery, and continue producing documents responsive to all pending requests. The relevant custodians and documents detailing the manner in which Harvard uses race and treats Asian-American applicants will not be affected by the decision in *Fisher II*.
- Third-Party Discovery. Third-party discovery also should move forward because it will be necessary regardless of the outcome of *Fisher II*. No party will be prejudiced by such discovery moving forward, while SFFA's members are being harmed by unnecessary delay.
- Other Discovery. In light of the anticipated document discovery, SFFA is willing to postpone party depositions until after *Fisher II* is decided. But Harvard's effort to seek depositions as to SFFA, while resisting depositions of its own officials, is clearly improper and unfair, and should be rejected.[2]

Permitting the discovery outlined above will allow the parties to advance this case while *Fisher II* is pending and limit the harm to those SFFA members whose window to apply to Harvard is closing. In contrast, Harvard's proposal to limit discovery to

---

[1] As SFFA predicted last summer when Harvard filed its motion to stay this case, Harvard has in other filings asserted that "[m]any of the specific arguments made by petitioner are unique to the admissions policy of the University of Texas at Austin," thus confirming the limited impact any decision in *Fisher II* is likely to have in this case. *See* Brief for Amicus Curiae Harvard University in Support of Respondents, *Fisher v. University of Texas at Austin*, No. 14-981, at 4 (filed Nov. 3, 2015).

[2] Any questions concerning SFFA's standing "are to be resolved much like any other factual issue," and "[t]he court must resolve any genuine disputed factual issue concerning standing, either through a pretrial evidentiary proceeding or at trial itself." *Munoz-Mendoza v. Pierce*, 711 F.2d 421, 425-26 (1st Cir. 1983). Harvard may thus raise any standing issue at the time the Court sets for dispositive motions, but there is no legal or practical basis for subjecting SFFA to a unilateral discovery burden.

Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 3 of 15

Hon. Allison D. Burroughs
January 27, 2016
Page 3

the handful of categories it has already provided would further stall this action in a manner inconsistent with the intent of the October 9 Order.

## 2. Harvard's Misuse of the Protective Order

The limited document production to date suggests that Harvard is misusing the Protective Order (a) to interfere with the ability of counsel for SFFA to share discovery materials with its client and receive proper direction and client guidance and (b) to assert indefensibly aggressive and inappropriate blanket confidentiality designations for documents it has produced. The Court may "modify this Protective Order at any time in the interests of justice and to ensure that any proceeding before this Court is fair, efficient, and consistent with the public interest." Protective Order 1. SFFA thus respectfully requests that the Court permit SFFA to bring its client within the scope of the Protective Order and require Harvard to re-designate documents consistent with the terms of the Protective Order.

*First*, pursuant to Section 6(f)(5)(vii) of the Protective Order, SFFA requests that the Court authorize SFFA to share material designated as "HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY" with one designated Client Representative, who will sign the Protective Order and thus be fully bound by its provisions. Under the current terms of the Protective Order, SFFA cannot share any information about material so labeled with its client. Because the overwhelming majority of discovery produced to date by Harvard is so labeled—including *every* entry from its admissions database, which both parties expect to form the basis for substantial expert analysis in this case—SFFA is unable to discuss critical issues and seek necessary direction from its client. Further, unlike Harvard, SFFA has no in-house attorney who can access such material under Section 6(f)(5)(ii). A minor accommodation is thus warranted.

In the hope of avoiding the need to involve the Court, SFFA requested that Harvard simply consent to the designation of a single client representative from SFFA as an authorized recipient of such information. Harvard has refused to do so on the sole basis that that "SFFA agreed to the terms of the Protective Order knowing that [its client] would not be permitted to view those materials." Harvard's Jan. 14, 2016 Letter at 2. Of course, SFFA had no reason to anticipate when entering into the Protective Order the extent to which Harvard would abuse the "HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY" designation. Harvard's misuse of confidentiality designations has thus contributed to the need to bring SFFA's client representative within the scope of the Protective Order. In any event, Section 6(f)(5)(vii) of the Order permits the parties or the Court to add additional representatives who may receive such information at any time, and the Court separately noted that the Protective Order may be modified "in the interests of justice" and to ensure that proceedings are "fair, efficient, and consistent with the public interest."

Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 4 of 15

Hon. Allison D. Burroughs
January 27, 2016
Page 4

**Second**, Harvard has improperly over-designated the confidentiality of its discovery materials. The Protective Order limits the "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY" designation to material that:

> contains or reflects sensitive personal information or information that is trade secret and/or commercially sensitive and that must be protected from disclosure. Examples of such information or material include trade secrets and other proprietary information; confidential business information and practices; financial information; sensitive personal information, including applicant and student information; and material that a Party is under a pre-existing obligation to a non-party to treat as personal or confidential.

Protective Order § 6(f)(1). Moreover, the Protective Order "does not confer blanket protections on all disclosures during discovery" and therefore "[d]esignations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth herein." *Id.* § 2(b).

Harvard nonetheless has designated *more than 80%* of its document production so far as "HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY." Examples of obvious over-designation to date include:

- Harvard has designated ▮▮▮▮▮▮▮▮▮▮▮▮▮ as "CONFIDENTIAL" (*see, e.g.*, HARV00000145, HARV00000202-205) or "HIGHLY CONFIDENTIAL -ATTORNEY'S EYES ONLY" (*see, e.g.*, HARV00000502-517).
- Harvard has, remarkably, designated ▮▮▮▮▮▮▮▮▮▮ as "HIGHLY CONFIDENTIAL- ATTORNEY'S EYES ONLY" (*see, e.g.*, HARV00000186-196).
- Harvard also has designated the entirety of ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ as "HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY"—even though its own expert's publicly-filed declaration describes the extent of the ▮▮▮▮▮▮. *See* Decl. of Justin McCrary in Opp'n to Mot. to Compel, Doc. No. 87, ¶¶ 32-36 (July 30, 2015).
- Harvard has designated approximately one-third of the deposition of its Director of Admissions as "HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY"—meaning that those contents cannot be shared with *anyone* from SFFA—and insists that the names of its admission officers be redacted from all court filings, even those whose identities and roles are revealed in Harvard's published materials. *See, e.g.*, http://news.harvard.edu/gazette/ story/2014/03/college-admits-class-of-18.

Harvard's explanation for these designations is that any information regarding Harvard's admissions process "constitutes commercially sensitive information."

Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 5 of 15

Hon. Allison D. Burroughs
January 27, 2016
Page 5

Harvard's Jan. 14, 2016 Letter at 2. This expansive theory strains credulity.[3] To take just one example, ███████████████████████—it reveals nothing about whether or how Harvard actually uses such information. In fact, much of this information should not be treated as confidential at all; at most, some of it may be adequately protected under the "CONFIDENTIAL" designation.

As noted above, Harvard's blanket designation of the vast majority of discovery as "HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY" is impeding SFFA's ability to provide its client with information upon which important strategic decisions necessarily depend. Granting SFFA's simple request to permit one client representative to come under the Order would resolve the urgency of this issue, although over-designation is subjecting SFFA to unnecessary and unreasonable burdens in reviewing and challenging these designations, and ultimately threatens to impede public access to the record in this case.[4]

Thus, SFFA respectfully requests that the Court order Harvard to re-designate the documents described above. SFFA also requests that the Court order Harvard to log each document from which it has redacted information, so that SFFA can assess whether the redactions are consistent with the Protective Order and the interest in public access.

---

[3] Indeed, Harvard has repeatedly disclosed publically the details of its admissions process. For example, Harvard's own website includes a section entitled "What We Look For," which lists over 20 admissions criteria. *See* Harvard Admissions & Financial Aid, "What We Look For," https://goo.gl/dTQtwq. That page also links to a five-part series in the *New York Times* entitled "Guidance Office: Answers from Harvard's Dean," in which Dean Fitzsimmons answered a broad range of questions about Harvard's admissions process. *See* William R. Fitzsimmons, *Guidance Office: Answers from Harvard's Dean*, N.Y. Times (Sept. 10, 2009), http://goo.gl/muFbRr; *see also, e.g.*, D. Rosenheck, Keys to the Kingdom, *Boston Magazine* (Nov. 2005) (describing Harvard's admissions process under Dean Fitzsimmons and Marlyn McGrath), *available at* http://goo.gl/aEeeOT. These examples demonstrate the weakness of Harvard's assertion that anything touching on its admissions process is appropriately designated as "HIGHLY CONFIDENTIAL-ATTORNEY'S EYES ONLY."

[4] Consistent with common practice and the Court's express concerns, SFFA expects that during dispositive briefing and/or trial redactions will be minimal. This is consistent with the need for transparency when schools use race in admissions, *Fisher v. Univ. of Texas*, 133 S. Ct. 2411, 2420-21 (2013); *Grutter v. Bollinger*, 539 U.S. 306, 394 (2003) (Kennedy, J., dissenting), and prior cases, all of which were decided with an open record as to both the mechanics and the alleged justifications for the use of race in admissions.

Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 6 of 15

Hon. Allison D. Burroughs
January 27, 2016
Page 6

### 3. Harvard's Refusal To Produce Database Information

Finally, the parties disagree on the scope of Harvard's obligation to produce database information, consistent with this Court's October 9 Order. In that Order, this Court stated that "Harvard shall produce electronic admissions data (database information) from its admissions database for the two most recent complete admissions cycles, including identification of the database fields, and including database information for transfer applicants." October 9 Order at 2. Despite that Order, Harvard continues to withhold substantial portions of those databases— including the most basic information used in the admissions process, such as █████ ████████████████████████, a description of honors or awards they have received, and extracurricular activities in which they participated.

As the Court may recall, Harvard offered to produce its admissions database in lieu of producing a statistically significant sample of application files—documents that are clearly discoverable under the Federal Rules. SFFA then agreed to withdraw its motion until it could review the database and determine the extent to which it might lessen (or perhaps obviate altogether) the need for Harvard to produce the files themselves. But after multiple rounds of letters and conversations over several months, Harvard continues to refuse to provide dozens of clearly relevant database fields. If Harvard's recalcitrance is not addressed, SFFA will have no choice but to renew immediately its request for a statistically significant sample of application over the multi-year period this litigation involves.

***First***, Harvard has improperly withheld several fields based on its assertion that these fields are not relevant. *See* Appendix A. The October 9 Order, however, did not refer to the withholding of fields on relevance grounds, and indeed courts do not look favorably upon the redaction of allegedly "irrelevant" material from relevant documents (or, in this case, admissions databases).[5]

***Second***, Harvard has unreasonably withheld numerous fields on the purported basis of vague "privacy objections"[6] despite SFFA's efforts at accommodation, including:

---

[5] *See, e.g., Sexual Minorities of Uganda v. Lively*, No. 12-30051, 2015 WL 4750931, at *4 (D. Mass. Aug. 10, 2015) ("Redaction of documents that are responsive and contain some relevant information should be limited to redactions of privileged information . . . ."); *Reyes-Santiago v. JetBlue Airways Corp.*, 932 F. Supp. 2d 291, 300 (D.P.R. 2013) (describing a party's "instances of redacting documents on 'relevance' grounds" as "a dubious practice").

[6] After repeated requests from SFFA, Harvard eventually disclosed that it was withholding more than 700 database fields based on alleged relevance and privacy grounds. After a lengthy meet-and-confer process spanning more than a month, SFFA finally obtained enough information from Harvard to limit its request for additional production to 314 fields. Harvard subsequently agreed to produce 18 of those fields, but refused to produce the 296 fields listed in the appendices to this letter.

Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 7 of 15

Hon. Allison D. Burroughs
January 27, 2016
Page 7

- SFFA is not seeking any personally identifiable information (such as names, SSNs, date of birth, home address, or email address) about Harvard applicants or students (or family members), and SFFA long ago agreed not to use any materials produced by Harvard in this case to attempt to identify individual students without a Court Order. *See* Protective Order § 2(a).
- Neither FERPA nor any other law permits Harvard to shield from discovery information that Harvard has about its own employees, high school teachers, guidance counselors, alumni interviewers, and authors of recommendation letters. (Even so, SFFA is not seeking telephone numbers, e-mail addresses, or other contact information associated with these non-student categories.)
- Any information produced from Harvard's admissions database will receive the full protections of the Protective Order.
- In the UNC litigation, the parties have worked cooperatively, and UNC has already produced information about teachers and recommenders without such redactions or protracted discovery disputes.

Notwithstanding all of these privacy accommodations, Harvard continues to claim that it can withhold on privacy grounds hundreds of otherwise relevant database fields. Many of these fields in fact raise no substantial privacy concerns, and even if they did, the agreed-upon removal of personally-identifying information and the terms of the Protective Order are more than adequate to address them. Specifically:

- Harvard has refused to produce information about its applicants, much of which on its face appears to contain information that is obviously relevant to the admissions decision—such as ███████████████████ ████████, honors received, and extracurricular activities. *See* Appendix B. Notably, *Harvard's own expert* previously emphasized to this Court that the database would suffice for SFFA's purposes because it contained information "for each extracurricular activity that an applicant reports on his or her application (up to a maximum of twelve)," including "fields identifying the type of activity (for example, School Newspaper/Journalism)" and "the applicant's role (for example, Editor-in-Chief)." *See* Decl. of Justin McCrary in Opp'n to Mot. to Compel, Doc. No. 87, ¶ 35. But Harvard continues to withhold *precisely those fields* (among many others).[7]

---

[7] Harvard has defended its failure to abide by the Court's order to produce its admissions database by claiming that this material should not be produced while *Fisher II* is pending—an argument that was rejected by the Court in its October 9 Order, which required production of this material notwithstanding the pendency of *Fisher II*. Harvard also has claimed the right to withhold this information out of concern that some of it could theoretically be used to determine the personal identity of individual applicants—a claim

Hon. Allison D. Burroughs
January 27, 2016
Page 8

- Harvard continues to withhold information regarding ███████████ ███████████—information that could not be more relevant to this case. *See* Appendix C.

- Harvard has refused to produce any database information about ██████ ████████████████████. *See* Appendix D. This information could actually be used to narrow the scope of any third-party discovery to ████████████ ████████████████████, and thus are the most pertinent witnesses with respect to the role race has in admissions decisions. *See* Compl. ¶¶ 252-61, 266-68, 277.

- Finally, Harvard still refuses to produce *any* information about its alumni interviewers—████████████████████ ████████████—which again could be used to *reduce* the number of names that Harvard must provide. *See* Appendix E. This Court already has received briefing on this issue as part of SFFA's prior Motion to Compel. *See* Doc. Nos. 64, 86, 94.

The admissions database fields identified in the Appendices all appear to contain information relevant to Harvard's admissions process and issues in this case. Certainly, Harvard has provided no explanation that justifies withholding these fields on "privacy" grounds, particularly given its removal of personally identifying information and the terms of the Protective Order itself. Harvard should be required to produce the information in the database fields listed in the appendices. At base, Harvard must fulfill its discovery obligations under the accommodation it sought in order to delay or obviate production of admissions files.

**Conclusion**

Regrettably, Harvard's dilatory tactics have continued for months and have impeded meaningful progress in this case. Thus, in addition to the specific relief described above, SFFA respectfully requests regular status conferences and close judicial supervision of the discovery process. Furthermore, SFFA respectfully requests that this Court issue a new scheduling order, resetting all deadlines in the initial scheduling order, following the resolution of *Fisher II*.

Respectfully submitted,

/s/ Patrick Strawbridge

that is meritless in light of SFFA's agreement not to make such use of materials produced in this action without an order from the Court. *See* Protective Order § 2(a).

Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 9 of 15

Hon. Allison D. Burroughs
January 27, 2016
Page 9

cc:     William S. Consovoy, Esq.
        Paul M. Sanford, Esq.
        Seth P. Waxman, Esq.
        Felicia Ellsworth, Esq.

Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 10 of 15

Hon. Allison D. Burroughs
January 27, 2016
Page 10

**APPENDIX A: DATABASE FIELDS WITHHELD BASED ON "RELEVANCE"**



Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 11 of 15

Hon. Allison D. Burroughs
January 27, 2016
Page 11

**APPENDIX B:  DATABASE FIELDS ABOUT INDIVIDUAL APPLICANTS
WITHHELD ON ALLEGED PRIVACY GROUNDS**



Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 12 of 15

**APPENDIX C:  DATABASE FIELDS WITHHELD RELATING** ███████████
███████████ **WITHHELD ON ALLEGED PRIVACY GROUNDS**



Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 13 of 15

Hon. Allison D. Burroughs
January 27, 2016
Page 13

## APPENDIX D:  DATABASE FIELDS RELATED TO ██████████████████ ████████████████ WITHHELD ON ALLEGED PRIVACY GROUNDS



Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 14 of 15

## APPENDIX E:  DATABASE FIELDS RELATED TO ALUMNI INTERVIEWERS WITHHELD ON ALLEGED PRIVACY GROUNDS



Case 1:14-cv-14176-ADB   Document 118   Filed 01/27/16   Page 15 of 15

Hon. Allison D. Burroughs
January 27, 2016
Page 15



4835-7522-1805.1