WILMERHALE

**Felicia H. Ellsworth**

+1 617 526 6687 (t)
+1 617 526 5000 (f)
felicia.ellsworth@wilmerhale.com

April 15, 2016

**By ECF**

Honorable Allison D. Burroughs
U.S. District Court, District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re:   *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation)*, No. 1:14-cv-14176

Dear Judge Burroughs:

Pursuant to the Court's guidance at the January 28, 2016 status conference that Harvard's discovery of SFFA should proceed during the pendency of the partial stay, as memorialized in the March 11, 2016 Order (Dkt. 146), Defendant President and Fellows of Harvard College ("Harvard") respectfully requests pursuant to Federal Rule of Civil Procedure 37 that this Court compel Students for Fair Admissions, Inc. ("SFFA") to (1) produce certain categories of documents responsive to Harvard's requests and relevant to the issue of standing, and (2) supplement its interrogatory responses.  Pursuant to Federal Rule of Civil Procedure 37(a)(1) and Local Rules 7.1(a)(2) and 37.1(a), Harvard certifies that it met and conferred with SFFA on March 7, 2016 and attempted in good faith to narrow the scope of documents and information requested in Harvard's First Set of Requests for Production ("RFPs") and First Set of Interrogatories ("Interrogatories").[1]  Harvard submits this letter rather than a motion pursuant to the Court's stated preference to resolve disputes of this nature without formal motion practice.

To assess SFFA's alleged standing, which depends on whether SFFA is in fact a *bona fide* membership organization, Harvard has requested basic documents and information relating to SFFA's operations, including the recruitment and selection of members, the sources of its funding, and how members participate in the organization.  This information is clearly discoverable.  Fed. R. Civ. P. 26(b)(1).  However, SFFA's production to date is woefully insufficient.  SFFA has produced 118 documents, nearly all of which are available to anyone with access to the Internet, including screenshots of its own websites and public court filings.  Of the 14 documents produced by SFFA that are not publicly available, only a handful relate to the actual operation of the organization, which is the relevant inquiry for standing purposes.  To the extent that SFFA is a *bona fide* organization maintaining records consistent with its not-for-profit status, its failure to produce such documents is unjustifiable.

---

[1] Harvard's February 26, 2016 letter to SFFA requesting a meet and confer to discuss its concerns with SFFA's document production and responses to Harvard's discovery requests is attached as Exhibit 1.  SFFA's April 1, 2016 response is attached as Exhibit 2.

Honorable Allison D. Burroughs
April 15, 2016
Page 2

SFFA insists that the First Amendment shields from discovery certain of the information requested by Harvard, including the identities of its members, its interactions with those members, and the extent to which its members finance the organization's activities. But SFFA cannot have it both ways, on the one hand using its organizational status to pursue litigation its members would not otherwise have initiated on their own, and on the other insisting that its organizational status insulates from discovery the documents and information that would allow Harvard to challenge its standing to sue in the first place.

Nearly three months have passed since the Court ordered discovery on SFFA's standing to proceed. In light of SFFA's refusal to provide the requested documents and information, Harvard seeks the Court's assistance so that it can make meaningful progress on its analysis of SFFA's alleged standing during the partial stay and before a decision in *Fisher II*. Harvard respectfully requests that the Court grant Harvard's request to compel the production of documents and information responsive to RFP Nos. 7, 8(b)-(c), 8(f), 10, 11, 12, 13, and 15 (Exhibit 3), and Interrogatory No. 6 (Exhibit 4).[2] Harvard looks forward to resolution of this matter at the upcoming status conference scheduled for April 25, 2016, so that discovery on Harvard's standing inquiry may proceed forthwith.

## I.      Harvard Is Entitled To Discovery Related To SFFA's Standing

SFFA's standing to bring this suit on behalf of its members is a "threshold jurisdictional issue" that must be resolved in the first instance. Dkt. 128 at 7 (Transcript of Status Conference). Harvard is entitled to discovery in response to requests that are specifically targeted towards standing, are limited and discrete in nature, and do not impose any undue burden on SFFA. Fed. R. Civ. P. 26(b)(1) (the scope of discovery considers "the importance of the issues at stake in the action, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").[3]

SFFA bears the burden of establishing that it is a *bona fide* membership organization that had standing at the time it filed the Complaint. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 386 n.3 (1st Cir. 2000). To have standing as a membership organization, SFFA must establish that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to [its] purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

---

[2] Harvard reserves the right to address at a later time SFFA's production, or lack thereof, of additional documents and information responsive to Harvard's RFPs and Interrogatories not raised in this letter.

[3] SFFA bases several of its objections to Harvard's requests on a sense of misplaced confidence in its ability to defeat Harvard's standing challenge. This is of course irrelevant to Harvard's entitlement under the Federal Rules to obtain the material necessary to evaluate SFFA's standing, or lack thereof. *4 MVR, LLC v. Warren W. Hill. Const. Co.*, No. 12-cv-10674 (Dkt. 200), 2015 WL 3932380, at *2 (D. Mass. June 26, 2015) (Cabell, M.J.) ("[T]he Court assesses the relevance of particular documents based upon their relevance to the claims and defenses . . . without deciding the merits of those claims and defenses."), *aff'd*, Dkt. 223 (D. Mass. Oct. 1, 2015) (Casper, J.).

Honorable Allison D. Burroughs
April 15, 2016
Page 3

The fundamental premise of associational standing is that an association "and its members are in every practical sense identical." *NAACP v. Alabama*, 357 U.S. 449, 459-60 (1958); *see, e.g.*, *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 86 F. Supp. 2d 912, 918 (D. Minn. 2000) ("[T]he constituents of an organization must exercise a certain measure of control over the organization."); *Health Research Grp. v. Kennedy*, 82 F.R.D. 21, 26-27 (D.D.C. 1979) ("Members . . . normally exercise a substantial measure of power or control over an organization which, in typical circumstances, they themselves have created. [. . . .]  Absent this element of control, there is simply no assurance that the party seeking judicial review represents the injured party, and not merely a well-informed point of view.").  Thus, an association can have standing to assert its members' interests in court only if it meaningfully represents them.  *See* 13A Fed. Prac. & Proc. Juris. § 3531.9.5 ("The familiar concept of representation underlies the rule that an organization can borrow a member's standing." (citing *Hunt*, 432 U.S. at 345; *Warth* v. *Seldin*, 422 U.S. 490, 511 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 739 (1972))).

Numerous cases have identified "indicia of membership" to inform *Hunt*'s associational standing analysis, including whether members play any role in financing or guiding the association's activities and whether members select any of the organization's leaders.  *See, e.g.*, *Hunt*, 432 U.S. at 344; *Fund Democracy, LLC v. Securities and Exchange Comm'n*, 278 F.3d 21, 26 (D.C. Cir. 2002) (absent showing that purported members steered group's activities or provided funding, group "may have reasons for instituting suit other than to assert [members'] rights"); *Am. Legal Found. v. FCC*, 808 F.2d 84, 90 (D.C. Cir. 1987) (organization's purported members did not "play any role in selecting [its] leadership, guiding [its] activities, or financing those activities"); *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Wilkey*, No. 00-CV-1686, 2007 WL 951559, at *6 (N.D.N.Y. Mar. 27, 2007) (record lacked a showing of "any *bona fide* members"); *Grp. Health Plan, Inc.*, 86 F. Supp. 2d at 918 (no associational standing where no "indicia of membership" existed).  Information about SFFA's membership, its sources of funding, and the degree to which its members participate in the organization is critical to assessing SFFA's ability to pursue this suit.

## A.    Discovery Relating To SFFA's Membership

SFFA should be compelled to produce documents and information responsive to Harvard's RFP Nos. 7 and 11[4] and Interrogatory No. 6, all of which seek discovery relating to SFFA's membership.

An organization like SFFA purports to represent all of its members, not only a select few. However, to date, SFFA has provided the names of only a handful of its members.  Harvard's RFP No. 7 and Interrogatory No. 6 seek documents and information sufficient to identify all of

---

[4] In its April 1, 2016 letter (Exhibit 2), SFFA indicated that it might be willing to produce some documents (of an unspecified nature) responsive to Harvard's RFP Nos. 10, 11, and 12 as "part of a comprehensive resolution of discovery disputes regarding SFFA's standing."  But SFFA cannot withhold documents and information responsive to certain discovery requests simply because disputes remain regarding other discovery requests, and SFFA should be ordered to produce any documents responsive to RFP Nos. 10, 11, and 12 immediately.

Honorable Allison D. Burroughs
April 15, 2016
Page 4

SFFA's members, not the few cherry-picked by SFFA.  Harvard is entitled to information sufficient to assess whether SFFA's members truly possess the "indicia of membership" required for standing, or whether SFFA "manufactured 'members' for the purposes of this lawsuit after the fact."  *See Washington Legal Foundation v. Leavitt*, 477 F. Supp. 2d 202, 211 (D.D.C. 2007) (organization had no standing where it "first determined to bring this suit and only then identified [named members] as persons on whose behalf it would litigate").  To do this, Harvard must be allowed to probe the extent to which typical SFFA members—not just those identified by SFFA for purposes of this litigation—participate in and fund SFFA's activities.[5]

RFP No. 11 similarly seeks documents relating to SFFA's recruitment and selection of members. To date, SFFA's production has been insufficient, providing only screenshots of its public and social media websites, examples of publicity on the issue of diversity and admissions, and general descriptions of meetings with Asian-American groups.  Blatantly missing from this production are documents relating to SFFA's recruitment and selection of members, such as materials distributed in advance of and during recruitment meetings around the country, correspondence with prospective members, internal (and public) policy documents that set forth any requirements necessary to become a member, and correspondence relating to the identification and selection of the members described in SFFA's Complaint.

Independent investigation has revealed that such documents appear to exist, and are being improperly withheld.  For example, it appears that Mr. Blum circulated "An Open Letter to All Asians Who Are Concerned About the Quotas at Harvard University," dated June 3, 2015, seeking additional members for SFFA.  *See Call for Action: Please Join SFFA to Support Lawsuit Against Harvard*, Silicon Valley Chinese Association (June 3, 2015), http://svca.me/?q=node/130 (last accessed April 8, 2016) (Exhibit 5).  Similarly, Mr. Blum has described in news articles the process of conceiving this lawsuit, then recruiting (and selecting and rejecting) members.[6]  Despite these public references, SFFA has not yet produced any recruitment letters nor any documents describing details of its recruitment process.

### B.    Discovery Relating To Members' Participation In The Organization

RFP Nos. 8(c), 8(f), 13, and 15 seek discovery regarding the degree to which SFFA's members participate in and guide SFFA's activities, including documents relating to the participation in the litigation of the named "Applicant," "Future Applicants," and "Parents" referenced in the Complaint, and communications between these persons and SFFA, its directors, officers,

---

[5] SFFA has raised concerns about the confidentiality of such information, but Harvard has no objection to the documents and information identifying specific SFFA members being designated as Highly Confidential—Attorneys' Eyes Only under the Protective Order, which should alleviate any confidentiality concerns that may exist.
[6] Mr. Blum has discussed SFFA's recruitment process with a number of news outlets.  *See* Annie Lowrey, *The Brutal Application Process to (Sue) Harvard*, Daily Intelligencer (Dec. 21, 2014, 8:15 pm), http://nymag.com/daily/intelligencer/2014/12/brutal-application-process-to-sue-harvard.html; Theodore R. Delwiche, *'Harvard Not Fair' Seeks Rejected Applicants for Race-Based Affirmative Action Suit*, The Harvard Crimson (Apr. 24, 2014), http://www.thecrimson.com/article/2014/4/24/race-admissions-lawsuit-website/?page=1; Julianne Hing, *Wanted: Disgruntled Asian Americans to Attack Affirmative Action*, Color Lines (Apr. 25, 2014), http://www.colorlines.com/articles/wanted-disgruntled-asian-americans-attack-affirmative-action.

Honorable Allison D. Burroughs
April 15, 2016
Page 5

members, and other representatives.  This discovery is directly relevant and essential to understanding whether SFFA is a *bona fide* membership organization.  *See Fund Democracy*, 278 F.3d at 26 ("[B]ecause Fund Democracy's course is steered entirely by [its CEO], and Fund Democracy does not claim to receive funding from its purported members, it may have reasons for instituting suit other than to assert the rights of these alleged supporters.").

To date, SFFA has produced only the scant details stated in its publicly available Annual Report, which reveals that members were first given the ability to nominate and elect a single board member in June 2015 (eight months after SFFA initiated this litigation), and that SFFA intends to provide regular updates to members.  To properly evaluate SFFA's standing as a *bona fide* membership organization, Harvard is entitled to far more information on the extent of member participation—including documents showing member participation in and attendance at, or absence from, meetings, documents showing whether members provide input into how the organization carries out its mission, and all other documents responsive to Harvard's RFPs.

### C.     Discovery Relating To SFFA's Sources Of Funding

RFP Nos. 8(b), 10, and 12 ask for documents showing SFFA's sources of funding and its communications with donors.  Whether an organization's activities are funded by its members or by other sources is relevant to whether the organization represents its members "in a very real sense."  *See Hunt*, 432 U.S. at 344-45 (members "alone finance [the organization's] activities, including the costs of this lawsuit").

SFFA has only provided documents indicating that the organization was initially funded by the Project on Fair Representation, and that beginning on July 30, 2015 (nine months after SFFA initiated this litigation), members were required to pay a $10 fee to join SFFA.  At a minimum, Harvard is entitled to documents sufficient to show SFFA's past and projected sources of income and the percentage of contribution of each source of funding, such as the percentage of funding contributed by members generally and the percentage contributed by the Project on Fair Representation.  SFFA's argument that it would be unduly burdensome to produce such documents is unavailing; founded on July 29, 2014, SFFA has less than two years' worth of data to collect and produce.

Harvard is similarly entitled to communications among SFFA and its donors to assess the extent to which the donors are funding or participating in the litigation.  And in light of the Court's order that the parties need not review and produce Electronically Stored Information ("ESI") at this time, it is certainly not overly burdensome for SFFA to collect any general fundraising solicitations, or other similar communications to its donors, from its inception in July 2014 to the present.

## II.     Associational Privilege Does Not Preclude Harvard's Requested Discovery

SFFA has objected to Harvard's discovery requests on the ground that associational privilege under the First Amendment protects this information from disclosure.  SFFA's assertion of

Honorable Allison D. Burroughs
April 15, 2016
Page 6

associational privilege does not, however, prevent discovery of the requested documents and information. Associational privilege is "not absolute"; rather, the harm from disclosure can be outweighed by the need for disclosure. *See The Ohio Org. Collaborative v. Husted*, No. 2:15-cv-01802, 2015 WL 7008530, at *3 (S.D. Ohio Nov. 12, 2015) ("The associational privilege is not absolute, [] and courts confronting the issue must balance one litigant's interest in discovery against the burden on another litigant's constitutional right of association."); *see also United States v. Comley*, 890 F.2d 539, 544-45 (1st Cir. 1989).

Under the First Circuit's burden-shifting framework in *United States v. Comley*, SFFA must first make a "*prima facie* showing" that the requested discovery will infringe upon its members' First Amendment right to freedom of association. 890 F.2d at 544. This "typically" requires a showing that discovery will lead to "harassment of current members, a decline in new members, or other chilling of associational rights." *Id.*; *see also NAACP*, 357 U.S. at 462-63 (finding likelihood of restraint on First Amendment where NAACP made "uncontroverted showing" that members had, as a result of past disclosures, suffered from "economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility"). If the party claiming the associational privilege makes a *prima facie* showing of First Amendment harm, the burden shifts to the party seeking disclosure to show "a compelling need" for the information and that there is "no significantly less restrictive alternative" for obtaining it. *Comley*, 890 F.2d at 544; *see also NAACP*, 357 U.S. at 462-63.

## A.    SFFA Cannot Make A Prima Facie Showing Of A Chilling Effect

SFFA has not made any *prima facie* showing that a disclosure in this litigation—which it initiated—will infringe its members' First Amendment associational freedom in any way. All it offers is speculation and rhetoric, claiming that discovery relating to SFFA's members "would clearly have a chilling effect" because members "would reasonably . . . fear retaliation when they or their family members seek to apply to Harvard in the future." Letter from Strawbridge to Ellsworth at 3 (Apr. 1, 2016) (Exhibit 2). Such boilerplate allegations "fall short of the solid, uncontroverted evidence of actual harassment that has existed in those cases where the Supreme Court has found violations of the right to freedom of association." *Comley*, 890 F.2d at 544.

Moreover, this purported concern is unfounded. Documents containing member information can be designated Highly Confidential—Attorneys' Eyes Only, which would by definition prevent anyone at Harvard outside of the Office of the General Counsel from learning members' identities. *See Nat'l Org. for Marriage v. McKee*, 723 F. Supp. 2d 236, 241 (D. Me. 2010) (confidentiality order would prevent chilling effect on willingness of donors to donate); *Marshall v. Bramer*, 828 F.2d 355, 360 (6th Cir. 1987) (threat to First Amendment rights was "inconsequential" where protective order limited disclosure of membership lists to "private disclosure for a limited use"). Without the requisite showing of harm, SFFA cannot prevent Harvard from obtaining information central to the question of SFFA's standing. *See Sherwin-Williams Co. v. Spitzer*, No. 1:04CV185, 2005 WL 2128938, at *5 (N.D.N.Y. Aug. 25, 2005) (associational privilege "cannot be used to circumvent general and legitimate discovery where the specter of intimidation and reprisal is not present").

Honorable Allison D. Burroughs
April 15, 2016
Page 7


As importantly, to the extent that SFFA seeks to premise its showing of infringement on the possibility that information about its members will be disclosed in the litigation, such a contention is without merit.  SFFA is an organization formed for the specific purpose of pursuing litigation.  Its members knew as much when they joined, and should reasonably have expected that their identities would be disclosed during litigation brought by SFFA; accordingly, SFFA cannot now use the associational privilege as a shield to protect itself and its members from discovery.[7]  Other courts have recognized that the potential that an organization's members will be drawn into litigation that the organization itself pursued does not satisfy the required *prima facie* showing.  *See, e.g.*, *Nat'l Org. for Marriage*, 723 F. Supp. 2d at 244 (an organization does not satisfy the *prima facie* showing where "the claimed chilling effect is the prospect of being drawn into litigation commenced by the organizations to which the donors contributed"); *Nat'l Org. for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 275 (D. Conn. 1980) ("NOW has assiduously pursued this action . . . .  Fairness dictates that NOW, as a plaintiff, cannot realistically hope to pursue this suit in a risk-free atmosphere."); *Sherwin-Williams Co.*, 2005 WL 2128938, at *5 (associational privilege did not bar discovery of plaintiff organization's documents).

### B.      Harvard's Interest In The Discovery Outweighs Any Purported Harm To SFFA

Even if SFFA were able to make the requisite *prima facie* showing of a chilling effect, Harvard's compelling interest in obtaining the material requested and the lack of any alternative means to obtain the information outweighs any potential harm to SFFA's or its members' associational freedom.

The information about SFFA's finances, donors, and membership at issue in the disputed RFPs and Interrogatories relates directly to Harvard's standing inquiry, namely whether SFFA is a *bona fide* membership organization under *Hunt*.  Thus, unlike other cases where courts have found that the harm of disclosure outweighed a tangential interest in the information, *see Sexual Minorities of Uganda v. Lively*, No. 3:12-30051, 2015 WL 4750931, at *4 (D. Mass. Aug. 10, 2015), here, the information sought is highly relevant to the threshold issue of standing.  *Cf. Natural Resources Defense Council, Inc. v. Illinois Power Resources, LLC*, No. 13-cv-1181, 2015 WL 4910204, at *4 (C.D. Ill. Aug. 17, 2015) (holding that associational privilege was outweighed by need for disclosure of communications between standing witnesses and defendant, where communications were highly relevant to standing witnesses' credibility and an "essential element" of plaintiff's case).

For example, obtaining further information about SFFA's members is necessary to assess whether members actually play any role in guiding the organization's activities or determining its leadership.  SFFA claims that it has more than 20,000 members, but to date, has only

---

[7] SFFA's stated "mission is to support and participate in litigation" seeking to eliminate the consideration of race in university admissions.  *See* https://studentsforfairadmissions.org/about/ (last visited March 20, 2016).

Honorable Allison D. Burroughs
April 15, 2016
Page 8

provided basic identifying information about fifteen members.  Harvard is entitled to learn more about SFFA's members—beyond those who have been handpicked by SFFA—in order to probe what level of involvement, if any, average members have in the organization.

Similarly, Harvard requires more information about SFFA's donors and finances to assess whether SFFA's members exert any control over the organization such that it meaningfully represents them.  *Hunt*, 432 U.S. at 344; *see also Camel Hair & Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 11 (1st Cir. 1986) (explaining the Supreme Court's view of associational standing as a device for people who "pool their interests, activities and capital under a name and form that will identify collective interests [and] vindicate the interests of all").

Harvard's discovery requests go to the very heart of the standing inquiry that is a prerequisite for SFFA to proceed in this litigation.  Weighed against this compelling need is SFFA's conclusory claim of a chilling effect on its members' right of association, a concern that is eliminated by the protective order that both parties have assiduously observed.  Under these circumstances, the disclosure of the requested documents and information is entirely justified.

Accordingly, Harvard respectfully requests that the Court issue an order compelling the timely production of documents and information responsive to the following RFPs and Interrogatories:

- RFP No. 7
- RFP No. 8(b), 8(c), and 8(f)
- RFP No. 10
- RFP No. 11
- RFP No. 12
- RFP No. 13
- RFP No. 15
- Interrogatory No. 6

*       *       *

Respectfully yours,


*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth

cc:  Counsel of record (via ECF)