1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3


4    STUDENTS FOR FAIR ADMISSIONS,        )
     INC.,                                )
5                         Plaintiff,      )
                                          )
6                                         )
     vs.                                  )  CA No. 14-14176-ADB
7                                         )
                                          )
8    PRESIDENT AND FELLOWS OF             )
     HARVARD COLLEGE, et al,              )
9                         Defendants.     )


10


11   BEFORE:   THE HONORABLE JUDGE ALLISON D. BURROUGHS


12


13                        STATUS CONFERENCE


14


15


16            John Joseph Moakley United States Courthouse
                          Courtroom No. 17
17                        One Courthouse Way
                          Boston, MA 02210
18                    Friday, April 29, 2016
                           2:45 p.m.

19


20


21
                      Cheryl Dahlstrom, RMR, CRR
22                      Official Court Reporter
             John Joseph Moakley United States Courthouse
23                 One Courthouse Way, Room 3510
                          Boston, MA 02210
24           Mechanical Steno - Transcript by Computer


25

1    APPEARANCES:

2    ON BEHALF OF THE PLAINTIFF:

3         CONSOVOY, McCARTHY, PARK PLLC
          By:  William S. Consovoy, Esq.
4         3033 Wilson Boulevard
          Arlington, Virginia 22201
5
          CONSOVOY, McCARTHY, PARK PLLC
6         By:  Michael H. Park, Esq.
          Three Columbus Circle
7         New York, New York 10024

8         BURNS & LEVINSON LLP
          By:  Paul M. Sanford, Esq.
9         One Citizens Plaza
          Providence, Rhode Island 02903
10
          CONSOVOY, McCARTHY, PARK PLLC
11        By:  Patrick Strawbridge, Esq.
          Ten Post Office Square
12        Boston, Massachusetts 02109

13   ON BEHALF OF THE DEFENDANTS:

14        WILMER CUTLER PICKERING HALE and DORR LLP
          By:  Felicia H. Ellsworth, Esq.
15        60 State Street
          Boston, Massachusetts 02109
16
     Also Present:  Ara Gershengorn, Esq., Harvard Office
17                   Of General Counsel

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2               THE CLERK:  This is Civil Action 14CV14176, Students

3     For Fair Admissions v. President and Fellows of Harvard

4     College.  Will counsel identify themselves for the record.

5               MR. CONSOVOY:  Good afternoon, your Honor.  William

6     Consovoy, on behalf of Students For Fair Admissions, along with

7     Paul Strawbridge, Paul Sanford, and Michael Park.

8               MS. ELLSWORTH:  Good afternoon, your Honor.  Felicia

9     Ellsworth on behalf of President and Fellows of Harvard

10:16 10    College.  And with me is Ara Gershengorn, Office of General

11    Counsel.

12              THE COURT:  Okay.  I have the letters in front of me

13    over the discovery dispute, and we'll get to that.  Is there

14    anything else we need to cover today just so that I know what

15    we're doing?

16              MR. CONSOVOY:  Your Honor, we'd like to cover

17    post-*Fisher*.  I think we're getting close now, and we think

18    today would be a good day to make a plan for that given we may

19    -- we'd like to think that the next thing we'll do is come back

10:17 20    and see you after *Fisher*, so we'd like to talk about that at

21    the appropriate opportunity.

22              THE COURT:  Okay.  It is one of those decisions that's

23    not apt to be for/for.  I guess that cannot possibly be

24    for/for.

25              So at this judicial conference that I was just at,

1   they had -- Erwin Chemerinsky and Paul Clement gave, like, a

2   Supreme Court update.  And they both gave a lot of predictions

3   about a lot of cases and how they thought they would turn out

4   and what it would mean for us all going forward.  And when they

5   got to *Fisher*, which they did cover, they basically said it's

6   going -- there's seven justices participating.  We know there's

7   three on this side and three on this side.  And it's really a

8   jump ball what Kennedy is going to do.  We'll all have to wait

9   and see.  So, happily, I did not travel to South Carolina

10:19 10   specifically for that analysis.  Ungratifying.

11          So we can talk about post-*Fisher*.  I mean -- again,

12   I'm happy to hear you on that.  It would seem to make the most

13   sense to me, is that *Fisher* comes out.  We read it and then we

14   get together a week later.  I'm not -- I think it's difficult

15   to actually make a plan post-*Fisher* when we -- sure.

16          MR. CONSOVOY:  We agree.  Our proposal was a

17   procedural one, which would be to -- the parties would submit

18   letters to the Court a week after -- simultaneous as to what

19   they think *Fisher* means to the case and what the next steps

10:20 20   should be so that we can come in when you're ready to see us,

21   ready to make some decisions and, from our view, hopefully,

22   move forward.  And we'll see whether Harvard has a different

23   view.

24          THE COURT:  That seems reasonable to me.

25          MS. ELLSWORTH:  I certainly agree that we can't

1    comprehend anything before *Fisher* comes down.  We don't have a

2    problem with the idea of submitting letters and then setting a

3    time to come in and talk about what makes sense assuming that

4    *Fisher* doesn't do something that even changes that, but I find

5    that hard to imagine.

6         THE COURT:  I'm happy to do that.  I start 13 weeks of

7    trial on Monday, two cases, all with out-of-town lawyers.  So I

8    agreed to try the case 10 to 4 so that people didn't have to be

9    away from their families for any longer than necessary.  You

10:21 10    know, we can definitely have a conference.  It's just the

11    scheduling is going to be a little Higley Pigley.

12         So why don't we do that.  How much time do you want

13    after *Fisher* to submit your letters?

14         MR. CONSOVOY:  Seven days will be sufficient for us.

15         MS. ELLSWORTH:  I mean, I might ask for a little bit

16    longer.  I don't know.  It depends on when it comes out and --

17    maybe ten days just to give everyone time to actually digest

18    it.  I don't anticipate it will be a quick read.

19         MR. CONSOVOY:  No objection here.

10:22 20         THE COURT:  Why don't we just take a couple of weeks.

21    I mean, my schedule is crazy, and it's -- we may as well take

22    some time to do it.  If it was at all possible for you to talk

23    and maybe file one letter instead of two, that would be nice.

24    But if you need to file the two letters, I can -- it's

25    obviously fine.

1          So why don't you take two weeks, and then let me know

2     in those letters how much time you would like before we meet

3     for a conference.  If you wanted a week after the letters,

4     that's fine.  If you want a couple of weeks after the letters,

5     that's fine, too.  But why don't you put in the letters what

6     you'd like for time, okay?

7          MR. CONSOVOY:  Yes, your Honor.

8          THE COURT:  As I say, it's going to be early; it's

9     going to be later; it's going to be lunch.  So -- at least till

10:25 10     July.

11          All right.  So despite the fact that SFFA filed a

12     single-spaced, 14-page document this morning, I've read all the

13     paperwork that's come in.  I have even read the cases.  And I

14     have to say, Miss Ellsworth, that I think that SFFA has the

15     better part of this argument.  They have an organization with

16     membership.  It's not a nonmembership organization.

17          I'm happy to go through the requests sort of one at a

18     time and discuss them, but I think that your request is overly

19     broad given the legalities underlying associational standing.

10:26 20          MS. ELLSWORTH:  Your Honor, I guess I'd like to

21     address the idea of a membership organization first.  I mean,

22     certainly they call themselves a membership organization.  I

23     think the point of the standing test that we'd like to have

24     discovery to determine whether we have an argument here is

25     whether, in fact, they are a traditional membership

1    organization, to use the language of Mr. Consovoy's letter from

2    this morning.  Certainly a DCF membership is what has been

3    considered by many courts as important to determine whether an

4    organization actually really is standing in the shoes of its

5    members.  I don't think we have sufficient information to know

6    that that's the case or not the case yet.  We have very, very

7    limited information that SFFA has produced today.

8            THE COURT:  Again, we can go through these one at a

9    time.  I think that it's fair to require them, if they haven't

10   already, to give you the number of members that they have.  But

11   my reading of the case law at least -- and I'm happy to have

12   you point me to something else if you want -- but that, if they

13   even have at least one member that has -- would have standing

14   in his own right, that that's sufficient.

15           So I think -- you've given them 15 names, right?  I

16   think you're entitled to take a look at those 15 people; but if

17   some or all of those people satisfy the *Hunt* criteria, I don't

18   think you're entitled to get to the other 19,985 people or

19   whatever it is they say they have.  I do think you're entitled

20   to the number because you're entitled to know if there are

21   actual members and sort of to what extent.  But I -- if it's a

22   membership organization, it has members, I think it sort of

23   ends the inquiry.

24           MS. ELLSWORTH:  I guess I would respectfully disagree.

25           THE COURT:  That's fine.

1          MS. ELLSWORTH:  The three prongs of the standard, the

2     first is, yes, you have to have members who would have standing

3     in their own right.  We're not challenging that right now.  We

4     have been given names of individuals who do appear to have

5     whatever criteria they would need.

6          It's the second *Hunt* factor, which is the germaneness

7     factor, as to whether or not -- and germaneness is sort of an

8     umbrella under which this question of whether it is, in fact, a

9     bona fide membership organization falls.  So whether or not

10:31 10     they actually have meetings with their members, whether member

11     input is taken into account in determining the direction of the

12     organization.  We've cited cases in the D.C. Circuit and others

13     that indicate where, in fact, an organization conceived of an

14     idea and then went out and found members to pursue that idea,

15     that's not a bona fide membership organization entitled to

16     pursue suit.  And that is the prong of the *Hunt* factors that we

17     are focusing on, at least in this dispute, and trying to find

18     out, you know, what information is there.

19          I guess the other thing I would note is our requests

10:32 20     are -- there are several requests -- one related to the actual

21     list of members.  And we asked for names, when they joined,

22     address information.  There are many other requests that relate

23     to other documents that are not really addressed as thoroughly

24     as Mr. Consovoy's letter that we think don't implicate some of

25     the First Amendment arguments that are being made, and we don't

1   agree that those arguments carry the day in the end after the

2   entire analysis is undertaken.

3         But, for example, communications with members, we know

4   of communications that exist that have not been produced to us.

5   We provide an example as an exhibit to our letter.

6   Communications with members both as recruitment as well as

7   communications once they are members.

8         THE COURT:  But I just -- I don't understand how the

9   communications or the recruitment efforts are relevant to the

10:33 10  issue of associational standing.

11        MS. ELLSWORTH:  They're relevant to a -- particularly

12  communications from members to SFFA are relevant to the

13  question of whether this is, in fact, a member-driven

14  organization.

15        THE COURT:  I think that when you have actual members

16  -- so the *Hunt* factors are members that would have standing to

17  sue in their own right.  The interest it seeks to protect are

18  germane to the organization's purpose.  I think that the

19  organization's purpose is set forth in their 501(c)(3) filings

10:34 20  and that if people join the -- it's like the ACLU, right?  If

21  you were suing the ACLU -- I mean, they had set forth the

22  principles that they are interested in advancing.  And then,

23  you know, I don't think you would be entitled to get to who

24  their individual membership was.  The purposes are set forth in

25  the organizational charter, so to speak, and that -- I don't

1     think that the case law affords you the right to challenge what

2     they've set forth as their purpose.

3          MS. ELLSWORTH:  It's not the purpose that we would

4     seek to challenge.  It's whether the purpose as a member is

5     member driven.  It's whether the members, in fact, participate

6     at all in the direction of the organization.

7          THE COURT:  I don't think it has to be -- I think that

8     that -- you're talking about indicia of membership, and I think

9     that goes to organizations that don't have actual members.

10:35 10          MS. ELLSWORTH:  But, your Honor, I don't think it's

11    sufficient to say we have members if those are not traditional

12    members as has been recognized in cases in which associational

13    standing is allowed.  I mean, the idea of associational

14    standing is that you're standing in the shoes of the members.

15    You represent exactly their interests, not that an organization

16    has some broader interests and then finds a member with a

17    specific interest that it then uses to pursue that interest.

18    We do think it's an important distinction and one that we're

19    entitled to test on standing.

10:36 20          THE COURT:  It's just not the way I read the cases.  I

21    completely understand what you're saying, but it seems like

22    those sort -- that sort of testing goes to an organization

23    that's sort of more of an advocacy umbrella sort of

24    organization.  It doesn't actually have members at all.

25          Now, if you go through the 15 people that they've

1    given you and it turns out that those people don't satisfy the

2    *Hunt* criteria, then we're in a different posture.  Maybe they

3    come up with another 15 or they decide they're not really a

4    membership organization.  Then we look at it a different way.

5          But I think that under the *Hunt* factors we're -- which

6    is, by the way, why I would let you have the total number of

7    members, right?  So if you get the number of members, you're

8    allowed to look hard at some number of them.  They say 15.  I

9    think that's fine.  The interest it seeks is germane to the

10:37 10   organization's purpose, which is set forth in their 501(c)(3)

11   information.  And these claims don't seem to require the

12   participation of the individual -- the individual members.

13         I think in a case where you have members, unless real

14   members, and I -- I think that does -- I don't think you get to

15   test whether they're members or real members.  I think that

16   whole -- that whole indicia of membership thing comes up in

17   those organizations that don't actually have any members at

18   all.

19         I'm happy -- you can point me to a case, but, I mean,

10:37 20   I've looked at them.  You know, I just -- I don't see it.  I

21   don't see where the indicia of membership criteria are applied

22   to an organization that has actual members.

23         MS. ELLSWORTH:  So, your Honor, I mean, we certainly

24   cited cases in our original letter.  We received the filing

25   from Mr. Consovoy at the same time you did, so I would like the

1    opportunity to respond to that on this point specifically.  I

2    do think the cases that we've cited provide that, but we're

3    happy to provide --

4         THE COURT:  I looked at them today, and I didn't see

5    it.  I mean, I -- so if you want to respond to it, that's fine.

6    I guess what I would like to do, just to sort of keep things

7    moving, is to rule on this but give you the opportunity to move

8    for reconsideration, if that's what you want to do, when you

9    take a look at his cases.

10:38 10       MS. ELLSWORTH:  Your Honor, may I just ask?  We're

11   looking for much more than just a list of members.  I

12   understand you've ordered them --

13        THE COURT:  I'm thinking we'll go through them one at

14   a time.  Is that all right with you?

15        MR. CONSOVOY:  Yes, your Honor.

16        THE COURT:  All right.  I mean -- and I feel like

17   there's -- requests for production of interrogatories that are

18   referenced in your correspondence back and forth.  I didn't

19   focus on those at all.  I only focused on the ones that seem to

10:39 20   be open in your letter.  So the first one was RFP 7, all

21   current and former members, names, cities, addresses, start and

22   end dates of their membership, and institutions of higher

23   education that they applied to or plan to apply to or where

24   they attend.  And I think that what we just discussed covers

25   that.  So that -- to the extent that -- I guess it's your

1   motion to compel -- it's denied as to RFP 7.

2          8, you've raised issues as to 8(b), (c), and (f), all

3   documents relating to membership dues or other financial

4   contributions.  I think that's only relevant to indicia of

5   membership, which doesn't go to an actual membership

6   organization.

7          The same with participation in litigation and the same

8   with -- I take it that the communications with SFFA and its

9   officers goes to trying to determine what level of control the

10:41 10   members exert over the organization.  Again, I think that's

11   only relevant where you're looking at the indicia of

12   membership.

13          So I am going -- again, if you want to respond to this

14   one specifically, you can.  But it's my intention to deny your

15   motion to compel with respect to 8(b), (c), and (f).

16          MS. ELLSWORTH:  I just wanted to clarify that 8(b),

17   (c), and (f) all relate to simply the members that have been

18   specifically identified by SFFA as their "standing members."

19   So we're seeking communication of those identified individuals

10:42 20   with SFFA and their funding or lack thereof of the

21   organization.

22          THE COURT:  You want those only to apply to the 15?

23          MS. ELLSWORTH:  That's all it asked for.

24          THE COURT:  Sorry.  I didn't realize that.  So they're

25   asking for -- in 8(b), they want to know that these 15 people

1    are actually members.  Can you give them that documentation?

2          MR. CONSOVOY:  We have.  We've given them their names

3    and basic information about them.  Of course, for most of them,

4    they've already applied to Harvard.  They have all of the

5    information that would go to their underlying claims.

6          THE COURT:  How do they join this organization?

7          MR. CONSOVOY:  Through our website, which is a

8    standard procedure for --

9          THE COURT:  Is it a questionnaire with names -- they

10:43 10   just -- a name or you get -- what do you collect?

11         MR. CONSOVOY:  Multiple options.  So there's a basic

12   form and then a longer form for people who are interested in

13   potentially being a -- what we're calling standing members,

14   those who we're relying on.

15         THE COURT:  Have you given them the forms that each of

16   those 15 people filled out?

17         MR. CONSOVOY:  I don't think we have, your Honor.  We

18   do consider those to be privileged communications, no different

19   than the NAACP with their voter ID plaintiffs, telling them

10:44 20   their story.  Those are First Amendment privileged

21   communications.  So we have not.  But we've told them their

22   names, where they applied to and when they joined.  And so they

23   can look at their own records and determine whether they've --

24   the only thing relevant to standing, they have to be a member

25   of our organization, which they are; they have applied to

1    Harvard; they've been rejected; or they plan to apply to

2    Harvard.

3            THE COURT:  Have you provided them with affidavit --

4    what have you given them to show that these 15 people are

5    members?

6            MR. CONSOVOY:  We've given them their names, and we've

7    given an interrogatory answer from our president.  At a later

8    point in the case, if they deem it necessary, obviously, there

9    will be -- you know, we'll submit a declaration, but we're not

10:45 10   there yet.

11           MS. ELLSWORTH:  This is the point in the case.  This

12   is the point in the case.  If we depose them, we'd like to

13   know, you know, when they joined, whatever information they

14   provided, what communications they may have had with the -- if

15   they're privileged -- if it's associational privilege, it's

16   different.  If there's a claim of attorney/client privilege,

17   that's what privilege logs exist for.  I think we're entitled

18   to this information.

19           THE COURT:  I don't see how there would be

10:47 20   attorney/client privilege in an application to join -- in a

21   form to join an organization.

22           I think that they're entitled to more than you've

23   given them on the 15.  All right?  So if you're going to resist

24   turning over the form that they've filled out on the website,

25   either an affidavit saying that they are members, and that

1    should include when they joined.

2            MR. CONSOVOY:  We understand, your Honor.  Thank you.

3            THE COURT:  Okay.  All documents relating to the

4    participation in litigation, I don't think you're entitled to

5    that, or why would you think you were, I guess is a better

6    question?

7            MS. ELLSWORTH:  Well, again, your Honor, we'd like to

8    understand what their role is in this organization.  I

9    understand your ruling on names of other individuals; but if

10:48 10   we're to test -- the actual names we have is about five or six

11   at this point.  There are more people that have been identified

12   as future applicants, but the people who have actually applied,

13   it's five or six.  So if we're going to test those individuals'

14   standing in the manner your Honor has directed, I think we're

15   entitled to know what role they play in the organization.

16           Certainly, we might seek that through deposition

17   testimony, but I also think that there are documents that exist

18   that are responsive -- well, to the extent that there are

19   documents that exist that are responsive to the requests about

10:48 20   these members, interactions with SFFA, both upon joining and as

21   the litigation has gone forward, we think we're entitled to

22   understand those and understand what the member's role is in

23   the organization.

24           THE COURT:  Okay.  I think all that you're entitled to

25   is to know whether or not they are members under the *Hunt*

1    factors.

2             Did you want to say something or --

3             MR. CONSOVOY:  That's our position.

4             THE COURT:  I just brilliantly summed it up for you?

5             MS. ELLSWORTH:  Your Honor, whether they pay dues.  We

6    don't know whether these individual pay dues.  The dues

7    requirement is a late add to this organization.  So whether

8    they have paid dues, something I think we're entitled to.

9             THE COURT:  Why don't you include in the -- in (b),

10:50 10   the date they joined and whether or not they paid dues, okay?

11            MR. CONSOVOY:  Yes, your Honor.

12            THE COURT:  So (b) is -- we've discussed.  (c) is

13   denied.  And (f), I just don't think you're entitled to

14   communications.  I think all -- I think all that you get is

15   whether or not they're members, and you can test whether or not

16   they're members, but the communications aren't relevant to

17   that.

18            10, documents sufficient to show SFFA's finances, I

19   don't think you're entitled to that.  I'm happy to hear you on

10:50 20   it.

21            MS. ELLSWORTH:  What we're interested in, your Honor,

22   to the extent that we can narrow it, is understanding the

23   proportion of SFFA's finances that are provided by its members

24   versus the proportion that comes from sources other than

25   members.  I think, again, it all relates to whether this is, in

1    fact, a member-driven organization.

2         I do understand your Honor's ruling.  I'm not trying

3    to challenge that right now.  But I think we're entitled to

4    understand a little bit more about this organization.

5         Just to give you a sense of what we have, your Honor,

6    we have screenshots from their websites that we already had.

7    We have amicus briefs and other things that we already had.  We

8    have their IRS application, bylaws, Articles of Incorporation,

9    and a report that was publicly released on their website.  I

10:51 10   mean, we have very, very little information about this

11   organization.  I think, in order to actually test the standing,

12   which we do intend to robustly do, we're entitled to more and

13   we need more.

14        THE COURT:  I understand why you want more.  I'm not

15   sure that you're entitled to it or that you need it.  Okay.

16        MR. CONSOVOY:  That sums it up.

17        THE COURT:  So in terms of the finances, what I would

18   be inclined to ask you to give them -- although, again, I'm

19   happy to hear you on it -- is a -- however many members there

10:52 20   are, what percentage of them pay dues versus which percentage

21   are not paying.

22        MR. CONSOVOY:  On an aggregate basis, as long as it

23   isn't identifying an individual, we can do that.

24        THE COURT:  Okay.  I know it's not what you're asking

25   for, but -- all right.

1          11 is all documents relating to identification,

2    recruitment, selection, and members and potential members.

3    Again, I just don't see that as being relevant to the standing

4    -- to the *Hunt* factors when you have a membership organization.

5          MS. ELLSWORTH:  I would be repeating myself to make

6    the argument so --

7          THE COURT:  All right.  So denied as to 11.

8          12, communications or correspondence between SFFA, its

9    directors, officers, members, or other representatives, donors,

10:54 10   financial supporters, relating to the litigation.  Again, I

11   don't see a membership organization.

12         MS. ELLSWORTH:  I mean, your Honor, I think it relates

13   to whether the members fund the organization or not or whether

14   it's the donors that are funding the organization.  The donors

15   don't have standing.  It's only -- and not all of the members

16   have standing.  So the standing comes from now the 15 people

17   who have been identified perhaps.

18         THE COURT:  I mean, the First Circuit case law says at

19   least one.

10:55 20   MS. ELLSWORTH:  It's not a numerosity requirement.

21   It's a participation.  We've received the number 20,000.

22   Another contemporaneous statement from Mr. Bloom says 400.  I

23   take the sworn interrogatories to be true.  They're sworn under

24   penalty of perjury.  But there's -- it's a bit of a moving

25   target.

20

1      THE COURT:  We have now -- what I have directed them

2  to do is to give you the number of members and then separate

3  out the numbers that are paying and not paying.  And if she is

4  confused about this, if it's not clear -- I sort of assume that

5  membership is a clear thing.  But if you -- have you

6  communicated to her in some way or another how you define a

7  member?  Is it someone that's signed up?

8      MR. CONSOVOY:  We can.  We can amend our interrogatory

9  to explain clearly why a proof of 415,000 is.  The president

10:57 10  went to California and met with students, and it grew in about

11  three days.

12      THE COURT:  Give her some explanation of what

13  constitutes a member.

14      MR. CONSOVOY:  Absolutely, your Honor.

15      MS. ELLSWORTH:  Your Honor, the other point we would

16  make -- and we pointed this out in our letter -- is that what

17  is important to the standing and creates the membership as of

18  the time the suit was instituted, not today.  So that's the

19  reason that we ask for dates of membership of the names.  I

10:58 20  understand you're taking a more aggregate approach.  I'd like

21  to explore whether there's a way to take a more aggregate

22  approach on when people have joined so we understand.

23      THE COURT:  How about that?  Can you take the date you

24  filed the lawsuit and give them the number of members before

25  that and the number of members after that?

1              MR. CONSOVOY:  I believe so, so long as -- again, I

2        want to sort of generally preserve.  If we come across a way

3        that we think starts identifying individuals, we may need to

4        come back and revisit it because, obviously, we grew and we

5        grew and we grew.  So if I can make that one caveat now, I

6        don't see a problem.

7              THE COURT:  Okay.  So you, of course, all know you're

8        free to come back.

9              MS. ELLSWORTH:  At lunch or between --

10:59 10        THE COURT:  No one has been shy about that.  But after

11       court the hours are virtually in the middle of -- all right.

12             So denied on 12.

13             13, all communications or correspondence among or

14       between SFFA members -- SFFA and its members or potential

15       members, board of directors, or any other person relating to

16       the complaint of the litigation.  I'm going to deny that unless

17       -- I understand your position on it, but I'm going to deny it.

18             15, all right.  15 is all documents relating to

19       membership in SFFA, including, but not limited to, all

11:00 20  membership policies.  Have you given them that?  I guess

21       that's --

22             MR. CONSOVOY:  Yes, bylaws and Articles of

23       Incorporation.

24             THE COURT:  Okay.  All documents relating to rights

25       members may have to elect or remove SFFA's leadership?

1          MR. CONSOVOY:  Yes, given them.

2          THE COURT:  Participate in its decision-making or

3     otherwise controlled conduct?  I mean, I take this to be sort

4     of bylaw information.

5          MR. STRAWBRIDGE:  This is just the litigator in me

6     being --

7          THE COURT:  I was wondering how long that was going to

8     take.

9          MR. STRAWBRIDGE:  Five minutes longer than it should

11:01 10    have.  The request is all documents relating to the -- to the

11    extent that this is a request for the policies and the formal

12    documentation that sets out members' rights, we have provided

13    those documents.  We've also provided some interrogatory

14    responses that address this.  We obviously have not provided

15    every example of communications with members that might on some

16    macro level relate to --

17         THE COURT:  That's what I was limiting to that, the

18    actual membership, bylaws, rules, that sort of thing.

19         MS. ELLSWORTH:  Your Honor, if the 14 documents that

11:01 20    have been produced are the documents on which they are going to

21    rely for their standing and that's -- we're standing on that,

22    that will be what it will be.

23         We know there are communications that go out to

24    members about the litigation.  One at least is the annual

25    report.  There may be others that are not -- I'm not talking

1    about an individual email to an individual member.  I'm talking

2    about a blast to the membership saying, Here's what we're

3    doing, X, Y, Z.  We think we're entitled to that.  We think

4    we're entitled to know if members actually come to meetings,

5    whether meetings are held at which members can attend.  Again,

6    I understand your ruling on names, if we could get that

7    information without names.  I think there's more here that

8    we've asked for, certainly than what we've received, and I --

9         THE COURT:  I mean, if they have bylaws that say,

11:53 10   We're going to meet once a year or we'll make -- I think you're

11   entitled to that, but I don't think you're entitled to actual

12   information about when meetings are held and how many people

13   show up and what got said at those meetings.  Are there annual

14   reports?

15         MR. CONSOVOY:  We've given them the annual report.

16         THE COURT:  Thanks.

17         MS. ELLSWORTH:  There's only one.

18         MR. CONSOVOY:  We gave them one.  But in terms of

19   email communications, that's to the heart of what's relevant

11:53 20   here, what the communication -- what the members talk about.

21   Whether it's in mass form or individual form, it's what we talk

22   about with each other.

23         THE COURT:  But if there are -- I agree with you

24   there; but if there are rules or policies that say we're going

25   to meet this often for organizational structure-type things

1       like that, I'd like those produced to them if they haven't

2       already been.

3               MR. CONSOVOY:  Yes, your Honor.

4               THE COURT:  And annual reports, sort of -- that you

5       don't -- not email blasts, not the communications but to the

6       extent there's annual reports.

7               MR. CONSOVOY:  We understand and we'll comply.

8               THE COURT:  All right.  And then the last one is the

9       interrogatory that I think we've already covered, right, by and

11:55 10  large?

11              MR. CONSOVOY:  I believe it's duplicative of things

12      we've already covered.

13              THE COURT:  I think it is, too.

14              MR. CONSOVOY:  Yeah.

15              MS. ELLSWORTH:  The interrogatory asks for a list of

16      members.

17              THE COURT:  Right.  So I -- if you -- I sympathize

18      with the fact that you just got it this morning.  It was dense

19      and single-spaced.  If you want to file it -- fashion it as a

11:56 20  motion for reconsideration or a letter for reconsideration.

21      Don't bother with a full motion practice.  I'm happy to read

22      it.  Don't bother responding unless I ask you to, okay?  So

23      we'll just keep this moving.

24              MS. ELLSWORTH:  Understood, your Honor.

25              MR. CONSOVOY:  One last thing, to sort of apologize

1    for the lateness of our filing.  We did inform Harvard over a

2    week ago that it would be coming in today.  So I want to make

3    sure --

4           THE COURT:  This is literally my first day back from

5    this conference, and I scheduled --

6           MR. CONSOVOY:  We appreciate your indulgence, your

7    Honor.

8           THE COURT:  No, no.  You know, look, I will say about

9    this case, whether -- whoever wins or loses on the individual

11:57 10    points, your letters and the briefs are all a pleasure to read.

11    They're just all extremely well-done and clear and easy to

12    understand and hit the relevant points.  So, you know, as I

13    say, if I had to try and squeeze something in today, I was more

14    than happy for it to be this because it's all well-done, but --

15    I'm not ascribing fault.  I'm just proud of myself for getting

16    through it before 2:30.

17           Anything else today?

18           MR. CONSOVOY:  Not with us, your Honor.

19           MS. ELLSWORTH:  Not for us, your Honor.

11:57 20           THE COURT:  Okay.  Okay.  If you want to -- there's no

21    time limit on that.  You can -- all right.  Thanks, everyone.

22    Have a good weekend.

23    (Whereupon, at 3:12 p.m. the hearing concluded.)

24

25

1                    C E R T I F I C A T E

2

3

4            I certify that the foregoing is a correct transcript

5     of the record of proceedings in the above-entitled matter to

6     the best of my skill and ability.

7

8

9

10

11

12     /s/Cheryl Dahlstrom

13     Cheryl Dahlstrom, RMR, CRR

14     Official Court Reporter

15

16     Dated:  May 9, 2016

17

18

19

20

21

22

23

24

25