WILMERHALE

May 18, 2016

**By ECF**

Felicia H. Ellsworth

+1 617 526 6687 (t)
+1 617 526 5000 (f)
felicia.ellsworth@wilmerhale.com

Honorable Allison D. Burroughs
U.S. District Court, District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re:  *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation)*, No. 1:14-cv-14176

Dear Judge Burroughs:

In response to the Court's invitation at the April 29, 2016 status conference (Dkt. 151), Defendant President and Fellows of Harvard College ("Harvard") submits this letter seeking reconsideration of the denial of Harvard's request to compel standing-related discovery from Plaintiff Students for Fair Admissions, Inc. ("SFFA") (Dkt. 147).

In a last-minute filing to which Harvard had no opportunity to respond prior to the status conference, SFFA argued that the indicia-of-membership test set forth in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 344-345 (1977), does not apply to any organization that represents itself to be a "voluntary membership association." Dkt. 150 at 4-6. That is incorrect.  Contrary to SFFA's position, courts routinely have employed the test articulated in *Hunt* to analyze whether an associational plaintiff represents the interests of its purported members.  As discussed in greater detail below, those courts have examined, under the *Hunt* standard, whether the so-called members play a role in financing the organization, guiding its activities, and selecting its leadership.  Regardless of each court's ultimate conclusion, courts simply do not credit an organization's word that it is a membership organization.  Instead, they examine whether the organization genuinely represents the interests of its members, and the relationship between the organization and its members.  All Harvard seeks is discovery necessary to conduct that inquiry.  SFFA cannot establish standing based on nothing more than its say-so.  Moreover, if SFFA's position were accepted, it would enable plaintiffs to circumvent the rigorous requirements for class actions under Fed. R. Civ. P. 23 by creating "membership associations" supposedly representing the interests of the purported members, without any check on whether the "membership" relationship is a meaningful one.

SFFA's discovery responses thus far raise serious questions as to whether SFFA is genuinely a membership association—questions that Harvard ought to be allowed to explore through discovery.  The discovery that Harvard seeks does not come close to what SFFA hyperbolically characterizes as a "top-to-bottom audit."  Harvard's requests are necessary and tailored to determine whether SFFA is genuinely an organization whose members "pool their interests,

WILMERHALE

Honorable Allison D. Burroughs
May 18, 2016
Page 2

activities and capital" in pursuit of "collective interests," *Camel Hair & Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 11 (1st Cir. 1986)—or whether it is, instead, a top-down litigation vehicle whose members were selected to advance the organization's interests rather than the other way around.  Harvard therefore respectfully requests that the Court compel SFFA to provide discovery necessary to illuminate whether its purported members genuinely control and oversee its activities.

**I.      Courts Routinely Apply The Indicia-Of-Membership Test To Determine Whether Associational Plaintiffs Meaningfully Represent Their Purported Members**

SFFA's contention that the indicia-of-membership test articulated in *Hunt* applies only to "non-membership organizations" is incorrect, as demonstrated by numerous cases applying the test to organizations, like SFFA, that purport to have "members."  Indeed, SFFA draws precisely the wrong conclusion from *Hunt*, as the cases cited below illustrate.  Far from making the "distinction clear" between membership and non-membership organizations, the Court specifically cautions against "exalt[ing] form over substance" in making a standing determination.  432 U.S. at 345.  Here as in *Hunt*, it is not obvious that the formal status of the organization in question reflects its true function.  Just as the absence of the "membership" label in *Hunt* was not dispositive of the question the Court deemed relevant—whether the association at issue operated in the interests of its constituents, and under their control—the presence of the "membership" label does not answer that question in this case.

Under the indicia-of-membership test, courts consider whether the purported members are bona fide members within the meaning of *Hunt* and its progeny—whether they actually participate in financing the organization, guiding its activities, and selecting its leadership, so that the organization "[i]n a very real sense … represents [them] … and provides the means by which they express their collective views and protect their collective interests."  *Hunt*, 432 U.S. at 344-345.

In some cases, courts have applied the test to reject the organization's claim of associational standing on behalf of its supposed members.  For example, in *Package Shop, Inc. v. Anheuser-Busch, Inc.*, No. 83-513, 1984 WL 6618 (D.N.J. Sept. 25, 1984), the court determined that a "trade association" comprising "575 retailers, whom it … consider[ed] members," lacked standing to sue.  *Id.* at *7, *40.  *Hunt* described "trade association[s]" as a type of "voluntary membership organization"—exactly what SFFA claims to be.  432 U.S. at 342.  But even though the association had "pursued three major pieces of litigation" on behalf of its members, the court concluded that its "alleged members" did "not have the control over the organization which would give it standing to sue on their behalf."  1984 WL 6618, at *40-41.  For example, the court observed, "[t]he members [did] not finance the organization, except … through [a] one-time contribution," and "[t]he organization essentially [was] run by people who [were] self-appointed."  *Id.* at *40.  Other courts have reached similar conclusions.  *See, e.g.*, *National*

WILMERHALE

Honorable Allison D. Burroughs
May 18, 2016
Page 3

*Coalition for Students with Disabilities Education & Legal Defense Fund v. Wilkey*, No. 00-cv-1686, 2007 WL 951559, at *6 (N.D.N.Y. Mar. 27, 2007) (association purporting to "consist of students, parents, and others concerned about the educational opportunities and legal rights of students with disabilities" lacked standing because the record did not show that it had "any *bona fide* members"); *Fleck & Associates, Inc. v. City of Phoenix*, 471 F.3d 1100, 1102, 1106 (9th Cir. 2006) ("gay men's social club" lacked standing to challenge a municipal ordinance, because the club's "'members' … [we]re merely customers," not people who had "come together to form an organization for their mutual aid and benefit").

Other courts have allowed membership organizations to sue on behalf of their members—but only after applying the *Hunt* indicia-of-membership test to ensure that the membership relationship was bona fide.  For example, in *Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico*, 906 F.2d 25 (1st Cir. 1990), the First Circuit held that a trade association possessed associational standing only after observing that the association had been "organized prior to the filing of [the] suit, and for different reasons," and "that the members of the Association twice unanimously consented to the Association's participation in the suit."  *Id.* at 35.  Likewise, the Fifth Circuit has applied the indicia-of-membership test to an organization suing on behalf of "four members"; the court held that the "purported members" satisfied the *Hunt* standard because they "elected the governing body of the organization," "financed its activities," and "voluntarily associated themselves with" the organization."  *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 827, 829 (5th Cir. 1997).  And numerous district courts have similarly scrutinized whether the purported members of an organization were bona fide members.  *See, e.g.*, *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 675-676 (E.D. La. 2010) (for "the relationship between an association and its members" to be "sufficiently close for constitutional standing, … the association must demonstrate that the individuals it seeks to represent possess sufficient 'indicia of membership'"); *Environmental Conservation Organization v. City of Dallas*, No. 03-cv-2951, 2005 WL 1771289, at *2-3 (N.D. Tex. July 26, 2005) ("'indicia of membership' test … determine[s] whether an organization has members whose interests it can represent in federal court"); *see also Quad Cities Waterkeeper v. Ballegeer*, 84 F. Supp. 3d 848 (C.D. Ill. 2015); *California Communities Against Toxics v. Armorcast Products Co., Inc.*, No. 14-5728, 2015 WL 519083, at *4 (C.D. Cal. Feb. 9, 2015); *Open Source Yoga Unity v. Choudhury*, No. 03-cv-03182, at 6-8 (N.D. Cal. Apr. 19, 2004) (unpublished, attached as Ex. A).

What these cases show is that the *Hunt* test broadly governs the associational standing of organizations purportedly advancing the interests of their members, and that—contrary to SFFA's argument—the inquiry does not stop once an organization alleges that it has members.  These cases contravene SFFA's attempt to draw a line between "voluntary membership organizations," for which it believes standing should be judged "without any further examination," and "non-membership organizations."

WILMERHALE

Honorable Allison D. Burroughs
May 18, 2016
Page 4

SFFA cites just one case—*California Sportfishing Protection Alliance v. Diablo Grande, Inc.*, 209 F. Supp. 2d 1059 (E.D. Cal. 2002)—even arguably supporting its position that the indicia-of-membership test does not apply to associations that label themselves "membership organizations." And in that case, the defendant "present[ed] no evidence" that the plaintiff was "not a traditional voluntary membership organization." 209 F. Supp. 2d at 1066. Here, by contrast, SFFA's discovery responses thus far raise a significant question as to whether it genuinely represents its purported members. For example, SFFA's Articles of Incorporation, and the Bylaws in effect when the Complaint was filed, state that SFFA "shall have no members." Ex. B at SFFA-Harvard 0000028, 0000034. In any event, any favorable language in *California Sportfishing* is contrary to the great weight of precedent.

SFFA's other authorities are entirely inapposite. SFFA relies on several Supreme Court decisions—*Parents Involved in Community School v. Seattle School District*, 551 U.S. 701 (2007), *Schuette v. Coalition to Defend Affirmative Action, Integration & Immigrant Rights & Fight for Equality By Any Means Necessary (BAMN)*, 134 S. Ct. 1623 (2014), and *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000)—but those cases did not address whether the plaintiff organizations were bona fide membership organizations. Rather, standing was litigated on other grounds, such as injury-in-fact and redressability.[1] The Court's silence on the indicia-of-membership test in these cases does not mean application of the test would have been inappropriate there. *See, e.g.*, *Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125, 144 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed.").

SFFA also relies (at 6) on *Center for Sustainable Economy v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015), *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1 (D.D.C. 2009), and *Brooklyn Center for Independence of the Disabled v. Bloomberg*, 290 F.R.D. 409 (S.D.N.Y. 2012). But both *Center for Sustainable Economy* and *Brady Campaign* relied on the fact that the members had the right to control the organization. *See* 779 F.3d at 598 ("CSE is structured to serve the interests of its members: … all of CSE's current members are voting members entitled to elect its Board …. CSE's members … aver that they participate actively in CSE's operations,

---

[1] *See Parents Involved in Community Schools v. Seattle School District*, 377 F.3d 949, 958-959 (9th Cir. 2004) (focusing on whether standing had been mooted); *Parents Involved*, 551 U.S. at 718 (focusing on imminent injury); *Coalition to Defend Affirmative Action, Integration & Immigrant Rights & Fight for Equality By Any Means Necessary v. Schuette*, 539 F. Supp. 2d 924, 945 (E.D. Mich. 2008) (issue of bona fide membership not raised); *Schuette*, 134 S. Ct. 1623 (no discussion of standing); *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 149 F.3d 303, 305, 306 n.3 (4th Cir. 1998) (concluding action was moot and not reaching issue of standing); *Friends of the Earth*, 528 U.S. at 185 (standing challenged based on injury-in-fact and redressability).

WILMERHALE

Honorable Allison D. Burroughs
May 18, 2016
Page 5

and that CSE serves as a vehicle for the vindication of their interests."); 612 F. Supp. 2d at 29 ("Brady … submitted a copy of its Articles of Incorporation which state that '[t]he Corporation [Brady] shall have members.  The members shall have voting rights as prescribed in the By–Laws.'").  Here, the requested discovery is sought to determine if that is the case.  And *Brooklyn Center* held only that the organizational plaintiff had sufficiently *alleged* standing at the class-certification stage.  290 F.R.D. at 416.  "[T]he manner and degree of evidence required" to show standing varies with "the successive stages of the litigation"; although allegations may be sufficient at the pleading stage, facts are necessary later on.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

In sum, SFFA cannot escape standing-related discovery simply on the basis that it has *alleged* it is a membership organization.  The cases require SFFA to show that its purported members participate in financing the organization, guiding its activities, and selecting its leadership, so that SFFA "[i]n a very real sense … represents [them]."  *Hunt*, 432 U.S. at 344-345.

**II.    SFFA's Argument Would Allow Circumvention Of Rule 23**

SFFA's argument would effectively nullify Federal Rule of Civil Procedure 23, at least for class actions seeking class-wide injunctive relief.  It would allow any would-be plaintiff in an injunctive class action to avoid the rigorous inquiry required by Rule 23 by suing in the name of an organization purporting to represent class members, without any scrutiny of whether the organization adequately represents its members.

Consider what would have happened had SFFA (or its backers) tried to bring this action as a class action—the manner in which *Grutter v. Bollinger* and *Gratz v. Bollinger* were brought.  *See, e.g.*, Adam D. Chandler, *How (Not) to Bring an Affirmative-Action Challenge*, 122 Yale L.J. Online 85, 87 (2012).  The named class plaintiffs (SFFA's so-called "standing members") would have had to satisfy numerous safeguards that exist to ensure that class actions are truly representative actions.  Among other things, for example, the class plaintiffs would have had to show under Rule 23(a)(4) that they would "fairly and adequately protect the interests of the class."  The court would have had discretion under Rule 23(c)(2)(A) to "direct appropriate notice to the class."  And class counsel would have had to satisfy the requirements of Rule 23(g).

Rather than complying with those important requirements, SFFA elected to sue in its own name, purporting to represent its "standing members" and others who comprise what is effectively a plaintiff class.  SFFA can proceed as it has chosen if in fact it *does* meaningfully represent its purported members.  But the indicia-of-membership analysis exists to ensure that it does, and thus to ensure that the plaintiff before the court has the necessary concrete interest in the case to satisfy the Article III requirement of a case or controversy.  SFFA cannot be permitted to evade that inquiry through untested assertions.

WILMERHALE

Honorable Allison D. Burroughs
May 18, 2016
Page 6

Harvard therefore respectfully renews its request to compel certain discovery from SFFA that is directly relevant to the associational standing inquiry under *Hunt*.  Specifically, Harvard seeks:

- Documents reflecting to the degree to which SFFA's Standing Members participate in, guide, and finance SFFA's activities, including but not limited to their "longer form" applications to join SFFA[2]  (*see* RFP Nos. 8(b), 8(c), 8(f));

- Documents relating to the degree to which SFFA's purported members participate in or guide SFFA's activities (*see* RFP Nos. 11, 13, and 15);

- Discovery sufficient to show the degree to which SFFA's purported members finance SFFA's activities (*i.e.*, the degree to which SFFA's funding comes from its purported members versus other sources, including as of the filing of this lawsuit) (*see* RFP No. 10).

Thank you for the opportunity to further address and explain Harvard's position on this matter.

Respectfully submitted,


*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth


cc:  Counsel of record (via ECF)

---

[2]    At the April 29 status conference, SFFA indicated that there is a "longer form" to apply to be standing members.  Tr. 14.  As the Court noted, it is highly unlikely that an application to join an organization is protected from discovery by the attorney-client privilege (Tr. 15), and Harvard is accordingly entitled to review these applications.