## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

|  |  |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC.,<br><br>                    Plaintiff,<br><br>   v.<br><br>PRESIDENT AND FELLOWS OF HARVARD<br>COLLEGE (HARVARD CORPORATION),<br><br>                    Defendant. | Civil Action No. 1:14-cv-14176-ADB<br><br>**Motion to File Under Seal Granted<br>September 23, 2016 [Dkt. 184]**<br><br><u>Oral Argument Requested</u> |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## <u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ..................................................................................................3

ARGUMENT .....................................................................................................................7

I.      Associations Lack Standing To Represent Their Constituents Unless The Constituents Exhibit "Indicia Of Membership"........................................................................7

II.     SFFA Does Not Bear The Indicia Of A Genuine Membership Organization ..................11

CONCLUSION ...............................................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

*California Sportfishing Protection Alliance v. Diablo Grande, Inc.*,
   209 F. Supp. 2d 1059 (E.D. Cal. 2002)...................................................................11

*Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*,
   799 F.2d 6 (1st Cir. 1986) ................................................................................ 2, 15-16

*Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*,
   686 F. Supp. 2d 663 (E.D. La. 2010) .....................................................11, 12, 14, 15

*Diamond v. Charles*,
   476 U.S. 54 (1986)...................................................................................................1, 16

*Friends of the Earth, Inc. v. Chevron Chem. Co.*,
   129 F.3d 826 (5th Cir. 1997) ............................................................10-11, 12, 14-15

*United States ex rel. Gadbois v. PharMerica Corp.*,
   809 F.3d 1 (1st Cir. 2015)...........................................................................................12

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
   541 U.S. 567 (2004)......................................................................................................12

*Hunt v. Washington State Apple Advertising Commission*,
   432 U.S. 333 (1977).........................................................................................7, 8, 9, 11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..........................................................................................................7

*NAACP v. State of Ala. ex rel. Patterson*,
   357 U.S. 449 (1958)..................................................................................................2, 15

*Package Shop, Inc. v. Anheuser-Busch, Inc.*,
   1984 WL 6618 (D.N.J. Sept. 25, 1984) ........................................................... *passim*

*Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico*,
   906 F.2d 25 (1st Cir. 1990)............................................................................. 10, 13-14

*Sallen v. Corinthians Licenciamentos LTDA*,
   273 F.3d 14 (1st Cir. 2001)..........................................................................................12

*Seow v. Grondolsky*,
   2012 WL 5392322 (D. Mass. Nov. 2, 2012) ...........................................................1

*Valley Forge Christian Coll. v. Americans United for Separation of Church and
   State, Inc.*,
   454 U.S. 464 (1982)........................................................................................................1

*Washington Legal Found. v. Leavitt*,
   477 F. Supp. 2d 202 (D.D.C. 2007) ............................................................... *passim*

Article III standing doctrine serves to "assure that the legal questions presented to [a] court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).  Especially in cases raising issues of broad public significance, the right to invoke the federal judicial power "must be placed in the hands of those who have a direct stake in the outcome," rather than "in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests."  *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (internal quotation marks omitted).

Plaintiff Students for Fair Admissions, Inc. ("SFFA") is an organization created by just such a "concerned bystander"—its founder and President, Edward Blum.  Lacking any personal stake in the issues presented by this case, Mr. Blum created SFFA as a litigation vehicle to advance his personal philosophy regarding race-conscious admissions.  He then scoured the country in search of "plaintiffs" to join SFFA so that he could sue, purportedly on their behalf. Ex. A, Transcript of Deposition of Edward J. Blum as Rule 30(b)(6) Designee of SFFA ("Blum Tr."), at 166:13.[1]  Without giving those "plaintiffs" any role in SFFA, Mr. Blum simply labeled them "standing members" and sued in SFFA's name.  SFFA's other members have equally little role in the organization; in most cases, they have no greater ties to SFFA than having added their names and email addresses to its email list.

---

[1]  Exhibit citations in this Memorandum refer to Exhibits to the Declaration of Felicia H. Ellsworth.  "Courts are permitted to look at facts outside of the pleadings in order to make a jurisdictional determination under [Rule] 12(b)(1)."  *Seow v. Grondolsky*, 2012 WL 5392322, at *1 (D. Mass. Nov. 2, 2012) (citing *Hernandez-Santiago v. Ecolab, Inc.*, 397 F.3d 30, 33 (1st Cir. 2005)).

Mr. Blum cannot manufacture the personal stake in this litigation required by Article III by recruiting supporters and labeling them "members" of his organizational alter ego.  When individuals create an association by "pool[ing] their interests, activities and capital under a name and form that will identify collective interests," *Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 11 (1st Cir. 1986), courts may permit the association to sue on the individuals' behalf, because the association "and its members are in every practical sense identical," *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958).  But SFFA is not an organization identical to its members—instead, SFFA is Mr. Blum's alter ego.  And the fact that SFFA calls its constituents "members" does not alter the calculus.  Courts do not regard the "membership" label as dispositive.  *See, e.g.*, *Washington Legal Found. v. Leavitt*, 477 F. Supp. 2d 202, 207-212 (D.D.C. 2007) (scrutinizing relationship between organization and its members); *Package Shop, Inc. v. Anheuser-Busch, Inc.*, 1984 WL 6618, at *38-41 (D.N.J. Sept. 25, 1984) (same).  Instead, in determining whether membership associations are permitted to stand in the shoes of their members for purposes of Article III standing, courts assess whether the members actually control the organization, by choosing its leaders, influencing its conduct, financing it through the payment of dues, or serving it in some other meaningful way.  SFFA's members have no such control.

Because SFFA cannot demonstrate that its members control the organization such that it genuinely represents them, SFFA lacks standing to sue on their behalf.  Indeed, if SFFA's theory were correct, standing doctrine would be considerably relaxed—any gadfly plaintiff could bring

an injunctive action without having suffered a cognizable injury, simply by forming a corporate

entity and designating supporters as "members."  That cannot be the law.[2]

### FACTUAL BACKGROUND

████████████████████ in the wake of the Supreme Court's decision in *Fisher v.*

*University of Texas at Austin*, 133 S. Ct. 2411 (2013), which dealt a setback to Abigail Fisher's

challenge—also devised and funded by Mr. Blum—to the race-conscious admissions practices of

the University of Texas.  Ex. A, Blum Tr., at 49:3-12; *see, e.g.*, Adam Liptak, *Unofficial*

*Enforcer of Ruling on Race in College Admissions*, N.Y. Times, Apr. 8, 2014, at A16.  Mr.

Blum, ███████████████████████, constitute SFFA's board, and they

appointed themselves to serve as SFFA's President, Secretary, and Treasurer, respectively.  Ex.

A, Blum Tr., at 103:20-105:19.  Nobody else was involved in those decisions, and ████████

███████.  *See id.* at 105:1-19, 17:19-20.  Mr. Blum testified that ███████████████

████████████████████████████████████████████

███████.  *Id.* at 88:9-91:16.

Under SFFA's initial bylaws, in effect when this action was filed, SFFA's members had

no rights to participate in the organization.  █████████████████████████████

████████████████████████████████████████████

███████  *Id.* at 107:6-109:16.  If the members did not agree with SFFA's objectives or with any of

---

[2]      Under the Amended Scheduling Order, the last day on which SFFA could amend its
Complaint without leave of court was September 15, 2016.  Dkt. 180.  That deadline having
passed, Harvard's challenge to SFFA's standing is ripe for resolution.  Although Harvard's
motion for reconsideration as to the scope of discovery of SFFA (Dkt. 154) remains pending, the
discovery elicited to date is sufficient to establish that SFFA lacks standing to bring this action.
If the Court believes that additional standing-related discovery would aid in determining whether
SFFA has standing, the Court should permit Harvard to conduct the discovery that SFFA has so
far resisted.

its conduct, they had no way of shaping the organization to reflect their own interests.  Their

only option, Mr. Blum testified, was to ████████ *Id.* at 112:9-13.

In June 2015, after Harvard indicated that it intended to challenge SFFA's associational

standing (Dkt. 43, Transcript of Apr. 30, 2015 Status Conference, at 21:17-22:14), SFFA

amended its bylaws to expand its board of directors from three to five (Ex. A, Blum Tr., at

152:2-19; *see* Ex. B, Unanimous Written Consent in Lieu of a Meeting of the Board of Directors

of SFFA ("SFFA Amended Bylaws")). ████████████████████████████

████████████████ Ex. A, Blum Tr., at 71:6-72:14.  The other new seat was reserved for a

director elected by the members.  SFFA made that change, according to Mr. Blum, ████████

████████████████████████████████████████████ *Id.* at 152:9-

19. ████████████████████████████████████████

████████████████████████████████████ *See* Ex. B, SFFA

Amended Bylaws, §§ 4.06, 4.08 (SFFA-Harvard 0000061) (████████████████

████████████████████████████████████

████████).

Even after the amendment of SFFA's bylaws, ████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████. Ex. A, Blum Tr., at 274:21-276:16.  When asked at the

Rule 30(b)(6) deposition what rights SFFA's members *do* have, Mr. Blum testified that they

could ████████████████ (*id.* at 275:14-20) or could ████████████████

████████████████ (*id.* at 275:14-276:9).  But it is unclear what effect members' expression of

their views would actually have. ████████████████████████████

███████████████████████████████ Ex. B, SFFA Amended Bylaws,

§ 3.03 (SFFA-Harvard 0000060) (████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

██████████████ ).

     SFFA's members also play virtually no role in funding the organization.  At its inception,

█████████████████████████. Ex. A, Blum Tr., at 144:7-9.  There was no dues

requirement, and SFFA stated in its October 2014 application for tax-exempt status that it did not

expect to receive membership dues in 2014, 2015, or 2016.  Ex. C, SFFA IRS Form 1023

(Application for Recognition of Exemption under Section 501(c)(3)), at Part IX (SFFA-Harvard

0000023).  Rather than being funded by its members, SFFA told the IRS that it "has a 'close

connection' with the Project on Fair Representation" ("POFR")—an entity founded and run by

Mr. Blum—and that POFR both provided its "initial funding" and would "continue to be [its]

primary funder."  *Id.* at Ex. D, Part VIII, Line 15 (SFFA-Harvard 0000046); *see* Ex. A, Blum Tr.,

at 10:25-11:15.  SFFA's amended bylaws require only a one-time contribution of just $10, not

ongoing dues.  Ex. B, SFFA Amended Bylaws, at 2 (SFFA-Harvard 0000053), § 3.02 (SFFA-

Harvard 0000059-60).  And SFFA does not ██████████████████████████

████████████████████████████████████████████████.

Ex. A, Blum Tr., at 144:2-23.  Mr. Blum testified that ██████████████████

█████████████████████████. *Id.* at 144:14-16.  Thus, ██████████

██████████████████████████████████████████████

███████████████████████████. Ex. D, Plaintiff's Supplemental Objections

& Responses to Defendant's First Set of Interrogatories (July 1, 2016), at 12.  The ██████



██████████████████████████████████████████████████████

████████████████████████. Ex. E, Virginia Charitable Organization Remittance Form,

Form 102, at SFFA-Harvard 0001932 (Statement of Profit & Loss).

SFFA's members are simply supporters; they play no meaningful role in the

organization's functioning.  SFFA counts as a member ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████. Ex.

A, Blum Tr., at 131:2-134:16.  Other than screening out ██████████████████████

████████████████████████████████████████████████████

████████████. *Id.* at 139:7-23, 143:7-23.

SFFA's "standing members" have provided affidavits ████████████████████████

████████████████████████████████████████████████

██████████████ *E.g.*, Ex. F, Declaration of ██████████. But the "standing members" have no

greater role in SFFA than do the other members.  Just as Mr. Blum and the board may ███████

████████████████████████████████████████████████████

████████████████████████████████. *See* Ex. A, Blum Tr., at 221:9-24

(████████████████████████████████████████████████).  Indeed,

SFFA's list of "standing members" has evolved significantly over the course of this litigation,

████████████████████████████████████████████████████.

*Compare* Ex. G, Plaintiff's Supplemental Response to Interrogatory No. 5 (July 2, 2015)

(████████████████████████), *with* Ex. D, Plaintiff's Revised Supplemental Response to

Interrogatory No. 5 (July 1, 2016) (██████████████████████).

# ARGUMENT

As the party invoking federal jurisdiction, SFFA bears the burden of establishing that it has standing to advance the interests of those individuals that it refers to as its members.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The record makes clear that SFFA cannot meet that burden.

## I.    Associations Lack Standing To Represent Their Constituents Unless The Constituents Exhibit "Indicia Of Membership"

SFFA has argued that, because it has structured itself to appear to be a membership organization, this Court must assume that it is an appropriate party to bring litigation on behalf of its members, provided that it satisfies three criteria for associational standing set forth in the Supreme Court's decision in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977).  That is incorrect.  In both *Hunt* and later cases, courts have made clear that not all organizations that refer to their constituents as members necessarily have standing to litigate on behalf of those members.  Rather, an organization seeking to invoke associational standing must be a *genuine* membership organization, responsive to the interests of individuals who have banded together to advance their cause.  The fact that an organization refers to its supporters as "members" is not sufficient if those members can have no influence on the mission of the organization.

In *Hunt*, the Court considered whether a Washington state agency purporting to represent that State's apple growers and dealers had standing to sue on their behalf.  The Court observed that the agency was "not a traditional voluntary membership organization such as a trade association, for it ha[d] no members at all."  *Id.* at 342.  But the Court did not regard the presence or absence of the "membership" label as dispositive.  Rather, the Court held that the agency could represent the interests of growers and dealers because, among other things, the growers

and dealers "possess[ed] all of the *indicia of membership* in [the] organization."  *Id.* at 344 (emphasis added).  The Court articulated those "indicia" as follows:  "[The growers and dealers] alone elect the members of the Commission; they alone may serve on the Commission; [and] they alone finance its activities, including the costs of this lawsuit, through assessments levied upon them."  *Id.* at 344-345.  In those circumstances, the Court reasoned, the agency "[i]n a very real sense … represents … growers and dealers and provides the means by which they express their collective views and protect their collective interests."  *Id.* at 345.

*Hunt* also set out additional, more frequently litigated prerequisites to associational standing, recognizing that an organization that represents its members may litigate on their behalf when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect [in litigation] are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  432 U.S. at 343.  But proof of those predicates does not on its own satisfy the threshold requirement that an organization must genuinely embody the collective interests of its members to be permitted to stand in their shoes in federal court.  *See Hunt*, 432 U.S. at 343-344 (determining that the three predicates noted above were "clearly present," and then nevertheless applying the indicia-of-membership analysis).  In many cases, it is not disputed that a plaintiff organization genuinely represents its members, and the associational standing inquiry in such cases may therefore focus on the other *Hunt* factors.  But when a dispute arises as to whether a plaintiff organization genuinely represents its members, federal courts must and do answer that question in deciding whether the organization has standing to sue.

*Hunt* creates a functional inquiry, not a formal one, for determining whether an association genuinely embodies the collective interests of its members.  Just as an organization

that technically lacks "members" (as in *Hunt*) will not automatically be disqualified from representing its constituents in litigation, the mere fact that an organization designates its supporters as "members" does not mean that it is entitled to sue on their behalf.   In both circumstances, what matters is not the label applied to the constituents of a plaintiff association but whether those constituents actually bear the indicia of membership required for the association to be "the means by which they express their collective views and protect their collective interests" in federal court, *Hunt*, 432 U.S. at 345.  In conducting that examination, courts have considered the factors the Supreme Court found to be important in *Hunt*—namely, how the organization is controlled, financed, and run on a day-to-day basis.

Accordingly, courts have held that organizations referring to their supporters as "members" nevertheless lacked standing to represent those members in litigation.  For example, in *Washington Legal Foundation v. Leavitt*, 477 F. Supp. 2d 202 (D.D.C. 2007), the court held that an organization lacked standing to sue on behalf of its members when members did not "play any role in selecting [the organization's] leadership, guiding its activities, or financing those activities."  *Id.* at 210.  The court rejected the organization's claim to treat as bona fide members people who had simply "'expressed an interest in associating [themselves] with'" the organization.  *Id.*  It explained that an organization cannot base its standing on people who simply join a "mailing list" or "view themselves as members," without also showing that those people satisfy "[t]he 'indicia of membership' criteria set out by the Supreme Court in *Hunt*"— "including (i) electing the entity's leadership, (ii) serving in the entity, and (iii) financing the entity's activities."  *Id.* at 209-210.

Similarly, in *Package Shop, Inc. v. Anheuser-Busch, Inc.*, No. 83-513, 1984 WL 6618 (D.N.J. Sept. 25, 1984), the court determined that a "trade association" comprising "over 600 …

liquor and beer retailers" whom it labeled members lacked standing to sue on their behalf. *Id.* at *7, *40. The trade association in *Package Shop* had "received contribut[ions] from 575 retailers," "issue[d] newsletters to members," "represented [the retailers'] interests at [administrative] hearings," and "pursued three major pieces of litigation" on their behalf. *Id.* at *40. Nonetheless, the court held that the association could not represent its members in court, because they did "not have the control over the organization which would give it standing to sue on their behalf." *Id.* at *41. The court emphasized that (1) "[t]he members [did] not finance the organization," except through a "one-time contribution"; (2) "[t]he organization essentially [was] run by people who are self-appointed, a fact which weighs heavily against its being considered a membership organization"; (3) "the alleged members of the organization did not vote to bring [the] lawsuit"; and (4) it did "not appear that the membership [could] control the actions of the officers and trustees, most of whom they did not elect." *Id.* at *40-41.

Courts have assessed these same considerations when ultimately allowing associations to sue on behalf of their members. In *Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico*, 906 F.2d 25 (1st Cir. 1990), the First Circuit held that a trade association could sue on its members' behalf because it had been "organized prior to the filing of [the] suit, and for different reasons"; "the members of the Association twice unanimously consented to the Association's participation in the suit"; and "[i]f the members felt their interests were not being served by the suit, they could vote to end the Association's involvement." *Id.* at 35. The Fifth Circuit held that an environmental group had standing because its members "elected the governing body of the organization" and "financed its activities" and the organization had "a clearly articulated and understandable membership structure." *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 827, 829 (5th Cir. 1997). And a Louisiana district court held

that a neighborhood organization could sue on its members' behalf where the members

"elect[ed] the organization's officers," "finance[d] its activities," and could "participate directly

in making and implementing day-to-day decisions," including the decision to bring the lawsuit.

*Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 675-676

(E.D. La. 2010).  The court observed that the members' participation in the decision to sue

"help[ed] ensure that" the organization was "representative of its members and ha[d] a strong

interest in the outcome of th[e] litigation."  *Id.* at 676.[3]

As this line of authority makes clear, SFFA can sue on behalf of its members only if they

genuinely constitute the organization, by controlling its leadership, influencing the actions it

takes, and funding or serving in it.

## II.      SFFA Does Not Bear The Indicia Of A Genuine Membership Organization

The record now makes clear that SFFA cannot make that showing.  SFFA does not

aggregate and embody its members' interests.  Rather, from the start it has been Mr. Blum's

vessel to advance his own longstanding objection to race-conscious admissions.  SFFA reflects

none of the indicia-of-membership factors that *Hunt* and its progeny have identified as essential

for an association to represent its members in federal court.

*First*, SFFA's members have never controlled its leadership.  When SFFA was founded,

Mr. Blum, ███████████████████████ appointed themselves to serve as SFFA's

President, Secretary, and Treasurer, respectively.  Ex. A, Blum Tr., at 103:20-105:19.  The

---

[3]      SFFA has previously identified a single case—*California Sportfishing Protection
Alliance v. Diablo Grande, Inc.*, 209 F. Supp. 2d 1059 (E.D. Cal. 2002)—in support of its
position that the indicia-of-membership test does not apply to associations that label themselves
"membership organizations."  As evidenced above, however, that is contrary to the weight of the
law in this area.  At any rate, there was no evidence in *California Sportfishing* that the plaintiff
did not genuinely embody the collective interests of its members.  *Id.* at 1066 (noting that the
members on whose behalf the association was suing were required to pay annual membership
dues).

current bylaws ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓ Ex. B, SFFA Amended Bylaws, §§ 4.06, 4.08 (Harvard-SFFA 0000061).[4]

SFFA's members could not ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Thus,

like the organization found to lack standing in *Package Shop*, SFFA is "essentially … run by

people who are self-appointed, a fact which weighs heavily against its being considered a

membership organization," and its members cannot "control the actions of the officers and

trustees, most of whom they did not elect." 1984 WL 6618, at *40-41; *see also Washington

Legal Foundation*, 477 F. Supp. 2d at 209 (rejecting an association's standing in part because its

members did not "participate in selecting [its] leadership"); *compare Friends of the Earth*, 129

F.3d at 829 (association had standing where its members "elected [its] governing body");

*Concerned Citizens Around Murphy*, 686 F. Supp. 2d at 675 (similar).

*Second*, SFFA's members have never had any power to influence its conduct. Both

before and after the amendments to SFFA's bylaws, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Mr. Blum testified that members

can attempt to influence the organization in only two ways. They can ▓▓▓▓▓ (Ex. A, Blum Tr.,

---

[4]    As a general rule, "[i]t has long been the case that 'the jurisdiction of the court depends
upon the state of things at the time of the action brought.'" *Grupo Dataflux v. Atlas Glob. Grp.,
L.P.*, 541 U.S. 567, 570 (2004). The First Circuit has recently stated that "where … there are no
allegations of manipulative abuse of the rule, the time-of-filing rule is inapposite to the federal
question context." *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 5 (1st Cir.
2015), *cert. denied*, 136 S. Ct. 2517 (2016); *but see Sallen v. Corinthians Licenciamentos LTDA*,
273 F.3d 14, 23 (1st Cir. 2001) (stating in a federal-question case that "[j]urisdiction depends
upon the facts as they existed when the complaint was brought"). One might legitimately
question whether SFFA here has been engaging in the kind of manipulation that the First Circuit
cautioned against in *Gadbois*, but in any event the circumstances of SFFA's membership both at
and since the time of the filing of the Complaint are insufficient to establish standing at any time.

at 112:9-18; *see id.* at 275:14-20)—but ██████████████████ is not a way of controlling

it, only a way of expressing dissatisfaction with the inability to control it.  Or they can ████

███████████████████████ (*id.* at 276:5-9)—but as the court in *Package*

*Shop* explained, "[t]here is an important difference between having the opportunity to express

opinions through letters or telephone calls and the power to control the activities of an

organization."  1984 WL 6618, at *41.  That is particularly true here, where ████████████

████████████████.  Ex. B, SFFA Amended Bylaws, § 3.03 (Harvard-SFFA

0000060) (██ ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████).  In an organization

genuinely controlled by its members, the board serves at the pleasure of the members—██ ███

████████████████████.

　　　As in *Washington Legal Foundation*, SFFA's members play no meaningful role in

"guiding its activities," 477 F. Supp. 2d at 210, and as in *Package Shop*, SFFA's members "did

not vote to bring [the] lawsuit" and cannot "control the actions of the officers," 1984 WL 6618,

at *41.  *Compare Playboy Enterprises*, 906 F.2d at 35 (association had standing where its

members "twice unanimously consented to the Association's participation in the suit" and "could

vote to end the Association's involvement"); *Concerned Citizens Around Murphy*, 686 F. Supp.

2d at 676 (association had standing where its members "participate[d] directly in making and

implementing day-to-day decisions," including the decision to sue).

　　　*Third*, SFFA's members play no meaningful role in funding the organization.  SFFA

initially had no dues requirement, and it continues to impose no ongoing obligation to pay

dues—only a one-time obligation to contribute $10, ██████████████████████



████████████████████████████████.  Ex. A, Blum Tr., at

144:2-23; Ex. B, SFFA Amended Bylaws, at 2 (SFFA-Harvard 0000053), § 3.02 (SFFA-Harvard

0000059-60).  SFFA claims that ████████████████████████████████

████████████████████████████████████████████

█████████████████████████.  Ex. D, Plaintiff's Supplemental Objections &

Responses to Defendants' First Set of Interrogatories, at 12.  And of the ████████ that SFFA

reported in income for 2015, just ████████████████████.  Ex. E, Virginia Charitable

Organization Remittance Form, Form 102, at SFFA-Harvard 0001932 (Statement of Profit &

Loss).  That is consistent with the expectation SFFA expressed at its inception, when it told the

IRS that the Project on Fair Representation—another of Blum's organizations—would "be [its]

primary funder."   Ex. C, IRS Form 1023, at Ex. D, Part VIII, Line 15 (SFFA-Harvard 0000046).

In this respect, SFFA closely resembles the organization found to lack standing in *Package Shop*.

1984 WL 6618, at *40 (organization lacked standing in part because its "members [did] not

finance" it, even though 575 members had made a "one-time contribution"); *see also Washington

Legal Foundation*, 477 F. Supp. 2d at 210 (organization lacked standing where members did not

"play any role in … financing [its] activities"); *cf. Friends of the Earth*, 129 F.3d at 829

(organization had standing where members "financed its activities"); *Concerned Citizens Around

Murphy*, 686 F. Supp. 2d at 675 (similar).

　　　　　*Fourth*, SFFA's members do not otherwise serve or participate in the organization, such

as by volunteering their services.  Mr. Blum ████████████████████████████

████████████████████████████.  Ex. A, Blum Tr., at 88:9-91:16.

As in *Washington Legal Foundation*, SFFA's members are simply supporters who joined a

"mailing list," without actually "serving in" the organization.  477 F. Supp. 2d at 209-210; *cf.*

*Concerned Citizens Around Murphy*, 686 F. Supp. 2d at 676 (organization had standing where it was "entirely dependent on members' … volunteer efforts," because the members' "direct … participation" in the organization "help[ed] ensure that" it genuinely represented them).

The fact that ██████████████████████████████████████████████████████

██████████████ sharply distinguishes SFFA from organizations like the American Civil Liberties Union ("ACLU") or the Sierra Club.  For example, ACLU members (who are required to pay annual dues) can vote to elect the boards of their local ACLU affiliates.  Ex. H, ACLU Bylaws, at Article VI, §§ 1, 4.  Each affiliate's board elects a representative to the national ACLU board, and the boards of any ten affiliates may submit a petition requesting that any action taken by the national board be submitted to a referendum of affiliate board members.  *Id.* at Article IV, § 4(a); Article IX, § 1; Article III, § 3(a).  And the dues-paying members of the Sierra Club likewise elect its board of directors, and its bylaws have various provisions for submitting questions to the entire membership for a referendum.  Ex. I, Sierra Club Bylaws, at §§ 4.3, 4.8, 5.6, 11.2. ██████████

██████████████████████████████████████████████████, it is impossible to say that SFFA "and its members are in every practical sense identical," *NAACP*, 357 U.S. at 459, or that SFFA serves as the vehicle by which its members "pool their interests, activities and capital under a name and form that will identify [their] collective interests," *Camel Hair & Cashmere Inst.*, 799 F.2d at 11.  SFFA is an organization conceived and run by Mr. Blum as a "vehicle for the vindication of [his] value interests," *Diamond*, 476 U.S. at 62.  SFFA's members may share Mr. Blum's opposition to race-conscious admissions—██████████████████████████████

██████████████████████████████████████—but that is not sufficient to convey upon SFFA the right to stand in the shoes of the few members of SFFA who could assert a claim against Harvard in their own right.  Because SFFA's members have barely any involvement in

the organization, let alone the ability to control its leadership or influence its activities, SFFA

cannot represent them in federal court.

## CONCLUSION

The action should be dismissed for lack of subject-matter jurisdiction.


Respectfully submitted,


/s/ Seth P. Waxman
Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
Daniel Winik (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com
daniel.winik@wilmerhale.com


Debo P. Adegbile (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6717
Fax: (212) 230-8888
debo.adegbile@wilmerhale.com


William F. Lee (BBO #291960)
Felicia H. Ellsworth (BBO #665232)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6687
Fax: (617) 526-5000

william.lee@wilmerhale.com
felicia.ellsworth@wilmerhale.com

Dated:  September 23, 2016                          *Counsel for Defendant President and*
                                                   *Fellows of Harvard College*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document will be sent by email to the registered participants as identified on the Notice of Electronic Filing.

/s/ Seth P. Waxman
Seth P. Waxman