**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

STUDENTS FOR FAIR ADMISSIONS, INC.,

               Plaintiff,

      v.

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE (HARVARD
CORPORATION),

               Defendant.

Civil Action No.
1:14-cv-14176-ADB

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES .......................................................................................iii

INTRODUCTION .........................................................................................................1

FACTUAL BACKGROUND .........................................................................................2

ARGUMENT.................................................................................................................6

I.      As the Court Held, the Indicia-of-Membership Test Does Not Apply to a
        Voluntary Membership Organization Like SFFA. ...........................................7

II.     SFFA Has Associational Standing Even if Harvard's Indicia-of-Membership
        Test Were Applicable. ....................................................................................12

CONCLUSION............................................................................................................20

## TABLE OF AUTHORITIES

CASES

*Alliance of Auto. Mfrs. v. Gwadosky,*
    430 F.3d 30 (1st Cir. 2005) ................................................................ 12

*Am. Legal Found. v. FCC,*
    808 F.2d 84 (D.C. Cir. 1987) ............................................................. 16

*Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC,*
    261 F. Supp. 2d 483 (E.D. Va. 2003) ............................................... 14

*Brady Campaign to Prevent Gun Violence v. Salazar,*
    612 F. Supp. 2d 1 (D.D.C. 2009) ......................................................... 9

*Calif. Sportfishing Prot. All. v. Diablo Grande, Inc.,*
    209 F. Supp. 2d 1059 (E.D. Cal. 2002) ............................................... 9

*Camel Hair & Cashmere Inst. of Am. v. Associated Dry Goods Corp.,*
    799 F.2d 6 (1st Cir. 1986) ................................................... 11, 12, 13

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800 (1988) ............................................................................ 8

*Citizens Coal Council v. Matt Canestrale Contracting, Inc.,*
    40 F. Supp. 3d 632 (W.D. Pa. 2014) ........................................ *passim*

*Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.,*
    686 F. Supp. 2d 663 (E.D. La. 2010) .................................... 10, 15, 17

*Conservation Law Found. v. Evans,*
    360 F.3d 21 (1st Cir. 2004) ............................................................... 20

*Conservation Law Found. v. Jackson,*
    964 F. Supp. 2d 152 (D. Mass. 2013) ............................................... 20

*Cullivan v. Kansas City S. R. Co.,*
    09-cv-685, 2010 WL 378433 (S.D. Ill. Jan. 27, 2010) ................... 14

*Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.,*
    675 F.3d 149 (2d Cir. 2012) ............................................................... 9

*Doe v. Stincer,*
    175 F.3d 879 (11th Cir. 1999) .......................................................... 17

*Friends of the Earth, Inc. v. Chevron Chemical Co.,*
    129 F.3d 826 (5th Cir. 1997) ...................................................... 10, 15

*Fund Democracy, LLC v. SEC*,
  278 F.3d 21 (D.D.C. 2002) ..................................................... 14

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
  695 F.3d 330 (5th Cir. 2012) .................................................. 9

*Gay-Straight Alliance of Okeechobee High Sch. v. Sch. Bd. of Okeechobee Cty.*,
  477 F. Supp. 2d 1246 (S.D. Fla. 2007) ...................................... 13

*Harlow v. Children's Hosp.*,
  432 F.3d 50 (1st Cir. 2005) ..................................................... 8

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ........................................................ *passim*

*Libertad v. Welch*,
  53 F.3d 428 (1st Cir. 1995) ................................................... 12

*NAACP v. Alabama*,
  357 U.S. 449 (1958) ......................................................... 11, 12

*New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*,
  565 F.3d 683 (10th Cir. 2009) ................................................ 20

*Oregon Advocacy Ctr. v. Mink*,
  322 F.3d 1101 (9th Cir. 2003) ................................... 14, 16, 17, 18

*Package Shop, Inc. v. Anheuser-Busch, Inc.*,
  No. 83-cv-513, 1984 WL 6618 (D.N.J. Sept. 25, 1984) .................... 10, 16

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
  551 U.S. 701 (2007) ............................................................. 6

*PennEnvironment v. PPG Indus., Inc.*,
  23 F. Supp. 3d 553 (W.D. Pa. 2014) ......................................... 12

*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2009) ................................................ 14

*Pharm. Care Mgmt. Ass'n v. Rowe*,
  429 F.3d 294 (1st Cir. 2005) ................................................... 6

*Playboy Enterprises, Inc. v. Pub. Serv. Comm. of Puerto Rico*,
  906 F.2d 25 (1st Cir. 1990) ................................................... 10

*Schuette v. BAMN*,
  134 S. Ct. 1623 (2014) ........................................................ 11

*Sierra Forest Legacy v. Sherman*,
   646 F.3d 1161 (9th Cir. 2011) ................................................................ 20

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................ 11

*Sylvia's Haven, Inc. v. Mass. Dev. Fin.*,
   397 F. Supp. 2d 202 (D. Mass. 2005) ..................................................... 18

*U.S. Telecom Ass'n v. FCC*,
   359 F.3d 554 (D.C. Cir. 2004) ................................................................ 9

*UAW v. Brock*,
   477 U.S. 274 (1986) ............................................................................ 11

*Washington Legal Foundation ("WLF") v. Leavitt*,
   477 F. Supp. 2d 202 (D.D.C. 2007) ........................................... 10, 15, 16, 17

*Wilderness Soc'y v. Norton*,
   No. 03-64, 2005 WL 3294006 (D.D.C. Jan. 10, 2005) .................................. 20

## OTHER AUTHORITIES

Ann E. Carlson, *Standing for the Environment*,
   45 UCLA L. Rev. 931 (1998) ............................................................. 18, 19

Brad Knickerbocker, *A 'Hostile' Takeover Bid at the Sierra Club*,
   Christian Sci. Monitor (Feb. 20, 2004) ...................................................... 19

Shawn L. Alexander, *An Army of Lions: The Civil Rights Struggle Before the NAACP*
   (2012) ............................................................................................. 19

Wright & Miller, Fed. Prac. & Proc. (2d ed.) ............................................. 8, 11

## INTRODUCTION

Harvard's motion to dismiss should be denied. This Court has squarely rejected the legal theory upon which Harvard's motion depends, and it has instructed SFFA not to respond to Harvard's motion to reconsider that ruling. Harvard's latest motion is yet another attempt to convince this Court to reverse itself. But under the law-of-the-case doctrine, Harvard must show that the Court's prior determination was clearly erroneous. Harvard cannot make that showing. Like every court that has confronted this issue, this Court correctly held that a voluntary membership organization such as SFFA need not meet the "indicia-of-membership" test to have associational standing. Any other conclusion would violate Supreme Court precedent, be impractical, and raise significant First Amendment problems.

But SFFA would satisfy that test even it if were applicable here. SFFA has nearly ███ members; it has issued Articles of Incorporation, Bylaws, and written membership policies; the IRS has approved it as a 501(c)(3) nonprofit organization; and nearly ██ of its members have made a financial contribution. Further, SFFA has brought forth ████████ members who have suffered an Article III injury, who have attested under oath to their involvement in and support of SFFA's mission, and who have ultimate control over this litigation through their willingness to participate. In short, the members on whose behalf SFFA has brought this action have the indicia of membership needed to establish associational standing under the "functional" test Harvard seeks to impose.[1]

At bottom, it is unsurprising that Harvard desperately contests SFFA's standing and is unwilling to accept the legal parameters of that inquiry. Standing has been challenged in *every*

---

[1] If the Court grants reconsideration and rejects SFFA's unresolved assertion of First Amendment privilege, then SFFA reserves the right to submit additional evidence and/or seek an evidentiary hearing to the extent that the Court believes SFFA cannot establish standing based on the present record. *See* Doc. 189 at 2-3.

case of this type—and the Supreme Court has rebuffed the challenge *every* time. Nor is it surprising to see Harvard hurl insults at SFFA's president. It is the same treatment Alan Bakke, Jennifer Gratz, Barbara Grutter, and Abigail Fisher experienced. Universities applaud and honor the founders of groups like the NAACP, ACLU, and Sierra Club. But Harvard derisively calls Edward Blum a "gadfly." Motion to Dismiss ("Mot.") at 2. No matter. Ad hominem attacks are not a substitute for a winning argument based on legal precedent and persuasive record evidence. That is what Harvard lacks.

## FACTUAL BACKGROUND



Ex. A, Deposition Transcript of Edward Blum ("Blum Tr.") at 37, 47-49, 66.

*Id.* at 48-49.

Ex. B, Plaintiff's Supplemental Objections & Responses to Defendant's First Set of Interrogatories ("Interrogatory Responses") at 10.

Blum Tr. at 172.

Two of those individuals were

, and his father,                , a first-generation Chinese immigrant. Despite attaining a

GPA,            ACT score of    , and countless other achievements, *see* Ex. C, Application File of            at HARV00003879-3905,

. Ex. D,



; Ex. E, Declaration of

Blum Tr. at 217.

On July 30, 2014, SFFA incorporated as a Virginia nonprofit corporation. Ex. F, SFFA Certificate of Incorporation.

Ex. G, SFFA Bylaws ("Bylaws") at 1.

*Id.* at 1-5. SFFA applied to be a 501(c)(3) nonprofit organization, describing itself as "a coalition of prospective applicants and applicants to higher education institutions who were denied admission to higher education institutions, their family members, and other individuals who support the organization's purpose and mission of eliminating racial discrimination in higher education admissions." Ex. H, Application for Tax-Exempt Status at SFFA-Harvard 0000041. The IRS approved SFFA's application. Ex. I, IRS Approval of Tax-Exempt Status.

SFFA's membership

Bylaws at 1-2. From the outset,

Interrogatory Responses at 11.

*Id.* at 10-11.

████████████████████████ *Id.* at 11; Ex. J, Unanimous Written Consent of the Board

to Amend the Bylaws ("Bylaws Amendments") at 1-2.

████████████████████████████████████████████

████████████████████████████████████████████████

████ Interrogatory Responses at 11; Ex. K, Supplementary Interrogatory Response at 1-2.

Membership grew steadily over the ensuing months as news of SFFA's activities spread. ████

████████████████████████████████████████████████

████████████████████████. Ex. L, Declaration of ████████ at 1-2. ████████

█████████████████████████████████████████. *Id.* ██████████

████████████████████████████████████████████████

████████████████████████. Interrogatory Responses at 10-11. ████████

███████████████████████████████████████. *Id.* at 12. ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████ Ex. M, Declaration of ████████████; Ex. N, Declaration of ██████.

████████████████████████████████████████

████████████████████████████████ Bylaws Amendments at 1-2; Blum Tr. at 334. ████

████████████████████████████████████████████████

████████████████████████████████████████████████



██████████████████████████████ Bylaws Amendments at 1; Bylaws at

2. ██████████████████████████████████████████ ███.

█████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████ Bylaws at 1-2. ███████████████████████

██████████████████████████████ Bylaws Amendments at 1-2. ███

███████████████████████████████████████████████████

██████████████████████████████ Ex. O, Registration Statement

for a Charitable Organization at SFFA-Harvard 0001932; *see also* Interrogatory Responses at 9,

12 (██████████████████████████████████).

SFFA has continued to welcome many more members. Among them are ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████ Ex. P,

Declaration of ██████████████; Ex. Q, Declaration of ████████████; Ex. R, Declaration of

████; Ex. S, Declaration of ████████. In addition, ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Ex. T, Declaration of ████████████.

In all, SFFA has identified ▮▮▮ standing members. ▮▮▮▮▮▮▮▮



All of the standing members have declared under oath that ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ Exs. D, L-N, P-T.

## ARGUMENT

A membership association has standing if it satisfies three requirements: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977). Harvard does not dispute that SFFA satisfies these requirements. Mot. at 8. Nor could it.

First, SFFA has members with standing because "one form of injury under the Equal Protection Clause is being forced to compete in a race-based system that may prejudice the plaintiff." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). Second, this lawsuit is germane to SFFA's mission ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ Bylaws at 1. Third, this case does not require participation of individual members because SFFA "requests only equitable relief." *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 307 (1st Cir. 2005).

Because Harvard cannot dispute that SFFA satisfies the three-part test for associational standing, it argues that SFFA must satisfy a *fourth* requirement to establish associational standing—*i.e.*, SFFA must prove that its members exhibit "indicia of membership." Mot. at 7-11. Harvard is incorrect. First, the Court correctly held that the indicia-of-membership test does not apply to voluntary membership associations like SFFA. Second, the facts demonstrate that even if the indicia-of-membership test somehow applied, SFFA would easily satisfy it.

I. **As the Court Held, the Indicia-of-Membership Test Does Not Apply to a Voluntary Membership Organization Like SFFA.**

This Court has already held that the indicia-of-membership test does not apply to SFFA because it is a voluntary membership organization. Earlier this year, Harvard asked for far-reaching discovery "relating to SFFA's operations, including the recruitment and selection of members, the sources of its funding, and how members participate in the organization." Doc. 147 at 1. In seeking that discovery, Harvard made the same argument it recycles now—that the Court must "assess whether SFFA's members truly possess the 'indicia of membership' required for standing" to determine standing. *Id.* at 4.

This Court correctly denied such intrusive discovery on the ground that Harvard had misstated the test for associational standing. As the Court held, Harvard's requests were "only relevant to indicia of membership, which *doesn't go to an actual membership organization*." 4/29/16 Hearing Tr. at 13:4-6 (emphasis added). Thus, the indicia-of-membership test has no application here. *Id.* at 6:14-16 ("I think that SFFA has the better part of this argument. They have an organization with membership. It's not a nonmembership organization."); *id.* at 7:21-23 ("[I]f it's a membership organization, it has members, I think it sort of ends the inquiry."); *id.* at 10:8-9 ("[Y]ou're talking about indicia of membership, and I think that goes to organizations that don't have actual members."); *id.* at 11:14-18 (refusing request "to test whether they're members

or real members" because "that whole indicia of membership thing comes up in those organizations that don't actually have any members at all"); *id.* at 11:21-22 (finding no cases "where the indicia of membership criteria are applied to an organization that has actual members"); *id.* at 13:10-12 (denying discovery because it is "only relevant where you're looking at the indicia of membership"); *id.* 19:3-4 (denying discovery requests as irrelevant "to the *Hunt* factors when you have a membership organization").

This Court's ruling is now "law of the case" and should not be disturbed. *Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005). "A court has the power to revisit prior decisions of its own" but "as a rule should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). "A trial court could not operate if it were to yield to every request to reconsider each of the multitude of rulings that may be made between filing and final judgment. All too often, requests would be made for no purpose but delay and harassment. Other requests, made in subjective good faith, would reflect only the loser's misplaced attachment to a properly rejected argument." Wright & Miller, Fed. Prac. & Proc. § 4478.1 (2d ed.). As Harvard offers no new cases and makes no new arguments, it cannot shoulder its heavy burden.

In any event, this Court correctly refused to apply the indicia-of-membership test, which derives from the Supreme Court's *Hunt* decision. There, the Washington State Apple Advertising Commission, a state agency, sued on behalf of the state's apple growers and dealers. *See* 432 U.S. at 335-42. The familiar three-part test for associational standing, which the Supreme Court developed with membership organizations in mind, did not fit the Commission because it was "not a traditional voluntary membership organization such as a trade association, for it [had] no

members at all." *Id.* at 342. The "question presented" thus was whether "the Commission's status as a state agency, rather than a traditional voluntary membership organization, preclude[d] it from asserting the claims of the Washington apple growers and dealers who form[ed] its constituency." *Id.* at 344. The Court found that the Commission had standing because its constituents "possess[ed] all of the indicia of membership." *Id.*

But the Supreme Court *never* suggested that this indicia-of-membership test should apply to every organization asserting associational standing. Precisely the opposite: *Hunt* clarified that "[i]f the Commission were a voluntary membership organization," then "its standing to bring this action as the representative of its constituents would be clear" because it would have satisfied the traditional three-part test for associational standing. *Id.* at 342-43.

As a result, it is settled law that "the 'indicia of membership' requirement in *Hunt* applies only to situations in which an organization is attempting to bring suit on behalf of individuals who are not members." *Calif. Sportfishing Prot. All. v. Diablo Grande, Inc.*, 209 F. Supp. 2d 1059, 1066 (E.D. Cal. 2002) (collecting cases); *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012) (indicia-of-membership test applies "[i]f the association seeking standing does not have traditional members"); *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 157-59 (2d Cir. 2012) (same); *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 594 (D.C. Cir. 2004) (same). In sum, "the 'indicia of membership' … is necessary only when an organization is not a 'traditional membership organization.'" *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1, 29 (D.D.C. 2009).

The cases Harvard points to all involved plaintiffs that were *not* traditional membership organizations. In *Washington Legal Foundation ("WLF") v. Leavitt*, the plaintiff was a "public interest law firm" that tried to sue on behalf of three individuals who were subscribers to its

mailing list and "[we]re not members as defined by [the law firm's] Articles of Incorporation."
477 F. Supp. 2d 202, 208-10 (D.D.C. 2007). In *Package Shop, Inc. v. Anheuser-Busch, Inc.*, the
plaintiff's so-called members "consist[ed] exclusively of a group of contributors to [an unrelated]
1979 anti-deregulation [campaign]." No. 83-cv-513, 1984 WL 6618, at *7-8, *40 (D.N.J. Sept.
25, 1984). In *Friends of the Earth, Inc. v. Chevron Chemical Co.*, the court applied the indicia-
of-membership test because the plaintiff was a nonprofit organization that "had never taken any
formal affirmative action to comply with its responsibility and authority to determine
membership requirements." 129 F.3d 826, 827 (5th Cir. 1997). And in *Concerned Citizens
Around Murphy v. Murphy Oil USA, Inc.*, the plaintiff was an organization with no "formal list
of members" who were only "linked through informal networks and email contact lists." 686 F.
Supp. 2d 663, 675 (E.D. La. 2010).[2]

Harvard's inability to find applicable authority is unsurprising because its position is
nonsensical. A membership organization does not need to prove that "for all *practical* purposes,
[it] performs the functions of a traditional [membership organization]," *Hunt*, 432 U.S. at 344
(emphasis added), because it already is a voluntary membership organization. And its members
do not need to exhibit any "indicia of membership," *id.*, because they are in fact members of the
organization. Harvard attempts to muddle straightforward precedent.

If Harvard were right, there would be countless cases applying the indicia-of-membership
test to membership organizations. But they do not exist. Neither the Supreme Court nor the First
Circuit has required a membership organization to satisfy anything other than the three-part test

---

[2]    Harvard's last case—*Playboy Enterprises, Inc. v. Pub. Serv. Comm. of Puerto Rico*, 906
F.2d 25 (1st Cir. 1990)—is irrelevant. There, the defendant argued that the association failed the
"germaneness" requirement because it was furthering the interests of Playboy Enterprises, not its
members. *See id.* at 34. In disagreeing, the First Circuit did not require the association to satisfy
the indicia-of-membership test; rather, it found that the lawsuit was germane to the association's
purpose. The words "indicia of membership" do not appear in the opinion.

for standing. Harvard suggests that courts have failed to apply the indicia-of-membership test to membership organizations because sophisticated litigants somehow keep missing the issue. Doc. 154 at 4. But courts have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). It is implausible that the courts and parties simply missed the issue in cases like *Parents Involved* and *Schuette v. BAMN*, 134 S. Ct. 1623 (2014). The myriad decisions addressing associational standing express "little concern" over the "nature of the organization" because "most organization plaintiffs exist in traditional voluntary forms with knowing and willing members." Wright & Miller, *supra*, § 3531.9.5; *id.* (explaining that *Hunt* "does not provide any general lessons" because "[m]ost cases involve representation by environmental, neighborhood, political action, civil rights, trade, or like familiar organizations in traditional forms").

Harvard frets about the prospect of ideological organizations bringing litigation, but the law actually *favors* these kinds of suits. The Supreme Court has given "associational standing" a "strong endorsement." *Camel Hair & Cashmere Inst. of Am. v. Associated Dry Goods Corp.*, 799 F.2d 6, 11 (1st Cir. 1986). Suits by associations are "advantageous both to the individuals represented and to the judicial system as a whole" because an association can provide a "'medium through which its individual members seek to make more effective the expression of their views.'" *UAW v. Brock*, 477 U.S. 274, 289-90 (1986) (quoting *NAACP v. Alabama*, 357 U.S. 449, 459 (1958)). Forming an organization to vindicate the rights of individuals is neither unusual nor undesirable. "[T]he doctrine of associational standing recognizes that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Id.* at 290; *PennEnvironment v. PPG Indus., Inc.*, 23 F. Supp. 3d

553, 581-82 (W.D. Pa. 2014) ("[T]hat the plaintiff organizations were 'solicited' … to join the lawsuit … [is] not relevant to the issue of [associational] standing.").[3]

Harvard's position, if adopted, would put associational standing on a collision course with the First Amendment. If the indicia-of-membership test applied in every case, then traditional membership organizations—including the NAACP, Sierra Club, ACLU, Conservation Law Foundation, League of Women Voters, and the Brady Center—would be threatened with the type of full-blown audit that Harvard seeks to conduct of SFFA here. Defendants could obtain discovery of everything from membership lists to details about the innermost workings of the organization. The potential chilling effect on First Amendment freedoms is obvious and constitutionally intolerable. *See NAACP*, 357 U.S. at 462-63.

In short, the indicia-of-membership test does not apply to traditional membership organizations. Indeed, the First Circuit has limited its inquiry to the three *Hunt* factors even when the membership association had no employees, its executive director was an attorney, and it had only six members. *See Camel Hair & Cashmere Institute of Am.*, 799 F.2d at 7, 11-12. SFFA has met its burden by demonstrating that it is a voluntary membership organization and that it satisfies the three *Hunt* requirements. *See, e.g., Alliance of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30, 37 (1st Cir. 2005); *Libertad v. Welch*, 53 F.3d 428, 440 (1st Cir. 1995). Because SFFA has made this showing, it has associational standing.

## II.   SFFA Has Associational Standing Even if Harvard's Indicia-of-Membership Test Were Applicable.

Even if this Court reverses its prior ruling and holds that SFFA must satisfy the indicia-of-membership test, SFFA still has standing. According to Harvard, the indicia-of-membership

---

[3]   Harvard claims that permitting standing without investigating the indicia of membership would "enable plaintiffs to circumvent the rigorous requirements for class actions under [Rule] 23." Doc. 154 at 1. The Supreme Court long ago rejected this policy-based objection to the three-part test for associational standing. *See UAW*, 477 U.S. at 289-90.

test is a "functional inquiry, not a formal one." Mot. at 8. It asks whether an organization "in a very real sense ... represents the [injured individuals] and provides the means by which they express their collective views and protect their collective interests." *Hunt*, 432 U.S. at 344-45. SFFA easily passes that test.

SFFA represents the shared interests of its nearly ███ members. Each member was aware of SFFA's mission and chose to join SFFA. Nearly ███ of them have contributed financially (more than ███ in 2015) to support its mission. ██████████████████ ██████████████████████████████ And at least ███ SFFA members have declared that they are standing members in this action and that SFFA represents their interests. SFFA is not Mr. Blum's "alter ego," Mot. at 2; it is a traditional membership organization comprised of individuals who have "band[ed] together in an association ... to promote the members' interest." *Camel Hair & Cashmere Institute*, 799 F.2d at 11. If an "unincorporated, voluntary association of [high school] students" meets the demands of associational standing, then Harvard's contention that SFFA does not is untenable. *Gay-Straight Alliance of Okeechobee High Sch. v. Sch. Bd. of Okeechobee Cty.*, 477 F. Supp. 2d 1246, 1248, 1251-52 (S.D. Fla. 2007).

The answer is the same if the Court evaluates the question in a more granular way. In attacking SFFA, Harvard pays little attention to whether SFFA's standing members—as opposed to the broader membership—have indicia of membership. But the focus must be on those "whose behalf this lawsuit is brought." *Citizens Coal Council v. Matt Canestrale Contracting, Inc.*, 40 F. Supp. 3d 632, 639 (W.D. Pa. 2014). The function of the indicia-of-membership test is to ensure the association "is sufficiently identified with and subject to the influence *of those it seeks to represent* as to have a 'personal stake in the outcome of the controversy.'" *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003) (emphasis added). Indeed, Harvard admits that

the key issue is whether SFFA may "stand in the[] shoes" of those it seeks to represent in court. Mot. at 8 (citing *Hunt*, 432 U.S. at 343-44). Harvard avoids the issue because, as explained below, it cannot seriously dispute that SFFA "genuinely represents" these individuals. Mot. at 2.

*First*, all of SFFA's standing members declared under oath that ███████████ ███████████ Exs. D, E, L-N, P-T. That alone is dispositive. *Compare Citizens Coal*, 40 F. Supp. 3d at 643 (approving standing because "[e]ach of the Standing Witnesses testified at their depositions that they joined CCC so that the lawsuit could be filed" and "knew that CCC was filing this lawsuit on their behalf"), *with Fund Democracy, LLC v. SEC*, 278 F.3d 21, 26 (D.D.C. 2002) (rejecting standing because no members could attest that the organization "represented their views and that they approved of [its] activities"). Harvard incorrectly claims that the declarations are ███████████ Mot. at 6. They merely omit certain details the First Amendment shields from disclosure. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2009). The standing members' declarations show they ███████████████████████ ███████████ Exs. D, E, L-N, P-T. There is no basis to discredit uncontroverted testimony. *Cullivan v. Kansas City S. R. Co.*, 09-cv-685, 2010 WL 378433, at *4 (S.D. Ill. Jan. 27, 2010) ("[C]ourts will take as true, and often give great weight, to uncontradicted affidavits in discerning whether subject matter jurisdiction exists."); *Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC*, 261 F. Supp. 2d 483, 492 (E.D. Va. 2003) (same).

*Second*, not only do SFFA's standing members aver that ███████████, but every corporate document and practice confirms their testimony. SFFA has a "clearly articulated and understandable membership structure," *Friends of the Earth*, 129 F.3d at 829, under which these individuals qualify as members, *see supra* at 3-6. SFFA and its standing members thus are not

colluding in a post-hoc attempt to "manufacture" standing. *See WLF*, 477 F. Supp. 2d at 211 (rejecting standing where the injured individuals were "not members as defined by [the] Articles of Incorporation" and were merely labeled as "'members' for the purposes of this lawsuit"). Harvard does not and cannot dispute that these individuals are genuine SFFA members.

*Third*, the standing members "voluntarily associated themselves" with SFFA. *Friends of the Earth*, 129 F.3d at 829. No individual was coerced into joining SFFA. In fact, ███████████ ████████████████████ Blum Tr. at 157-58. Thus, SFFA's standing is even stronger than the Commission's in *Hunt*, which forced apple growers and dealers to "finance[] the Commission through mandatory assessments." *Friends of the Earth*, 129 F.3d at 829 (citing *Hunt*, 432 U.S. at 345). This provides additional assurance that SFFA "genuinely represents" the standing members. *Concerned Citizens*, 686 F. Supp. 2d at 675 (approving standing where the members joined voluntarily); *Citizens Coal*, 40 F. Supp. 3d at 641 n.10 (approving standing where "the Standing Witnesses came to be members of CCC ... after learning about the organization, generally through community meetings, grassroots outreach events, or the website").

*Fourth*, when the standing members ██████████████████████ ███████████████████████████████████████ *See supra* at 2-6. ███████████████████████████████████ ████████████████████████ Blum Tr. at 271-72. ███████████ ███████████████████████████████████ *Id.* Thus, ████████████████████████████████████████████ ████████ *Concerned Citizens*, 686 F. Supp. 2d at 675 (approving standing where there was "no indication in the record that [the organization] has any dissenting members with respect to this litigation or any other issue"); *Citizens Coal*, 40 F. Supp. 3d at 641 (approving standing where

the organization "met with the Standing Witnesses prior to filing ... this action and obtained their approval to bring this action"); *cf. Package Shop*, 1984 WL 6618, at *41 (rejecting standing because injured members had merely supported prior, unrelated litigation).

*Fifth*, SFFA's standing members have "control" over this litigation. *Citizens Coal*, 40 F. Supp. 3d at 639-40. If they "chose to terminate their membership in [SFFA], that would in effect terminate this litigation as associational standing would then be lacking." *Id.* at 641. The standing members thus are not "concerned bystanders," Mot. at 1—they are indispensable. Their ability to resign is a powerful mechanism of control over SFFA. *Compare Citizens Coal*, 40 F. Supp. 3d at 640 (approving standing because "the Standing Witnesses here do possess the means to influence the priorities and activities that [the organization] has undertaken, specifically, through this litigation, as there would be no lawsuit without the Standing Witnesses"), *with Am. Legal Found. v. FCC*, 808 F.2d 84, 87-88 (D.C. Cir. 1987) (rejecting standing where a nonprofit media law center sought to represent "all members of the public who regularly watch ABC News"). Moreover, the standing members ███████████████████████████████ ████████ *See supra* at 6.

*Sixth*, the standing members "possess the means to influence the priorities and activities that [SFFA] has undertaken." *Citizens Coal*, 40 F. Supp. 3d at 640. In addition to their ability to resign (and end this litigation), they "play [a] role in selecting [SFFA's] leadership." *WLF*, 477 F. Supp. 2d at 210. ██████████████████████████████████████████

███████████████████████████████████████████████

████████████████ Bylaws Amendments at 1. ████████████

██████████████████████████ *Or. Advocacy*, 322 F.3d at 1111-12 (approving standing where constituents serve on an "advisory council"); *Citizens Coal*, 40 F. Supp. 3d at

641 (approving standing where bylaws allowed members to "serve on an advisory committee formed directly to influence [the organization's] actions in this litigation"). ██████████ ████████████████████████████████████████ *Supra* at 6; *Citizens Coal*, 40 F. Supp. 3d at 641 (approving standing where the injured individuals were in "regular and direct contact with [the organization's] executive director").

Harvard contends that SFFA has standing only if its members "control its leadership," and that SFFA's other directors █████████████████████████████████████ ████████████████████████████████████ Mot. at 11-12. But Harvard cites no case in which "control of leadership" was decisive. Multiple courts have held the opposite. *See Or. Advocacy*, 322 F.3d at 1111-12 (approving standing where the organization's constituents could participate only on an "advisory council"); *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) (approving standing because "advisory council" ensured the "constituents ... possess the means to influence the priorities and activities the Advocacy Center undertakes"); *Citizens Coal*, 40 F. Supp. 3d at 638, 642 (approving standing even though the members "do not have voting rights").

Harvard further asserts that SFFA is merely a "litigation vehicle to advance [Mr. Blum's] personal philosophy regarding race-conscious admissions" and so SFFA can ignore the wishes of its members. Mot. at 1, 12-13. But Harvard has *no* evidence that SFFA "is unresponsive to its members," *Concerned Citizens*, 686 F. Supp. 2d at 676, or is failing to advance their interests. ███████████████████████████████████████ *See* Exs. D, L-S. Baseless speculation that SFFA acts against its members' interests cannot defeat SFFA's standing.

*Seventh*, SFFA's members support it financially. *WLF*, 477 F. Supp. 2d at 210 (rejecting standing where, among other things, the organization "made no showing that [the individuals] in

any way ... financially support" the organization). ██████████████████

████████████████████████████████████████████████████

██████████████ Exs. D-E, P-T. Thus, the claim that members must "play [a] meaningful role in

funding the organization," Mot. 13, is satisfied. Any assertion that members must provide █

██████████████ finds no support. Courts have found standing even when the constituents

provided *no* funding to the organization. *See, e.g.*, *Or. Advocacy*, 322 F.3d at 1111 (approving

standing for a group "funded primarily by the federal government, and not by its constituents");

*Sylvia's Haven, Inc. v. Mass. Dev. Fin.*, 397 F. Supp. 2d 202, 207 (D. Mass. 2005) (approving

standing for an organization that represented homeless children). Harvard's "financial control"

test is not only legally unsupported, but would shut out many organizations that serve the poor

and underprivileged, as their members rarely "play [a] meaningful role in funding the

organization" or "volunteer their services." Mot. at 13-14.

*Eighth*, SFFA's standing members ████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ *See supra* at 2-6.

This is far more participation than members of "environmental groups such as the NRDC and the

[Environmental Defense Fund]," whose lawyers have "virtually no contact with the members,"

"do not consult with or even know the members," and often "cold-call[] membership lists" to

find standing members. Ann E. Carlson, *Standing for the Environment*, 45 UCLA L. Rev. 931,

961-62 (1998). Harvard has no support for its novel claim that an organization's members *must*

"serve or participate in the organization, such as by volunteering their services" for it to have

standing, Mot. at 14, but SFFA satisfies this criterion in any event.

Taken together, all of these facts prove that SFFA "genuinely represents" its members. Harvard ignores these substantial indicia of membership and instead advocates for an inflexible view of what factors it subjectively believes make a membership organization "bona fide." *Id.* at 9. Thus, while Harvard claims to want a "functional inquiry, not a formal one," *id.* at 8, it seeks the opposite. Harvard demands that SFFA have a specific organizational structure to establish standing. "Nothing in *Hunt*," however, "indicates that the factors delineated there are the only factors to be considered." *Citizens Coal*, 40 F. Supp. 3d at 640. Such a straight-jacketed approach would "exalt form over substance." *Hunt*, 432 U.S. at 345.

That SFFA does not have the same structure as the ACLU (established in 1920, with a $133.4 million budget today) or the Sierra Club (established in 1892, with a $97.8 million budget today) proves nothing. Associations come in all forms. SFFA is barely two years old and ███

████████████████████████████████████████████████████████████

████████████  When the NAACP formed, it "initially set membership dues at one dollar for associates and two dollars for contributors" to "attract mass support," and it survived "due in large measure to external financial support." Shawn L. Alexander, *An Army of Lions: The Civil Rights Struggle Before the NAACP*, xv (2012). Harvard's fixation on "annual dues," Mot. at 11 at n.3, 14-15, also is irrelevant. Numerous associations offer lifetime membership, including the NAACP, https://goo.gl/Iw7G0s, and the Sierra Club, https://goo.gl/VrC4yw.

Other associations limit the number of member-elected directors to prevent a "hostile takeover." *See* Brad Knickerbocker, *A 'Hostile' Takeover Bid at the Sierra Club*, Christian Sci. Monitor (Feb. 20, 2004); Carlson, *supra*, at 961 n.160 ("With the possible exception of the Sierra Club, members of the national environmental organizations do not exert direct influence on organizational decision making."). For example, the Wilderness Society, one of the largest and

oldest conservationist organizations in the country, is controlled by a Governing Council that is self-perpetuating (its directors are elected not by the members, but "at meetings of the Governing Council"), and its "[m]embers shall not have voting rights." *See Our Bylaws*, The Wilderness Society, art. II, § 1.a; art. V, § 1, https://goo.gl/Y7kY5d. Yet courts have repeatedly found the Wilderness Society to be "a membership organization," *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1171 (9th Cir. 2011), with standing to sue on behalf of its members, *id*. at 1179-80; *see e.g.*, *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 696 n.13 (10th Cir. 2009); *Wilderness Soc'y v. Norton*, No. 03-64, 2005 WL 3294006, at *4 (D.D.C. Jan. 10, 2005). The Conservation Law Foundation similarly is run by Trustees chosen by a self-perpetuating Board; "[m]embers shall have only such privileges as the Trustees may designate from time to time and shall in such capacity have no right to notice of or to vote at any meeting." Ex. U, Bylaws of Conservation Law Foundation, Inc., art. III, § 2; art. IV, § 3, art. V, § 1. Yet no court has ever questioned that the organization represents its members. *See, e.g.*, *Conservation Law Found. v. Jackson*, 964 F. Supp. 2d 152, 160-64 (D. Mass. 2013); *cf. Conservation Law Found. v. Evans*, 360 F.3d 21, 24-27 (1st Cir. 2004).

In sum, the record demonstrates that SFFA "genuinely represents" its members under any truly "functional" inquiry. The standing members were injured by Harvard's admissions policies,

No more is required to meet the indicia-of-membership test.

## CONCLUSION

For the foregoing reasons, Harvard's motion to dismiss should be denied.

Respectfully submitted,

*/s/ William S. Consovoy*

Paul M. Sanford BBO
#566318
Benjamin C. Caldwell BBO
#67506
BURNS & LEVINSON LLP
One Citizens Plaza, Suite 1100
Providence, RI  02903
Tel: 617-345-3000
Fax: 617-345-3299
psanford@burnslev.com
bcaldwell@burnslev.com

William S. Consovoy
Thomas R. McCarthy
J. Michael Connolly
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Boulevard
Suite 700
Arlington, Virginia 22201
Tel: 703.243.4923
Fax: 703.243.4923
will@consovoymccarthy.com
tom@consovoymccarthy.com
mike@consovoymccarthy.com

Patrick Strawbridge
BBO #678274
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
Boston, MA 02109
Tel: 617.227.0548
patrick@consovoymccarthy.com

*Counsel for Plaintiff Students for Fair Admissions, Inc.*

Dated: October 21, 2016

## CERTIFICATE OF SERVICE

I hereby certify that this document will be sent by email to the registered participants as identified on the Notice of Electronic Filing.

/s/ William S. Consovoy
William S. Consovoy