UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION), <br><br> Defendant. | Civil Action No. 1:14-cv-14176-ADB <br><br> **Motion for Leave to File Granted November 3, 2016 [Dkt. 215]** <br><br> <u>Oral Argument Requested</u> |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNTS IV AND VI**

# **TABLE OF CONTENTS**

ARGUMENT ............................................................................................................................. 2

I.     The Court Can And Should Resolve Harvard's Motion Now ............................. 2

II.    Count IV Asserts A Nonexistent Legal Standard ................................................ 3

III.   Harvard Is Entitled To Judgment On Count VI .................................................. 6

CONCLUSION .......................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrett v. L.F.P., Inc.*,
　1986 WL 7698 (N.D. Ill. June 27, 1986) ................................................................................ 3

*City of Los Angeles v. Lyons*,
　461 U.S. 95 (1983) .................................................................................................................. 2

*Curran v. Cousins*,
　509 F.3d 36 (1st Cir. 2007) .................................................................................................... 2

*DeMayo v. Nugent*,
　517 F.3d 11 (1st Cir. 2008) .................................................................................................... 2

*Dysart v. Remington Rand*,
　31 F. Supp. 296 (D. Conn. 1939) ........................................................................................... 3

*Fisher v. University of Texas at Austin*,
　136 S. Ct. 2198 (2016) ............................................................................................................ 7

*Garcia-Catalan v. United States*,
　734 F.3d 100 (1st Cir. 2013) .................................................................................................. 5

*Gratz v. Bollinger*,
　539 U.S. 244 (2003) ................................................................................................................ 5

*Grutter v. Bollinger*,
　539 U.S. 306 (2003) ....................................................................................................... 1, 4, 5

*Kelly v. United States*,
　809 F. Supp. 2d 429 (E.D.N.C. 2011) ................................................................................ 2-3

*Motown Record Corp. v. George A. Hormel & Co.*,
　657 F. Supp. 1236 (C.D. Cal. 1987) ...................................................................................... 2

*Najas Realty, LLC v. Seekonk Water Dist.*,
　821 F.3d 134 (1st Cir. 2016) .................................................................................................. 2

*Picker Int'l, Inc. v. Mayo Found.*,
　6 F. Supp. 2d 685 (N.D. Ohio 1998) ..................................................................................... 2

*Regents of University of California v. Bakke*,
　438 U.S. 265 (1978) ....................................................................................................1, 3, 4, 5

*Rodriguez v. California Highway Patrol*,
　89 F. Supp. 2d 1131 (N.D. Cal. 2000) ................................................................................... 8

*Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*,
   289 U.S. 689 (1933) .................................................................................................................8

*Stark v. Hartt Transp. Sys., Inc.*,
   2013 WL 358266 (D. Me. Jan. 28, 2013) .................................................................................8

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 8 ...............................................................................................................................5

Fed. R. Civ. P. 12 .............................................................................................................................5

SFFA offers three objections to Harvard's motion for judgment on the pleadings on Counts IV and VI. None of those objections has merit.

*First*, SFFA argues that this Court has no power to grant judgment under Rule 12(c) on fewer than all counts in the complaint. In fact, federal courts routinely address motions for partial judgment on the pleadings, and the First Circuit has itself directed judgment on the pleadings to be entered as to some but not all claims asserted.

*Second*, SFFA argues that *Bakke* and *Grutter* set forth two different standards for consideration of race in admissions, and that Justice Powell's opinion in *Bakke* approved only the consideration of race to fill the "last few places" of a university's incoming class. That argument is simply wrong; Justice Powell endorsed the consideration of race as one of many factors for "each applicant." *Regents of University of California v. Bakke*, 438 U.S. 265, 317 (1978). SFFA's contention that *Grutter* approved a form of race-conscious admissions meaningfully distinct from the consideration of race contemplated by *Bakke* is contradicted by the *Grutter* opinion, which described the Michigan Law School admissions policy as "like the Harvard Plan." *Grutter v. Bollinger*, 539 U.S. 306, 337 (2003). Count IV should not proceed because it asserts a violation of a nonexistent legal standard.

*Finally*, SFFA concedes that this Court cannot grant it relief on Count VI, but nonetheless asks the Court to deny (or delay) entry of judgment to Harvard. SFFA offers no principled justification for such delay, instead delving into an irrelevant discussion of its desired injunction. An injunction would be an appropriate remedy only if SFFA proved a legal violation, but SFFA concededly cannot establish a legal violation under the theory asserted in Count VI. That count, too, therefore fails as a matter of law.

**ARGUMENT**

**I.     The Court Can And Should Resolve Harvard's Motion Now**

SFFA contends that Harvard's motion seeking judgment on the pleadings on Counts IV and VI is procedurally improper, and that this Court lacks power under the Federal Rules to grant Harvard's motion.  Opp. 8-9.  SFFA's argument cannot be squared with First Circuit decisions recognizing the propriety of entering judgment on specific counts under Rule 12(c).  *See Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 140, 146 (1st Cir. 2016) (affirming district court order granting judgment on the pleadings on fewer than all counts); *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007) (same).  Indeed, the First Circuit has itself "render[ed] partial judgment on the pleadings" under Rule 12(c) after reversing a district court's failure to do so.  *DeMayo v. Nugent*, 517 F.3d 11, 19 (1st Cir. 2008).  And the Supreme Court has recognized that a motion for judgment on the pleadings may be directed to specific counts.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 98-99 (1983) (noting that the district court "granted the City's motion for partial judgment on the pleadings").

SFFA points to a few cases discussing whether "partial judgment on the pleadings" is available under Rule 12(c), but none of those decisions actually holds that district courts lack authority to render judgment on fewer than all courts of the complaint.  One of SFFA's cases accurately notes that "[t]here are numerous cases [in] which . . . a trial court granted partial judgment on the pleadings" and declines to decide the issue.  *Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1238 (C.D. Cal. 1987); *see also Picker Int'l, Inc. v. Mayo Found.*, 6 F. Supp. 2d 685, 688 (N.D. Ohio 1998) (suggesting issue "is not clear").  Two other cases merely hold that a *plaintiff* cannot use Rule 12(c) to strike specific *defenses* because the plaintiff would not be entitled to judgment as long as other defenses remain; neither case addressed whether a defendant may obtain judgment under Rule 12(c) on specific counts.  *Kelly*

- 2 -

*v. United States*, 809 F. Supp. 2d 429, 433 & n.2 (E.D.N.C. 2011); *Dysart v. Remington Rand*, 31 F. Supp. 296, 297 (D. Conn. 1939). And SFFA's final case—a 31-year-old unpublished decision from an out-of-circuit district court—merely noted the issue and then converted a motion for judgment on the pleadings into a motion for summary judgment. *Barrett v. L.F.P., Inc.*, 1986 WL 7698, at *3 (N.D. Ill. June 27, 1986).

SFFA points to no reason in logic or policy why district courts should lack such authority. SFFA suggests that it would be more efficient for the Court to delay judgment on the pleadings until the close of discovery. Opp. 9-10. But nowhere does SFFA identify any potential efficiency gains. In fact, SFFA acknowledges (at 9) that Harvard's challenge to Count IV presents a pure question of law, and admits (at 13) that this Court cannot grant it relief on Count VI as a matter of law. Discovery is therefore unnecessary to decide the merits of Harvard's motion for judgment on the pleadings, and entry of judgment for Harvard on both counts is appropriate now.

## II.     Count IV Asserts A Nonexistent Legal Standard

Harvard is entitled to judgment on Count IV because it fails to state a claim on which relief may be granted, resting entirely on a purported legal standard that has no basis in governing law. SFFA contends (at 11) that the Supreme Court has sanctioned "two types of race-based admissions policies"—one in *Bakke* and one in *Grutter*—and that Count IV is directed to a "*Bakke*-style admissions policy." That argument misreads both *Bakke* and *Grutter* and misinterprets the relationship between the two decisions.

Justice Powell's opinion in *Bakke* did not adopt the "last few places" standard asserted by SFFA. Rather, Justice Powell approved of a "flexible" admissions program that "consider[ed] all pertinent elements of diversity in light of the particular qualifications of *each applicant*." 438

U.S. at 317 (emphasis added).  The Harvard Plan appended to Justice Powell's opinion explained that only a small number of Harvard applicants would be admitted principally on the basis of "extraordinary" intellectual potential, and that *all* other applicants would be reviewed on the basis of many factors, including the applicants' interests, talents, and backgrounds.  *See id.* at 322.  Although the Harvard Plan included examples of decisions that might be made by an admissions committee "with only a few places left to fill," *id.* at 324, those examples did not purport to describe the entirety of the consideration of race under the Harvard Plan, nor did Justice Powell characterize the examples as articulating an outer bound on the permissibility of other plans.  To the contrary, Justice Powell endorsed admissions policies that considered the broad range of diversity offered by "each applicant."  *Id.* at 317.

Second, SFFA contends (at 11) that "[t]he Harvard Plan that *Bakke* endorsed was not the same as the admissions policy that *Grutter* endorsed."  But nothing in *Grutter* draws the distinction from *Bakke* that SFFA posits.  Quite the contrary, the Court in *Grutter* expressly viewed itself as embracing a plan "[l]ike the Harvard Plan," explaining that "the Law School's admissions policy 'is flexible enough to consider all pertinent elements of diversity in light of the particular qualifications of *each applicant*, and to place them on the same footing for consideration, although not necessarily according them the same weight.'"  539 U.S. at 337 (quoting *Bakke*, 438 U.S. at 317(emphasis added)); *see also id.* ("We also find that, *like the Harvard plan* Justice Powell referenced in *Bakke*, the Law School's race-conscious admissions program adequately ensures that all factors that may contribute to student body diversity are meaningfully considered alongside race in admissions decisions." (emphasis added)).  It is also

- 4 -

noteworthy that none of the dissenters in *Grutter* suggested that *Bakke* was distinguishable from *Grutter* on the basis that SFFA suggests.[1]

The Supreme Court clearly did not view itself as embracing a second "type[] of race-based admissions polic[y]" in *Grutter* (Opp. 11).  Rather, the Court reaffirmed Justice Powell's endorsement of student body diversity as a compelling interest in *Bakke* and the constitutionality of admissions programs that consider race as one of many factors for each applicant in order to advance that compelling interest.  It is therefore unsurprising that SFFA identifies no authority that recognizes or even suggests its theory that *Bakke* and *Grutter* should be viewed as distinct decisions that approve of meaningfully different admissions policies.

SFFA's demand (at 11-13) that Harvard disavow its use of "a *Bakke*-style admissions policy" is thus misplaced.  It rests on a false dichotomy that the Supreme Court has never adopted.  Moreover, SFFA's attempt to shift the burden to Harvard to disavow certain facts is unwarranted.  It is SFFA's obligation to allege facts that, if established, would constitute a legal violation.  Fed. R. Civ. P. 8(a)(2), 12(c), 12(h)(2); *Garcia-Catalan v. United States*, 734 F.3d 100, 102-103 (1st Cir. 2013).  Because Count IV rests on a nonexistent legal standard, it fails to allege any legal violation, and Harvard need not do anything more to entitle it to judgment on this Count.

---

[1] In the companion case to *Grutter*, *Gratz v. Bollinger*, 539 U.S. 244 (2003), the Court also made no suggestion that Justice Powell had approved only plans that allowed consideration of race to fill a few places.  *Gratz* invalidated the University of Michigan's undergraduate admissions plan on the ground that it was insufficiently flexible, and the *Gratz* opinion includes an extensive discussion of the Harvard Plan as described by Justice Powell in *Bakke*.  *See id.* at 272-274.  Nowhere in that discussion, however, does the *Gratz* Court suggest the distinction advanced by SFFA.  Had the Court thought that *Bakke* was limited in the way SFFA suggests, that would have been an obvious place for the Court to make that point.

## III. Harvard Is Entitled To Judgment On Count VI

SFFA concedes (at 13) that this Court cannot grant it relief on Count VI, but it nonetheless asks that the Court delay entry of judgment until the close of discovery. SFFA's request is premised on the odd rationale (at 14) that "[g]ranting judgment on Count VI will not alter discovery." But even if that assertion were accurate (and it is not), it would provide no basis to defer entry of judgment on a count on which SFFA cannot obtain relief.

SFFA argues that discovery will not be affected by now asserting (at 14) that it has no interest in "the admissions policies of other universities." But that supposed assurance conflicts with the actual allegations in Count VI, which repeatedly refer to the manner in which "Harvard [or] any other college or university uses race." Compl. ¶ 498; *id.* ("Harvard, and many others, are not pursuing this interest."); *id.* ¶ 499 ("[T]here is overwhelming evidence that colleges and universities will take advantage of any leeway."); *id.* ¶ 501 (referring to "compelling evidence that racial preferences impose significant costs on the university community, society in general, and the very minority students these programs are purported to benefit"). Those allegations plainly contemplate discovery that extends far beyond Harvard, potentially including both fact discovery of third parties and expert discovery.[2] Harvard (and this Court) should not be saddled

---

[2] SFFA has already made clear its interest in obtaining materials from other universities for use in this litigation. In March 2015, SFFA wrote to the Presidents of all other Ivy League universities to put them "on notice that undergraduate student admission files *may be subject to subpoena* as" SFFA's case against Harvard "proceeds to the discovery phase," and to notify them of a purported "legal duty to preserve all admissions files in [their] possession or control." *See, e.g.*, Letter from Edward Blum to President Amy Gutmann, University of Pennsylvania, at 2 (March 19, 2015) (emphasis added), *available at:* http://samv91khoyt2i553a2t1s05i-wpengine.netdna-ssl.com/wp-content/uploads/2015/03/PennLetter.pdf.

with the burden of discovery (beyond the extensive discovery that will take place in this case in any event) on a claim that SFFA concedes it cannot win.[3]

SFFA's lengthy detour (at 14-17) into the law of structural injunctions is wholly irrelevant. SFFA concedes (at 16) that there is no reason to consider the possible type or scope of an injunction "unless … Harvard is found to have violated Title VI." Yet Count VI does not provide a basis for establishing a violation of Title VI because it requires this Court to reverse multiple Supreme Court precedents. SFFA suggests (at 15-16) that Harvard may be barred from considering race at all as a remedy for being found to have intentionally discriminated against Asian-Americans, in violation of other counts of the complaint. But even if that were correct, the scope of relief that SFFA seeks on its *other* counts has no relevance to whether Harvard is entitled to judgment on Count VI. Similarly, although SFFA implies (at 16) that it is entitled to broad, additional discovery on the basis of the broad injunction it apparently seeks, that has no

---

[3]   In response to student-amici's brief in support of Harvard's motion (Dkt. 199), SFFA suggests that it might be entitled to discovery on the so-called "mismatch theory" regardless of this Court's decision on Count VI because "the mismatch issue is principally relevant to Count V" (Opp. 17 n.2). Aside from the fact that the "mismatch theory" is thoroughly discredited (*see generally* Dkt. 199, at 2-5; Harvard Letter of July 8, 2016 (Dkt. 157-1), at 8), and that a paraphrased version of it is asserted within the allegations of Count VI (Compl. ¶ 501 (referring to "evidence that racial preferences impose significant costs on the university community, society in general, and the very minority students these programs are purported to benefit")), the "mismatch theory" is not relevant to Count V. That count alleges that Harvard has "available race-neutral alternatives capable of achieving student body diversity." Compl. ¶ 478. The "mismatch theory" does not bear on whether such alternatives are "available" nor whether the alternatives would be "workable." *Fisher v. University of Texas at Austin*, 136 S. Ct. 2198, 2208 (2016). Instead, "mismatch theory" focuses on whether student-body diversity is a worthy goal in itself—a determination squarely within a university's academic judgment and on which it is afforded substantial deference. *Id.*

bearing on whether Count VI should go forward.[4]  Because Count VI does not present a viable legal theory, the Court should grant Harvard judgment on Count VI.

## CONCLUSION

The Court should grant Harvard judgment on the pleadings on Counts IV and VI of the Complaint.

Respectfully submitted,

/s/ Seth P. Waxman
Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
Daniel Winik (*pro hac vice*)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com
daniel.winik@wilmerhale.com

---

[4] None of SFFA's cases suggests that it would be entitled to broad, additional discovery related solely to the scope of a potential future injunction.  First, SFFA relies on a case standing for the basic proposition that a party is entitled to discovery on damages to prepare for trial. *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 693 (1933) ("The remedy of discovery is as appropriate for proof of a plaintiff's damages as it is for proof of other facts.").  Second, SFFA cites a case denying a motion to dismiss a claim that required plaintiffs to prove an "immediate threat of future injury" where discovery might allow the plaintiff to prove that threat. *Rodriguez v. California Highway Patrol*, 89 F. Supp. 2d 1131, 1142 (N.D. Cal. 2000).  Count VI raises no such concern; SFFA cannot succeed on Count VI regardless of discovery, and *Rodriguez* says nothing about discovery related to the scope of a potential injunction.  Finally, SFFA cites a case that permitted the defendant's requested discovery of the plaintiff's medical records because the records were essential to both the claims of liability and relief—hardly support for the proposition that SFFA would be entitled to broad discovery of Harvard based on its desired injunction. *Stark v. Hartt Transp. Sys., Inc.*, 2013 WL 358266, at *11 (D. Me. Jan. 28, 2013).  None of those cases supports SFFA's contention that it is entitled to substantial additional discovery—beyond that relevant to the counts alleged in its complaint on which Harvard has not sought judgment on the pleadings—solely on the basis of its desire for a broad injunction based on an unproved legal violation.

                                            Debo P. Adegbile (*pro hac vice*)
                                            WILMER CUTLER PICKERING
                                                HALE AND DORR LLP
                                            7 World Trade Center
                                            250 Greenwich Street
                                            New York, NY 10007
                                            Tel: (212) 295-6717
                                            Fax: (212) 230-8888
                                            debo.adegbile@wilmerhale.com

                                            William F. Lee (BBO #291960)
                                            Felicia H. Ellsworth (BBO #665232)
                                            WILMER CUTLER PICKERING
                                                HALE AND DORR LLP
                                            60 State Street
                                            Boston, MA 02109
                                            Tel: (617) 526-6687
                                            Fax: (617) 526-5000
                                            william.lee@wilmerhale.com
                                            felicia.ellsworth@wilmerhale.com

Dated:  November 4, 2016                                  *Counsel for Defendant President and Fellows of Harvard College*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Seth P. Waxman
Seth P. Waxman