**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MASSACHUSETTS**
**BOSTON DIVISION**

STUDENTS FOR FAIR ADMISSIONS, INC.,

Plaintiff,

v.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION),

Defendant.

Civil Action No. 1:14-cv-14176-ADB

**Motion to File Under Seal Granted November 3, 2016 [Dkt. 217]**

Oral Argument Requested

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................1

I. SFFA Cannot Avoid The Indicia-Of-Membership Standard Simply By Labeling Itself A Voluntary Membership Organization ..................................................................1

A. The Law Of The Case Doctrine Does Not Bar Harvard's Argument..................1

B. Courts Regularly Apply The Indicia-Of-Membership Standard To Determine The Associational Standing Of Membership Organizations...............3

II. SFFA's Members Do Not Exhibit The Indicia Of Membership That Would Enable It To Sue On Their Behalf ........................................................................6

A. It Is Improper To Focus Solely On SFFA's Standing Members ..........................6

B. SFFA's Members, Including Its Standing Members, Exercise No Meaningful Control Over The Organization.........................................................8

CONCLUSION..................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

*American Canoe Association v. Murphy Farms, Inc.*,
326 F.3d 505 (4th Cir. 2003) ....................2

*Brady Campaign to Prevent Gun Violence v. Salazar*,
612 F. Supp. 2d 1 (D.D.C. 2009) ....................5

*California Sportfishing Protection Alliance v. Diablo Grande, Inc.*,
209 F. Supp. 2d 1059 (E.D. Cal. 2002) ....................5

*Camel Hair & Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*,
799 F.2d 6 (1st Cir. 1986) ....................4

*Christianson v. Colt Industries Operating Corp.*,
486 U.S. 800 (1988) ....................2

*Citizens Coal Council v. Matt Canestrale Contracting, Inc.*,
40 F. Supp. 3d 632 (W.D. Pa. 2014) ....................7, 11, 13

*Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*,
686 F. Supp. 2d 663 (E.D. La. 2010) ....................3, 6

*Disability Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living, Inc.*,
675 F.3d 149 (2d Cir. 2012) ....................5

*Doe v. Stincer*,
175 F.3d 879 (11th Cir. 1999) ....................12

*Friends of the Earth, Inc. v. Chevron Chemical Co.*,
129 F.3d 826 (5th Cir. 1997) ....................3, 6

*Funeral Consumers Alliance Inc. v. Service Corporation International*,
2010 WL 3817159 (S.D. Tex. Sept. 27, 2010) ....................4

*Funeral Consumers Alliance, Inc. v. Service Corporation International*,
695 F.3d 330 (5th Cir. 2012) ....................4, 5

*Gay-Straight Alliance of Okeechobee High School v. School Board of Okeechobee County*,
477 F. Supp. 2d 1246 (S.D. Fla. 2007) ....................12

*Harlow v. Children's Hospital*,
432 F.3d 50 (1st Cir. 2005) ....................2

*Hunt v. Washington State Apple Advertising Commission*,
432 U.S. 333 (1977) ... *passim*

*International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*,
477 U.S. 274 (1986) ... 7

*Oregon Advocacy Center v. Mink*,
322 F.3d 1101 (9th Cir. 2003) ... 1, 7, 12, 13

*Package Shop, Inc. v. Anheuser-Busch, Inc.*,
1984 WL 6618 (D.N.J. Sept. 25, 1984) ... 3, 6, 8, 10

*Perez-Ruiz v. Crespo-Guillen*,
25 F.3d 40 (1st Cir. 1994) ... 2

*Platten v. HG Bermuda Exempted Ltd.*,
437 F.3d 118 (1st Cir. 2006) ... 1

*Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico*,
906 F.2d 25 (1st Cir. 1990) ... 3, 6

*Sylvia's Haven, Inc. v. Massachusetts Development Finance Agency*,
397 F. Supp. 2d 202 (D. Mass. 2005) ... 12, 13

*U.S. Telecom Association v. FCC*,
359 F.3d 554 (D.C. Cir. 2004) ... 5

*Washington Legal Foundation v. Leavitt*,
477 F. Supp. 2d 202 (D.D.C. 2007) ... 3, 4

SFFA's suggestion that an organization can evade the indicia-of-membership standard set forth in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), simply by labeling its supporters as "members," finds no support in the law. And SFFA's argument that it satisfies the indicia-of-membership standard is no more persuasive, not least because it improperly limits the analysis to its handful of so-called "standing members."

SFFA's own cases have explained that the key question under *Hunt* is whether an organization genuinely constitutes a gathering of members who have come together to pursue their common goals. *See, e.g.*, *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003) (what "undergird[s] the concept of associational standing" is the need to ensure "that the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy'"). Because SFFA's members do not genuinely constitute the organization, SFFA lacks standing to represent them, and this action should be dismissed for lack of jurisdiction.

## ARGUMENT

### I. SFFA Cannot Avoid The Indicia-Of-Membership Standard Simply By Labeling Itself A Voluntary Membership Organization

#### A. The Law Of The Case Doctrine Does Not Bar Harvard's Argument

SFFA first suggests (at 7-8) that statements by the Court at the April 29, 2016 status conference constitute law of the case. That is incorrect for several reasons.

*First*, the Court was not deciding at that status conference whether SFFA had standing to sue; it was rendering an oral ruling on a discovery dispute. Even as to that discovery ruling, the Court invited Harvard to file a motion for reconsideration (which remains pending). An oral ruling on a discovery dispute does not bar the Court from later examining the fundamental threshold question whether the Court has jurisdiction to adjudicate the case. *See Platten v. HG*

*Bermuda Exempted Ltd.*, 437 F.3d 118, 129 n.8 (1st Cir. 2006) (law of the case "does not apply to tentative or preliminary rulings"); *see also American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515-516 (4th Cir. 2003) (district court erred in applying law-of-the-case doctrine to an earlier decision holding that plaintiffs had standing, because "the value of correctness in the subject matter jurisdiction context overrides at least some of the procedural bars in place to protect the values of finality and judicial economy").

*Second*, even if the Court's statements at the hearing might be construed as a ruling that SFFA need not satisfy the indicia-of-membership standard to establish its standing, such "[i]nterlocutory" rulings "remain open to trial court reconsideration, and do not constitute the law of the case." *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994). The First Circuit stated that principle in a decision on which SFFA relies: A district court may "review prior interlocutory orders as long as that review is not an abuse of discretion." *Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005).[1]

Even if the Court's statements at the April 29 hearing were determinative of Harvard's motion to dismiss, it would certainly be appropriate for the Court to reexamine them. SFFA waited until the morning of that hearing to file what the Court described as a "dense," "single-spaced, 14-page document" addressing the applicability of the indicia-of-membership standard. Dkt. 152 at 6:11-12, 24:18-19. Harvard barely had an opportunity to review that filing, let alone reply to it, before the hearing. This is hardly the full airing that is due to the foundational question of Article III jurisdiction raised by Harvard's motion. And SFFA recognizes (at 8) that courts may reconsider any prior ruling that was "clearly erroneous and would work a manifest

---

[1] The law-of-the-case discussion in *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815-818 (1988), on which SFFA also relies, refers to decidedly non-interlocutory rulings—decisions by courts of appeals that they lacked jurisdiction over a particular case.

injustice" if adhered to. Allowing SFFA to evade the indicia-of-membership standard required to establish this Court's jurisdiction easily satisfies that standard.

**B. Courts Regularly Apply The Indicia-Of-Membership Standard To Determine The Associational Standing Of Membership Organizations**

As Harvard's motion to dismiss explains, numerous courts have looked beyond the "membership" label in analyzing whether organizations could sue on their members' behalf. *See* Mem. 9-11 (discussing *Playboy Enters., Inc. v. Pub. Serv. Comm'n of Puerto Rico*, 906 F.2d 25, 35 (1st Cir. 1990); *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 827, 829 (5th Cir. 1997); *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 675-676 (E.D. La. 2010); *Washington Legal Found. v. Leavitt*, 477 F. Supp. 2d 202, 209-210 (D.D.C. 2007); and *Package Shop, Inc. v. Anheuser-Busch, Inc.*, No. 83-cv-513, 1984 WL 6618, at *40-41 (D.N.J. Sept. 25, 1984)). SFFA attempts to distinguish those cases (at 9-10) on the theory that the membership organizations involved were somehow not "*traditional* membership organizations" (emphasis added). But SFFA is attempting to fashion a distinction that does not exist in the law of associational standing, which marks no difference between "traditional" and "non-traditional" membership organizations. The Supreme Court used the phrase "traditional voluntary membership organization" in *Hunt* only in distinguishing a *non*-membership organization from membership organizations. 432 U.S. at 342, 344. And by any standard, the organizations in the cases cited in our opening brief were "traditional." For example, the plaintiffs in *Package Shop* and *Playboy Enterprises* were trade associations—a type of organization that *Hunt* itself describes as a "traditional" type of "voluntary membership organization," 432 U.S. at 342—and the plaintiffs in *Friends of the Earth* and *Concerned Citizens Around Murphy* were environmental advocacy groups, another traditional type of

membership organization. Yet the courts scrutinized them to see if they truly represented the interests of their constituents.[2]

SFFA does not explain why it is any more "traditional" than the organizations in those cases or why it should be immune from such scrutiny if the organizations in these cases were not. SFFA is not a group whose members have "pool[ed] their interests, activities and capital under a name and form that will identify collective interests," *Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 11 (1st Cir. 1986). Rather, it is the alter ego of its founder, Edward Blum, who created it as a vehicle to bring this case and the parallel action against the University of North Carolina.

Aside from its misplaced efforts to distinguish Harvard's authorities, SFFA tries to counter them with five cases of its own. But those cases are no more availing. One of them—*Funeral Consumers Alliance, Inc. v. Service Corporation International*, 695 F.3d 330 (5th Cir. 2012)—supports Harvard, to the extent it is relevant at all. The associational plaintiff in that case was "a non-profit consumer rights organization … that claim[ed] 400,000 individuals as members." *Id.* at 335. The district court held that the organization lacked standing to assert a Clayton Act claim for its members, because it lacked sufficient mechanisms of representation to ensure that it would speak on their behalf. *Funeral Consumers All. Inc. v. Serv. Corp. Int'l*, 2010 WL 3817159, at *7 (S.D. Tex. Sept. 27, 2010) (finding "no indication that a representative procedure [was] in place" for "Affiliate" members, that "Supporting members" had "no voting

---

2 SFFA argues (at 9-10) that the Washington Legal Foundation was not a "traditional membership organization[]" because it "was a 'public interest law firm' that tried to sue on behalf of three individuals who were subscribers to its mailing list"—but SFFA is itself a vehicle for litigation suing on behalf of members who are little more than subscribers to its mailing list (Mem. 1, 3-6). SFFA cites the fact that the members on whose behalf WLF brought suit were "not members as defined by WLF's Articles of Incorporation," 477 F. Supp. 2d at 208, but fails to appreciate the irony of that argument, given that SFFA's *own* Articles of Incorporation state that it "shall have no members." Ex. B, Articles of Incorporation of SFFA, at ¶ 2.

rights," and that "[p]ersons who [held] membership as a 'Friend' [were] not permitted to participate in the governance of the [organization]"), *aff'd in part, rev'd in part on other grounds*, 695 F.3d 330 (5th Cir. 2012). On appeal, the Fifth Circuit declined to "determine whether" the plaintiff organization had "members as defined by *Hunt*" only because the organization failed to meet a different element of the *Hunt* standard. 695 F.3d at 344 n.9.

The other appellate decisions on which SFFA relies—*Disability Advocates, Inc. v. N.Y. Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012), and *U.S. Telecom Association v. FCC*, 359 F.3d 554 (D.C. Cir. 2004)—are also inapposite. Both decisions applied the indicia-of-membership standard to organizations *without* members. *See* 675 F.3d at 152-153, 157 ("not a membership organization"); 359 F.3d at 593-594 ("not [a] voluntary membership organization[]"). Those cases presented no occasion to decide whether an organization can evade the indicia-of-membership standard simply by labeling its supporters as members.

Finally, SFFA relies on two decisions—*California Sportfishing Protection Alliance v. Diablo Grande, Inc.*, 209 F. Supp. 2d 1059 (E.D. Cal. 2002), and *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F. Supp. 2d 1 (D.D.C. 2009)—that are inapposite for reasons Harvard has previously explained, in that neither involved an organization whose members exercised as little control as SFFA's members do. Mem. at 11 n.3; Dkt. 154 at 4-5.[3] To the extent those decisions contain anything more than dicta about whether the indicia-of-

[3] In *California Sportfishing*, the plaintiff's members were required to pay annual dues, and there was no indication the plaintiff did not genuinely embody the members' collective interests. 209 F. Supp. 2d at 1066. *Brady Campaign* relied on the fact that the organization's members had "'voting rights as prescribed in [its] By-Laws.'" 612 F. Supp. 2d at 29. Although SFFA's members have [REDACTED] rights—[REDACTED] [REDACTED]—those rights are illusory for the reasons explained in Harvard's motion to dismiss (at 4-5, 11-13).

membership standard applies to organizations like SFFA, they are inconsistent with the weight of precedent and should not be followed.

## II. SFFA's Members Do Not Exhibit The Indicia Of Membership That Would Enable It To Sue On Their Behalf

SFFA argues alternatively that it satisfies the indicia-of-membership standard. That argument is misplaced for two reasons. First, SFFA makes no effort to explain how members *other* than its "standing members" reflect the necessary indicia of membership. That is a fatal deficiency, as courts apply the indicia-of-membership standard by considering an organization's overall membership policies and practices, not just the attributes of a select few so-called standing members. Second, even if the analysis were limited to SFFA's standing members, SFFA fails to explain how those members can actually wield influence over the organization's direction.

### A. It Is Improper To Focus Solely On SFFA's Standing Members

SFFA claims to satisfy the indicia-of-membership standard almost entirely on the basis of its [REDACTED] purported "standing members" (Opp. 14-18)—[REDACTED] [REDACTED]. That approach speaks volumes about SFFA's ability to argue that the *rest* of its "[REDACTED] members" (Opp. 1) actually control, influence, or participate in the organization. It is also legally unsound. In applying the indicia-of-membership standard to membership organizations, courts do not cabin their inquiry as SFFA suggests; rather, they evaluate the membership policies and practices of the organization as a whole. *See, e.g.*, *Friends of the Earth*, 129 F.3d at 829; *Playboy Enters.*, 906 F.2d at 35; *Concerned Citizens Around Murphy*, 686 F. Supp. 2d at 675-677; *Package Shop*, 1984 WL 6618, at *39-41.

SFFA relies (at 13) on two cases—*Citizens Coal Council v. Matt Canestrale Contracting, Inc.*, 40 F. Supp. 3d 632 (W.D. Pa. 2014), and *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003)—for the proposition that the rights and roles of members other than those designated as standing members are irrelevant. Neither case so holds. The court in *Citizens Coal Council* examined whether the plaintiff's "standing witnesses" bore the requisite indicia of membership only because the defendant's standing challenge specifically focused on those individuals.[4] Harvard has never limited its standing challenge in that fashion. And when the Ninth Circuit stated that an organization must be "sufficiently identified with and subject to the influence of those it seeks to represent," 322 F.3d at 111, the court did not use the phrase "those it seeks to represent" to refer only to the specific individuals on whom an organization bases its standing. To the contrary, the paragraph containing that statement examined the membership policies and practices of the organization as a whole. *Id.*[5]

SFFA's rule would obviate the whole theory of associational standing, which is that it is a device available only to the kinds of organizations in which individuals genuinely come together to "create an effective vehicle for vindicating interests that they share with others," *International*

4 *See* 40 F. Supp. 3d at 637 ("[Defendant] argues that [Plaintiff] cannot establish standing through its Standing Witnesses," on the theory that "[n]one of them possesses the necessary indicia of membership … since none have the right to vote, elect the governing body, serve on the board of directors … , or otherwise control[] the actions of the officers or delegates to the Coordinating Committee whom they did not elect."); *see also* Defendant's Memorandum in Support of Motion to Dismiss Based on Lack of Standing, 2014 WL 2738495 (W.D. Pa. May 28, 2014) ("Dismissal is warranted because … [Plaintiff's] standing witness members do not possess the necessary 'indicia of membership[.]'").

5 SFFA also relies on Harvard's supposed "admi[ssion] that the key issue is whether SFFA may 'stand in the[] shoes' of those it seeks to represent in court." Opp. 13-14 (quoting Mem. 8). What Harvard actually said in the quoted sentence was that an organization's ability to satisfy the *Hunt* factors other than the indicia-of-membership standard "does not on its own satisfy the threshold requirement that an organization must genuinely embody the collective interests of its members to be permitted to stand in their shoes in federal court." That argument does not remotely resemble an "admi[ssion]" that the only members of an organization who must exhibit indicia of membership are those on whose individual standing the organization relies.

*Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986). Under SFFA's theory, any corporate entity or unincorporated association could sue on behalf of a single person as long as it was controlled by that person. That is not what associational standing is meant for. The crux of the indicia-of-membership standard set forth in *Hunt* is not whether an entity is controlled by the single person or handful of people on whose behalf it is suing but "whether the organization, in fact, does have a true *membership*." *Package Shop*, 1984 WL 6618, at *39 (emphasis added). Unless the organization has a *membership*—a whole body of people who bear indicia of membership—then it is not the kind of organization that can invoke associational standing consistent with Article III.

**B. SFFA's Members, Including Its Standing Members, Exercise No Meaningful Control Over The Organization**

SFFA's submission suffers from yet another deficiency: SFFA has not shown that even its standing members exhibit any meaningful degree of influence or control over the organization.

As Harvard's motion explains (at 11-16), even the record before the Court makes clear that SFFA's membership does not fulfill the indicia described in *Hunt*. Neither SFFA's standing members nor its other members actually control its leadership; [REDACTED] .[6] Mem. 4, 11-12. And neither SFFA's standing members nor its other members play a meaningful role in funding the organization or participating in its day-to-day operations.

[6] SFFA points out (at 19-20) that certain membership organizations whose standing has been upheld have "self-perpetuating boards," but none of the cases on which SFFA relies for that proposition actually addressed the nature of the organizations' board structure.

Mem. 13-15.[7] SFFA claims (at 13) that "[n]early ███" of its "nearly ████" members—███ ██████—"have contributed financially … to support its mission," and that they contributed "more than █████ in 2015." But those assertions hardly show that SFFA is in any meaningful sense funded by its members. Nearly ███ of SFFA's members have contributed no money at all, and ██████████████████████████████████████████ █████ (*see* Mot. Ex. E,[8] Virginia Charitable Organization Remittance Form, Form 102, at SFFA-Harvard 0001932 (Statement of Profit & Loss)). What is more, because ████████ ████████████████████████████████████ (Ex. A, Transcript of Deposition of Edward J. Blum as Rule 30(b)(6) Designee of SFFA, Supplemental Excerpts ("Supp. Blum Tr."), at 152:2-8), it is impossible to know ████████████████████ ███████████████████████.[9]

---

[7] SFFA's argument relies heavily on the "uncontroverted" declarations of its standing members, which use rote language copied and pasted from one member's declaration to another. Opp. 14; *see id.* at 13-19; *see, e.g.*, Opp. Exs. D, L-N, P-T. But those declarations stop well short of establishing that the standing members (let alone the rest of SFFA's members) actually play any meaningful role in directing the organization. At any rate, the declarations are "uncontroverted" only because SFFA has blocked Harvard from inquiring into SFFA's actual relationship with its standing members—for example, by instructing its Rule 30(b)(6) witness not to answer numerous questions at his deposition, such as questions about the extent to which SFFA's members participated in the decision to initiate this litigation. *See* Dkt. 168 (letter regarding improper 30(b)(6) deposition instructions); Ex. A, Transcript of Deposition of Edward J. Blum as Rule 30(b)(6) Designee of SFFA, Supplemental Exhibits, at 114:4-20, 117:21-118:15, 118:17-21. The Court should reject SFFA's suggestion (at 1 n.1) that it be permitted "to submit additional evidence and/or seek an evidentiary hearing to the extent that the Court believes SFFA cannot establish standing based on the present record." Having resisted Harvard's efforts to learn basic facts about how it operates, SFFA should bear any adverse consequences.

[8] "Ex." citations refer to exhibits to the Declaration of Felicia H. Ellsworth (Dkt. 219) accompanying this reply memorandum. "Mot. Ex." citations refer to exhibits to the Declaration of Felicia H. Ellsworth (Dkt. 188) accompanying the memorandum in support of Harvard's motion. "Opp. Ex." citations refer to exhibits to the Declaration of William S. Consovoy (Dkt. 205) accompanying SFFA's opposition.

[9] SFFA hyperbolically asserts (at 12) that Harvard is trying to conduct a "full-blown audit" and that, if accepted, Harvard's theory would produce such "audit[s]" of other organizations. But many of the organizations SFFA cites are, unlike SFFA, transparent about the rights of their

SFFA attempts to explain (at 16) that standing members—though not any other members—can exercise control by resigning, on the theory that doing so could "in effect terminate this litigation."[10] But the record in fact shows that SFFA controls its list of standing members, not the other way around. *Compare* Mot. Ex. G, Plaintiff's Supplemental Response to Interrogatory No. 5 (July 2, 2015) *with* Mot. Ex. D, Plaintiff's Revised Supplemental Response to Interrogatory No. 5 (July 1, 2016). Ex. A, Supp. Blum Tr., at 221:21-24. Although SFFA posits a world in which a standing member's choice to resign can effectively control the organization, the reality is the

---

members and the extent to which members participate in and support the organization. *See, e.g.*, Mot. Ex. I, Sierra Club Bylaws, at §§ 4.3, 4.8, 5.6, 11.2; Ex. C, NAACP Annual Report: 2015, at 40-46. And SFFA's further suggestion that other organizations mimic SFFA's structure by offering the option of lifetime dues instead of annual support fails to identify the significant distinction between SFFA's one-time $10 fee— (Mem. 14), —and the very substantial contribution that other organizations require (for example, $1000 for the Sierra Club, and $750 for the NAACP when purchased by an adult). Ex. D, Sierra Club, Mail-In Membership Form; Ex. E, NAACP, Join the Fight For Freedom.

[10] SFFA also asserts (at 16-17) that " " and thus have " ," but it offers no response to *Package Shop*'s common-sense observation that "[t]here is an important difference between having the opportunity to express opinions through letters or telephone calls and the power to control the activities of an organization." 1984 WL 6618, at *41.

opposite; [redacted].[11]

None of SFFA's cases suggests that an organization with its characteristics can satisfy the indicia-of-membership standard. SFFA relies extensively on *Citizens Coal Council*, but the plaintiff in that case—an "'alliance of social and environmental justice … groups and individuals,'" 40 F. Supp. 3d at 634—offered its members far greater opportunities for participation and influence than SFFA does. For example, the Council's Member Organizations and Associate Member Organizations could elect delegates to a Coordinating Committee, and its Individual Members could be elected to at-large seats on the Coordinating Committee and could "serve on standing, ad hoc and issues committees." *Id.* at 635. The Coordinating Committee—comprised of the organizational and at-large delegates—in turn elected the organization's officers. *Id.* In rejecting a challenge to that organization's standing on the ground that the individual standing members lacked voting rights, the court held that the lack of voting rights "alone [was] not sufficient to defeat associational standing." *Id.* at 640. But it went on to explain how the standing members had "other means to express their collective views and protect their collective interests." *Id.* at 641. For example, the organization obtained their "approval to bring th[e] action," they had "regular and direct contact with [the organization's] executive director," and they were eligible to serve as delegates to the Coordinating Committee. *Id.* at 641-642. The court rightly recognized—contrary to SFFA's position that the indicia-of-membership standard does not even apply to membership organizations—that "the purpose of the *Hunt* inquiry is to determine whether an organization provides its members with the means to express

[11] At the 30(b)(6) deposition, [redacted] (Ex. A, Supp. Blum Tr., at 221:9-14) [redacted] (*id.* at 222:5-11).

their collective views and protect their collective interests." *Id.* at 640 (internal quotation marks omitted).

SFFA's other authorities are equally unhelpful to it. Both *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003), and *Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999), involved the same unusual type of organization—an office created under the Protection and Advocacy for Mentally Ill Individuals Act (PAMII), 42 U.S.C. § 10801 *et seq.*, to advocate for people with disabilities. The courts concluded that such offices could sue on behalf of the individuals whose interests they were statutorily created to represent. *E.g.*, *Oregon Advocacy Center*, 322 F.3d at 1110 (recognizing that the office's "constituents" were "the functional equivalent of members" given the office's "statutory mission and focus under PAMII"). Even in that unusual context, however, the courts relied on the fact that there were means by which the organizations' constituents could influence them. For example, the Ninth Circuit observed that "[u]nder PAMII, the governing board of an organization like [the Oregon Advocacy Center] 'shall be composed of … members … who broadly represent or are knowledgeable about the needs of the clients served by the system,' … includ[ing] 'individuals who have received or are receiving mental health services and family members of such individuals.'" *Id.* at 1111. Moreover, PAMII-authorized advocacy offices had to "'establish an advisory council'" that included recipients of "'mental health services'" and their family members. *Id.* at 1111-1112; *see also Doe*, 175 F.3d at 886.[12]

[12] The decision in *Gay-Straight Alliance of Okeechobee High School v. School Board of Okeechobee County*, 477 F. Supp. 2d 1246 (S.D. Fla. 2007), never mentions the indicia-of-membership standard. And SFFA's inference from that case—that "[i]f an 'unincorporated, voluntary association of [high school] students' meets the demands of associational standing, then" so must SFFA (Opp. 13)—is backwards; unlike SFFA, which is the archetype of a top-down organization, an alliance of high school students genuinely reflects the collective interests of its members. And although the court in *Sylvia's Haven, Inc. v. Massachusetts Development*

Much of SFFA's argument relies on the fact that courts have upheld the standing of some organizations that did not satisfy one or another of the factors that *Hunt* referred to as indicia of membership—for example, organizations that were not funded by their members or organizations whose members lacked voting rights. But Harvard has never suggested that an organization must satisfy every one of *Hunt*'s criteria to possess associational standing. The indicia of membership are not a mandatory checklist. They are a set of factors for the Court to consider in answering what SFFA's own cases have identified as the ultimate question: Does the organization genuinely constitute a gathering of members who have come together to pursue their common goals? *See Oregon Advocacy Center*, 322 F.3d at 1111 (what "undergird[s] the concept of associational standing" is the need to ensure "that the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy'"); *Citizens Coal Council*, 40 F. Supp. 3d at 640 ("[T]he purpose of the *Hunt* inquiry is to determine whether an organization provides its members with the means to express their collective views and protect their collective interests." (internal quotation marks omitted)). The totality of SFFA's circumstances leaves only one possible answer to that question in this case: SFFA is a mouthpiece for Mr. Blum, not for its members, and it therefore cannot sue on their behalf.

**CONCLUSION**

The action should be dismissed for lack of subject-matter jurisdiction.

---

*Finance Agency*, 397 F. Supp. 2d 202 (D. Mass. 2005), suggested in dicta that an organization serving homeless mothers and children could satisfy the indicia-of-membership standard, the decision turned on the fact that the organization did not meet the separate requirement of showing that any of its constituents would have individual standing. *Id.* at 207-208. Moreover, while SFFA argues (at 18) that the members of that organization "provided *no* funding to the organization," the court expressly observed that the organization (which ran a transitional residence) "require[d] all residents to share in the expenses related to the residence." *Id.* at 207.

                Respectfully submitted,

/s/ Seth P. Waxman

Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
Daniel Winik (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com
daniel.winik@wilmerhale.com

Debo P. Adegbile (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6717
Fax: (212) 230-8888
debo.adegbile@wilmerhale.com

William F. Lee (BBO #291960)
Felicia H. Ellsworth (BBO #665232)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6687
Fax: (617) 526-5000
william.lee@wilmerhale.com
felicia.ellsworth@wilmerhale.com
*Counsel for Defendant President and Fellows of Harvard College*

Dated: November 4, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that this document will be sent by email to the registered participants as identified on the Notice of Electronic Filing.

/s/ Seth P. Waxman
Seth P. Waxman