IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION), <br><br> Defendant. | Civil Action No. 1:14-cv-14176-ADB |

**PLAINTIFF'S OPPOSITION TO MOTION TO QUASH OF BOSTON LATIN SCHOOL**

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, Students for Fair Admissions, Inc. ("SFFA") respectfully submits this opposition to the motion to quash of Boston Latin School ("BLS"). Before BLS filed its motion, SFFA conferred with BLS in an attempt to avoid involving the Court, yet BLS declined even to negotiate with SFFA regarding the scope and timing of the subpoena. This senseless attempt to obstruct discovery is legally untenable. As this Court is aware, SFFA seeks a declaratory judgment that will protect *BLS's own students* against racial discrimination in Harvard's admissions process. Instead of cooperating with SFFA, BLS has chosen to pursue this meritless motions practice, making unsubstantiated burden arguments and blanket assertions that BLS—one of the best high schools in the country with many Asian-American students and one of Harvard's top "feeder schools"—has *no* relevant information. The Court should deny BLS's motion to quash.

1

## BACKGROUND

In its complaint, SFFA alleges that Harvard is "employing an undergraduate admissions policy that intentionally discriminates against Asian-American applicants on the basis of race or ethnicity." Doc. 1 at 101, ¶ 429. It does so by imposing a significantly higher bar for admissions than it does for other racial groups and by enforcing a quota on the number of Asian-American students it admits. *Id.* at 43-67, ¶¶ 200-287. Because Harvard has conceded that it considers race in admissions decisions, this case turns on whether Harvard can satisfy strict scrutiny by proving that its use of race is "narrowly tailored to further compelling governmental interests." *Fisher v. Univ. of Texas at Austin*, 133 S. Ct. 2411, 2419 (2013). Strict scrutiny is a "searching examination" that requires the court to give "close analysis to the evidence of how the process works in practice," and so this case requires a complete record with evidence sufficient to understand Harvard's admissions decisions. *Id.* at 2421; *see also Grenier v. Jonas*, 2011 WL 1791093, at *2 (D. Vt. May 10, 2011) ("The great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery.") (quoting *Floyd v. City of New York*, 739 F. Supp. 2d 376, 381 n.21 (S.D.N.Y. 2010)). Thus, SFFA is entitled to extensive fact discovery into Harvard's admissions practices.

One of the key points of discovery concerns the experiences of high school guidance counselors and other school officials who are witnesses to Harvard's discriminatory admissions practices. As SFFA's complaint alleges, many guidance counselors and advisors "recognize that discrimination against Asian Americans occurs at elite universities such as Harvard and thus tell Asian Americans to hide their identity, to emphasize personal characteristics that avoid Asian stereotypes, and, in many cases, to lower their expectations and apply elsewhere." Doc. 1 at 57, ¶ 252. For example, one high school guidance counselor advised a Korean student with near-

perfect test scores not to apply to the Ivy League because "it was a long shot at best" and that he should "lower his expectations to second- and third-tier schools." *Id*. at 63-64, ¶¶ 276-77. Such views are so widespread that even the Princeton Review advises as follows:

> If you are an Asian American—or even if you simply have an Asian or Asian-sounding surname—you need to be careful about what you do and don't say in your application…. You need to avoid being an Asian Joe Bloggs. Asian Joe Bloggs is an Asian American applicant with a very high math SAT score, a low or mediocre verbal SAT score, high math- or science-related SAT II scores, high math and science grades, few credits in the humanities, few extracurricular activities, an intended major in math or the sciences, and an ambition to be a doctor, an engineer, or a research scientist. The more you sound like this person, the more likely admissions officers will be to treat you as part of the 'Asian invasion' and reject your application, or at the very least make you compete against other Asian applicants with similar characteristics, rather than against the applicant pool as a whole.

*Id*. at 58, ¶¶ 254-55.

In order to obtain discovery on these issues, SFFA served subpoenas on four high schools: (1) Boston Latin School in Boston, Massachusetts; (2) Thomas Jefferson High School in Alexandria, Virginia; (3) Stuyvesant High School in New York, New York; and (4) Monta Vista High School in Cupertino, California. *See* Exs. A-D.[1] Each subpoena included the same five document requests, which seek evidence of racial discrimination by Harvard against the schools' students. SFFA sent subpoenas to these schools because they are among the best high schools in the nation, they regularly send their students to the top universities in the country, including Harvard, and they enroll a student body with a significant population of Asian Americans. *See* America's Top High Schools 2016, Newsweek, https://goo.gl/gYvUha. For example, BLS is one

---

[1] To date, only one of the other subpoenaed high schools, Thomas Jefferson High School, has contested its respective subpoena. *See In re Subpoena to Testify at a Deposition in a Civil Action Issued to Thomas Jefferson High School for Science & Technology*, No. 17-mc-7 (E.D. Va.). The Eastern District of Virginia recently transferred that action to this Court. *See id*., No. 1:17-mc-91107-NMG (D. Mass.). Both Stuyvesant High School and Monta Vista High School have told SFFA that they will comply with the subpoena and submit to a deposition.

of the top 30 high schools in the country, according to Newsweek, *see id.*; it has a student body that is almost 30 percent Asian American, *see* U.S. News & World Report, Boston Latin School (2016), https://goo.gl/3H7ORT; and it boasts of being "[i]n most years … the #1 feeder school to the freshman class at Harvard University," BLSA Announcement at 2 (Jan. 4, 2016), https://goo.gl/w47qTz. Thus, BLS is likely to be a witness to discrimination by Harvard against BLS's students.

**ARGUMENT**

Under the Federal Rules of Civil Procedure, "[i]t is well-settled that the scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26." *Chamberlain v. Farmington Sav. Bank*, 2007 WL 2786421, at *1 (D. Conn. Sept. 25, 2007). Thus, a party serving a subpoena on a nonparty may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Because 'discovery itself is designed to help define and clarify the issues,' the limits set forth in Rule 26 must be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Rockstar Consortium US LP v. Google*, 2015 WL 5972422, at *4 (D. Mass. Oct. 14, 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978)). A request for discovery "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Id.* (citation omitted).

Under Rule 45, a court may quash or modify a subpoena that: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P.

45(d)(3)(A). "The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied." *Malibu Media, LLC v. John Does 1–15*, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012); Wright & Miller, *Federal Practice & Procedure* § 2459 (same). "'In meeting this burden, such party may not rely on conclusory allegations or mere statements in briefs.'" *Ellis v. Arrowood Indem. Co.*, 2014 WL 4365273, at *6 (S.D. W. Va. Sept. 2, 2014) (quoting *Suggs v. Whitaker*, 152 F.R.D. 501, 505 (M.D.N.C. 1993)). Rather, the party must provide "specific demonstration of facts supporting the requested protection," preferably "through affidavits from knowledgeable persons." *Id*. If a party fails to meet this burden, the party's motion will be denied. *Id*.

Here, BLS argues that SFFA's subpoena should be quashed because it (1) places an undue burden on BLS; (2) is an unwarranted "fishing expedition"; (3) seeks irrelevant and duplicative documents; and (4) seeks confidential student records. *See* Memorandum in Support of Motion to Quash ("Mem") at 3-6. These arguments all fail.

**I.      Compliance with the Subpoena Will Not Place an Undue Burden on BLS.**

In a single paragraph, BLS summarily claims that responding to the subpoena would place "an undue burden and expense" on BLS "by "divert[ing] a number of resources and personnel … away from serving the children of the school." Memorandum in Support of Motion to Quash ("Mem.") at 4-5. These conclusory statements are woefully insignificant. "To prevail on the grounds of burdensomeness or breadth, the objecting party must do more to carry its burden than make conclusory and unsubstantiated arguments." *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 2014 WL 1660386, at *3 (S.D. W. Va. Apr. 22, 2014). Courts will consider an unduly burdensome objection only when the objecting party demonstrates how discovery is "overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden." *Convertino v. United States Dep't of Justice*,

565 F. Supp. 2d 10, 14 (D.D.C. 2008); *see also Bank of Mongolia v. M & P Global Fin. Servs., Inc.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) (same); *Cory v. Aztec Steel Building, Inc.*, 225 F.R.D. 667, 672 (D. Kan. 2005) (same). BLS has submitted no affidavit or any other evidence of the burdens it claims it will suffer.

Regardless, BLS's claims of burden must fail. SFFA is seeking to conduct a single deposition and obtain relevant documents that will require, at most, an electronic search of a handful of custodians' inboxes for key documents discussing discrimination by Harvard against Asian-American applicants. It is implausible that responding to SFFA's five, narrowly drawn document requests will impose a significant financial or staffing burden on BLS. Moreover, SFFA offered to negotiate the scope of the requests to minimize any burden on BLS.

**II.     SFFA's Subpoena Is Not a "Fishing Expedition."**

BLS argues that it should not have to produce documents responsive to SFFA's requests because SFFA's subpoena is a "fishing expedition" and "there has been no allegation or proof of a reasonable belief that a witness from BLS would have knowledge of the facts at issue" in this case. Mem. at 5. But this is misguided. SFFA identified BLS because it is one of the best schools in the country, has a substantial number of Asian-American students, and is—by its own description—consistently "the #1 feeder school to the freshman class at Harvard University." *Supra* at 4. Indeed, according to James Montague, a counselor at BLS, "[t]here's a joke that Harvard was started a year after our school as a place for our students to go." Meg P. Bernhard, *The Making of a Harvard Feeder School*, The Harvard Crimson (Dec. 13, 2013), https://goo.gl/xKMRmG. By BLS's count, the school recently contributed 15 students to Harvard's current freshman class—"one of only a handful of schools to send 10 or more students" to Harvard that year. *Id*.

BLS thus is uniquely positioned as a witness to Harvard's discriminatory admissions practices. One of SFFA's allegations is that high school guidance counselors—especially those with large numbers of high-achieving Asian-American students—are fully aware that Harvard discriminates against their best and brightest Asian-American students. To avoid such discrimination, counselors may advise these students to hide their identity, to emphasize personal characteristics that avoid Asian stereotypes, and in many cases, to lower their expectations and apply elsewhere. *See supra* at 2-3. There is little doubt that BLS has relevant documents and knowledge regarding these types of claims.

BLS also claims that SFFA's requests are not relevant because "[t]here are no allegations that BLS or its students were involved in any alleged discrimination or other improper acts." Mem. at 5. As an initial matter, BLS incorrectly asserts that there are no allegations of discrimination against BLS students. SFFA has brought this complaint for declaratory and injunctive relief in order to stop Harvard's widespread discriminatory practices. The relief SFFA seeks will directly benefit the students at BLS, including its Asian-American students who are disadvantaged by Harvard's race-based admissions process.

In any event, even if this lawsuit had no effect on BLS students, whether Harvard has discriminated against other similarly situated students unquestionably is relevant to SFFA's claims. This type of "comparator evidence is relevant to prove that [Harvard] discriminated against other [students] and therefore had a discriminatory motive, that there was a pattern or practice of discrimination, or that [Harvard] implemented policies that encouraged or permitted discrimination." *Paananen v. Cellco P'ship*, 2009 WL 3327227, at *5 (W.D. Wash. Oct. 8, 2009); *cf. Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990) ("[P]atterns of discrimination against a group of employees increas[es] the likelihood that an employer's offered

7

explanation for an employment decision regarding a particular individual masks a discriminatory motive."); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990) (same). In other words, whether BLS guidance counselors and other officials have witnessed discrimination by Harvard against its students on the basis of their race—students who are in the same situation as SFFA's members—is highly relevant to SFFA's claims of discrimination.

### III. The Subpoena Seeks Highly Relevant Documents that Cannot Be Obtained Elsewhere.

In addition to its broad assertion that the subpoena seeks irrelevant documents, BLS challenges three of SFFA's document requests as seeking irrelevant and duplicative information. BLS contends that the documents sought in Request 2, which seeks "communications ... by or among [BLS] employees or agents regarding Harvard's use of race in the admissions process," should be obtained from Harvard because it is "the obvious best source" of this information. Mem. at 3. But Harvard's personnel will have no evidence of *internal communications* by BLS about Harvard's use of race in the admissions process. BLS likely possesses documents responsive to this request, such as communications discussing Harvard's admissions process and its effect on Asian Americans, and internal analyses of its students' likelihood of admission to Harvard based on their race or ethnicity. BLS should be required to produce these documents.

BLS next contends that it should not have to produce documents under Request 1 (documents "prepared by [BLS] concerning the racial composition of applicants, admitted persons, or enrollees to Harvard") or Request 3 (communications "to, from, or copying Harvard regarding the use of race in the admissions process") because SFFA can obtain the documents and information from other sources. Mem. at 3-4. As an initial matter, it is not necessarily true that these documents are available from Harvard. Harvard would not possess, for example, documents *prepared by* BLS analyzing the racial composition of applicants to Harvard. Nor is it

certain that Harvard will produce the relevant communications between BLS and Harvard in response to SFFA's document requests. In any event, "[m]erely because [a party] may be able to obtain certain information from other sources does not render the subpoena unnecessary." *Ellora's Cave Pub., Inc. v. Dear Author Media Network, LLC*, 308 F.R.D. 160, 162 (N.D. Ohio 2015). Unless responding to these requests would impose an undue burden on BLS, there is no basis for it to resist the subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A).

Importantly, BLS does not challenge Requests 4 or 5 as irrelevant or duplicative. Nor could it. Request 4 seeks documents "describing alleged discrimination by colleges, including … Harvard, against persons of Asian descent from Boston Latin School … in the college admissions process." And Request 5 seeks documents concerning SFFA, Edward Blum (SFFA's president), or SFFA's litigation against Harvard. These requests fit squarely within the federal rules' definition of "relevance" and unquestionably are not duplicative. *See Rockstar Consortium US LP*, 2015 WL 5972422, at *4.[2]

## IV. Concerns About Student Privacy Do Not Justify Quashing the Subpoena.

BLS claims that the subpoena should be quashed because it "requests confidential student record information and/or would create a chilling effect as a matter of public policy." Mem. at 5. As an initial matter, BLS appears to assert that it cannot comply with the subpoena because of the Family Educational Rights and Privacy Act ("FERPA"). *See* Mem. at 6. But FERPA authorizes the release of educational records if they are "furnished in compliance with judicial

---

[2] To the extent that the Court accepts any of BLS's arguments regarding burden or relevance, the proper remedy is not to quash the subpoena, but to modify it so as to cure any overbreadth. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("Generally, modification of a subpoena is preferable to quashing it outright."); *see, e.g.*, *Fadalla v. Life Auto. Prod., Inc*., 258 F.R.D. 501, 507 (M.D. Fla. 2007). Indeed, SFFA has offered to work with BLS to try to alleviate any concerns about the scope of the requests, but BLS refused to negotiate and insisted on quashing the subpoena entirely.

order, or pursuant to any lawfully issued subpoena." 20 U.S.C. § 1232g(b)(2). That is obviously the case here. Alternatively, because FERPA applies only to educational records with "personally identifiable information," *id*., it is well-settled that "[t]here is nothing in FERPA that would prohibit [a school] from releasing education records that had all 'personally identifiable information' redacted." *Ragusa v. Malverne Union Free Sch. Dist*., 549 F. Supp. 2d 288, 293 (E.D.N.Y. 2008); *see United States v. Miami Univ*., 294 F.3d 797, 824 (6th Cir. 2002) (same). BLS thus can avoid FERPA by simply redacting any "personally identifiable information."

Moreover, there are a number of steps BLS can take to maintain the privacy of its students and avoid any "chilling effect." In addition to or instead of redacting "personally identifiable information," BLS can enter into the protective order in this case, which provides ample protection of third-party information. Protective safeguards ensuring student privacy thus are readily available. BLS cannot use the mere existence of such information to justify the wholesale rejection of the subpoena.

## CONCLUSION

For the foregoing reasons, the Court should deny BLS's motion to quash.

Respectfully submitted,

/s/ Patrick Strawbridge

| | |
|---|---|
| Paul M. Sanford BBO #566318 | William S. Consovoy |
| Benjamin C. Caldwell BBO #67506 | Thomas R. McCarthy |
| | J. Michael Connolly |
| BURNS & LEVINSON LLP | CONSOVOY MCCARTHY PARK PLLC |
| One Citizens Plaza, Suite 1100 | 3033 Wilson Boulevard, Suite 700 |
| Providence, RI  02903 | Arlington, VA 22201 |
| Tel: 617-345-3000 | Tel: 703.243.4923 |
| Fax: 617-345-3299 | Fax: 703.243.4923 |
| psanford@burnslev.com | will@consovoymccarthy.com |
| bcaldwell@burnslev.com | tom@consovoymccarthy.com |
| | mike@consovoymccarthy.com |

Patrick Strawbridge
BBO #678274
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
Boston, MA 02109
Tel: 617.227.0548
patrick@consovoymccarthy.com

Dated: April 20, 2017                 *Counsel for Plaintiff SFFA*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to all counsel of record via the CM/ECF system and that on the day of the filing a copy will be emailed to counsel for non-party Boston Latin School (Jennifer N. Seich Kelly, Esq., Boston Public Schools – Office of Legal Advisor, 2300 Washington Street, 4th Floor, Roxbury, MA 02119, Jkelly8@bostonpublicschools.org).

/s/ Patrick Strawbridge