# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

STUDENTS FOR FAIR ADMISSIONS, INC.,

        Plaintiff,

    v.

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE,

        Defendant.

Civil Action No. 1:14-cv-14176-ADB

## JOINT STATUS REPORT

At the Court's direction, the parties have met and conferred concerning how this case should proceed at the close of discovery. The parties also conferred on a series of related case-management issues. While the parties have reached agreement on a few issues, they disagree on fundamental issues concerning summary judgment and trial. Thus, the parties set forth their respective positions below, noting agreement where it has been reached.

## I.     SFFA's Position

### A.     Summary Judgment

Under the governing scheduling order, dispositive motions are due on June 15, 2018. Unless the Court vacates that order and establishes a new schedule, SFFA will file a motion for summary judgment on all counts on that date. Harvard's attempt to alter the agreed-upon schedule should be rejected for several reasons explained below. But even if the Court alters the schedule, SFFA intends to file a motion for summary judgment in advance of any trial date the Court sets and respectfully requests that the Court consider the motion before proceeding to trial.

As an initial matter, Mr. Lee's statement at the February 7, 2018 hearing that SFFA has no "right to file summary judgment motions" and that the Court could prevent SFFA from doing so is

contrary to governing law. Hearing Tr. 2/7/18 (unsealed). Under Rule 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." "It is well settled that this Court cannot prevent a party from making a motion that it is entitled to bring under the Federal Rules of Civil Procedure." *Wechsler v. Hunt Health Systems, Ltd.*, 216 F. Supp. 2d 347, 351 n.3 (S.D.N.Y. 2002); *see Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987) ("Absent extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation, or a failure to comply with sanctions imposed for such conduct, a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure."); *Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000) (same). In fact, Judge Chin rightly observed that doing so "might be unconstitutional." Hon. Denny Chin, *Summary Judgment in Employment Discrimination Cases: A Judge's Perspective*, 57 N.Y.L. Sch. L. Rev. 671 (2013). In short, SFFA is entitled to file a motion for summary judgment under the Federal Rules, and it intends to exercise that right.

Harvard's cases are not to the contrary. *See infra* at 15-16. None of those cases is remotely similar to this one. *See United States v. Fisherman's Fleet, Inc.*, No. 06-cv-11696-GAO, 2008 WL 687028, at *1 (D. Mass. Mar. 12, 2008) (denying the right to file a ***second*** summary judgment motion that "would be futile") (emphasis added); *Texas v. Penguin Grp. (USA) Inc.*, No. 12-cv-3394-DLC, 2013 WL 1759567, at *2 & n.2, *12 (S.D.N.Y. Apr. 24, 2013) (noting that the parties "waived summary judgment practice" and the Court's procedures for non-jury trials were "nearly identical to summary judgment submissions"); *Eidos Display, LLC v. AU Optronics Corp.*, No. 11-cv-201-JRG, 2015 WL 13590398, at *1 (E.D. Tex. Sept. 22, 2015) (routine scheduling order); *Greater New York Mutual Ins. Co. v. Lavelle Indus., Inc.*, No. 13-cv-10164-MBB, 2016 WL 3166369, at *2 n.1 (D. Mass. June 6, 2016) (denying the

right to a file an **untimely** summary judgment motion submitted "more than ten months after the ...

deadline"). In short, Harvard has **no** case standing for the proposition that Mr. Lee asserted.

Harvard instead tries to blur the issue by merging it with the question of whether SFFA has

the right to have that motion adjudicated before this case proceeds to trial. *See infra* at 18-19. But SFFA

has asserted no such right. SFFA trusts that the Court will review and consider its motion to determine

whether a trial will be necessary, and it is proposing a schedule that affords the Court sufficient time

to do so. SFFA thus does not dispute that the Court could withhold ruling on a motion for summary

judgment until after trial if the Court deems it appropriate after reviewing SFFA's filing. But the fact

that the Court may choose to defer ruling on some or all of a summary judgment motion until after

trial does not mean that such a motion can be prohibited altogether.

In any event, SFFA does not understand the Court to be actually contemplating Harvard's

proposal to prohibit the filing of summary judgment motions. To the contrary, the Court first entered

a pretrial scheduling order almost three years ago and has approved modifications made to it on

multiple occasions by consent of the parties without suggesting that it might force SFFA to abandon

summary judgment, much less at the conclusion of discovery and just three months before such

motions are due. But if the Court is now contemplating the radical step of granting Harvard's request

to throw out the scheduling order—which the parties negotiated carefully and have long relied upon—

and to deprive SFFA of its right to move for summary judgment, then SFFA respectfully requests that

the Court issue a written order expressly prohibiting it from filing that motion.

Furthermore, SFFA's decision to seek summary judgment is not simply the exercise of a right

it enjoys under the Federal Rules. It is the product of careful deliberation and planning. It is worth

reiterating that SFFA has four counts: (1) Harvard has engaged in invidious discrimination against

Asian-American applicants; (2) Harvard has engaged in racial balancing; (3) Harvard is not using race

3

merely as a "plus" factor to achieve a "critical mass" of underrepresented minority students; and (4) Harvard has neither engaged in the "good faith" consideration of race-neutral alternatives nor taken advantage of alternatives that would achieve "critical mass" without the use of racial preferences. Notably, SFFA needs to win only on any one of these counts to establish liability on its *claim* that Harvard's admission system violates Title VI of the Civil Rights Act. Harvard's arguments to the contrary, *see infra*, fail to appreciate the difference between alternative grounds for summary judgment and "partial summary judgment," *infra* at 20, and the distinction between factfinding for the purpose of determining liability and remedies—an issue the parties have agreed to bifurcate from liability, *see infra* at 12. But this dispute is immaterial because it does not bear on whether SFFA has the right to seek summary judgment and, in any event, SFFA is confident that it will secure summary judgment on *all* of its counts.

Indeed, although the Court has had limited exposure to the record SFFA has painstakingly created, the Court has seen only a fraction of the evidence that has been developed through discovery. The Court has not seen the overwhelming majority of the 37 deposition transcripts, the incriminating emails and other correspondence, Harvard's own inculpatory studies and other documentary evidence, or SFFA's expert reports based on the statistical evidence Harvard has been forced to produce. SFFA is confident that once the Court reviews SFFA's motion, its statement of material facts, and the supporting evidence, it will understand why SFFA feels so strongly about filing this motion and why it does not believe this case will need to proceed to trial.[1]

---

[1] That Harvard has an expert, *infra* at 15, should not make it confident about surviving summary judgment given the nature of the testimony in his report. *See City of Chanute, Kan. v. Williams Natural Gas Co.*, 743 F. Supp. 1437, 1445 (D. Kan. 1990) ("[A] summary judgment motion is not precluded just because the nonmoving party has presented an expert's affidavit which contains some admissible evidence."); *Southern Waste Systems, LLC v. The City of Coral Springs, Fla.*, 687 F. Supp. 2d 1342, 1365 (S.D. Fla. 2010) ("This contention is not supported by the record on summary judgment. Just because the Plaintiffs' expert may say so, it does not make it so or create a material issue of fact."). The same goes for Harvard's hope that a credibility dispute will save it, *infra* at 18-19,

Harvard's position, in contrast, appears to be based on a desire to avoid such documentation of the record and to rush the case to conclusion, and not on a sincere belief that this case is unsuitable for summary judgment. This is evident because—after going on about how impossible it would be to resolve this case without a trial—Harvard conspicuously reserves the right to file its own motion for summary judgment if the Court does not forbid SFFA from doing so. *See infra* at n.8. In other words, Harvard does not genuinely believe that this case can only be resolved through trial—it just prefers to avoid the prospect of losing the case at summary judgment by keeping SFFA from filing a meritorious motion. Harvard's have-it-both-ways position reveals its strategy to be nothing more than the gambit that it is.

It is understandable why Harvard would give this gambit a try. The record SFFA has created is so strong that Harvard, quite remarkably, now sees as its **best** option conceding that a "reasonable factfinder" could find that Harvard has, among other things, engaged in invidious racial discrimination against Asian-American applicants. *Town of Westport v. Monsanto Co.*, 877 F.3d 58, 64 (1st Cir. 2017); *see Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017) ("An issue is genuine if a reasonable factfinder could resolve it in favor of either party."). That Harvard is now to the point where it must concede that the case could be decided "in favor of either party" speaks volumes about what discovery has revealed about its admissions system.

Like any party that understands that the evidence produced in discovery is stacked against them, Harvard hopes to dodge summary judgment and to use trial as an attempt to reshape the record.

---

given the nature of the testimony in this case. Reservation of credibility determinations for the trier of fact will not save the nonmoving party from summary judgment when it is unable to "offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). In any event, the Court cannot resolve this dispute based on a Status Report before it has had briefing or an opportunity to review the record. That is what summary judgment is for.

But that is not how this works. "The summary judgment stage is the put up or shut up moment in litigation." *Jakobiec v. Merrill Lynch Life Ins. Co.*, 711 F.3d 217, 226 (1st Cir. 2013); *see also Caterpillar Inc. v. Estate of Lacefield-Cole*, 520 F. Supp. 2d 989, 995 (N.D Ill. 2007) ("Summary judgment is not a dry run; 'it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'") (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citation omitted)). Given the lopsided state of the discovery record, Harvard's obvious attempt to avoid having to "put up" at summary judgment is understandable. But SFFA is unwilling to play along. It has built a discovery record that indisputably proves that Harvard is in violation of Title VI. As is its right, SFFA intends to marshal that evidence to seek summary judgment.

Even if the Court concludes that this case should proceed to trial, however, close review of the summary judgment filings will greatly aid the Court's ultimate resolution of the case. Because this will be a bench trial, the Court has wide latitude to limit in-person testimony to only key witnesses, to those whose credibility may bear on the weight their deposition testimony receives, and/or to those from whom the Court believes supplemental testimony is needed. *See Southern Pacific Transp. Co. v. Chabert*, 973 F.2d 441, 448 (5th Cir. 1992) ("A trial judge sitting without a jury is entitled to greater latitude in the admission or exclusion of evidence."); *Alma v. Manufacturers Hanover Trust Co.*, 684 F.2d 622, 625 (9th Cir. 1982) ("In non-jury cases, the district court is given great latitude in the admission of evidence."); *see, e.g.*, *Florida v. United States*, 885 F. Supp. 2d 299, 303 (D.D.C. 2012); *Penguin Grp. (USA) Inc.*, 2013 WL 1759567, at *2 n.2. Summary judgment will permit the Court to winnow the dispute and, as a consequence, allow any trial to proceed more expeditiously than it might otherwise. Harvard agrees that the Court possesses this latitude and should exercise it, *see infra* at 19, yet offers no way for the Court to meaningfully do so in the absence of summary judgment briefing. After all,

the Court cannot simply guess as to which witnesses will need to present live testimony and which ones will not. Absent summary judgment briefing that distills the record and highlights the testimonial and documentary evidence the parties find pertinent, there simply will be no way to avoid a four-week trial where every witness presents live testimony.

Moreover, SFFA notes that this is yet another example of Harvard inappropriately attempting to manipulate the process to its advantage. From the beginning, the schedule has provided that all "dispositive motions" would be due at the close of discovery. Dkt. 35, 157, 180, 335, 363. Over SFFA's objection, Harvard nevertheless filed **two** dispositive motions at times of its own choosing, both of which the Court entertained and adjudicated. Now that the time has finally come for SFFA to file its ***first and only*** dispositive motion, Harvard seeks to prevent it from doing so. Like Harvard, SFFA is entitled to file a dispositive motion. Harvard should not be permitted to renege on the scheduling order at this late stage to deny SFFA a right that Harvard has already exercised itself.

Finally, Harvard's contention that SFFA is delaying this case is wrong. Discovery likely will not close until the end of May. *See infra* at 8. SFFA will file its motion for summary judgment on June 15—as little as ***two weeks*** later. That briefing ends on August 30. SFFA is prepared to go to trial on October 1—***four weeks*** later—if the Court determines that a trial is needed. Harvard, in contrast, has delayed this case by ***years*** by seeking a stay pending *Fisher II* (which, as SFFA predicted, has had no bearing on this case), *see* Dkt. 58; by demanding a discovery schedule that would be convenient for its admissions staff, *see* Harvard 7/8/16 Letter to Court, n.1; and by forcing the Court to overrule meritless discovery objections that significantly delayed document production and key depositions, *see* Dkt. 326. But now that SFFA is on the verge of filing a dispositive motion it believes will determine liability and eliminate the need for a lengthy and expensive trial, Harvard is suddenly concerned with ensuring "the fastest possible disposition" of this case, *see infra* at 17.  The Court should see through

this obvious gamesmanship. Adhering to the long agreed-upon schedule is not "formalistic posturing," and it will not "needlessly prolong this litigation" or make it more expensive. It will end it.

*       *       *

For these reasons, SFFA requests that the Court maintain the existing schedule and either refrain from setting a trial date or set trial for at least two months after summary judgment briefing concludes. Doing so will afford the Court the time to review the parties' filings and to make a judgment as to whether trial is necessary and, if it is, what live testimony is needed to resolve any factual disputes that remain.

### B.      Trial

Even if SFFA were not seeking summary judgment (and requesting that a trial date either not be set or be set at least two months after briefing on that motion is complete), Harvard's proposal to hold the trial in July or August is simply unworkable. Expert discovery concludes on May 1. But that is not the end of discovery. Harvard has agreed to allow SFFA to take an additional fact deposition related to the issue of race-neutral alternatives based the on work of its recently-formed committee. That deposition cannot occur until: (1) the committee completes its work; (2) Harvard produces all relevant documents relating to the committee; and (3) the parties litigate any discovery disputes that arise from that document production. Given SFFA's reasonable need to review these documents and consult with its experts before conducting the deposition, it is likely that discovery in this case will not conclude until late May at the earliest. Given this schedule, commencing a trial in July or August is unrealistic. As explained below, if a trial proceeds on the terms Harvard proposes herein—*i.e.*, that all witnesses for both sides will present live testimony—it will take four weeks. SFFA and its counsel will need ample time to prepare for a trial of this size and scope. The Court should not permit Harvard to

leverage its resource advantage to SFFA's detriment by rushing into trial on an expedited schedule (after throwing out the schedule the parties carefully negotiated and have long relied on).

But there are additional reasons why SFFA opposes setting trial for July or August. SFFA and its counsel have relied on the longstanding agreed-upon schedule to arrange how related cases will proceed. In particular, expert discovery in SFFA's case against UNC-Chapel Hill is anticipated to continue through the month of July.[2] That creates conflicts both for SFFA's lawyers and its experts. Mr. Strawbridge—who will be SFFA's lead trial counsel—will be taking or defending **five** expert depositions between June 8 and July 23. That makes a trial in July or August unworkable. If Mr. Lee's conflicts make it too "complicated" to conduct a trial in September, *infra* at 23, then Mr. Strawbridge's conflicts make trial in July or August equally unrealistic. Even Harvard agrees that SFFA is entitled to sufficient time to prepare for trial, just as Mr. Lee needs time to prepare for his other trials. *See infra* at 22. Given that discovery in this case likely will not close until the end of May or later (notwithstanding Harvard's dubious assertion that it will be completed by May 1), and the prior commitments of SFFA's trial counsel through the end of July, Harvard's proposal is unworkable. Mr. Lee is not entitled to any greater deference in his schedule and time for preparation than Mr. Strawbridge—Harvard's contrary presumption notwithstanding.

Moreover, SFFA's experts have conflicts too. SFFA is using the same experts in the UNC case, and these experts are being deposed (and assisting SFFA's counsel in taking the depositions of UNC's experts) through July 23. And SFFA's experts have vacation and travel commitments in July

---

[2] Harvard incorrectly contends that SFFA has offered "shifting accounts" as to its conflicts in July.  *See infra* at 21. But as its own timeline indicates, SFFA advised Harvard from the outset of this dispute that an extension to discovery in the UNC case was in the works, for reasons particular to that case. In the following weeks, as SFFA and Harvard exchanged the proposals set forth in this letter, that extension came to pass, and the agreed-upon motion (which dictates the window for expert depositions in that case) is currently awaiting court action. If, for unforeseen reasons, the court in the UNC case declines to grant the extension, SFFA will promptly notify this Court. Harvard's insinuation that the extension was a product of this negotiation is completely baseless.

and August that were made in reliance upon this Court's scheduling order. The Court may have considered the summary-judgment schedule to be a "placeholder." Hearing Tr. 2/7/18 (unsealed). But that was not SFFA's understanding. It thus planned to seek summary judgment in accordance with it, orienting related litigation schedules with that in mind. Upending the established schedule at this late date would severely prejudice SFFA's ability to successfully prosecute its case.[3]

Harvard's suggestion that SFFA's proposal could delay the trial for a year, *see infra* at 24, ignores that it is **Harvard** that has declared September through December of this year off limits because of Mr. Lee's schedule, and because it is the busy season for the admissions office, *see infra* at 23-24. But it is Harvard's opposition to summary judgment that is creating this issue in the first place. If summary judgment is granted, **no** Harvard personnel will have to testify. And, even if the Court denies summary judgment, it may determine that many of these individuals will not need to offer live testimony, thus reducing the burden on the admissions office and allowing a trial to proceed in October, November, or December. *See supra* at 24. It is only Harvard's insistence on bypassing summary judgment that ensures that as many as twenty Harvard employees will need to testify in court. Harvard should not be allowed to benefit from a problem of its own making: seeking to deny SFFA's right to move for summary judgment, and then insisting on a trial date that is difficult for SFFA's counsel because of the schedules of the additional witnesses who would need to testify.

Finally, although (as noted) SFFA believes that a trial may be rendered unnecessary or at least narrowed once the summary judgment briefs are filed and reviewed, the full-blown trial Harvard requests would likely take four weeks. SFFA believes that such a trial would require it to call at least

---

[3] Harvard's suggestion that SFFA has the time to prepare for and conduct a trial since it has the time to draft a summary-judgment brief is unserious. Perhaps the financial staffing and resources distinctions between writing and filing a brief and preparing for and conducting a four-week trial is lost on a law firm with over a thousand lawyers representing a client with a $37 billion endowment.

fifteen lay witnesses; Harvard will surely call additional witnesses beyond those SFFA identifies; and there are four experts. As the Court recognized at the February 7 hearing, Harvard's suggestion that this case could be tried in as little as two weeks given the number of relevant witnesses was obviously unrealistic. Harvard has now amended its position and takes the more reasonable position that the trial will take three weeks, although it has not indicated how many witnesses it plans on calling. *See infra* at 23-24. SFFA believes that this is still overly optimistic (especially given Harvard's silence as to why it believes the trial will only take three weeks) and thus asks the Court to reserve four weeks for trial if it proceeds on the terms Harvard proposes.

Therefore, even if the Court prevents SFFA from seeking summary judgment in accordance with the existing schedule, SFFA believes that the Court should set a trial for October 1, 2018 or later. SFFA is ready and able to participate in a trial that is scheduled for **any** four-week period consistent with this request. Indeed, SFFA looks forward to trial if its motion for summary judgment is deferred or denied by the Court once it has been considered. But SFFA should not be penalized for reasonably relying on the longstanding, agreed-upon scheduling order. Yet adopting Harvard's proposal would do just that. Finally, even if the trial is scheduled for 2019, Harvard's claims of harm are disingenuous in light of its own efforts to delay this case, for example, during the pendency of *Fisher II* and throughout discovery, and it would not be fair to subordinate SFFA's right to have sufficient time for its lawyers and experts to prepare for trial to Mr. Lee's schedule. Harvard's request to amend the scheduling order should be denied.

### C.    Bifurcation of Liability and Remedies

SFFA requests that liability and remedies be bifurcated such that the parties will neither brief those issues at summary judgment nor litigate those issues at trial. Remedies raise independent questions about the precise structure of declaratory and injunctive relief the Court might order if SFFA

prevails. If SFFA does not prevail, then the Court will not need to reach these issues. If SFFA does prevail, then the nature of the relief sought will depend on which counts are successful. It would waste both party and judicial resources to brief and/or take testimony on these issues before liability is established.

Harvard agrees that questions of remedy may be deferred until after the Court's disposition of summary judgment motions or trial.

### D.      Amicus Briefs

SFFA anticipates having amici in support of its motion for summary judgment. Assuming the current schedule is not amended, SFFA requests that those briefs be due on July 16, 2018. That will afford amici sufficient time to review SFFA's opening brief and, more importantly, to review SFFA's statement of materials facts and supporting evidence before filing their briefs. If Harvard also seeks summary judgment, SFFA proposes that amicus briefs supporting Harvard also be due on July 16, 2018. If Harvard only opposes SFFA's motion, then SFFA proposes that amicus brief supporting that opposition be due on August 6, 2018.

Harvard does not oppose setting a date for the filing of amicus briefs, but notes that there are likely to be amici (including the proposed intervenors in this case) who want to file a brief in opposition to SFFA's motion for summary judgment and/or in support of any summary judgment motion that Harvard may file.  Accordingly, to the extent the Court enters a scheduling order that contemplates summary judgment and provides a date for the filing of amicus briefs, it should also include dates by which amici may file briefs in support of Harvard's summary judgment motion, and/or in opposition to SFFA's motion, or a single date governing all amicus submissions.

### E.    Public Access to Summary Judgment Filings and Trial Proceedings

As the Court has explained, the Protective Order will not dictate the standard for redacting material in the parties' summary judgment briefs and related filings. Nor will it dictate what (if any) portions of the trial proceedings would be sealed. Dkt. 55 ("The parties' Stipulated Protective Order [Docket No. 53) (the "Protective Order") is APPROVED. However, given the lack of specificity in Paragraphs 10 and 13 regarding the use of protected documents during public proceedings, the court reserves the right to allow, after notice to the parties, the disclosure of any document or information covered by this Protective Order or to modify this Protective Order at any time in the interests of justice and to ensure that any proceeding before this Court is fair, efficient, and consistent with the public interest."). Counsel for Harvard agreed with the Court that this issue would need to be revisited. Hearing Tr. 9/6/16 (unsealed): ("MS. ELLSWORTH: I think there is a different question as far as what we do when it comes time to actually put in evidence at trial -- THE COURT: I agree. MS. ELLSWORTH: -- or summary judgment so that, I wouldn't -- I mean, we'll have to figure something out then and we will cross that bridge when we come to it ....).

The time has come to cross that bridge. That is "because of the longstanding tradition of public access to trials and pre-trial motions in our judicial system—a tradition that is protected both by the common law and the First Amendment." *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 447 (D. Mass. 2015). "The more important the document is to the core judicial function of determining the facts and law applicable to the case, the stronger the presumption of public access and the higher the burden to overcome it. On one end of the spectrum, there is no public right of access to unfiled discovery materials .... At the opposite end of the spectrum from discovery materials, the public interest is strongest (and the burden to overcome it the highest) for documents introduced at trial or included in an appellate record." *Id.* at 447-48 (internal citations omitted). Thus, "the

presumption [of public access] may be overcome if the filing is not related to issues where there is no tradition of public access, like motions about discovery matters. But the pendulum swings the other way for materials filed in connection with non-discovery motions, like motions for summary judgment, *Daubert* motions, or motions in limine." *Id.* at 448.

SFFA and Harvard have agreed to meet and confer in the coming weeks in order to address this issue and attempt to resolve (or at least narrow) any disputes that exist. And, per Harvard's suggestion, *see infra* at 25, SFFA will endeavor to address the issue on a category-by-category basis. But given how far apart the parties have been on this issue throughout the case, SFFA is not optimistic that they will be able to resolve it without the Court's intervention. SFFA thus anticipates seeking a ruling from the Court on the scope of confidentiality in light of the public's right to access in advance of submitting its summary judgment brief on June 15, 2018.

F.       **Hearing on Public-Access Issues**

To that end, SFFA respectfully requests that the Court: (1) order the parties to submit any letter briefs on this question by March 26, 2018; and (2) calendar a hearing for either the week of April 9 or the week of April 16. It is important that this issue is resolved sufficiently in advance of SFFA filing its motion for summary judgment on June 15, 2018. But even if the parties are able to reach an agreement, they will need to inform the Court of its terms given that the Court—and not the parties— bears responsibility for ensuring that the public's right of access is not impeded. *See, e.g., Mangosoft, Inc. v. Oracle Corp.*, 2005 WL 2203171, at *2 (D.N.H. 2005). Setting this schedule and hearing date now will ensure the parties will confer expeditiously, provide the Court the chance to hear from the parties on any disputed issues, afford interested non-parties and the general public notice and an opportunity to be heard on this important issue, and leave the Court ample time to take the matter under advisement should that become necessary.

## II        Harvard's Position

As the Court recognized at the February 7 hearing, this case is not likely to be resolved on summary judgment.  Four claims remain, and as to each, the parties have submitted expert reports that analyze identical data yet reach diametrically opposed conclusions.  In that context, where the plaintiff has no right to a jury, the logical and efficient thing to do is to schedule a bench trial.  SFFA's insistence on proceeding with a multi-month summary judgment phase would contravene, rather than advance, the goal of judicial economy, and would be contrary to the interests of the parties and the public in a definitive and efficient resolution of this case.

The Federal Rules of Civil Procedure "endow trial judges with formidable case-management authority."  *Mulero-Abreu v. Puerto Rico Police Dep't*, 675 F.3d 88, 91 (1st Cir. 2012); *see Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998)).  Those Rules are designed "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  SFFA's proposal would have the opposite effect, and needlessly prolong this litigation.  A schedule that requires months of summary judgment briefing, delaying trial for several months and perhaps a year, would do nothing to advance the interests of the parties in the efficient resolution of this litigation.  Harvard respectfully requests that the Court set the trial date for July and/or August 2018.

### A.        Summary Judgment

SFFA argues that it has a right to file, and have this Court spend months considering, a motion for summary judgment well in advance of a trial date.  That argument is without merit.

SFFA's insistence that the Court is required to structure the post-discovery schedule around SFFA's purported right to file summary judgment briefing in advance of a bench trial is incorrect.  District courts often recognize that summary judgment briefing would be wasteful and pointless when all factual and legal issues can be efficiently resolved together at a bench trial.  *See, e.g.*, *United States v.*

*Fisherman's Fleet, Inc.*, No. 06-cv-11696-GAO, 2008 WL 687028, at *1 (D. Mass. Mar. 12, 2008) (O'Toole, J.) (denying leave to file motion for summary judgment in part because "any summary judgment motion would be futile"); *Texas v. Penguin Grp. (USA) Inc.*, No. 12-cv-3394-DLC, 2013 WL 1759567, at *2 (S.D.N.Y. Apr. 24, 2013) ("The Court also explained in detail its bench trial procedures, including that there would be no summary judgment practice for claims being tried by the Court.")[4]; *see also Eidos Display, LLC v. AU Optronics Corp.*, No. 11-cv-201-JRG, 2015 WL 13590398, at *1 (E.D. Tex. Sept. 22, 2015) (requiring parties to move for leave to file motions for summary judgment").[5] SFFA's suggestion (*supra* at 2) that Rule 56's establishment of default summary judgment procedures creates an inviolable right to file summary judgment motions under those procedures was recently rejected by this Court as "disingenuous[]," because Rule 56 itself recognizes the right of the court to "*order[] otherwise.*" *Greater New York Mutual Insurance Co. v. Lavelle Industries, Inc.*, No. 13-cv-10164-MBB, 2016 WL 3166369, at *2 n.1 (June 6, 2016) (Bowler, M.J.) (emphasis in original).

SFFA's claim to a reliance interest by virtue of prior scheduling orders including summary judgment deadlines is perplexing. Forgoing summary judgment would *guarantee* SFFA a trial on its four remaining counts, and would ensure the fastest possible disposition of all those counts. As the

---

[4] SFFA is wrong to suggest (*supra* at 2) that the court's description of its bench trial practices in *Penguin Group* came only *after* the parties waived summary judgment, and in any case that statement was by its terms a statement of the court's usual "bench trial procedures." *See* 2013 WL 1759567, at *2 & n.2; *see also In re Elec. Books Antitrust Litig.*, No. 11-MD-2293, 2014 WL 1642813, at *3, n.3 (S.D.N.Y. Apr. 24, 2014) ("as this Court explained to the parties on June 22, there is customarily no summary judgment motion practice before a bench trial").

[5] SFFA's dismissal of *Eidos Display, LLC* as a "routine scheduling order" (*supra* at 2) ignores that this is *precisely the point*: Courts routinely require or deny leave to file summary judgment motions. *See also, e.g.*, *IOENGINE, LLC v. Interactive Media Corp.*, No. 14-cv-1571, 2017 WL 67938, at *1 (D. Del. Jan. 4, 2017) (stating that "defendants filed a letter requesting leave to file a motion for summary judgment" and the court granted leave to file summary judgment only on certain claims); *Georgetown Rail Equip. Co. v. Holland L.P.*, No. 13-cv-366, 2014 WL 11498108, at *1-2 (E.D. Tex. Aug. 14, 2014) (explaining that "[p]er Standing Order, the Court requires that, prior to filing any summary judgment motion, the moving party file a letter brief requesting leave," and denying three summary judgment motions for failure to request leave).

First Circuit has explained in a case relied on by SFFA, summary judgment often serves as a barrier to *plaintiffs* seeking trial—a "put or shut up moment" when "a *plaintiff* must come forward with some evidence … if he wants to get in front of a jury." *Jakobiec*, 711 F.3d 217, 225 (emphasis added); *see also id.* ("Unfortunately for plaintiffs, the summary judgment stage is the time when a plaintiff must 'affirmatively point to specific facts….'").  SFFA appears to be the rare plaintiff that would prefer to avoid its "day in court."  This is a striking change in posture for a party that once warned that "its members face undeniable hardship if the adjudication of their civil rights claims is delayed for even one additional admissions cycle."  Dkt. 83.[6]

Further, even where summary judgment briefing is allowed, parties have no right to demand the court's consideration of such briefing before trial.  SFFA concedes that the Court need not *decide* summary judgment motions before trial, but nevertheless demands that the Court schedule two months for its *consideration* of such motions so as to "afford the Court the time to review the parties' filings and to make a judgment" (*supra* at 8).  But the amount of time to spend considering summary judgment briefing before trial is wholly within the court's discretion, as is whether to withhold judgment on such motions until after a bench trial.  *See Kennedy v. Silas Mason Co.*, 334 U.S. 249, 257 (1948) ("We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts."); *Milk St. Cafe, Inc. v. CPK Media,*

---

[6] SFFA's attempt to relitigate the stay pending *Fisher II* that Harvard sought—and the Court granted—in mid-2015 is as irrelevant to the present dispute as it is incorrect.  Contrary to SFFA's assertion, *Fisher II*—the most recent Supreme Court precedent on the use of race in university admissions—is plainly relevant to this case, as SFFA has itself asserted in other contexts.  *See, e.g.*, Dkt. 172 at 3 ("Six additional years is the appropriate number [of years of applicant data]—as *Fisher II* underscores.").  Moreover, *Fisher II* made clear that two of SFFA's claims, Count IV and Count VI, were foreclosed by existing law—as this Court recognized when, following *Fisher II* and the stay, it granted Harvard's motion for judgment on the pleadings on those counts (Dkt. 325).

*LLC*, No. 16-cv-11416-DJC, 2017 WL 3425170, at *1 n.1 (D. Mass. Aug. 9, 2017) (Casper, J.) ("Given the pendency of the bench trial [], the Court reserved on resolution of the summary judgment motion."); *Fine v. Sovereign Bank*, No. 06-cv-11450-NG, 2011 WL 2134380, at *1 (D. Mass. May 27, 2011) (Gertner, J.) (reserving judgment as to motion for summary judgment on G.L. c. 93A claim). The 2010 advisory committee comments to the Federal Rules recognize that a court "may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial." Fed. R. Civ. P. 56, cmt. 2010 Subdivision (g). "The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event." *Id.*

Indeed, the First Circuit has directed that in cases where the credibility of witnesses will feature prominently, reserving issues for trial is the wiser course. *See E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues … are quintessential fact questions. As such, they ordinarily should be reserved 'for the factfinder at trial, not for the court at summary judgment.'" (quoting *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 49 (1st Cir. 1999))). SFFA has charged Harvard with intentional racial discrimination, placing directly at issue Harvard's good faith in carrying out its undergraduate admissions practices, an issue on which credibility determinations may feature prominently. In addition, the parties' experts have offered competing analyses of the same set of admissions data across what will ultimately be thousands of pages of reports, appendices, and deposition transcripts. Those competing analyses reach every count of SFFA's complaint, and their resolution will require the Court's judgments as to the persuasiveness of the parties' experts.[7]

---

[7] The dispositive motions Harvard filed in September 2016 presented very different issues and procedural

SFFA counters that "[t]he record SFFA has created is so strong" as to overwhelm these dynamics (*supra* at 5), and that "SFFA is confident that it will secure summary judgment on *all* of its counts" (*supra* at 4). It is unsurprising that SFFA wishes to project confidence; in the unlikely event that such assertions are helpful to the Court, Harvard confirms that it, too, is confident in its case. But that is not the issue here. Harvard is offering a post-discovery scheduling proposal that eschews formalistic posturing, recognizes the fact-finding realities of the case, and attempts to spare the parties and the Court needless waste of time and expense.

SFFA correctly notes (*supra* at 6) that at a bench trial, this Court will have broad discretion as to the testimony and evidence it believes will be most appropriate to resolving the issues in this litigation. But that argument counsels for proceeding directly to trial, not detouring for months of summary judgment briefing. If SFFA believes that resolution of this case may require an extensive documentary record, the parties can enter into stipulations about the authenticity of documents without the need for summary judgment briefing.

SFFA's assertion that it need only win on a single count to "establish liability" (*supra* at 4) disregards the nature of its claims and the relief it seeks. It is simply not the case that a summary judgment determination in favor of SFFA as to one count—however unlikely—would resolve the entire case. For example, a judgment that Harvard insufficiently considered race-neutral alternatives

---

considerations from those presented here. Harvard filed its Motion for Judgment on the Pleadings eight days after the pleadings closed, in accordance with Fed. R. Civ. P. 12(c). *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."). That motion was directed at pure issues of law, such as the Court's lack of authority to overrule Supreme Court precedent. Dkts. 185, 186 at 4. Harvard's Motion to Dismiss for Lack of Subject Matter Jurisdiction focused on the proper legal standard for associational standing (Dkt. 187), and its timing was consistent with the requirement that "[i]f the court determines *at any time* that it lacks subject matter jurisdiction, the court must dismiss the action." Feb. R. Civ. P. 12(h)(3) (emphasis added). Neither motion was a Rule 56 motion for summary judgment, and neither sought to litigate the factual merits of SFFA's claims. Nor could Harvard's dispositive motions be premature when the Court's scheduling orders only required that they be filed "by" a certain date. *See* Dkt. 35 at ¶ 7; Dkt. 180 at ¶ 7; Dkt. 335; Dkt. 364.

would not resolve SFFA's claim that Harvard has intentionally discriminated against Asian-American applicants, nor would it have any bearing on whether Harvard's use of race is narrowly tailored to achieve Harvard's interest in diversity; SFFA is incorrect when it asserts that each of its claims is an "alternative ground[]" for complete summary judgment (*supra* at 4).  SFFA's success on any single count would not meaningfully narrow either party's presentation at trial—under any scenario, this Court would need to hear from the leadership of the Admissions Office, from leadership of the University, and from the parties' expert witnesses.  Little efficiency would be gained by resolving fewer than all of SFFA's remaining claims before trial.  Moreover, SFFA itself concedes that "[i]f SFFA does prevail, then the nature of the relief sought will depend on which counts are successful."  *Supra* at 11.  Where each of SFFA's remaining counts calls for different forms of equitable relief, partial summary judgment would not obviate the need for a bench trial on any remaining counts.  Moreover, given SFFA's stated desire to litigate this case to the United States Supreme Court if necessary, a bench trial will provide the parties and the Court with the opportunity to develop a complete record for appellate review.

Accordingly, Harvard suggests that summary judgment briefing will entail unnecessary cost, delay, and duplication of effort and will needlessly delay the ultimate resolution of this case.  Harvard, therefore, urges the Court to proceed directly to trial following the close of discovery.[8]  However, if the Court decides to allow the parties to file summary judgment motions, Harvard requests that such briefing be scheduled as early as possible and be subject to reasonable page limits.  Expert discovery

---

[8] Harvard has proposed that the parties forgo summary judgment because of the needless time and expense such briefing would impose on the parties and the Court.  Contrary to SFFA's suggestion (*supra* at 5), this proposal does not obligate Harvard to unilaterally agree to sit on its hands if summary judgment briefing is, in fact, ordered.  Indeed, on February 19 SFFA informed Harvard that if summary judgment is ordered but Harvard chooses *not* to file a summary judgment motion, SFFA would use such a decision to argue that Harvard has conceded the factual plausibility of SFFA's allegations.

closes on May 1, 2018; Harvard will complete any remaining document production, and offer any remaining witnesses for depositions, before that date. Accordingly, there is no basis for the Court to delay the scheduling of trial; if SFFA insists on filing a motion for summary judgment, it can do so before trial begins or on whatever schedule the Court deems appropriate.[9]

### B.    Trial

After insisting on its purported right to force the parties to devote significant resources to unnecessary summary judgment motion practice, SFFA turns heel and claims that it cannot possibly participate in a trial this summer on account of its attorneys' generally busy schedules, and that those schedules compel delaying trial until at least October 2018.

Notably, SFFA does not claim that its attorneys have competing obligations to appear before other courts at trial. In the weeks since the February 7 hearing, SFFA has offered shifting accounts of why it prefers to delay trial past this summer. On February 19, it informed Harvard of only one specific basis for delay: that it "may" seek an extension of the ***June 25*** expert discovery deadline in parallel litigation it filed against the University of North Carolina at Chapel Hill, M.D.N.C. No. 14-cv-00954. It now asserts that expert discovery in that case "is anticipated to continue through the month of July" (*supra* at 9) a purported modification to that case's June 25 discovery deadline that SFFA sought (but has not yet obtained) from that court only on March 7, after Harvard raised the possibility of a July trial at the February 7 hearing in this case and in a draft of this Joint Status Report. On March 4, SFFA informed Harvard for the first time that it has scheduled five expert depositions in the UNC case for June and July, an unspecified number of which may fall after the June 25 expert discovery

---

[9] SFFA's purported right to a lengthy summary judgment schedule relies primarily on Rule 56 (*supra* at 2), which establishes a default summary judgment deadline of "30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Accordingly, there is no basis for delaying trial if, consistent with that timeline, summary judgment motions are filed by May 31, oppositions are filed by June 29, and replies are filed by July 13.

deadline in that case.  But there is no reason why the close of expert discovery in another case in June or July, accompanied by one of its attorneys taking or defending an average of two or three depositions per month in June and July, should impede counsel for SFFA from participating in a trial in this case commencing in *July* or *August*, let alone justify postponing this trial until *October*.  Further, that other case's discovery deadline has already been extended, at SFFA's joint motion, from December 1, 2017 (Dkt. 72) to May 31, 2018 (Dkt. 104) to June 25, 2018 (Dkt. 119).  SFFA provides no basis for concluding that the fluid discovery schedule in that litigation should delay this Court from the prompt resolution of *this* litigation.  Having made the decision to file two similar lawsuits at essentially the same time, SFFA is not entitled to delay a full and fair adjudication of its claims in one case because it anticipates that there might be some competing activity in the other.  In any event, SFFA's claim that it lacks adequate resources to proceed to trial this summer rings hollow—SFFA was incorporated for and raises money for the purpose of pursuing "litigation" (Dkt. 219-2 at ¶ 6), including this litigation, and cannot now be heard to claim that it is unable to do so.  SFFA is represented in this litigation by two law firms of its choosing, and its apparent desire to use only one of them for trial is its right, but is not a basis for demanding special scheduling consideration based on broad assertions of busy schedules and limited staffing.

In any event, Harvard appreciates that SFFA wants "ample time" for preparation (*supra* at 8). The final stage of discovery closes on May 1.  SFFA's suggestion that it is "dubious" that the parties will comply with this established deadline is unwarranted (*supra* at 9); SFFA has not sought or obtained an extension of this deadline, nor is there any reason for such an extension, as the remaining discovery SFFA outlines has been part of the parties' discovery plans for months.  A trial in July or August, accordingly, would allow the parties at least two full months of preparation.  Harvard is open to working with SFFA and the Court to identify specific periods in July or August that address

immoveable conflicts, and suggests that a three-week period commencing in July 2018 would allow the parties 12 weeks of post-discovery trial preparation while accommodating the Court's interest in a summer trial.  Given the Court's practice of scheduling trial for approximately six hours per day with half days on Fridays, Harvard believes that the trial can be concluded in three weeks.[10]

Scheduling a trial to commence after this summer will be complicated.  Harvard is willing to rearrange its attorneys' schedules to the extent they do not have preexisting trials scheduled, but Harvard's lead trial counsel, Mr. Lee, has a trial scheduled before the International Trade Commission between September 17 through September 21, and a jury trial in the United States District Court for the Central District of California scheduled to last from October 16 through at least October 22.  A trial in this matter would need to take place in July or August 2018 to avoid directly conflicting with the preparation for and conduct of those trials.

Scheduling a trial later in 2018 is essentially impossible for Harvard given that many of the most important fact witnesses in this case are likely to be employees of Harvard's Office of Admissions and Financial Aid.  As this Court is aware, the period of November through December is extraordinarily busy for that office, as admissions staff must review and make decisions on thousands of early applications in a compressed time period.  *Cf. Open Innovation, LLC v. Char-Broil*, No. 10-cv-8175-JFW, 2011 WL 13217756, at *4 (C.D. Cal. Feb. 11, 2011) (in motion to transfer context, "the inconvenience to Plaintiff's counsel and Plaintiff's expert … is entitled to little or no weight" compared to the inconvenience to fact witnesses).

---

[10] It is difficult to fathom why SFFA insists that Harvard has "amended its position" on the length of trial since the February 7 hearing.  *Supra* at 11.  At the hearing, Harvard twice suggested that trial would at most last three weeks.  *See* Tr. 32:11 ("[t]wo to three weeks"), 32:20 (same).

Harvard is also mindful that the Court begins a 14-week trial in January 2019.  As a practical matter, therefore, if trial is not held this summer, it may be impossible to hold a trial in this case until the late spring or summer of 2019.  Delaying trial until mid-2019 is unwarranted—especially given that the entirety of the relief sought is forward-looking.  SFFA's complaint, which was filed on November 17, 2014, sought solely declaratory and injunctive relief.  Dkt. 1 at 119.  The parties and the Court have a shared interest in ensuring that the evidence presented at trial is relevant to the admissions process Harvard employs at the time.  Accordingly, Harvard respectfully requests that the Court schedule a bench trial commencing in mid-July 2018.

### C.      Treatment of Confidential Materials

As the Protective Order (Dkt. 55) makes clear, neither party has the right to publicly file the other party's confidential documents without the consent of that party or the approval of the Court. Harvard has complied with the Protective Order throughout this litigation, including by redacting SFFA's confidential information from the motion to dismiss for lack of standing it filed in September 2016.  *See* Dkt. 190 (publicly filed motion to dismiss for lack of standing, with content related to SFFA's internal governance and the names of SFFA standing members redacted).

Harvard agrees that with the May 1 close of discovery approaching, it is appropriate to revisit the proper balance between the public interest in disclosure and the highly sensitive nature of the confidential documents both parties have produced in this litigation, which include substantial personal details regarding applicants to Harvard (including SFFA's standing members) and regarding Harvard's admission process.  As SFFA notes, the parties plan to meet and confer regarding this issue in the coming weeks.  *Supra* at 14.  Harvard has expressed to SFFA that it will be more efficient to resolve questions regarding public disclosure of confidential materials, both for the parties and if necessary for the Court, in the context of considering specific documents or categories of documents

24

that a party seeks to rely upon, and whether the party seeks to publicly file the documents in connection with summary judgment (where the public interest may yield to the interest in confidentiality) or to introduce them as exhibits at trial (where the public interest will be greater), rather than addressing these issues in the abstract.  Harvard does not object to the Court establishing whatever process for decisionmaking regarding the disclosure of confidential information the Court determines is appropriate.

Respectfully submitted,


/s/ William S. Consovoy
William S. Consovoy
Thomas R. McCarthy
Michael H. Park
J. Michael Connolly
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
Tel: 703-243-4923
Fax: 703.243.4923
will@consovoymccarthy.com
tom@consovoymccarthy.com
park@consovoymccarthy.com
mike@consovoymccarthy.com

Patrick Strawbridge BBO #678274
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
Tel: 617-227-0548
patrick@consovoymccarthy.com

Paul M. Sanford BBO #566318
Benjamin C. Caldwell BBO #675061
BURNS & LEVINSON LLP
One Citizens Plaza, Suite 1100 Providence,
RI 02903
Tel: 617-345-3000
Fax: 617-345-3299
psanford@burnslev.com
bcaldwell@burnslev.com


*Counsel for Plaintiff Students for Fair Admissions, Inc.*

Dated: March 9, 2018

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth (BBO #665232)
William F. Lee (BBO #291960)
Andrew S. Dulberg (BBO #675405)
Elizabeth Mooney (BBO #679522)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com
william.lee@wilmerhale.com

Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
Daniel Winik (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com
daniel.winik@wilmerhale.com

Debo P. Adegbile (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6717
Fax: (212) 230-8888
debo.adegbile@wilmerhale.com

Dated: March 9, 2018                    *Counsel for Defendant President and*
                                        *Fellows of Harvard College*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to all counsel of record via the CM/ECF system.


*/s/ William S. Consovoy*
William S. Consovoy


4822-3100-1183.1