WILMERHALE

March 30, 2018

**By ECF**

Felicia H. Ellsworth

+1 617 526 6687 (t)
+1 617 526 5000 (f)
felicia.ellsworth@wilmerhale.com

Honorable Allison D. Burroughs
U.S. District Court, District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re:  *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation)*, No. 1:14-cv-14176

Dear Judge Burroughs:

In response to the Court's March 14, 2018 order (Dkt. 387), Defendant President and Fellows of Harvard College ("Harvard") submits this letter concerning the treatment of confidential material. In light of the Court's determination that the parties should proceed to file any motions for summary judgment in advance of a bench trial, Harvard limits this proposal to the treatment of confidential information in summary judgment briefs. Because the parties continue to disagree about how confidential material should be treated at the summary judgment stage, the parties are making separate submissions, and Harvard sets forth its proposal below.

As set forth in greater detail below, in the context of this case, in which the vast majority of the information produced by Harvard contains deeply personal and highly sensitive information about applicants to and students at Harvard and the inner workings of Harvard's admissions process, the appropriate confidentiality treatment of documents and information cannot and should not be addressed in a vacuum. Without knowing precisely what documents will be submitted, or what information from those documents will be discussed in the summary judgment briefing, it is impossible to know whether the information in question should be sealed or filed on the public docket. The only method by which the parties and Court can make these determinations is by reviewing the particular documents at issue. And it would be extremely burdensome, and entirely unnecessary, for the parties or Court to engage in a document-by-document review of **every single document** produced in this litigation before knowing which of those documents are even at issue—as this Court will understand, having recently spent considerable time engaging, at SFFA's request, in a careful *in camera* review of privilege claims on a far smaller set of documents. Although the parties have exchanged over 90,000 pages of documents in discovery that have been designated as either Confidential or Highly Confidential under the protective order (Dkt. 55), only a small fraction of those documents will be used as exhibits to summary judgment briefs or discussed in those briefs. Therefore, Harvard proposes that the briefs and supporting documents be filed provisionally under seal on the established schedule, and that the Court set a schedule for the parties to assess the filings, confer to identify

WILMERHALE

Honorable Allison D. Burroughs
March 30, 2018
Page 2

areas of disagreement concerning the sealing of those documents, and submit any disagreements to the Court for prompt resolution.

Harvard understands that there is a public interest in this case and that the public has certain—though not unfettered—interests in access to judicial materials. Those interests, however, must be balanced against the need to protect individual privacy and confidential and proprietary information about the admissions process. "It is uncontested … that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). The blanket order that SFFA appears to propose would fail to protect the serious individual privacy and proprietary interests at issue in this litigation, and would be contrary to the governing case law that recognizes that the public interest in access extends only to those materials that actually form the basis for a court's decision—not all materials that litigants may submit to a court. Moreover, whatever interest the public may have must then be weighed against the legitimate individual privacy and confidentiality interests Harvard seeks to protect, a balancing that SFFA's broad-brush proposal wholly fails to undertake.

Nor does SFFA have any right to seek public dissemination of the information that it obtained from Harvard in the civil discovery process and that is subject to a proper protective order. As the Supreme Court explained in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984), where it upheld a protective order that prohibited dissemination of highly personal information, "pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law." Although there is a public interest in understanding how courts reach their decisions, that interest cannot justify a wholesale unsealing of the civil discovery record before trial or before this Court completes—or at least undertakes—its adjudication of summary judgment motions, which is essentially what SFFA is seeking here. That would seriously prejudice Harvard and others who have compelling privacy and confidentiality interests at stake, as well as an interest in a fair trial. This case should be adjudicated based on the briefs and evidence submitted to the Court, not a media campaign conducted by SFFA's leadership, which is pursuing this case as part of a broad and widely publicized agenda to eliminate consideration of race in higher education and to assail those institutions that consider race in order to pursue their compelling interest in the educational benefits that flow from a widely diverse student body. *Cf.* Local Rule 83.2.1(h) (limiting, *inter alia*, extrajudicial statements by a lawyer relating to "[h]is or her opinion as to the merits of the claims or defenses of a party").

I.    **The Court Cannot Resolve The Important Confidentiality Issues Presented Here In A Vacuum, Before Summary Judgment Briefs Are Filed**

As the Court is aware, the common law right of public access extends only to "'materials on which a court relies in determining the litigants' substantive rights.'" *FTC v. Standard Fin.*

*Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987).[1] It does not confer upon the public unfettered rights of access to any personal, confidential, or proprietary information that might be filed with the court in a civil litigation. Moreover, the public's interest in access is weighed against other interests that support a finding of good cause to seal, which can be shown by "'[a] particular factual demonstration of potential harm.'" *Id.* at 412. The good cause inquiry is a "'flexible'" one that requires "'individualized balancing of the many interests that may be present in a particular case.'" *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 402 (1st Cir. 2005). District courts have "'broad discretion' to decide 'when a protective order is appropriate and what degree of protection is required.'" *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) (quoting *Seattle Times Co.*, 467 U.S. at 36). Accordingly, "great deference" is afforded a district court's approach to "framing and administering such orders." *Id.*

Individual privacy interests, business secrets, and extensive publicity all suffice to show good cause for sealing documents submitted to the courts. *See United States v. Kravetz*, 706 F.3d 47, 62 (1st Cir. 2013) (privacy); *Glass Dimensions, Inc. v. State St. Corp.*, No. 10–10588–FDS, 2013 WL 6280085, at *1 (D. Mass. Dec. 3, 2013) (business secrets); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8 (1st Cir. 1986) (extensive publicity). All three of those bases are fully and powerfully present here, and when the Court is presented with particular documents in connection with actual summary judgment filings, it will assuredly find good cause to seal many such documents, most of which implicate substantial privacy and confidentiality concerns for Harvard applicants and students, and for Harvard as an institution.

*First*, Harvard goes to great measures to protect the privacy of the high school students who apply for admission every year, and has made every effort to maintain that privacy for the hundreds of thousands of high schoolers whose application details have been produced to SFFA in this litigation, none of whom asked to be embroiled in this dispute. To afford SFFA full access to the discovery it claimed to need in this litigation, Harvard applied limited redactions to certain of the documents produced, only to the extent necessary to mask student names and directly identifying information. Harvard produced numerous documents with names and other identifying information redacted that still implicate privacy by, for example, identifying the towns in which students live and certain awards that they won. Such information can easily be used to locate and identify a student through a simple internet search. Harvard proceeded in this fashion based on SFFA's undertaking in the Protective Order not to attempt to ascertain the

---

[1] The First Circuit "has never decided whether the First Amendment mandates such a general right of access" to civil cases. *United States v. Three Juveniles*, 61 F.3d 86, 88, n.2 (1st Cir. 1995). The First Circuit has further reserved on the question "whether we agree with those courts extending a right of public access to documents considered in rulings on dispositive pretrial motions; nor need we decide whether there is a public right of access to civil trials in general," *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 11 (1st Cir. 1986), which would be "a position at the farthest reaches of the first amendment right to attend judicial proceedings," *id.* at 8.

identities of the hundreds of thousands of high school students who entrust Harvard with personal information of the utmost sensitivity. As a result, SFFA has in its possession thousands of highly sensitive documents, including but not limited to application files, database information, admissions officer notes, internal correspondence relating to particular applicants, and deposition testimony in which the foregoing was discussed. If publicly filed, these documents could be used by members of the public—who are not bound by SFFA's undertaking not to seek to identify particular applicants—to ascertain the identities of (and, by extension, deeply sensitive personal information about) particular applicants to Harvard, at great cost to the privacy of Harvard's applicants and to Harvard as an institution. "Third-party privacy interests, in particular, have been referred to as 'a venerable common law exception to the presumption of access'"; such concerns therefore "'weigh heavily in a court's balancing equation.'" *Kravetz*, 706 F.3d at 62. The significant privacy concerns of Harvard's applicants, students, and graduates weigh heavily in favor of sealing any documents that contain information that would make these individuals identifiable.

*Second*, Harvard's admissions process is highly competitive, and although Harvard discloses to the public important information about that process, by necessity there is information about the inner workings of Harvard's admissions process that is not and should not be publicly disseminated. Once again, to afford SFFA full access to the discovery it claimed to need, Harvard produced to SFFA in this litigation voluminous information about the inner workings of its admission process that it would never otherwise make available, including but not limited to documents and deposition testimony concerning procedures used by Admissions Officers to assess and evaluate applications, data from which the relative importance of particular applicant qualities can be derived, internal correspondence among Admissions Officers about the role that particular qualities play in Harvard's admissions process, and evaluative statements by Admissions Officers about why certain application qualities are more or less compelling in the admissions decision.

That information is highly proprietary to Harvard and of great interest to college admissions consultants and others who seek any advantage they can muster in the highly-competitive admissions process. Making this voluminous information public, as SFFA proposes, would put Harvard at a severe competitive disadvantage vis-à-vis the other highly selective institutions against which Harvard competes for an overlapping pool of applicants. Approximately 40,000 high school students apply to Harvard every year, and the detailed information about the mechanics of Harvard's admissions process that are contained in the discovery material SFFA seeks to publicly file will undoubtedly be of intense interest to those seeking to bolster their chances of admission, and to former applicants who are curious as to why and how the Admissions Office reached a decision on their application. Publicizing this information would cause applicants and college consultants to seek to orient their applications to what they perceive Harvard wants, to the detriment of the authenticity of the information Harvard receives and its ability to make its best judgments. Thus, Harvard has not only legitimate but compelling

**WILMERHALE**

Honorable Allison D. Burroughs
March 30, 2018
Page 5

interests in protecting confidential details of its admissions process. "In civil cases, interests which courts have found sufficient to justify impoundment include trade secrets [and] confidential business information." *Velcro Grp. Corp. v. Zijlstra*, 180 F. Supp. 3d 106, 107 (D. Mass. 2016); *see also Glass Dimensions, Inc. v. State St. Corp.*, No. 10–10588–FDS, 2013 WL 6280085, at *2 (D. Mass. Dec. 3, 2013) (concluding documents in which defendant had a "legitimate and significant interest in protecting the sensitive business information," including its fees and other proprietary information, should remain under seal to "avoid the serious competitive injury that dissemination would more than likely entail" and further concluding that the First Amendment did not require unsealing the documents because "the material is historically not subject to public access and access to the material does not play a positive role that is significant in the functioning of the process at issue in the case at bar").[2]

In disregard of these serious privacy and proprietary concerns, SFFA's proposed approach, as it has been communicated to Harvard during the meet and confer process, relies on a categorical approach that is plainly unworkable. Harvard and SFFA already dispute what types of documents fall into SFFA's roughly-drawn categories, further illustrating that the only way to ascertain whether there are in fact areas of dispute requiring the Court's intervention is the document-specific approach proposed by Harvard. SFFA's proposal that the confidentiality of Harvard's documents be determined *now* is based on six SFFA-defined categories of documents that are both overbroad and vague, and that encompass nearly the entirety of the documents produced by Harvard in this case, many of which contain varying degrees of sensitive personal or business information.[3] It is not efficient, practicable, or necessary to use such a blunt-instrument approach to establish confidentiality designations for the thousands of documents included in these categories, most of which will never be used during summary judgment or even at trial—and still fewer forming the basis of any decision making by the Court.

For example, Harvard has produced thousands of communications from, to, or among Harvard Admissions Officers that vary widely in terms of whether they contain personally identifying information of applicants or confidential business information of Harvard, how much they contain, and whether it is feasible to redact such information for public filing. Although some

---

[2]  *See also Dahl v. Bain Capital Partners, LLC*, 891 F. Supp. 2d 221, 225 (D. Mass. 2012) (collecting cases); *Madison Servs. Co., LLC v. Gordon*, No. 09-CV-02369-MSK-KMT, 2010 WL 11556815, at *3 (D. Colo. Dec. 3, 2010) (manual setting forth the "'the general policies and procedures which govern [plaintiff's] business'" sealed because of the "comprehensive nature of the document and the sensitive and propriety business strategies and directives" therein).

[3]  SFFA has not made any proposal for how the documents that *SFFA* has produced and designated as Confidential or Highly Confidential under the Protective Order should be filed. Harvard has suggested to SFFA, and proposes to the Court, that the sealing of SFFA's documents and information, like Harvard's, should be assessed after the parties' briefing and exhibits have been submitted, and not in a vacuum.

WILMERHALE

Honorable Allison D. Burroughs
March 30, 2018
Page 6

communications may not contain any such information, others, even if they have been produced in redacted form, could still be used to identify applicants or Harvard students, or could contain sensitive nonpublic information about Harvard's admissions process.  Likewise, although some portions of deposition transcripts may be able to be publicly filed without risk of revealing personally identifying or sensitive business information, other portions discuss in granular detail how Harvard makes admissions decisions or specific applicants' credentials or admissions prospects, implicating both confidential business information and applicant privacy.

It may be that the particular documents and testimony that will be filed in connection with summary judgment do not render any individual applicant or student specifically identifiable, or do not implicate Harvard's confidentiality interests in the workings of its admissions process.  Without a specific document in hand to evaluate, however, it is impossible to determine whether any of the myriad types of documents discussed above can be submitted for public filing in the first instance.  SFFA's blithe suggestion that the vast majority of the documents it would submit in its summary judgment filing should be presumptively filed on the public docket misunderstands the law and callously disregards the deeply sensitive nature of the information that Harvard has produced in this case—and that occasioned the imposition of the protective order in the first instance.  It should not be countenanced.

II.     **Courts, Including This Court, Routinely Allow Confidential Materials To Be Filed Under Seal At Summary Judgment**

Consistent with standard practice in this and other courts in cases in which highly sensitive information has been exchanged in discovery, Harvard suggests that the parties file their summary judgment briefs and supporting documents under seal in the first instance, and then proceed to resolve which of those materials (or parts of materials) can be filed on the public record.  With the scope narrowed to the briefs and documents actually filed, the parties can make more concrete decisions about the continuing need for confidentiality and, to the extent the parties are unable to agree, the need for resolution of any disputes by the Court.  This is particularly the case because, even if summary judgment briefs and supporting materials would be subject to a presumption of access, that presumption would extend only to "'materials on which a court relies in determining the litigants' substantive rights.'" *In re Boston Herald, Inc.*, 321 F.3d 174, 189 (1st Cir. 2003).  It does not apply to documents that "'play no role in the adjudication process.'" *Id.*  The Court may decide that a trial is necessary in this case and may rely on none of the summary judgment materials in its rulings.  It is, therefore, not possible to determine whether some, none, or all of the submitted materials would even implicate the public access standard.

SFFA has suggested to Harvard during the meet and confer process that the very idea of submitting summary judgment filings under seal is anathema to the Constitution.  That hyperbolic argument is entirely without support in law or fact.  Contrary to SFFA's claims, sealing summary judgment motions and related documents is accepted practice in this District,

and there is no reason to deviate from that practice here. *See, e.g.*, *CardiAQ Valve Technologies, Inc. v. Neovasc Inc.*, No. 1:14-cv-12405-ADB, Dkts. 301, 314, 323, 326, 334 (sealing documents filed in connection with summary judgment); *Theidon v. Harvard Univ.*, No. 15-cv-10809-LTS, Dkts. 152, 153, 156, 157, 161, 167 (summary judgment briefs and statements of material facts and exhibits filed under seal or in redacted version pursuant to a protective order); *Rimowa Distribution, Inc. v. Travelers Club Luggage, Inc.*, 1:15-cv-10330-RGS, Dkt. 85 (allowing motion to file dispositive motion filings under seal); *In re Asacol Antitrust Litig.*, 15-cv-12730-DJC, Dkts. 446, 488, 555, 558 (summary judgment briefing and supporting documents filed under seal); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 1:14-md-02503-DJC, Dkts. 720, 844, 877 (same); *Painters and Allied Trades Dist. Council 82 Health Care Fund v. Forest Pharm., Inc.*, 1:13-cv-13113-NMG, Dkts. 190, 215, 219 (allowing motions to seal summary judgment papers and accompanying exhibits pursuant to protective order); *Iconics, Inc. v. Massaro*, 1:11-cv-11526-DPW, Dkts. 326, 336, 357 (granting motions to seal documents associated with summary judgment); *Tutor Perini Corp. v. Banc of Am. Sec. LLC*, 1:11-cv-10895-NMG, Dkts. 209–210, 212, 214–218, 225–231, 235–239 (summary judgment briefing and supporting documents filed under seal).[4]

### III. Harvard's Position Concerning Trial Scheduling

The March 14, 2018 order invited the parties to address trial scheduling at the upcoming hearing. Harvard wishes to inform the Court in advance of the hearing that one of Mr. Lee's trials, previously scheduled from October 16 through 22 in the Central District of California, has been postponed. Thus, if the Court's calendar permits, Harvard would be available to commence a trial in this case beginning on October 1, 2018 (although Harvard's Admissions Office personnel become unavailable beginning in November). Harvard informed SFFA on March 29 of this change in Harvard's counsel's availability, and understands that SFFA is determining its own

---

[4] Harvard's request that its confidential internal business information remain sealed is consistent with the routine granting of motions to seal materials containing business secrets submitted in connection with summary judgment motions. *See, e.g.*, *Glass Dimensions*, 2013 WL 6280085, at *1–*2 (sealing documents filed in connection with summary judgment motions); *McAirlaids, Inc. v. Kimberly-Clark Corp.*, No. 7:12-CV-00578, 2013 WL 12317059, at *2 (W.D. Va. July 23, 2013) (sealing memorandum in support of summary judgment motion because proponent of sealing "demonstrated that the proposed redactions contain confidential and proprietary commercial information"); *Interstate Fire & Cas. Co. v. N.H. Ins. Co.*, No. CV-12-1237-PHX-DGC, 2013 WL 11693771, at *2 (D. Ariz. Apr. 22, 2013) (allowing motion to file declaration and exhibits to summary judgment motion under seal because, among other reasons, they reflected confidential information that could affect the plaintiff's competitive standing); *Goldenberg v. Indel, Inc.*, No. CIV. 09-5202 JBS/AMD, 2012 WL 15909, at *3–4 (D.N.J. Jan. 3, 2012) (sealing exhibits attached to declaration in support of summary judgement because they contained "confidential business information").

WILMERHALE

Honorable Allison D. Burroughs
March 30, 2018
Page 8

availability in October.  *Cf.* Dkt. 386, p. 11 (noting SFFA's availability for trial scheduled beginning October 1, 2018).

The March 14, 2018 order also indicated that the Court is considering scheduling the trial to commence during the week of January 2, 2019.  Because the regular admissions application deadline for Harvard is January 1, a January trial (like a November or December trial) would be very difficult for Harvard's witnesses because Harvard Admissions Office personnel, who will be central to this case, will be immersed full-time in reviewing thousands of applications.  Harvard is prepared to address at the upcoming hearing any questions the Court may have about trial scheduling.

Respectfully submitted,

*/s/ Felicia H. Ellsworth*
Felicia H. Ellsworth

cc: Counsel of record (via ECF)