WILMERHALE

April 9, 2018

**By ECF**

William F. Lee

+1 617 526 6556 (t)
+1 617 526 5000 (f)
william.lee@wilmerhale.com

Honorable Allison D. Burroughs
U.S. District Court, District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re:  *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation)*, No. 1:14-cv-14176

Dear Judge Burroughs:

Harvard regrets that SFFA disregarded this Court's directive that the parties make simultaneous submissions on the issue of how the serious confidentiality concerns in this case will be addressed in the next stage of the case, *see* Dkt. 387 (Court's minute entry), by burdening this Court with a cumulative "reply" letter, Dkt. 396.  In the face of SFFA's improper submission, however, Harvard is compelled to correct the record.

Harvard's proposal is straightforward and consistent with common practice: in the first instance, the June 15 summary judgment materials should be filed in compliance with the Protective Order (Dkt. 55), with redacted summary judgment briefs and any accompanying non-confidential documents filed publicly, and unredacted summary judgment briefs and any accompanying confidential documents filed under seal.  Harvard will work with SFFA to ascertain what portion of those submissions should remain sealed on whatever timeline the Court establishes, but suggests that the parties could meet and confer within 2 business days of the filing, submit any disputes to the Court within 2 business days after that, and the parties would file further unredacted portions of the briefs and records within 2 business days of the Court's order.  The same process could be followed for the July 30 opposition deadline and the August 30 reply deadline.

This is precisely the approach Harvard took with respect to SFFA's confidential information in Harvard's motion challenging SFFA's standing—Harvard filed an unredacted version under seal on September 23, 2016, conferred with SFFA on the proper scope of redactions, and filed a redacted public version on September 26, 2016.  *See* Dkt. 190.  SFFA raised no objection to that process at the time, and has no legitimate basis to quarrel with it now.  SFFA's suggestion that it should be entitled to make Harvard's confidential documents public simply by attaching them to its summary judgment motion, regardless of their relevance to the issues or the Court's ultimate decision, would render the Protective Order entirely meaningless.

WILMERHALE

Honorable Allison D. Burroughs
April 9, 2018
Page 2

SFFA protests Harvard's suggestion that it seeks to "engage in a 'media campaign'" to trumpet its arguments. Dkt. 396 at 2. Its constant running commentary to the media about this litigation, including in the days after SFFA submitted its first letter and more recently, makes those protestations ring hollow. SFFA is of course free to seek media attention. But its thirst for publicity is not a basis for asking the Court to bypass reasonable procedures for protecting confidential documents.

A.   **Harvard's Sensible Proposal Balances the Confidentiality and Public Access Issues**

Contrary to SFFA's suggestion, the question before the Court is not whether Harvard's most confidential documents should be withheld from the public summary judgment record without any further analysis. Harvard is *not* proposing that the entire summary judgment record be kept under seal indefinitely; it simply proposes a framework—one routinely employed in this and many other courts—under which the parties and the Court can assess confidentiality concerns based on a review of the relevant briefing and exhibits, rather than in a preemptive and largely abstract advisory ruling before any party has even sought summary judgment. With good reason, courts in this District frequently follow some version of this approach.

For example, Judge Casper has allowed parties to file all summary judgment documents under seal in the first instance, and to subsequently file redacted versions. *See In re Asacol Antitrust Litig.*, 15-cv-12730-DJC, Dkts. 446, 488, 555, 558; *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 1:14-md-02503-DJC, Dkts. 720, 844, 877. Judge Gorton has allowed for the sealing of summary judgment briefing and exhibits pursuant to a protective order. *See Tutor Perini Corp. v. Banc of Am. Sec. LLC*, 1:11-cv-10895-NMG, Dkts. 209–210, 212, 214–218, 225–231, 235–239; *Painters and Allied Trades Dist. Council 82 Health Care Fund v. Forest Pharm., Inc.*, 1:13-cv-13113-NMG, Dkts. 190, 215, 219. Judge Sorokin has allowed the sealing and redaction of summary judgment materials. *See Theidon v. Harvard Univ.*, No. 15-cv-10809-LTS, Dkts. 152, 153, 156, 157, 161, 167. Judge Woodlock has allowed the sealing of portions of summary judgment filings and accompanying exhibits. *See Iconics, Inc. v. Massaro*, 1:11-cv-11526-DPW, Dkts. 326, 336, 357. And this Court has granted motions for leave to file summary judgment filings under seal followed by the filing of redacted documents, including where a party argued that information "might be of value to a competitor or potential customer." *CardiAQ Valve Technologies, Inc. v. Neovasc Inc.*, No. 1:14-cv-12405-ADB, Dkt. 312; *see also id.* Dkts. 301, 314, 323, 326, 334.

As the above examples demonstrate, and notwithstanding SFFA's suggestion to the contrary, the sealing or redaction of summary judgment materials in civil litigation is a common practice, in this District and indeed throughout the country. For example, this practice has been codified by the local rules of the Northern District of California, which handles a large number of business disputes implicating highly confidential internal business practices. That court's Local Rule 79-5(e) establishes procedures for a party filing under seal documents that an opposing party has

WilmerHale

Honorable Allison D. Burroughs
April 9, 2018
Page 3

designated as confidential. Upon filing such documents under seal, the party must provide notice to the opposing party of the specific documents or portions thereof that have been filed under seal. The opposing party then has four days "to file a declaration ... establishing that all of the designated material is sealable," after which the court determines whether good cause has been shown to seal. *Id.* at 79-5(e)(1)-(2). This rule makes good sense; it gives the opposing party a brief period of time to justify its own confidentiality designations, rather than presumptively allowing its litigation adversary to publicly file *any* confidential documents it wishes.

Retreating from its original position that even a temporary sealing of summary judgment materials would be unconstitutional, Dkt. 388 at 14, SFFA now argues that the propriety of sealing summary judgment filings depends on an analysis of the "documents in *this* case" in light of Harvard's arguments as to why specific documents should be filed under seal. Dkt. 396 at 3.[1] This is precisely the analysis Harvard proposes.

The initial framework for the treatment of confidential information proposed by amici curiae New England First Amendment Coalition, the Reporters Committee for Freedom of the Press, the Massachusetts Newspaper Publishers Association, and GateHouse Media, LLC ("Press Amici"), is worth noting. *See* Dkt. 391-1 at 6. Press Amici suggest that SFFA should submit its final summary judgment materials "shortly prior to the deadline for filing to allow opposing counsel to mark any information that counsel is prepared to certify merits a seal," after which "[s]uch information could then be redacted from a public version of the filing," with the Court resolving any disputes as to specific documents after *in camera* review. Dkt. 391-1 at 6. This is, of course, largely similar to the framework Harvard advocates, differing only in whether this process unfolds in the days before June 15 or the days after. If adopted, Press Amici's framework would serve primarily to establish an earlier effective deadline for the finalization of summary judgment materials.[2]

---

[1] SFFA's apparent withdrawal of its constitutional argument is well advised: there is nothing unconstitutional about this common practice. The public right of access is strongest in criminal cases. *See United States v. Three Juveniles*, 61 F.3d 86, 88 & n.2 (1st Cir. 1995) (explaining that "First Amendment right of access is not absolute," and that First Circuit "has never decided whether the First Amendment mandates [] a general right of access" in the civil context). And as SFFA appears to concede, the public has the strongest interest in materials that actually form the basis for a court's decision. *See* Dkt. 396 at 2 (SFFA reply, quoting District of Kansas decision stating that "[t]he public ... is entitled to know why, how and on what basis the court decided the summary judgment motion").

[2] Press Amici's other suggestions illustrate the challenges of taking any other approach to confidential materials. Amici's second suggestion is that Harvard could review all 90,000 pages of confidential material to identify those that implicate the most serious concerns, and then the parties could seek the Court's intervention regarding any disputes; Press Amici err only by understatement in their concession that such "screening of those documents may be burdensome." Dkt. 391-1 at 6. Press Amici also suggest that the Court could rule on the confidentiality of all documents based on "Harvard's submissions so far." Dkt. 391-1 at 6. Such a blanket order, untethered to the

**WilmerHale**

Honorable Allison D. Burroughs
April 9, 2018
Page 4

SFFA attempts to bypass the relevant procedural question by skipping to the substantive question of whether Harvard has made sufficiently specific showings as to the sensitive personal and confidential business information in the documents SFFA may submit in support of its summary judgment motion. Harvard has no way of knowing which documents SFFA intends to submit. SFFA appears to acknowledge this reality in the context of student privacy concerns, as it commits to "work collaboratively with Harvard *before* filing to ensure that no applicant or student will be identified." Dkt. 396 at 1. If SFFA is willing to engage with Harvard before publicly filing documents that implicate personal privacy concerns, there is no reason why it cannot do the same before filing documents that implicate confidential business information.[3]

SFFA's argument that the possibility of amici curiae wishing to share their views with the Court compels public disclosure of Harvard's confidential documents fares no better. As this Court has recognized in granting amicus status to certain groups already, there may be those who can offer unique perspectives in this litigation that might not be presented to the Court by the parties. Dkt. 52 at 21-23 (granting amicus status to group of students alleging personal interest). But district court litigation is not a show of hands. The adversary litigation process is a well-established mechanism by which the actual parties to the litigation comb through extensive discovery records and present the relevant factual and legal issues to the Court. Third parties can, and often do, file amicus briefs sharing their own perspectives without access to the parties' most sensitive documents. The interest of third parties in amicus participation can be satisfied under Harvard's proposal, and that interest does not overwhelm the parties' interest in the confidentiality of their most sensitive documents. The Court is not required to structure its processes in a way that maximizes the opportunities for third parties to access confidential documents and air their views on them.

B.  The Department of Justice's Submission

Harvard also wishes to briefly address the perplexing submission made on behalf of the Department of Justice. As the Department acknowledges, Harvard has already provided it with

---

specific documents that any party intends to submit, would bypass the document-specific analysis that amici (Dkt. 391-1 at 5), SFFA (Dkt. 396 at 3), and the Department of Justice (Dkt. 395 at 2) have all said is warranted.

[3] By way of example of the types of applicant privacy and confidential business information implicated by the documents produced in this case, one internal document produced by Harvard (HARV00004019) refers to an applicant's parent as having held a specific high-level federal government office and goes on to provide extensive personal details regarding the applicant. While names are redacted, the applicant's identity can be readily ascertained based on the description of the parent's position. This is precisely the sort of information that the U.S. Department of Education has advised implicates student privacy protections for purposes of the Family Educational Rights and Privacy Act. Another internal document (HARV00009881) lays out in detail the process and criteria Harvard uses in selecting applicants, going far beyond the general information about Harvard's admissions practices that can be found in the public domain. Among other things, this document identifies the criteria Harvard uses in assessing extracurricular achievements and the specific strategies Harvard uses to recruit applicants.

WILMERHALE

Honorable Allison D. Burroughs
April 9, 2018
Page 5

the entirety of Harvard's document production and deposition testimony in this case, conditioned upon its agreement to honor the Protective Order. *See* Dkt. 395 at 5. As a result, the Department's claim that all documents must be filed publicly in order for it to have a "meaningful opportunity ... to participate in the summary judgment phase" (Dkt. 395 at 5) is simply incorrect. Nothing will prevent the Department from obtaining the full unredacted summary judgment filings at the time of their filing, subject to the same Protective Order under which it received the discovery record. Before submitting its Notice on Friday afternoon, the Department never raised with Harvard any concern that it would not have access to summary judgment filings. As to the Department's alleged interest in the participation of other would-be amici, those arguments suffer from the same flaws as SFFA's arguments about amicus participation.

The Department's submission also offers an incomplete portrayal of its history with regard to this case. SFFA's complaint was filed in November 2014, and yet for reasons that are not articulated, the Department waited until April 2018 to suggest that it has a "substantial interest" in this litigation. What is more, the investigation referenced by the Department (Dkt. 395 at 3) is into a complaint that was filed nearly three years ago, in May 2015, and promptly dismissed by the Department of Education's Office for Civil Rights in light of the pendency of this litigation. In September 2017—two and a half years later, and inconsistent both with that prior determination and with regulations requiring a "prompt investigation" of all complaints, 28 C.F.R. § 42.107—the new leadership of the Department of Justice initiated this investigation.

Harvard does not, of course, dispute the Department's authority to uphold the nation's civil rights laws for all its citizens. *See* Dkt. 395 at 3-4. But the Department's belated interest in this case, and its submission on this confidentiality issue in particular, cannot help but give pause. Aside from the cases establishing its own authority, the Department cribs all but one of the cases it cites from SFFA's March 30 letter, and for certain issues it provides no authority beyond simply citing SFFA's letter. *See, e.g.*, Dkt. 395 at 8. And, because the Department has or will have access to all the confidential documents and filings in question, its submission is entirely unnecessary. To the extent the Department wished to ensure its own access to the summary judgment materials in this case, it already has that access.

Respectfully submitted,

*/s/ William F. Lee*
William F. Lee


cc:     Counsel of record (via ECF)