# EXHIBIT 83

*The battle over race preferences at Harvard*



DREAM ACADEMY: T-shirts for sale in Harvard Square in Cambridge, Massachusetts. The exclusive university faces a lawsuit, waged in the name of Asian-American students, that seeks to end the use of racial considerations in admissions decisions. REUTERS/Jessica Rinaldi

# A litigious activist's latest cause: ending affirmative action at Harvard

By **Joan Biskupic** | **Filed** June 8, 2015, 2:45 p.m. GMT

Conservative advocate Edward Blum is suing Harvard in what he says is a bid to end discrimination against Asian students. His quest, say opponents, could kill preferences for disadvantaged blacks.

BOSTON – In recent months, Harvard University has come under attack in court for allegedly limiting the number of Asian-American students it admits. A Reuters examination reveals how the lawsuit brought in their name arose from a broader goal: upending a nearly 40-year-old Supreme Court decision that has primarily helped blacks and Hispanics.

A civil rights group representing African American and other minority students has recently filed papers seeking to enter the case, arguing they are the "real targets." They say that if the lawsuit succeeds, the consequences for blacks, Hispanics and Native Americans would be "catastrophic," and they cannot rely on Harvard to represent their interests.

The lawsuit was not initiated by Asian Americans. It names none in its 120 pages.

Rather, it was started by a conservative advocate, Edward Blum, who over the years has enlisted white plaintiffs to challenge race-based policies. He developed the case that two years ago led to a Supreme Court decision narrowing the Voting Rights Act of 1965. http://reut.rs/1EYqyT4 Last week the justices accepted another voting-related case he started, one that could shift voting power from urban, Hispanic districts to rural, whiter areas in Texas.

Blum launched the Harvard case after a prior high-profile effort to overturn university racial preferences foundered. For the earlier case, he had encouraged the daughter of a friend, Abigail Fisher, to sue the University of Texas for allegedly discriminating against her under a diversity policy that favored blacks and Hispanics with lower scores. The Supreme Court rejected the argument in 2013, although it sent the case back for further hearings, and a new appeal is pending at the U.S. Supreme Court.

Even some advocates for Asian Americans agree with the claim of the civil rights group that Blum is going to wind up hurting blacks and Hispanics. Betty Hung, a spokeswoman for Asian Americans Advancing Justice, a civil rights group that contends race-conscious policies have broadly benefited its constituents, says Blum is using Asian Americans "for another misguided attack on affirmative action."

Responding to this criticism, Blum said in an interview with Reuters that he is in favor of race-blind admissions and is not trying to exclude any specific group. "Are we using a group to further an agenda? The agenda for this organization and, I believe, the sentiment and will of the American people, is to eliminate the use of racial classifications in admissions." He added, "I proudly stand by any group that has been denied a place at a university because of skin color."

Blum also dismissed the idea that blacks and Hispanics would necessarily suffer. In making admissions decisions, schools could instead rely on "economic disadvantage, life experiences, all kinds of factors that could be used and should be used, and will help blacks and Latinos," he said.



BLUM AND ALLY: Abigail Fisher, who asserted she was wrongly rejected by the University of Texas at Austin in favor of minority students, was recruited by Blum to sue the university over its racial preferences. A new Fisher appeal is pending before the Supreme Court. REUTERS/Jonathan Ernst

# Who's behind Blum?

Edward Blum, the conservative advocate who's spearheading an effort to end affirmative-action admissions policies at Harvard University, is coy about who's backing his lawsuit. All he will say is that his donors are "the usual suspects."

But Internal Revenue Service filings provide some answers. Filings show that Donors Trust, a tax-exempt charity that directs money to conservative causes, gave $785,000 to Blum's Project on Fair Representation in 2013, the last year for which information is available. (Blum is the sole employee of the Project on Fair Representation.) The Virginia-based Donors Trust and a smaller affiliate foundation have directed more than $3 million to Blum's projects since 2008, according to IRS filings.

One of the contributors to the Project on Fair Representation, via Donors Trust and its affiliate, has been the Searle Freedom Trust, which gave the Blum organization $650,000 in 2013. A Searle spokeswoman said it gave Blum's project another $500,000 in 2015 for the fight against university racial preferences and has promised $500,000 next year. Blum said he has separate commitments for about $900,000 from other undisclosed sources.

In early 2015, Blum obtained IRS tax-exempt charity status for the Project on Fair Representation and for Students for Fair Admissions, the plaintiff in the Harvard and North Carolina cases. He said he is now directly soliciting funds rather than working through Donors Trust.

The case against Harvard, filed last November in Boston federal court, argues that the university violates civil rights law by holding Asian Americans to a higher standard to restrict their numbers. The complaint cites studies showing Asian Americans have better academic

records than members of other ethnic groups but are disproportionately rejected for admission to elite schools.

Harvard said it does not cap Asian American admissions but looks at each applicant "holistically." In a public statement in May, Harvard general counsel Robert Iuliano said that weighing many characteristics is essential to Harvard's academic mission and that its approach is consistent with federal law.

Admissions data show that the percentage of Asian American students admitted to Harvard for this year's entering undergraduate class rose to 21 percent, compared with 17.6 percent a decade ago. Asian Americans number 14.7 million in the U.S., or 4.8 percent of the population, according to the 2010 Census.

The percentage of blacks admitted to Harvard also rose compared with the class that entered in 2006, to 12.1 percent compared with 10.5 percent, as did the percentage of Latinos, by a somewhat wider margin. The gains for these groups appear to have come at the expense of whites, whose percentage in the admitted classes shrank to about 51 percent from about 61 percent.

Blum's case is still at an early, pre-trial stage. Were it to proceed through appeals courts, it could ultimately be used to overturn the landmark 1978 Supreme Court case of Regents of the University of California v. Bakke, which forbade quotas but permitted colleges to use race as one criterion among many to obtain a diverse class.

The practice of giving an extra boost to historically disadvantaged minority groups, known as affirmative action, has come under withering criticism by conservatives. It has so far withstood challenges at the Supreme Court, but by close votes.

A NEW PLAINTIFF

Blum's newly created plaintiff for the Asian American case is called Students for Fair Admissions. Blum said it is a "coalition of prospective applicants and applicants to higher education institutions who were denied admission" to universities including Harvard. The only student it describes is an unnamed Chinese American who, the suit alleges, was ranked first out of 460 students in high school, achieved a perfect score on the ACT college-admissions exam and was rejected for admission by Harvard in 2014.

Blum said he has successfully solicited about 150 Asian American students to Students for Fair Admissions. He declined to provide names, citing a desire to protect their privacy.

At a court hearing in Boston on April 30, Harvard's lawyer, Seth Waxman, raised questions about the anonymity. "What we have is a plaintiff that was created for the avowed and exclusive reason of suing Harvard," he said. In the United States, a lawsuit may be filed on behalf of

unnamed plaintiffs, but their lawyers must show they have been harmed by the defendant or otherwise have legal "standing" to pursue the case.

Blum told Reuters he expects that he will have to divulge names to Harvard during the upcoming "discovery" phase, when parties exchange information. "Harvard may try to persuade the court we are a sham organization, but our numbers prove we are a typical legitimate organization," he said.



FOR THE DEFENSE: Fadhal Moore, a 2015 graduate of Harvard, has signed on to an effort to oppose Edward Blum's lawsuit seeking to end the affirmative action policies that, he says, gave him a leg up. "It's really important, to be honest, to have the voices of the people who benefit heard." REUTERS/Jonathan Ernst

The group representing the blacks and Hispanics, the Lawyers' Committee for Civil Rights Under Law, along with a Boston affiliate, lists five Harvard students by name in its request to join the case. The group also includes what it says are the initials and races of another nine students who plan to apply to Harvard.

Fadhal Moore, one of the named students, says he is an example of the kind of applicant Blum's lawsuit would bar from Harvard. The 21-year-old, who graduated from Harvard in May with a degree in government, said he had been at the top of his high school class in an overwhelmingly

African American public school in the Atlanta area. But he did not have the high SAT scores of the average Harvard student. He said Harvard's willingness to consider factors beyond grades and test scores likely made the difference in his admission.

Moore said he knew about the Students for Fair Admissions' effort to find Asian Americans through its website. But he did not know much about the case until the spring, when he heard that lawyers were looking for black and Hispanic students to become part of it. Moore, who was active in minority student organizations, said the lawyers had put the word out through emails to such groups and then met on campus with interested students in April.

> "It's not just whites that are bemoaning racial practices."
>
> Edward Blum, conservative advocate

In its request to join the case, known formally as a motion to intervene, the Lawyers' Committee argues that it will be solely focused on the issue of race, while Harvard's defense strategy could be influenced by other considerations. Both Harvard and Blum, though they are on opposite sides, have objected. The university counters that its interests are essentially the same as the Lawyers' Committee's, and that allowing the group to intervene would complicate the proceedings, by giving it the right to make its own arguments and possibly question witnesses. Harvard also says the Lawyers' Committee's involvement could "exacerbate the already significant privacy concerns that discovery in this case will entail."

Jon Greenbaum, chief counsel for the Lawyers' Committee, declined to comment, citing the pending motion. Rahsaan Hall, the lead lawyer for the Lawyers' Committee's Boston affiliate, did not return calls or emails seeking comment. A ruling on the motion to intervene could come as soon as this week.

STRIKING A NERVE

Blum's efforts have struck a nerve among Asian American groups, which represent people who trace their heritage to several different countries and have varying degrees of wealth, schooling and history in the United States.



RECRUITING SITE: Blum's organization created this web site, harvardnotfair.org, to enlist Asian American students who feel they've been unfairly rejected by Harvard. REUTERS/Screenshot

"It took a Jewish white guy to start this case," said James Chen, who runs a San Francisco-based company called Asian Advantage College Consulting. The firm advises students to underplay their ancestry as one strategy for maximizing their chances of getting into a top

school. Among some recent immigrants he has worked with, Chen said, "there is a tendency to keep their head down." Chen said Blum reached out to see if Chen could get students to join his case. Chen said he gave Blum no names but endorses the effort.

On May 15, a coalition of 64 Asian American groups filed a complaint with the Department of Education accusing Harvard of bias. Their complaint, which repeats some of the allegations in the Blum lawsuit, states that it was brought after obtaining "comprehensive evidence from the [lawsuit] filed by Students for Fair Admissions."

Chunyan Li, a professor of accounting at Pace University who was one of the organizers of the complaint to the Department of Education, said Asian American activists had for years been airing concerns about university admissions but were loosely organized and lacked sufficient evidence to pursue a case.

If the Department of Education investigates a complaint and finds a violation of federal law, it could revoke a school's federal funding. Such a step would be extremely rare. The Department of Education declined to comment on the Asian American groups' complaint.

CATALYST FOR A CASE

Blum said his idea to bring an Asian-American lawsuit against affirmative action emerged about two years ago, after the Supreme Court decided the Fisher case. In an opinion rejecting a challenge to the University of Texas' affirmative action policy, the court nevertheless suggested that it might be open to scrutinizing such policies more closely in the future.



BANGING DOWN THE DOOR: A pep band drummer plays at Harvard Yard in Cambridge, Massachusetts. The college is one of America's most selective; this year, it accepted 1,990 of the record 37,307 who applied. REUTERS/Dominick Reuter

"That was the catalyst," Blum said, adding that he was ready to take things to a "higher, more dramatic" level.

Blum has been challenging racial policies since the early 1990s, when he lived in Texas and ran unsuccessfully for Congress in a racially gerrymandered district. He says he had been following complaints by Asian Americans on student blogs and other internet sites, and collecting academic studies about possible bias against them.

> "It took a Jewish white guy to start this case."
>
> James Chen, Asian Advantage College Consulting

By late 2013, he was focusing his efforts on Harvard, one of the most selective universities in the U.S. and arguably its most prestigious. This year, the private institution, based in Cambridge, Massachusetts, sent admission notifications to 1,990 of the record 37,307 students who had applied. A 40-person admissions office sorts through applications in a secret process that the university says balances many factors, such as academic record, extracurricular achievements, whether parents were alumni, and race.

Blum said some research he read suggested that Harvard's admissions rate of Asian Americans remained suspiciously stable even as the number of applications rose. The university had come under scrutiny over its Asian Americans admissions practices at least once before, as far back as the 1980s. The Department of Education in 1990 said it had pursued a claim of alleged discrimination against the university and found none.

Blum also believed an attack on Harvard would resonate because of the university's infamous history of restrictions on another ethnic group. In the first half of the 20th century, until it lifted them under pressure, Harvard imposed limits on admissions of Jews.

A section of the lawsuit, titled "Harvard's Jewish Problem," draws an analogy to Asian Americans, claiming that discrimination was simply masked by a new screening process Harvard adopted after it abandoned the quotas. According to the lawsuit, Harvard still tried to figure out which applicants were Jews and used its discretionary admissions process to "deny the existence of any racial or religious quotas, while still managing to reduce Jewish enrollment to a much lower level, and thereafter hold it essentially constant."

Harvard responded that the lawsuit's "historical allegations are legally immaterial" to the current case.

To hedge his bets, Blum also sued a public institution, the University of North Carolina. A win in that case could be more narrow, since it might be limited only to state institutions. That case was filed the same day as the case against Harvard, also on behalf of Students for Fair Admissions, in federal court in Greensboro, North Carolina. Like Harvard, the University of North Carolina has denied the allegations. The North Carolina case was subject to a preliminary hearing in May.



HEAVY HITTER: To fend off Blum's suit, Harvard has hired one of the top appellate lawyers in the United States, Seth Waxman. REUTERS/Stefan Zaklin

### WEBSITES SEEKING ASIANS

To find students who might give his cases legal standing, Blum created a series of websites. One, with the address harvardnotfair.org, features a photo of young woman with Asian features unhappily sitting in a library.

"Were You Denied Admission to Harvard?" the site asks. "It may be because you're the wrong race." It seeks names and contact information.

> "What we have is a plaintiff that was created for the avowed and exclusive reason of suing Harvard."
>
> Seth Waxman, lawyer for Harvard

Blum, a 63-year old former stockbroker who works out of his home on Penobscot Bay in Maine, also has been traveling and speaking to Asian American groups across the country.

Because Harvard reveals few details about its admissions process, Blum's lawsuit relies mostly on data provided by outsiders.

One example is a 2009 report co-written by Princeton University sociology professor Thomas Espenshade. The study contends that Asian Americans needed SAT scores 140 points higher than whites, all other variables being equal, to get into elite schools. Blum also cited research by professors he used in the Fisher case. In its court filing, Harvard denied that it discriminates and said it lacked information about the studies to specifically respond to them.

In the April 30 court hearing in Boston, the lead lawyer for Blum's group, William Consovoy, said the plaintiffs want Harvard to turn over documents that show how Harvard determines and uses an applicant's race. Consovoy suggested he would be seeking materials such as student essays, alumni interview notes and admissions officers' records.

Harvard's lawyer, Waxman, indicated that the university would discuss a "reasonable, representative sample" and would be reluctant to hand over personal documents such as student essays.

For a case that he hopes will eventually reach the Supreme Court, Blum has recruited some of the same lawyers, led by Consovoy, that he turned to in the Fisher affirmative action case and the newly accepted voting rights case. He said he has so far raised about $2 million to litigate the Harvard and University of North Carolina lawsuits. He declined to name donors but said the money comes from "the usual suspects," conservative donors who've backed him in the past.

Blum said he has not yet tried to raise money from one potentially deep pocket: wealthy Asian American foundations and individuals.

 *Follow Reuters Investigates* 

_____

By Joan Biskupic

Photo editing: Jim Bourg and Stelios Varias

Editing: Amy Stevens

## Other Reuters investigations and long-form narratives



# Passport to Riches

DR Congo has introduced biometric passports costing $185 apiece. Much of that money goes not to the state but to an offshore company. Who owns it?



## Cleaning Up

Industry-backed research has made chlorhexidine products popular in fighting superbugs in hospitals, raising concerns about their safety and effectiveness.



## Cotton Crunch

A little-known seed company has defied Monsanto with the aid of a Hindu group in India. The dispute could upend the world's largest cotton-producing market.



## Banks on notice

Bankers expected special treatment from the government after Britain voted to leave the EU. They aren't getting it.

---

Thomsonreuters.com　　Privacy Policy　　Terms of Use　　Copyright