# EXHIBIT 15

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Page 1

1

2                   UNITED STATES DISTRICT COURT

3                    DISTRICT OF MASSACHUSETTS

4
        STUDENTS FOR FAIR ADMISSIONS,   )
5       INC.,                           )
                                        )
6                        Plaintiff,     )
                                        ) Civil Action No.
7                   vs.                 ) 1:14-cv-14176-ADB
                                        )
8       PRESIDENT AND FELLOWS OF        )
        HARVARD COLLEGE (HARVARD        )
9       CORPORATION),                   )
                                        )
10                       Defendant.     )
        ------------------------------)

11

12       HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

13

14            DEPOSITION OF CHRISTINA LOPEZ

15                  New York, New York

16                 Monday, May 22, 2017

17

18

19

20

21

22

23

24   Reported by: FRANCIS X. FREDERICK, CSR, RPR, RMR

25   Job No: 124550

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 50

1                    C. LOPEZ

2   respective dean and director of admissions.

3        Q.    So for member organizations is

4   there typically a single institutional

5   liaison?

6        A.    Correct.

7        Q.    Are admissions deans or directors

8   of admission also members of ABAFAOILSS?

9        A.    I'm a director of admission.  I am

10  a member.

11       Q.    So are you not institutional

12  liaison, then?

13       A.    Correct.

14       Q.    Does your college also have an

15  institutional liaison?

16       A.    Correct.

17       Q.    Do you know if Harvard's dean or

18  director of admissions is a member of

19  ABAFAOILSS?

20       A.    Not to my knowledge, no.

21       Q.    In a case where a member's dean or

22  director of admissions is not a member of

23  ABAFAOILSS, the institutional liaison's role

24  then is to be a contact between ABAFAOILSS and

25  the dean or director of admissions, then,

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 51

1                          C. LOPEZ

2    correct?

3         A.    Yes.

4         Q.    Do you see in the second paragraph

5    it says:  "The Ivy and Sister co-chairs will

6    provide updates to the deans.  The IL will

7    receive a copy of the update in a separate

8    e-mail communication prior to it being sent to

9    the deans.  It is the IL's responsibility to

10   communicate with his or her dean and directors

11   after meetings and after receiving copies of

12   these updates."

13              Do you see that?

14        A.    Yes.

15        Q.    Did I read that correctly?

16        A.    Yes.

17        Q.    What does that mean?

18        A.    After the meeting the co-chairs

19   will typically send a breakdown of what

20   happened in the meeting to update them on just

21   the general topics of the meeting.  The ILs

22   will get this in a separate communication

23   before it is sent to the deans.

24        Q.    So it's the responsibility of the

25   ILs to provide the information about what

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 53

```
 1                    C. LOPEZ
 2   those meetings?
 3        A.    No.
 4        Q.    They cover the same types of
 5   topics and information?
 6        A.    For the most part, yes.
 7        Q.    Is there a separate group for
 8   deans and directors of admissions --
 9        A.    No.
10        Q.    -- in ABAFAOILSS?
11              I'm sorry.
12        A.    No.
13        Q.    I want to ask a few questions
14   about the Round Robin meetings.  What are the
15   Round Robin meetings?
16        A.    Round Robin is a separate -- it is
17   a part of our meetings where we share
18   enrollment and application numbers.
19        Q.    And what is the purpose of a Round
20   Robin?
21        A.    The purpose is to share best
22   practices as well as recruitment information
23   across institutions.
24        Q.    And what types of numbers are
25   shared at the Round Robin meetings?
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 54

1                       C. LOPEZ

2          A.     Applications and admits and

3     enrolls.

4          Q.     And --

5          A.     For each institution.  Broken out

6     by race.

7          Q.     And why is that information shared

8     at Round Robin?

9                 MS. MOONEY:  Objection.

10                MR. SPONZILLI:  I join the

11         objection.  You may answer.

12         A.     To share best practices and

13    recruitment strategies across institutions.

14         Q.     Well, I guess I'm focusing on the

15    numbers.  It sounds different -- like a

16    different piece of information than best

17    practices; is it not?

18                MS. MOONEY:  Objection.

19                MR. SPONZILLI:  Objection.

20         Argumentative.  You may answer.

21         A.     They are one in the same.

22         Q.     How do numbers about a school's

23    admissions, acceptances and enrollees inform

24    an institution's best practices?

25                MS. MOONEY:  Objection.

TSG Reporting - Worldwide - 877-702-9580

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 69

C. LOPEZ

1

2      Q.      And then go across Asian, same

3  thing?

4      A.      Correct.

5      Q.      And then through the totals at the

6  end.

7      A.      Correct.

8      Q.      Okay.  And was it just a listing

9  of the numbers or is there commentary along

10  the way?

11      A.      At this point they list the

12  number.

13      Q.      And then when the first IL is

14  done, does the next one -- I guess here from

15  Brown, just do the same thing?

16      A.      If they are present, yes.

17      Q.      And you mentioned that

18  institutional liaisons were not permitted to

19  attend if they were not sharing these numbers;

20  is that right?

21      A.      Correct.

22      Q.      Did that ever happen?

23      MS. MOONEY:  Objection.

24      MR. SPONZILLI:  Did what ever

25      happen?

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Page 72

                        C. LOPEZ

1

2      Q.    Okay.  So going back to the format

3   of the meeting, the institutional

4   representatives from each of the schools would

5   proceed in order to read out the numbers; is

6   that right?

7      A.    Yes.

8      Q.    And that would go until I guess

9   the end of the second page -- or third page,

10   I'm sorry.  Yale is the last one?

11      A.    Yes.

12      Q.    And so during that time it was

13   just calling out numbers?

14      A.    Yes.

15      Q.    And during that process do people

16   who are attending the meeting fill in the

17   chart?

18      A.    Yes.

19      Q.    And are the numbers aggregate

20   numbers or percentages?

21      A.    They are aggregate numbers?

22      Q.    Is there any -- well, let's get to

23   the end.  So how long did that process

24   typically take then, just the reading of the

25   numbers?

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Page 73

1              C. LOPEZ

2              MR. SPONZILLI:  Objection.  Asked

3      and answered.  You may answer it again.

4      Q.    Just the reading of the numbers.

5      A.    It depends on the number of ILs

6  who are present.  It can take about 30 minutes

7  or so.

8      Q.    So then if the meeting I think you

9  said is about an hour, what happens in the

10 second half of the meeting after the numbers

11 are read out?

12     A.    Any discussion.

13     Q.    And who leads that discussion?

14     A.    No one leads the discussion.

15     Q.    How does the discussion proceed

16 then?

17     A.    Someone will ask a question that

18 starts a discussion.

19     Q.    So it's just free-flowing

20 discussion.

21     A.    Correct.

22     Q.    And as a co-chair you didn't have

23 any role in guiding the discussion or cutting

24 it off or moderating?

25     A.    No.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1                    C. LOPEZ

2       Q.     And how did the meeting conclude?

3       A.     When the discussion ended, they

4  left.

5       Q.     Okay.

6       A.     There's usually a time frame for

7  Round Robin.  When the allotted time frame is

8  over, they leave to join the membership for

9  the meeting.

10      Q.     And what types of topics were

11 covered in that discussion portion?

12      A.     As I mentioned, recruitment

13 strategy as well as group travel that schools

14 have participated in.  Any sort of best

15 practices that correlated with their numbers.

16 Questions that they may have had about any of

17 the enrollment numbers.

18      Q.     Okay.  Would there be discussion

19 if any of the numbers are unusual, too high or

20 too low?

21           MS. MOONEY:  Objection.

22           MR. SPONZILLI:  Objection as to

23      the form of the question.  You may

24      answer.

25      A.     I can't ascertain if they would be

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 75

1                        C. LOPEZ
2   that specific.  But the recruitment numbers
3   give context so if there was a question about
4   a recruitment strategy, they would have
5   numbers to correlate with that question.
6        Q.    What do you mean by recruitment
7   number?
8        A.    Recruitment strategy.
9        Q.    Okay.  And what do you mean by
10  recruitment strategy?
11       A.    Meaning -- institutions have
12  recruitment strategies.  So which states are
13  they going to, are they hitting certain
14  community-based organizations.  Are they doing
15  group travel in certain areas that they didn't
16  go before, et cetera.  Are they finding
17  different schools that are producing strong
18  applicants.
19       Q.    Okay.  Do you know if it was ever
20  discussed in the Round Robin meeting whether
21  certain numbers were too high or too low?
22       A.    No.
23             MS. MOONEY:  Objection.
24             MR. SPONZILLI:  Same objection.
25       Q.    No, you don't know or no, that was

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 76

1                         C. LOPEZ

2    not discussed?

3         A.     No, I cannot recall.

4         Q.     In the meeting that you attended

5    or --

6         A.     In the meeting that I attended.

7         Q.     How would an attendee at this

8    meeting know the significance of the numbers

9    from other institutions?  So, for example, if

10   these are -- I think you said these are just

11   absolute numbers and not percentages?

12             MR. SPONZILLI:  I think she used

13        the word "aggregate."

14             MR. PARK:  Aggregate.  I'm sorry.

15             MR. SPONZILLI:  Which was in the

16        form of your question you asked that.

17             MR. PARK:  Okay.

18        Q.     Is there any -- strike that whole

19   thing.  Let me start over.

20             Is there any context provided as

21   part of the discussion about the significance

22   of the numbers that are provided in this

23   meeting?

24             MS. MOONEY:  Objection.

25             MR. SPONZILLI:  Join the



Norris
McLaughlin
& Marcus, P.A.
ATTORNEYS AT LAW

400 Crossing Boulevard
8th Floor
P.O. Box 5933
Bridgewater, NJ 08807
T: 908-722-0700
F: 908-722-0755

*Direct Dial: (908) 252-4166*
*Email: egsponzilli@nmmlaw.com*

June 19, 2017

**_VIA E-MAIL park@consovoymccarthy.com & U.S. MAIL_**
Michael Park, Esq.
Consovoy McCarthy Park
3 Columbus Circle
New York, NY 10019

**_VIA E-MAIL elizabeth.mooney@wilmerhale.com & U.S. MAIL_**
Elizabeth Mooney, Esq.
Wilmerhale
60 State Street
Boston, MA 02109

     **Re:**    **Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation)
Docket No. 1:14-cv-14176**

Dear Counsel:

As you know, on May 22, 2017, Christina Lopez, a representative of ABAFAOILSS, appeared for deposition pursuant to Amended Subpoena to Testify at a Deposition in a Civil Action dated May 11, 2017. Upon receipt of a copy of her deposition transcript, Ms. Lopez and I reviewed the transcript to confirm the accuracy of her deposition. Please see below errors we have identified:

1. <u>Page 7, Line 25</u>: The record indicates that Ms. Mooney objected. That is incorrect. Ed Sponzilli objected.

2. <u>Page 11, Line 12</u>: The word "deposition" should be "documents."

3. <u>Page 11, Line 23</u>: The word "Pealy" should be "Pili."



Bridgewater, NJ • New York, NY • Allentown, PA
www.nmmlaw.com

**Norris McLaughlin & Marcus, P.A.**

June 19, 2017
Page 2

4. <u>Page 11, Line 24</u>:  The word "Herrara" should be "Herrera."

5. <u>Page 79, Line 22</u>: "Q.  **Will,** you said that the value of . . .  "The highlighted word should have been, "Well."

6. The deposition should be treated for confidentiality purposes as indicated by Defendant Harvard University.

Please call me if you have any questions.

Very truly yours,

NORRIS McLAUGHLIN & MARCUS, P.A.

Edward G. Sponzilli

EGS:ykp

cc:    Ms. Christina Lopez (via email)

1680254-1