# EXHIBIT 150

Supreme Court, U. S.
F I L E D

JUN 7 1977
6-7-77
MICHAEL RODAK, JR., CLERK

IN THE

## Supreme Court of the United States

October Term, 1976

No. 76-811

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,

*Petitioner,*

v.

ALLAN BAKKE,

*Respondent.*

On Writ of Certiorari to the
Supreme Court of California

## BRIEF OF COLUMBIA UNIVERSITY, HARVARD UNIVERSITY, STANFORD UNIVERSITY AND THE UNIVERSITY OF PENNSYLVANIA AS AMICI CURIAE

JOHN MASON HARDING
ALBERT J. ROSENTHAL
  Columbia University
  New York, N. Y. 10027

DANIEL STEINER
  Harvard University
  Cambridge, MA. 02138

IRIS BREST
JAMES V. SIENA
  Stanford University
  Stanford, CA. 94305

CHARLES J. MEYERS
ALBERT M. SACKS
MICHAEL I. SOVERN

  *Of Counsel*

LOUIS H. POLLAK
  The University of Pennsylvania
  Philadelphia, PA. 19104

  *Counsel for Amici Curiae*

June 7, 1977

HARV00066632

2

Report to the Faculty of Arts and Sciences, 65 Official Register of Harvard University No. 25, 93, 104-105 (1968) (emphasis supplied).

The belief that diversity adds an essential ingredient to the educational process has long been a tenet of Harvard College admissions. Fifteen or twenty years ago, however, diversity meant students from California, New York, and Massachusetts; city dwellers and farm boys; violinists, painters and football players; biologists, historians and classicists; potential stockbrokers, academics and politicians. The result was that very few ethnic or racial minorities attended Harvard College. In recent years Harvard College has expanded the concept of diversity to include students from disadvantaged economic, racial and ethnic groups. Harvard College now recruits not only Californians or Louisianans but also blacks and Chicanos and other minority students. Contemporary conditions in the United States mean that if Harvard College is to continue to offer a first-rate education to its students, minority representation in the undergraduate body cannot be ignored by the Committee on Admissions.

In practice, this new definition of diversity has meant that race has been a factor in some admission decisions. When the Committee on Admissions reviews the large middle group of applicants who are "admissible" and deemed capable of doing good work in their courses, the race of an applicant may tip the balance in his favor just as geographic origin or a life spent on a farm may tip the balance in other candidates' cases. A farm boy from Idaho can bring something to Harvard College that a Bostonian cannot offer. Similarly, a black student can usually bring something that a white person cannot offer. The quality of the educational experience of all the students in Harvard College depends in part on these differences in the background and outlook that students bring with them.

HARV00066679

3

In Harvard College admissions the Committee has not set target-quotas for the number of blacks, or of musicians, football players, physicists or Californians to be admitted in a given year. At the same time the Committee is aware that if Harvard College is to provide a truly heterogenous environment that reflects the rich diversity of the United States, it cannot be provided without some attention to numbers. It would not make sense, for example, to have 10 or 20 students out of 1,100 whose homes are west of the Mississippi. Comparably, 10 or 20 black students could not begin to bring to their classmates and to each other the variety of points of view, backgrounds and experiences of blacks in the United States. Their small numbers might also create a sense of isolation among the black students themselves and thus make it more difficult for them to develop and achieve their potential. Consequently, when making its decisions, the Committee on Admissions is aware that there is some relationship between numbers and achieving the benefits to be derived from a diverse student body, and between numbers and providing a reasonable environment for those students admitted. But that awareness does not mean that the Committee sets a minimum number of blacks or of people from west of the Mississippi who are to be admitted. It means only that in choosing among thousands of applicants who are not only "admissible" academically but have other strong qualities, the Committee, with a number of criteria in mind, pays some attention to distribution among many types and categories of students.

The further refinements sometimes required help to illustrate the kind of significance attached to race. The Admissions Committee, with only a few places left to fill, might find itself forced to choose between A, the child of a successful black physician in an academic community with promise of superior academic performance, and B, a black who grew up in an inner-city ghetto of semi-literate parents

HARV00066680

4

whose academic achievement was lower but who had demonstrated energy and leadership as well as an apparently-abiding interest in black power. If a good number of black students much like A but few like B had already been admitted, the Committee might prefer B; and vice versa. If C, a white student with extraordinary artistic talent, were also seeking one of the remaining places, his unique quality might give him an edge over both A and B. Thus, the critical criteria are often individual qualities or experience not dependent upon race but sometimes associated with it.

HARV00066681