# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF MASSACHUSETTS
# BOSTON DIVISION

STUDENTS FOR FAIR ADMISSIONS, INC.,

                Plaintiff,

     v.

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE (HARVARD CORPORATION),

                Defendant.

Civil Action No. 1:14-cv-14176-ADB

## HARVARD'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO SEAL CERTAIN INFORMATION FILED IN CONNECTION
## WITH THE PARTIES' SUMMARY JUDGMENT MOTIONS

SFFA's 900 paragraphs of supposedly undisputed facts—many of which are neither undisputed nor even facts—serve only to confirm that SFFA has now achieved what it was seeking all along: a public opportunity to present a fundamentally misleading account of the record to the media.  SFFA began this case by filing a Complaint that, as this Court recognized, sought to "overrule Supreme Court precedent" and hold Harvard to "a legal requirement . . . that the case law does not support."  Memorandum and Order Granting Motion for Partial Judgment on the Pleadings, Dkt. 325 at 1-2.  Now, SFFA has filed summary judgment papers that blatantly ignore Federal Rule 56, Local Rule 56.1 (requiring "a *concise* statement of the material facts of record as to which … there is no genuine issue to be tried" (emphasis added)), and this Court's recent and specific direction that the parties *not* overburden the Court with facts that are immaterial, disputed, or both (Dkt. 407 ("Only those facts which bear on dispositive material issues shall be included in this statement.")).

SFFA's summary judgment filing is not a serious effort to persuade the Court that this case can be resolved in SFFA's favor without a trial; it is a concerted public relations effort orchestrated by an opponent of racial diversity who seeks above all to end the consideration of race in college admissions.  Unable to find any actual documentary or testimonial support for the purported scheme of intentional discrimination alleged by the Complaint, SFFA instead relies on distortions of the record and misleading characterizations of data analysis.  The so-called "facts" on which SFFA relies are obviously contested, and Harvard will respond in full to SFFA's sensationalist accusations in its opposition brief.

Contrary to SFFA's inaccurate media statements and rhetoric, Harvard readily agreed that SFFA could file publicly the core set of documents that bear directly on its claims.  Consistent with this Court's guidance, the parties' memoranda in support of their summary judgment motions contain minimal redactions; from its brief, Harvard redacted just three full sentences from a single footnote, and—at SFFA's request—the name, gender, and other potentially identifying information of SFFA's standing members.  Moreover, the parties' expert reports— several hundred pages of statistical analysis—were publicly filed with just a handful of redactions.  And a substantial majority of the exhibits attached to the parties' statements of material facts were also filed publicly.  After SFFA filed its memorandum, Local Rule 56.1 statement, and exhibits, Harvard reviewed those filings to determine what further unsealing was appropriate, and has informed SFFA that an additional 40 of its exhibits need not be sealed, and that the vast majority of the material SFFA redacted from its brief and Local Rule 56.1 statement can be unredacted.

Yet Harvard and the Court are now forced to engage in this wasteful exercise because SFFA has taken the untenable position that nearly *every* document it filed in support of its 900-

paragraph Rule 56.1 statement should be unsealed.  SFFA's argument is inconsistent with the law of this Circuit.  It ignores the significant confidentiality interests of Harvard's applicants, third parties, and Harvard itself.  And it is inconsistent with the manner in which SFFA seeks to treat its own information.  SFFA confuses its desire to try this case in the court of public opinion with the fact that it is this Court that will adjudicate the claims and defenses based on the law.

The documents in question should be maintained under seal.  Many of those documents—including complete application files, "summary sheets" from application files, internal emails, correspondence with alumni interviewers, and correspondence with high school guidance counselors—would, if disclosed, risk compromising applicant privacy, which both the parties and this Court have previously acknowledged provides more than sufficient basis to seal. A second category of information—including correspondence with alumni, donors, and other organizations—would, if disclosed, destroy third parties' reasonable expectations of privacy and embroil them in a public dispute they did not seek, in a way they certainly did not anticipate when they corresponded with Harvard.  A third category—including Harvard's internal training materials, certain details of Harvard's process for evaluating applications, and statistical snapshots of Harvard's tentatively admitted class during the admissions cycle—may, if disclosed, cause applicants to attempt to adjust their behavior or their applications to what they believe the documents suggest about Harvard's admissions criteria, compromising the integrity of the admissions process.  To the extent there is any legally cognizable public interest in these materials, it cannot outweigh the legitimate privacy interests of parties and non-parties alike.

Contrary to SFFA's persistent claim that Harvard seeks to hide evidence from public view, Harvard has every desire for a full and fair adjudication of this case by this Court, and its positions as to what documents must be sealed or redacted are fully consistent with that desire.

3

That result can be achieved without undue harm to Harvard's confidentiality interests or those of the many individuals, including Harvard's applicants and students, who did not seek this litigation and have every right to avoid being subjected to SFFA's media campaign. This Court should maintain under seal the documents or portions thereof that are the subject of this motion, as described below and listed in Exhibits A, B, and C.

## BACKGROUND

In June 2015, the parties jointly proposed, and the Court entered, a Stipulated Protective Order governing the disclosure and use of each party's confidential (or "protected") materials. Dkt. 55 ("Protective Order"). The Protective Order provides that "any Party wishing to file any Protected Material must either (1) obtain written permission from the Producing Party to file such material in the public record, or (2) move the Court for leave to file the Protected Material under seal." Dkt. 55 ¶ 13.

Over the course of three years, consistent with its discovery obligations and its obligations under federal law (including the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g)), Harvard produced to SFFA a wide array of information including some of its most sensitive documents. The nearly 100,000 pages of documents Harvard produced include application files, admissions office training materials, internal communications about applicants and the inner workings of the admissions process, correspondence with alumni, and voluminous data reflecting the applicant pool and admissions outcomes. Given the nature of those documents, Harvard designated many of them Confidential or Highly Confidential under the Protective Order.

SFFA produced only a handful of documents in this litigation and did not turn over any of its internal documents. In response to Harvard's discovery requests, SFFA refused to produce

"internal communications" and other information because, according to SFFA, the Protective

Order was "incapable of safeguarding" *its* privacy interests.  *See* Dkt. 150 at 9-10.  SFFA has

maintained this position even as it aggressively dismissed any comparable interest articulated by

Harvard.  Given the one-sided nature of discovery in this case, it is no wonder that SFFA takes

the position that nearly everything should be made public—it has virtually nothing at stake.

Throughout this litigation, the parties have acted in accordance with the Protective

Order's requirements for filing protected material under seal.  In September 2016, for example,

Harvard filed a motion challenging SFFA's standing that contained information designated

confidential by SFFA, including information about SFFA's internal structure and operations.

Dkt. 190.  Harvard filed an unredacted version of its motion under seal on September 23, 2016,

conferred with SFFA on the proper scope of redactions of SFFA's confidential material, and

publicly filed a redacted version on September 26, 2016.  *Id.*  SFFA raised no objection to having

that dispositive motion filed under seal.  Indeed, SFFA followed a similar procedure for its

opposition to that motion, with redactions on all but nine lines of a four-page "Factual

Background" section.  Dkt. 204 at 2-6.  As its entire basis for filing that document and its

supporting materials under seal, SFFA wrote:  "These documents contain information that has

been designed by SFFA and/or Defendant as Confidential and/or Highly Confidential –

Attorneys' Eyes Only pursuant to the Stipulated Protected Order."  Dkt. 201 at 1.  Harvard

assented.  *Id.*

Now that it is *Harvard's* confidential internal documents that are at issue, SFFA has

reversed course.  According to SFFA, only "the identity of any Harvard applicant or student"

merits protection for disclosure; "[b]eyond that," SFFA argued in March, "there is no

justification for redacting ***any*** other information."  Dkt. 388 at 2-3.

At an April 10 hearing and in subsequent orders, the Court directed the parties to meet and confer regarding the confidentiality of materials intended for filing, to publicly file only redacted summary judgment materials on June 15, and to present any disputes to the Court thereafter.  Apr. 10, 2018 Hearing Tr. 6:24-8:21, 17:15-20; *see also* Dkts. 404, 408 at 1-2, 409. As the summary-judgment deadline approached, SFFA informed Harvard that it intended to publicly file more than 450 documents in support of its motion.[1]  Harvard agreed that SFFA could publicly file the majority of those documents, including the materials bearing most directly on SFFA's claims.  But further agreement proved elusive, as SFFA refused to reconsider its legally unfounded position that a document may be sealed only if it directly identifies an applicant or student.

On June 13, the parties filed a joint motion to seal certain portions of their summary judgment filings, Dkt. 410, which the Court granted, Dkt. 411.  On June 15, each party filed an unredacted set of summary judgment materials under seal and a redacted set on the public docket.  *See* Dkts. 412-421.  The parties' briefs were lightly redacted, and several of the parties' expert reports contained no redactions at all.[2]  In total, both sides filed 358 exhibits in support of

---

[1]     At the April 10 hearing, SFFA repeatedly committed to notify Harvard by June 1 of any confidential documents it sought to file publicly.  Tr. 15:12-13, 15:23-16:1, 16:6-9.  SFFA identified certain documents in late May, but did not provide the remaining 201 documents or depositions until June 6 and June 11, and made additional requests for Harvard's position on confidentiality issues as late as June 13—two days before summary judgment papers were due. Despite SFFA's identification of hundreds of additional documents long after its proposed June 1 deadline, Harvard provided SFFA with its positions on the confidentiality of all 450 documents SFFA identified (some of which SFFA ultimately elected not to file) well before the filing deadline.

[2]     In a widely distributed media statement that accompanied SFFA's filings, SFFA President Edward Blum noted that "[t]here are just a few highlights in the papers filed today," and insisted that Harvard's position that redacted material must remain under seal is "baseless." Press Release, *SFFA Files Motion for Summary Judgment Against Harvard*, Students for Fair Admissions, https://studentsforfairadmissions.org/sffa-files-motion-for-summary-judgment-against-harvard/ (last visited June 22, 2018).  It is unclear how Mr. Blum could make that

their motions for summary judgment, 200 of which were filed publicly.  In the days following

the parties' filings, Harvard has reviewed additional exhibits SFFA submitted in support of its

motion, informed SFFA that another 40 of the 125 exhibits SFFA had previously filed under seal

could be filed publicly, and also agreed to unseal another 24 of the 33 exhibits that Harvard had

initially filed under seal (see Exhibit D).  The parties agree that several of the sealed and

redacted exhibits, set forth in Exhibit A, may remain sealed and redacted.  The parties disagree as

to whether the balance of the documents, set forth in Exhibits B and C, should remain under seal.

## ARGUMENT

"[T]he right to inspect and copy judicial records is not absolute."  *Nixon v. Warner

Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).[3]  In evaluating whether to seal documents filed with

a court, courts must strike the appropriate balance between the public interest in disclosure and

any "competing private interests" in nondisclosure, "'in light of the relevant facts and

circumstances of the particular case.'"  *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404,

410-411 (1st Cir. 1987) (quoting *Nixon*, 435 U.S. at 599).

The public's right of access "is strongest … for documents introduced at trial," *Bradford

& Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 448 (D. Mass. 2015), and "appreciably

weaker" for "documents that do not serve as the basis for a substantive determination—such as

documents submitted on a motion for summary judgment which is denied, thus leaving a

---

assertion, since the Protective Order prohibits Mr. Blum from seeing any information Harvard
designated Highly Confidential—Attorneys' Eyes Only, a designation that applies to many of the
documents at issue.

[3]      Indeed, it is not clear in this Circuit whether the right even exists as a constitutional
matter in the summary-judgment context.  The First Circuit has never agreed "with those courts
extending a [First Amendment] right of public access to documents considered in rulings on
dispositive pretrial motions"—a context that sits "at the farthest reaches of the first amendment
right to attend judicial proceedings." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 8, 11 (1st Cir.
1986).

decision on the merits for another day," *United States v. Graham*, 257 F.3d 143, 151 (2d Cir. 2001). Thus, to the extent the public has an interest in assessing the Court's determination of SFFA's claims, that interest does not mandate the disclosure of every document about the Harvard admissions process that might be the subject of public curiosity. Indeed, the presumption of public interest does not attach to "an irrelevant document, that neither was nor should have been relied on." *United States v. Kravetz*, 706 F.3d 47, 59 n.9 (1st Cir. 2013).[4]

In deciding whether to seal documents, courts consider the degree to which the subject matter is "traditionally considered private rather than public." *Kravetz*, 706 F.3d at 62. The nature and degree of any injury that would result from public disclosure are important considerations, as is the sensitivity of the information. *Id.* Courts also consider how the party urging disclosure intends to use the information. *Id.* Where a party seeks to use court files as "a vehicle for improper purposes," the Court must deny access "to insure that its records are not used to gratify private spite or promote public scandal." *In re Boston Herald*, 321 F.3d 174, 190 (1st Cir. 2003) (internal quotation marks omitted).

Two private interests are particularly relevant in this case, and weigh with particular force against public disclosure of the limited proportion of documents that Harvard seeks to keep sealed. First, "[t]hird-party privacy interests" are "a venerable common law exception to the presumption of access" that "weigh heavily in a court's balancing equation." *Kravetz*, 706 F.3d at 62. Second, "business information that might harm a litigant's competitive standing" may also be protected from disclosure. *Id.* at 61; *see In re Gitto Glob. Corp.*, 422 F.3d 1, 6 (1st Cir. 2005)

---

[4] If the Court's ultimate resolution of this case relies on any documents that the Court has allowed to remain under seal, the Court could consider at that time whether to unseal those documents. That is yet another consideration weighing in favor of maintaining under seal—at least at this stage—the documents whose relevance is at best unclear.

(same); *CardiAQ Valve Technologies, Inc. v. Neovasc Inc.*, No. 1:14-cv-12405-ADB, Dkt. 312 at

2-3, Dkt. 314 (allowing motion for leave to file summary judgment filings under seal followed

by the filing of redacted documents where party argued that information "might be of value to a

competitor or potential customer").

### A.      Personal Information Regarding Third Parties, Including Applicants, Should Not Be Publicly Disclosed

Every year, more than 40,000 high school students apply to Harvard College, providing

extensive and often deeply sensitive details about their backgrounds, personal lives, and

aspirations.  They do so with every expectation of privacy.  In recognition of those privacy

interests, the documents that Harvard produced contain limited redactions to avoid the disclosure

of directly identifying information such as applicant names; those redactions are not in dispute

here.  But Harvard did *not* redact extensive additional information about individual applicants

that would permit their identification if it were disclosed.[5]  For example, the application files that

Harvard produced and that both parties filed include information—like the applicant's

extracurricular activities and high schools—that in many cases would allow the applicant to be

easily identified, as well as highly sensitive personal information (such as test scores, GPAs,

essays, and teacher and guidance counselor recommendations).  *See* Declaration of Michael

Connolly in Support of Plaintiff's Motion for Summary Judgment ("Connolly") Ex. 236;

Declaration of Felicia H. Ellsworth in Support of Defendant's Motion for Summary Judgment

("Ellsworth") Ex. 61.  Similar concerns arise from other documents SFFA filed, including more

than one dozen "summary sheets" (portions of applications that summarize the entire file) and

---

[5]      In light of that, SFFA agreed in the parties' Protective Order to make no effort to "attempt to identify or learn or verify the name … or other contact information of any Harvard students or applicants," Dkt. 55 ¶ 2(a), and as a result Harvard generally limited its redactions to information that would be directly identifying.

excerpts from a hard copy "docket" (a page summarizing information from three applications).
Connolly Exs. 37, 141 (docket excerpt), 169-183, 188, 220, 228-230 (summary sheets).

The privacy interests of applicants to Harvard College weigh overwhelmingly in favor of
sealing that information, and the public has no countervailing interest in the identity or personal
details of the applicants at issue, since (as SFFA concedes) "[t]his suit is not about the treatment
of individual students."  Dkt. 388 at 2.  The sealing of these documents is easily justified.  *See,
e.g.*, *Boston Herald*, 321 F.3d at 191 ("the invasiveness of the disclosure sought here is further
intensified" where information sought to be disclosed pertains to non-parties); *Kravetz*, 706 F.3d
at 62 ("highly personal" information with "no direct bearing upon the public's assessment" of a
judicial ruling may "overcome the presumption of public access").

Indeed, both parties filed redacted affidavits and deposition testimony of SFFA's so-
called "standing members," and, at SFFA's request, Harvard redacted the name of each standing
member and any identifying information.  Connolly Exs. 194-199, 254-256, 258-261; Ellsworth
Exs. 11, 15, 19, 21, 22, 24 (standing member deposition excerpts), 40 (list of standing members
produced by SFFA), 93 (standing member declarations).  Harvard readily agreed to these
redactions; unlike SFFA, Harvard respects the privacy rights of students and applicants, even
those on whose behalf SFFA claims to bring this suit.

Additional documents filed under seal also implicate applicant privacy.  For example,
SFFA filed under seal documents containing discussion of individual students that mention
awards won (*e.g.*, Connolly Ex. 104), high schools attended (*e.g.*, Connolly Ex. 137), and
regional ranking in an extracurricular activity (*e.g.*, Connolly Ex. 38).  Those facts, in
combination with other information about these applicants that is now available by virtue of
these summary judgment proceedings, could allow anyone to identify the student at issue.  In the

absence of any cognizable public interest in the applicants' identities, there is equal reason to seal those documents to protect applicants' privacy interests.

SFFA also filed several exhibits that contain personal information regarding, and private correspondence with, Harvard alumni. *See, e.g.*, Connolly Exs. 75, 76, 129, 130. Those alumni had every reason to believe they were engaging in private communications with representatives of their alma mater—one that in many instances they had long supported, including through volunteer service as alumni interviewers. Subjecting their communications to public disclosure would unduly infringe on their privacy. It would also have a chilling effect that would be detrimental to Harvard's admissions process, which relies on the candid assessment of applicants by alumni interviewers each year. Declaration of Robin Worth (Worth Decl.) ¶ 17. The privacy rights of third parties "weigh heavily" in favor of sealing. *Kravetz*, 706 F.3d at 62.

Nor is there any public interest in this correspondence sufficient to outweigh these well-established privacy interests. Because SFFA's summary judgment filing is nothing of the sort—alleging 900 paragraphs of purportedly material and undisputed facts that SFFA knows are fiercely contested—it is unlikely that many of the 261 exhibits SFFA has filed in connection with that motion will serve as the basis of the Court's ruling. *Standard Fin. Mgmt. Corp.*, 830 F.2d at 408 (public interest attaches primarily to "materials on which a court relies in determining the litigants' substantive rights"). SFFA's choice to clutter the docket with irrelevant exhibits in an effort to make them public does not create a public interest in those documents. *Kravetz*, 706 F.3d at 59 n.9 (irrelevant documents not entitled to presumption of disclosure). Indeed, Harvard's position is carefully calibrated to protect only correspondence *from* non-parties who had a legitimate expectation of privacy in what they sent; to the extent

SFFA sought to publicly file Harvard's *responses* to correspondence from alumni, Harvard assented (with appropriate redactions for the identity of the alumni). *See* Connolly Ex. 132.

SFFA also filed as exhibits additional correspondence with non-parties to this litigation who also have privacy interests warranting sealing. That correspondence includes a letter from a high school student to Harvard's President (Connolly Ex. 131) and messages from employees of other Harvard schools (such as the Harvard Kennedy School of Government) (Ex. 71). Such communications are "traditionally considered private," *Kravetz*, 706 F.3d at 62, and that significant privacy interest outweighs whatever minimal public interest attaches to documents that are marginally relevant at best.

### B.   Granular Information About Harvard's Admissions Processes Should Not Be Publicly Disclosed

Courts routinely seal "confidential business information," *Bradford & Bigelow*, 109 F. Supp. 3d at 448, and other "business information that might harm a litigant's competitive standing," *Nixon*, 435 U.S. at 598. This Court has therefore allowed parties to submit summary judgment documents under seal when necessary to "avoid the serious competitive injury that dissemination would more than likely entail." *Glass Dimensions, Inc. v. State St. Corp.*, 2013 WL 6280085, at *1 (D. Mass. Dec. 3, 2013) (allowing motion to seal summary judgment filings that contained information about client fees and other propriety information); *Hilsinger Co. v. Eyeego, LLC*, 2014 WL 5475032, at *1 (D. Mass. Oct. 29, 2014) (granting motion to seal summary judgment filings because "material to be filed under seal includes sensitive information regarding the design and engineering of [plaintiff's] products").

This approach is supported by courts across the country, which routinely seal confidential business information when its disclosure would present competitive risk to a party. *See, e.g.*, *Rich v. Shrader*, 2013 WL 6028305, at *3-4 (S.D. Cal. Nov. 13, 2013) (granting motion to seal

"Booz Allen's partnership evaluation, internal policies and strategies, [and] financial information" that could "be subjected to improper use by Booz Allen competitors if publicly disseminated," and sealing testimony that could "be used by competitors to piece together portions of Booz Allen's proprietary review and employee development system"); *Bracco Diagnostics Inc. v. Amersham Health Inc.*, 2007 WL 2085350 at *9-10 (D.N.J. July 18, 2007) (sealing unpublished clinical studies and internal analyses where "the subject studies, analyses and underlying data would not be publicly available, but for the discovery process in this litigation, and … are generally maintained as highly confidential" and "the subject materials could be manipulated or distorted by competitors for a business advantage").

Those cases support Harvard's request that the Court seal commercially sensitive documents the parties filed in connection with their summary judgment materials. Although the commercial interests at stake in this case reflect Harvard's status as a nonprofit educational institution—and thus differ somewhat from the interests at stake in cases concerning for-profit companies—they are no less legally compelling. In particular, Harvard's commercial interests include (1) preventing applicants from attempting to "game the system" by modifying their conduct or their applications to conform to what they believe Harvard wants from them; (2) preventing the college counseling industry from using what would otherwise be non-public information to help well-resourced applicants at the expense of applicants with lesser access to information and advice; and (3) preventing other universities from using Harvard's information to shape their recruiting messages to potential applicants. Those interests warrant protection of the narrow categories of documents identified below.

***Training materials.*** Over many years, the Admissions Office has developed internal training materials for admissions officers. They include "reading procedures" (Connolly Ex. 29,

Ellsworth Exs. 56-57), a "casebook" (Ellsworth Ex. 52), and a "casebook discussion guide" (Ellsworth Ex. 53). There is no question that these documents are proprietary, and SFFA supplies no reason to think that they are in the public domain. The disclosure of this confidential business information would present significant risk of harm to Harvard. The documents provide detailed guidance, including guidance based on real-world application files, on how to evaluate and rate applicants and weigh competing considerations in deciding whether to admit an applicant. Worth Decl. ¶¶ 11-12. These training materials are created by the Harvard Admissions Office, are unique to Harvard, and are not readily publicly available. Worth Decl. ¶ 13.

Harvard strives to run an admissions process that captures a complete and accurate picture of each applicant; that is fair and equitable for all applicants, regardless of resources; and that draws to campus an extraordinary and diverse class each year. Each of those goals would be compromised by the release of these documents. First, applicants might use the documents to attempt to mold their applications to fit what they think Harvard wants, rather than providing an authentic account of their own qualifications and backgrounds.[6] Worth Decl. ¶ 14. Second, and relatedly, the disclosure of these documents would be used by the $400 million industry of for-profit college counselors for a similar purpose—a result that would detract from the legitimacy of the applications Harvard receives and would be seen as providing (and likely would provide) still greater advantage to wealthier applicants who could more readily avail themselves of such advice. Worth Decl. ¶¶ 7-8, 14. Third, other colleges and universities that similarly seek to

---

[6]     *Cf.* Deirdre Fernandes, *Want To Know How To Get Into Harvard?  Court May Allow Some Admissions Documents To Be Open To The Public*, Boston Globe (Apr. 10, 2018) ("If there's a Holy Grail in higher education, this might be it: thousands of documents that lay bare the inner workings of Harvard University's admissions process. … Students and guidance counselors would love a peek.").

admit and matriculate an extraordinary and diverse class of students each year could use these documents to gain a competitive advantage over Harvard, both by learning from and adapting Harvard's methods of recruiting applicants and by using their knowledge of Harvard's processes to more effectively compete for sought-after applicants.  *See* Worth Decl. ¶ 25.

   ***Internal data.***  Many of the documents SFFA seeks to publicly file contain internal data relating to Harvard's applicant pool that have never been publicly disclosed and that have no relevance to the resolution of this case.  Harvard has agreed that both parties' expert empirical reports may be publicly filed with minimal redactions, based on Harvard's recognition that there is a legitimate public interest in the documents that may reasonably be expected to inform this Court's rulings.  With the core statistical analysis on the public docket, there is little reason to publicize underlying *raw data* that SFFA decided for whatever reason to file with its brief.

   For example, during the course of the admissions cycle, senior members of the admissions office periodically receive a document that contains an overview of the tentatively admitted class, including information about the composition of the class by sex, geography, intended concentration, legacy status, socioeconomic status, and race.  *See* Worth Decl. ¶ 18; Dkt. 418 (Harvard Mem. ISO Mot. for Summ. J.) at 19 n.13.  SFFA filed no fewer than 20 of these documents (or similar presentations of data) with its motion.  Connolly Exs. 33, 36, 40-48, 58, 59, 68, 70, 79, 80, 97, 100, 223.  These documents reveal snapshots of the admitted class at various moments in time—incomplete snapshots, as they do not reflect the ultimate results of the full admissions process—and would, if disclosed, provide the public with a manipulable set of data exported from Harvard's admissions database.

   Harvard is transparent about the ultimate composition of its admitted class each year (*see, e.g.*, Ellsworth Decl. Exs. 79, 82) and has agreed to the disclosure in this litigation of previously

unreleased information about admission rates and the composition of its applicant pool (*see, e.g.*, Connolly Decl. Ex. 106).  But the documents now at issue, which are available only to the senior leadership of the office, provide a far more granular picture of the developing class to be admitted, and could, if disclosed, lead to strategic (or even misleading) applicant behavior and competitive disadvantages for Harvard.  Worth Decl. ¶¶ 19-20.  The same is true of other documents SFFA filed with its brief that contain additional data about the applicant pool broken out by racial or ethnic group.  Connolly Exs. 205, 206.  Harvard does not release this level of granular information about its applicant pool, there is no legitimate public interest to be served by releasing it in this case, and its disclosure would be harmful in several ways.  Worth Decl. ¶¶ 19-22.

The disclosure of these documents could change applicant behavior by motivating applicants to, for example, falsely represent their intended concentration to align with concentrations that appear sought after in the early stages of certain admissions cycles.  Worth Decl. ¶¶ 14, 19.  Furthermore, given the high level of public interest in Harvard and Harvard's interest in ensuring that misinformation does not distort applicant behavior, the disclosure of these documents would likely force Harvard to expend significant resources to dispel myths about its admissions process that emerge from erroneous third-party statistical analyses of these data.  The disclosure of this additional non-public data about Harvard's applicant pool will also be of significant interest to Harvard's competitors, who will inevitably attempt to leverage it for their advantage, to Harvard's detriment.  Worth Decl. ¶¶ 20, 22.

***Other information about the admissions process.***  SFFA also seeks to publicly file additional documents relating to the detailed inner workings of the admissions process.  These include internal communications among admissions officers, often regarding individual

applicants; non-public details of Harvard's recruiting efforts; and documents (such as lists of applicants) the admissions office utilizes throughout the process. All of this information is maintained in confidence by the Admissions Office, Worth Decl. ¶ 24, would "traditionally be considered private," and should have "no direct bearing" on this Court's decision. *See Kravetz*, 706 F.3d at 62. The disclosure of information that reveals—to an unprecedented degree—the inner workings of Harvard's admissions process may harm Harvard not only by motivating applicants to modify their behavior to take advantage of that information, but also by disadvantaging Harvard in the extremely competitive market to recruit, admit, and enroll the most outstanding students across the world. It is not difficult to imagine how Harvard's competitors might try to utilize information about Harvard's yield rates, or the number of students Harvard seeks to admit from certain geographic territories, to their advantage and to Harvard's detriment. Because Harvard's legitimate confidentiality interest outweighs the limited public interest in marginally relevant documents, these materials should remain sealed.

C.      **The Limited Remaining Redactions To The Parties' Filings Are Appropriate**

In the wake of the parties' June 15 filings, Harvard has reviewed the redactions that SFFA applied to its summary judgment brief and Local Rule 56.1 statement and advised SFFA that a significant portion of the language SFFA initially redacted may be publicly filed. Nevertheless, portions of the parties' papers should properly remain redacted either because they implicate applicant privacy, third party privacy, or reveal the inner workings of the admissions office and, if disclosed, would harm Harvard in the ways described above. Exhibits B and C to this memorandum identify, for each of these documents, the basis for each redaction by page and, where applicable, by paragraph.

17

Harvard has also reviewed the parties' deposition testimony, which was initially filed under seal.  Harvard has informed SFFA that large portions of the deposition excerpts it filed may be filed publicly, and Harvard has publicly filed each of the deposition excerpts it previously sealed, with very limited redactions.  To the extent Harvard has either redacted testimony from its own deposition excerpts or indicated that SFFA should redact portions of the deposition testimony it filed in connection with its motion, Harvard has done so to protect applicant privacy, third party privacy, or to protect from disclosure detailed non-public facts about the admissions process that, if disclosed, could harm Harvard for all the reasons discussed above.

**CONCLUSION**

For the foregoing reasons, the documents or excerpts of documents identified in Exhibits A, B, and C should remain under seal.

Respectfully submitted,

/s/ Felicia H. Ellsworth
Seth P. Waxman (*pro hac vice*)
Paul R.Q. Wolfson (*pro hac vice*)
Daniel Winik (*pro hac vice*)
WILMER CUTLER PICKERING
     HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com
daniel.winik@wilmerhale.com

William F. Lee (BBO #291960)
Felicia H. Ellsworth (BBO #665232)
Andrew S. Dulberg (BBO #675405)
Elizabeth Mooney (BBO #679522)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6687
Fax: (617) 526-5000
william.lee@wilmerhale.com
felicia.ellsworth@wilmerhale.com
andrew.dulberg@wilmerhale.com
elizabeth.mooney@wilmerhale.com

Debo P. Adegbile (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6717
Fax: (212) 230-8888
debo.adegbile@wilmerhale.com

Dated:  June 22, 2018

*Counsel for Defendant President and Fellows of Harvard College*

# EXHIBIT A

*Documents and Information SFFA and Harvard Jointly Request Remain Under Seal*

The parties agree that the following documents filed with the summary judgment materials should remain under seal:

| Document Category | Exhibits |
|---|---|
| Application files | Ellsworth Ex. 61 |
| Applicant summary sheets | Connolly Exs. 37, 169-183, 188, 220, 228-230, 236 |
| Docket binder excerpt | Connolly Ex. 141 |
| Information about individuals on whom SFFA relies for standing | Ellsworth Ex. 40 |

The parties further agree that the following documents filed publicly with redactions should remain redacted, with unredacted versions remaining under seal:

| Document Category | Exhibits |
|---|---|
| Information about individuals on whom SFFA relies for standing | Connolly Exs. 194-199, 254-256, 258-261<br>Ellsworth Exs. 11, 15, 19, 21, 22, 24, 93 |

# EXHIBIT B

*Documents and Information Harvard Requests Remain Under Seal*[1]

Harvard requests that the following documents filed with the summary judgment materials remain under seal:

| Document Category | Exhibits |
|---|---|
| Documents containing information about individual applicants | Connolly Exs. 38, 71, 75, 76, 104, 137, 152, 224 <br><br> Ellsworth Ex. 63 |
| Documents containing information about third parties | Connolly Exs. 61, 71, 75, 76, 129-131, 136, 137, 187 |
| Admissions Office training materials | Connolly Exs. 29, 93, 125 <br><br> Ellsworth Exs. 52, 53, 56, 57 |
| Documents containing internal admissions data | Connolly Exs. 33, 36, 40-48, 58, 59, 68, 70, 79, 80, 93, 97, 100, 119, 205, 206, 223 |
| Documents containing other sensitive information about Harvard, Admissions Office | Connolly Exs. 32, 39, 55, 66, 69, 74, 84, 93, 96, 99, 113, 119, 126, 127, 139, 146, 147, 151, 152, 158, 163, 189, 192, 202, 227 <br><br> Ellsworth Exs. 43, 62 |

---

[1] For a limited number of these documents, SFFA has proposed minimal redactions that do not adequately address Harvard's interest in protecting applicant privacy.

Harvard further requests that the following documents already filed publicly with redactions remain redacted, with unredacted versions remaining under seal:

| Document Category | Exhibits |
|---|---|
| Documents containing information about individual applicants | Connolly Exs. 73, 124, 252, 253<br><br>Ellsworth Exs. 31, 33, 37<br><br>Arcidiacono Decl. Ex. A |
| Documents containing information about third parties | Connolly Exs. 31, 51, 73, 118, 124, 132, 144, 226 |
| Admissions Office training materials | Connolly Exs. 28, 252, 253<br><br>Ellsworth Exs. 31, 33, 37<br><br>Arcidiacono Decl. Ex. A |
| Documents containing internal admissions data | Connolly Exs. 81, 89, 90, 101, 103, 134, 252<br><br>Ellsworth Exs. 31, 33<br><br>Arcidiacono Decl. & Ex. A |
| Documents containing other sensitive information about Harvard, Admissions Office | Connolly Exs. 31, 134, 184, 252, 253<br><br>Ellsworth Exs. 32, 33, 35, 37, 65, 134<br><br>Arcidiacono Decl. & Exs. A, B<br><br>Kahlenberg Decl. Ex. A |

# EXHIBIT C

*Materials in Parties' Memoranda and Statements of
Material Facts That Harvard Requests Remain Redacted*

| Basis | Location of Preexisting Redaction(s) Proposed to Remain Redacted |
|---|---|
| *SFFA's Memorandum of Reasons in Support of Its Motion for Summary Judgment (Dkt. 413)* | |
| Information about individual applicants | Pp. 22 (except the separate redaction on line 10), 26 |
| Information about third parties | Pp. 22 (except the separate redaction on line 10), 26 |
| Internal admissions data | P. 38 (table and lines 8-9 of text) |
| Sensitive information about the Admissions Office | Pp. 34, 35 (lines 4-6), 36, 37 (lines 1-18), 38 (lines 3-4) |
| *SFFA's Statement of Undisputed Material Facts (Dkt. 414)* | |
| Names of individual admissions officers outside of senior leadership | *Passim* |
| Information about individual applicants | ¶¶ 299, 300, 334, 335, 337, 339, 690, 693-698 |
| Information about third parties | ¶¶ 20, 299, 300, 325-329, 332-334, 337, 339, 374, 694 |
| Admissions Office training materials | ¶¶ 81, 83, 85, 88, 89, 98, 100, 101, 202-205, 207, 208, 210-212 |
| Internal admissions data | ¶¶ 231 (table), 232, 233, 240 (table), 241, 242, 395-398 |
| Sensitive information about the Admissions Office | P. iii, line 3 (all but first two words); ¶¶ 96, 102, 111 (numbers other than year), 114 (number other than date), 130-135, 147, 168-171 (and preceding heading), 189, 190 (including table), 191-193, 230 (including all but first two words of preceding heading), 234, 235, 237, 243 (final five words of entry after Jan. 3, 2014), 246-249, 251-260, 296-298, 483, 487-491 |

| Basis | Location of Preexisting Redaction(s) Proposed to Remain Redacted |
|---|---|
| *Harvard's Memorandum in Support of Motion for Summary Judgment on All Remaining Counts (Dkt. 418)* | |
| Information about individuals on whom SFFA relies for standing[2] | Pp. 14 & n.9, 15 & n.10 |
| *Harvard's Local Rule 56.1 Statement of Undisputed Material Facts in Support of Motion for Summary Judgment on All Remaining Counts (Dkt. 420)* | |
| Information about individuals on whom SFFA relies for standing[3] | ¶¶ 249, 250, 258, 260, 262-278 |
| Admissions Office training materials | ¶¶ 50, 54, 63 |

---

[2] SFFA assents to these redactions.
[3] SFFA assents to these redactions.

# EXHIBIT D

*Documents Filed Under Seal for Which Harvard Has Assented*
*to Public Filing With No Redactions or Limited Redactions*

Harvard has informed SFFA that it assents to the public filing, without redaction, of the following exhibits previously filed under seal:

| Filing Party | Exhibit |
|---|---|
| SFFA | Connolly Exs. 5, 11-13, 19, 22-26, 35, 67, 82, 83, 85, 91, 92, 111, 120, 121, 138, 231, 233, 234 |
| Harvard | Ellsworth Exs. 3-8, 10, 12-14, 16-18, 20, 23, 25, 26, 27, 29, 30, 54, 55 |

Harvard has further informed SFFA that it assents to the public filing, subject to limited redactions that Harvard has provided SFFA or will provide the Court, of the following exhibits previously filed under seal:

| Filing Party | Exhibit |
|---|---|
| SFFA | Connolly Exs. 1, 2, 6, 7, 8, 9, 10, 14, 16-18, 20, 78, 110, 140, 225 |
| Harvard | Ellsworth Exs. 1, 9 |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document and attachments will be sent electronically to counsel of record for SFFA.

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth