**STATE OF UTAH**
OFFICE OF THE ATTORNEY GENERAL



SEAN D. REYES
ATTORNEY GENERAL

| Spencer E. Austin | Ric Cantrell | Tyler R. Green | Brian L. Tarbet |
|---|---|---|---|
| Chief Criminal Deputy | Chief of Staff | Solicitor General | Chief Civil Deputy |

June 26, 2018

The Honorable Allison D. Burroughs
U.S. District Court, District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

**VIA FEDERAL EXPRESS**

Re:  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
     No. 1:14-CV-14176-ADB

Dear Judge Burroughs:

A lawsuit about a private Massachusetts university's admissions policies does not obviously call for comment from the Utah Attorney General's office. But this lawsuit isn't about just any university—it's about Harvard. And the allegations—about intentional racial discrimination, a pernicious evil too often present in our nation's past—don't concern just any applicants: they concern Utah applicants. At least, that's what newly-public information strongly suggests.

Those apparent harms recently came to light in plaintiff Students for Fair Admissions' memorandum of reasons in support of its motion for summary judgment. *See* Dkt. No. 413. SFFA's memorandum recounts facts that, if true, could establish that one of the country's premier universities rejected Utah applicants simply because they are Asian Americans.

SFFA describes an apparent January 2014 meeting where Harvard alumni in Utah ranked Utah applicants for Harvard's class of 2018 and sent their rankings to Harvard's admissions officials. *See id.* at 22. Unfortunately, who ultimately received those rankings, and what they said or did after receiving them, are redacted. Also redacted are the number of Utah applicants who were admitted to the class of 2018—and how many of those admittees are Asian Americans. Harvard has since urged this Court to keep that secret information away from public scrutiny. *See* Dkt. No. 422 & Ex. C.

This Court should reject Harvard's efforts to continue to hide evidence of its potentially discriminatory admissions decisions. Harvard's arguments contravene "the longstanding tradition of public access to trials and pre-trial motions in our judicial system—a tradition that is

protected both by the common law and the First Amendment." *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 447 (D. Mass. 2015) (citing *Nixon v. Warner Comm'ns*, 435 U.S. 589, 597 (1978); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006)). Indeed, "[t]he more important the document is to the core judicial function of determining the facts and the law applicable to the case, the stronger the presumption of public access and the higher the burden" on anyone seeking "to overcome" that presumption. *Id.*

It's hard to imagine documents more pertinent to the "core judicial function of determining" whether Harvard violated Title VI than the documents referred to in SFFA's memorandum. Those documents appear to describe conduct squarely corroborating allegations that Harvard intentionally discriminated against Asian Americans from Utah. Those documents are thus entitled to an overwhelming "presumption of public access" that Harvard fails to overcome. *Id.* In fact, this evidence may also justify investigations by appropriate governmental entities.

To be clear, Utah has no interest in any public disclosure of the identities of, or individually identifiable information about, any Harvard applicants. But Utah has a paramount interest in protecting its citizens from intentional racial discrimination—particularly intentional discrimination perpetrated by a leading university that received over $600 million dollars last year in federal funding. Harvard Univ., 2017 Fiscal Report 6, 15, https://finance.harvard.edu/files/fad/files/final_harvard_university_financial_report_2017.pdf.

"The way to stop discrimination on the basis of race is to stop discriminating on the basis of race." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007). The first step toward that goal here is to stop Harvard's efforts to close the curtains on relevant documents. Courts should adopt rules that create "incentives" for universities "to make the existing minority admissions schemes transparent and protective of individual review." *Grutter v. Bollinger*, 539 U.S. 306, 394 (2003) (Kennedy, J., dissenting). If "[p]ublicity" really "is justly commended as a remedy for social . . . diseases," and "[s]unlight" really "is . . . the best of disinfectants," *Buckley v. Valeo*, 424 U.S. 1, 67 (1976) (internal quotation marks omitted), SFFA should be able to file its memorandum with no redactions. Then all interested parties—including the sovereign State where apparent victims of Harvard's intentional racial discrimination lived—can see why Harvard did what it did and what evidence undergirds this Court's decision.

I respectfully ask that this letter be lodged as a docket entry in this case.

                                      Respectfully submitted,

                                      Sean D. Reyes
                                      Utah Attorney General

Cc:    William S. Consovoy (by email)
         Seth P. Waxman (by email)
         Felicia H. Ellsworth (by email)