# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### BOSTON DIVISION

STUDENTS FOR FAIR ADMISSIONS, INC.,

        Plaintiff,

    v.

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE,

        Defendant.

Civil Action No. 1:14-cv-14176-ADB

---

## SFFA'S MEMORANDUM OF LAW IN OPPOSITION TO HARVARD'S MOTION TO SEAL CERTAIN INFORMATION FILED IN CONNECTION WITH THE PARTIES' SUMMARY JUDGMENT MOTIONS

Adam K. Mortara
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
312.494.4400
adam.mortara@bartlit-beck.com

John M. Hughes
BARTLIT BECK HERMAN PALENCHAR
& SCOTT LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
303.592.3100
john.hughes@bartlit-beck.com

Paul M. Sanford BBO #566318
BURNS & LEVINSON LLP
One Citizens Plaza, Suite 1100
Providence,
RI 02903
617.345.3000
psanford@burnslev.com

William S. Consovoy
Thomas R. McCarthy
J. Michael Connolly
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Boulevard, Suite 700
Arlington, Virginia 22201
703.243.9423
will@consovoymccarthy.com
tom@consovoymccarthy.com
mike@consovoymccarthy.com

Patrick Strawbridge BBO #678274
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
617.227.0548
patrick@consovoymccarthy.com

Michael H. Park
CONSOVOY MCCARTHY PARK PLLC
745 Fifth Avenue
Suite 500
New York, NY 10151
212.247.8006
park@consovoymccarthy.com

June 29, 2018

# INTRODUCTION

There is an "oft-quoted adage: If the law is against you, argue the facts; if the facts are against you, argue the law; and if they both are against you, pound the table and attack your opponent." *United States v. Griffin*, 84 F.3d 912, 927 (7th Cir. 1996). That seems to be Harvard's plan. The narrow but important issue presently before the Court is whether Harvard can defend its attempt to keep secret evidence that goes to the heart of the case. But since the law and facts are stacked against it, Harvard attacks Students for Fair Admissions (SFFA) instead. This is no substitute for a cogent argument.

The barrage of irrelevant accusations is misplaced in any event. Harvard begins, for example, by complaining that SFFA seeks to overrule Supreme Court precedent and that SFFA's goal is "above all to end the consideration of race in college admissions." Harvard Motion to Seal ("Mot.") 1-2. But SFFA brought six counts, only one of which challenged governing precedent. The remaining counts—including the four now before the Court—sought to enforce existing law. It is understandable why Harvard badly wants to avert attention from the overwhelming evidence that it is violating Title VI. But the misdirection should fool no one; the Court's neutral application of the facts to controlling law will determine if Harvard is acting illegally and, if so, the appropriate remedy. Harvard cannot evade probing judicial review by smearing SFFA's president and casting aspersions at parents, students, and likeminded individuals who have voluntarily associated in pursuit of racial equality.[1]

Harvard next accuses SFFA of seeking "to present a fundamentally misleading account of the record to the media." Mot. 1. But it is Harvard—not SFFA—that is litigating the case in the press.

---

[1] Harvard's continued personal assault—in its pleadings and the press—on Mr. Blum is especially troubling. The Court has held that SFFA is a legitimate association. *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College (Harvard Corporation)*, 261 F. Supp. 3d 99 (D. Mass. 2017). Harvard's attempt to paint this lawsuit as the work of one person insults the thousands of SFFA members—including the Asian-American students denied admission to Harvard—who joined the organization to advance its mission and to end Harvard's campaign of discrimination. Harvard should remember that people of goodwill can disagree about what the Equal Protection Clause commands. Vilifying individuals who object to classifying applicants on the basis of their race may win Harvard applause in some circles, but it highlights what the evidence already shows: Harvard has no interest in "bringing about the harmony and mutual respect among all citizens that our constitutional tradition has always sought." *Grutter v. Bollinger*, 539 U.S. 306, 395 (2003) (Kennedy, J., dissenting).

Harvard emailed a statement criticizing SFFA and its case against Harvard to its *entire* alumni network (including, possibly, some First Circuit judges and Supreme Court justices who may hear this case) two days before summary judgment briefs were filed. Harvard then emailed its alumni interviewers—some of whom may be witnesses—attacking SFFA and defending its actions. And Harvard's General Counsel just yesterday wrote a letter to the editor of the New York Times. In all, Harvard has issued seven press releases about the case just in 2018 and has even created a website dedicated to the dispute.

Moreover, Harvard's claim that SFFA's motion presents a "misleading account" to the public is perhaps even more hypocritical. Harvard—not SFFA—wants to seal important evidence. Harvard's desire to redact nearly all of SFFA's evidence with respect to racial balancing illustrates the point. Harvard proclaims that SFFA has failed "to find any actual documentary or testimonial support for the purported scheme of intentional discrimination alleged by the Complaint." Mot. 2. It can make this baseless claim only as long as the key evidence relating to racial balancing, including large portions of critical deposition testimony of Dean Fitzsimmons and Director McGrath, remains under seal. In sum, one party is depriving the public of context and then capitalizing on those improper redactions to keep its "distortions of the record," *id.*, from being uncovered. But it is not SFFA.

Finally, Harvard complains that SFFA's statement of material facts is too long and has made its review too burdensome. But it is Harvard's desire to redact or seal over 100 documents that has burdened SFFA and this Court. The suggestion that Harvard needed to closely review all these documents because they "implicate applicant privacy, third party privacy, or reveal the inner workings of the admissions office," Mot. 17, is untrue. SFFA has agreed to seal or redact all information that could render an applicant identifiable (and most of that information was, in fact, redacted before it was produced to SFFA). SFFA has further agreed to redact the name of any other individual who either is not a witness to or is not involved in acts of discrimination. And none of the information Harvard seeks to redact about its admissions process is proprietary or a trade secret. In other words,

none of Harvard's redactions involve anything like "national security, the formula for Coca Cola, or embarrassing details of private life." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 533 (1st Cir. 1993). Harvard's review was arduous because it chose to scour the record for evidence it would rather the public not see. But the fact that disclosure "may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).[2]

## LEGAL BACKGROUND

There is a "longstanding tradition of public access to trials and pre-trial motions in our judicial system—a tradition that is protected both by the common law and the First Amendment." *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 447 (D. Mass. 2015) (citing *Nixon v. Warner Comm'ns*, 435 U.S. 589, 597 (1978)). This tradition endures because "[p]ublic access to judicial records and documents allows the citizenry to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) (citation omitted); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("[P]rofessional and public monitoring is an essential feature of democratic control."). It also is "driven by administrative concerns," because the Court "expends considerable resources to process and maintain sealed documents." *Bradford & Bigelow, Inc.*, 109 F. Supp. 3d at 447 (citation omitted).

---

[2] Harvard's claim that SFFA's statement of material facts violates Rule 56 is premature, irrelevant, and incorrect. The complaint is premature because it remains to be seen how many facts Harvard will be able to dispute given that most come from public documents, Harvard's own files, and its own employees' depositions. It is irrelevant because it has nothing to do with whether these documents meet the standard for sealing. And it is incorrect because Harvard continues to ignore the difference between a motion for summary judgment grounded in the absence of a disputed facts and one, like SFFA's, grounded in the lack of a *genuine* dispute over those facts. The Federal Rules allow a party to seek summary judgment if the evidence is so one-sided that no rational factfinder could accept the non-moving party's version of events. "[T]he 'genuine issue' summary judgment standard is 'very close' to the 'reasonable jury' directed verdict standard" because "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (citations omitted). It follows, then, that a "genuine issue" summary judgment motion is much longer than a motion based on the absence of disputed facts. After all, the point of the motion is to demonstrate to the Court that the moving party has so much irrefutable evidence that a trial is unnecessary. That is what SFFA has done here.

The common law and the First Amendment both apply here. The common law right of access applies to all "judicial records and documents." *Nixon*, 435 U.S. at 597; *see United States v. Kravetz*, 706 F.3d 47, 58-59 (1st Cir. 2013). The First Amendment right attaches "to particular judicial records such as documents filed in connection with summary judgment motion in civil cases." *Erichsen v. RBC Capital Markets, LLC*, 883 F. Supp. 2d 562, 574 (E.D.N.C. 2012); *see also Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014); *Lugosch*, 435 F.3d at 121; *Bradford & Bigelow*, 109 F. Supp. 3d at 448.[3]

A party seeking to seal such records must provide "the most compelling reasons," *In re Providence Journal Co.*, 293 F.3d 1, 10 (1st Cir. 2002); *see, e.g., Hilsinger Co. v. Eyeego, LLC*, 2014 WL 5475032, at *1 (D. Mass. Oct. 29, 2014). For example, "the statement that 'this proprietary and confidential information, if publicly disclosed, would provide competitors of the Defendant and Defendant's vendors an unfair advantage' without more is not enough to override the common law and First Amendment rights of the public to review court documents." *Shamblin v. Obama for America*, 2014 WL 6065752, at *2 (M.D. Fla. Nov. 12, 2014). Additionally, a party seeking impoundment "must ensure that any sealing is narrowly tailored to shield as little from public view as possible." *Bradford & Bigelow*, 109 F. Supp. 3d at 449. Thus, Harvard "must explain, on a document-by-document basis, why sealing is required and how [its] request satisfies the applicable legal standard." *Id.* at 447.

## ARGUMENT

I. **Harvard's Generalized Assertions of Harm Are Insufficient to Overcome the Enormous Public Interest in Disclosure.**

The "presumptively paramount right of the public to know" content of judicial records in civil cases may be overcome only by "the most compelling reasons." *Standard Fin. Mgmt.*, 830 F.2d at

---

[3] Even if, as Harvard has suggested, Mot. 7-8, the presumption of access is stronger at trial than at summary judgment, the distinction is immaterial here. The strongest possible presumption of access applies not only to trial documents, but also to those documents that will be "included in an appellate record." *Bradford & Bigelow*, 109 F. Supp. 3d at 448. The documents at issue will be part of the appellate record and play a central role in the appeal no matter which party ultimately prevails before this Court. In all events, then, "the public interest is strongest (and the burden to overcome it the highest) for [the] documents" in dispute. *Id.*

408 n.4, 410; *see also Kravetz*, 706 F.3d at 59. As the party seeking impoundment, Harvard carries the burden of persuasion. *Standard Fin. Mgmt.*, 830 F.2d at 411. Harvard cannot simply rely upon general or conclusory statements about potential harm; instead, impoundment "must be based on a particular factual demonstration of potential harm." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). This requires a "clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples … will not suffice." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

### A.      The Public Has a Strong Interest in Access to these Judicial Records.

As the *amicus* briefs from news associations and other public interest groups, Doc. 394, the United States, Doc. 391-1, and others, Doc. 423 (Utah Attorney General), make clear, the public has a vital interest in "access to judicial records and documents" in this case. *Standard Fin. Mgmt.*, 830 F.2d at 410. The fact that this case involves issues so "important to the public," *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 788 (3d Cir. 1994), weighs heavily in favor of public access.

When "a lawsuit involves a matter of public concern such as civil rights," that is "a factor that will usually support disclosure." *Floyd v. City of New York*, 739 F. Supp. 2d 376, 381 (S.D.N.Y. 2010); *Bullard v. Goodyear Tire & Rubber Co.*, 2011 WL 5248085, at *2 (D. Kan. Apr. 12, 2011) ("The public certainly is entitled to know why, how and on what basis the court decided the summary judgment motion" in an employment discrimination case). That is especially true in the context of cases challenging the use of racial preferences in college admissions, which always generate enormous public interest. *See, e.g.*, Supreme Court Docket, *Fisher v. University of Texas*, No. 11-345 (S. Ct.) (98 amicus briefs); Supreme Court Docket, *Grutter v. Bollinger*, No. 02-241 (98 amicus briefs). This case is no exception. *See, e.g.*, Anemona Hartocollis, *Harvard Rated Asian-American Applicants Lower on Personality Traits, Suit Says*, N.Y. Times (June 15, 2018); Nicole Hong & Melissa Korn, *Court Filings Detail Role of Race in Harvard Undergraduate Admissions*, Wall St. J. (June 15, 2018).

Indeed, Harvard annually receives more than half a *billion* dollars from the federal government. Harvard Univ., 2017 Fiscal Report 6, https://goo.gl/hjsmbx. Naturally, "the public's interest in the judicial record is especially acute where—as here—the government has subsidized the good or service underlying the litigation from the public fisc." *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 712 (7th Cir. 2015). Accordingly, "a party that is subsidized by the public fisc and that seeks to seal portions of the record must satisfy a higher burden than a party that receives no government subsidy must satisfy in order to achieve the same result." *Id.* at 712-13.

**B.      Harvard's Justifications for Sealing the Summary-Judgment Documents Fail.**

Harvard puts forth two arguments to justify its motion: (1) that many of its employees, alumni interviewers and others are entitled to privacy; and (2) that information about its admissions process is highly confidential business information. Neither justification supports sealing.

**1.      Harvard's Third-Party Privacy Claims Do Not Justify Impoundment.**

As an initial matter, it is important to note the privacy issues that are *not* in dispute. SFFA has agreed to seal all information that could render any individual applicant identifiable, including summary sheets and written dockets. SFFA also has agreed to redact the name of any other individual who either is not a witness to or otherwise involved in Harvard's alleged acts of discrimination. Harvard's assertions of third-party privacy must be viewed with these concessions in mind.

A party seeking impoundment on privacy grounds has the burden of providing "sufficiently compelling reasons" to believe that "particularized harm" will result from disclosure. *Standard Fin. Mgmt.*, 830 F.2d at 412. Neither "broad generalizations that disclosure will be detrimental," *id.*, nor arguments that disclosure will "harm [a] company's reputation" will satisfy this burden. *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983).

Harvard cannot come close to meeting this standard. As an initial matter, Harvard invokes privacy as if that concept alone justifies sealing. *See, e.g.*, Mot. 2 (third-party information "would, if

disclosed, destroy third parties' reasonable expectations of privacy"); Mot. 11 ("public disclosure would unduly infringe on their privacy"). This is not the law. All information—including information about third parties—is presumptively public when filed with a dispositive motion. *Standard Fin. Mgmt.*, 830 F.2d at 411. Harvard must show *particularized* harm that would result from disclosure. It is not enough to say that information must remain private because it is private.

Yet Harvard has failed to articulate any "specific, cognizable injury" that would result from the dissemination of sealed information. *Glenmede Trust Co.*, 56 F.3d at 484. For example, Harvard asks this Court to seal 27 exhibits and redact 14 more because they are "[d]ocuments containing other sensitive information about Harvard, Admissions Office" Mot., Ex. B. Yet Harvard's motion contains only a cursory overview of the documents that might fall into the category. Mot. 16-17. Of these 41 exhibits, only a few are cited in the body of Harvard's motion to seal. The Court and SFFA are left to guess at why sealing the remaining documents is appropriate. Since "broad allegations of harm" are an insufficient basis for sealing, Harvard cannot meet its burden. *Glenmede Trust Co.*, 56 F.3d at 483.

Harvard contends that disclosure of certain information will "embroil [third parties] in a public dispute they did not seek, in a way they certainly did not anticipate when they corresponded with Harvard." Mot. 3. But this statement is far from particularized and would justify sealing nearly all third-party communications. That is not the law. *Bradford & Bigelow*, 109 F. Supp. 3d at 448-449. Harvard also claims that revealing alumni-interviewer communications would "have a chilling effect that would be detrimental to Harvard's admissions process, which relies on the candid assessment of applicants by alumni interviewers each year." Mot. 11. As an initial matter, SFFA is not seeking public access to the official alumni-interview evaluations of individual students—where those "candid assessments" are most likely to occur. Instead, the correspondence at issue involves *claims of discrimination* or *acts of discrimination* that Harvard ignored. *See* SFFA SMF ¶¶ 325-328; 337-339. In any event, Harvard offers no evidence beyond the conclusory assertion of a single admissions office

7

employee. Worth Decl. ¶ 17. Courts do not seal documents on the basis of "naked conclusory statement[s]." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1180 (citation omitted).

Even if this Court were to find that third-party privacy interests do require some confidentiality, targeted redactions—not filing the entire document under seal—would be the appropriate remedy. *See Kravetz*, 706 F.3d at 62; *see* Mot., Ex. B. Because "continued sealing of the documents may be justified ... only if the sealing order is narrowly tailored," *Lugosch*, 435 F.3d at 124, the Court should at most order the redaction of names or identifying information of third parties.

### 2. Harvard's Admissions Process Is Not a Trade Secret or Confidential Business Information.

Harvard broadly seeks to seal all documents it deems "commercially sensitive." Mot. 13. Harvard takes an expansive view of commercial sensitivity, claiming its interests include: (1) preventing applicants from gaining an unfair advantage, (2) preventing college counselors from using the information to help students, and (3) preventing other universities from using the information "to shape their recruiting messages to potential applicants." *Id.* On these bases, Harvard seeks to seal the contents of all of its admissions training materials, aggregate data and reports it produced in this case, internal communications, details about Harvard's recruiting efforts, and more. *Id.* at 13-17.

Harvard's argument fails. To qualify for protection under the common law and the First Amendment, the information must be akin to a trade secret. "'Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records .... Indeed, common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know. In such cases, a court should not seal records unless public access would reveal legitimate trade secrets, a recognized exception to the right of public access to judicial records.'" *In re Gitto Global Corp.*, 2005 WL 1027348, at *10 (D. Mass. May 2, 2005) (quoting *Brown & Williamson Tobacco Co.*, 710 F.2d at 1179-80). "[D]ocuments do not contain trade secrets merely because they are

confidential." *Littlejohn v. Bic Corp.*, 851 F.2d 673, 685 (3d Cir. 1988). "A trade secret," under the Restatement, "consist[s] of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Harvard Apparatus, Inc. v. Cowen*, 130 F. Supp. 2d 161, 174 (D. Mass. 2001) (citations omitted). Many courts apply this definition when considering requests for impoundment, *see, e.g., Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013), and it is the definition under Massachusetts law, *see Take It Away, Inc. v. Home Depot, Inc.*, 374 F. App'x 47, 50 (1st Cir. 2010).

Harvard cannot show that its admissions process is akin to a trade secret. There is nothing special about the factors Harvard claims to use in making admissions decisions. There is no unique element; no special formula. Indeed, Harvard openly proclaims that "[t]here is no formula for gaining admission to Harvard." *What Admissions Criteria Do You Use*, Harvard College, https://bit.ly/2lGCEk7.

True, Harvard may not want others to know how it rates and assesses applicants. But that does not make such information proprietary. If it did, the record in most Title VII cases would need to be sealed. Every employer has slightly different criteria for hiring and promotion. If those variations were proprietary, then the federal courts would be brimming with impounded documents. But SFFA has been unable to locate any case in which this kind of decisional criteria—admissions, hiring, promotion, tenure, and the like—has been sealed as a trade secret. Indeed, none of this information was sealed in analogous cases. *See, e.g., Gratz v. Bollinger*, 539 U.S. 244, 255-57 (2003); *Grutter*, 539 U.S. at 315-16; *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 305-07 (2013). Harvard even submitted a copy of its admissions plan in *Regents of University of California v. Bakke*, 438 U.S. 265, 321 (1978) (Powell, J.).

But even if the Court deems "confidential business information"—as opposed to trade secrets—eligible for impoundment, Harvard's argument still fails. "[I]mplicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public." *Salomon Smith Barney, Inc. v. HBO & Co.*, 2001 WL

9

225040, at *3 (S.D.N.Y. Mar. 7, 2001). Harvard cannot meet this test. Harvard, of course, is a nonprofit—not a business—and thus does not speak of its admissions process in commercial terms. Regardless, Harvard appears concerned that *applicants* will learn more about its admissions system. Mot. 13. But "confidential business information" is impounded to prevent *competitive* harm. *See Nixon*, 435 U.S. at 598; *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1993); *Apple Inc.*, 727 F.3d at 1221. Applicants do not compete with Harvard—they compete with each other. The same is true of college admissions consultants.[4] Even other universities do not compete with Harvard at the admissions stage (some compete for *admitted* students, but not in admitting students).

In any event, Harvard has not kept information about its admissions process confidential. Far from it. All of the key details about Harvard's admissions system have previously been made public. Much of it was disclosed in the Office of Civil Rights' 1990 report on Harvard's admissions process. Connolly Ex. 117. Further, the information has been repeatedly disclosed through the press (often by Harvard itself). *See, e.g.*, Stephen M. Marks, *Stairway to Harvard*, Harvard Crimson (July 7, 2006); William R. Fitzsimmons, *Guidance Office: Answers from Harvard's Dean, Part 1*, N.Y. Times (Sept. 10, 2009), https://nyti.ms/2tSdMtI (detailing Harvard's admissions process in a four-part Q&A). Obviously, it is not "confidential business information" if Harvard has disclosed the substance of it. *See, e.g., Sam's Riverside, Inc. v. Intercon Sol'ns, Inc.*, 790 F. Supp. 2d 965, 971 n.2 (S.D. Iowa 2011). Nor is it commercially sensitive if Harvard is willing to discuss it in the press when it suits its interests. Seeking impoundment here is about impeding public scrutiny—not about protecting against unfair competition.[5]

---

[4] In fact, many Harvard admissions officers go on to serve as admissions consultants. *See, e.g.*, Rebecca Besthoff, College Coach, https://bit.ly/2KgL00y; Chuck Hughes, Road to College, https://bit.ly/2MtrYRf. If admissions consultants' insider knowledge actually resulted in competitive harm, one would expect Harvard to prevent its former employees from profiting in this way. Harvard's failure to produce any evidence that it does so undermines its argument.

[5] Harvard also disclosed considerable information about its admissions process and recruiting efforts in its Statement of Material Facts, yet demands that SFFA redact similar information. *Compare* Harvard's SMF ¶¶ 45-60 (discussing Harvard's applicant scoring system) *with* SFFA's SMF ¶¶ 80-88 (requiring SFFA to redact similar information).

### C.     The Public's Interest in Access to the Summary-Judgment Records Outweighs Any Marginal Interest in Confidentiality Harvard Might Possess.

Even if Harvard could demonstrate *some* interest in impounding documents, that is not the end of the inquiry. The issue is "whether the need for secrecy outweighs the presumption of access that normally attaches to such documents." *Leucadia, Inc.*, 998 F.2d at 166. The Court "must carefully balance the competing interests that are at stake in the particular case." *Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*, 863 F. Supp. 2d 122, 123 (D. Mass. 2012) (citation omitted). And it must consider "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119.

Harvard asks this Court to seal information going to the heart of this case. The core issue is whether Harvard discriminates against Asian Americans in violation of Title VI. And the evidence Harvard asks this Court to impound bears directly on such discrimination. For example, Harvard seeks to seal racially-tinged communications between the alumni interviewers and the admissions office. Connolly Ex. 76 ("██████████████████████████████████████"); *id.* Ex. 136 ("██████████████████████████████████████████████ ████████████████████████████████). Additionally, Harvard wants to keep secret its use of ███████████████ in making admissions decisions. *See, e.g.*, SFFA's SMF ¶¶ 230-259 (evidence of █████████); Connolly Exs. 33, 36, 40-47 ("one-pagers" █████████████████ ███████████████████████████████). Harvard likewise asks this Court to seal its use of █████████████████████████████ in recruiting.  SFFA's SMF ¶¶ 190-193; Connolly Exs. 58, 133. Given the centrality of these documents to this case, "the need for secrecy" does not "outweigh[] the presumption of access that normally attaches to such documents." *Leucadia, Inc.*, 998 F.2d at 166.

## II.     Harvard Cannot Justify Impoundment on a Document-by-Document Basis.

The thrust of Harvard's argument appears to be that because it has allowed *some* documents to be publicly filed, it can simply assert generalized privacy or confidentiality concerns to justify sealing

11

more than a hundred other documents and dozens of pages of key deposition testimony. *See* Mot. 2, 6-7. Harvard's deliberate effort to avoid discussion of almost all the specific documents at issue is alone grounds to deny its motion in its entirety. The law requires a proponent of sealing to justify its motion on a document-by-document basis, and failure to do so amounts to forfeiture. *See Bradford & Bigelow*, 109 F. Supp.3d at 447 ("Because plaintiff has not done that here, its motion is denied.").[6] An examination of these documents individually makes plain that, with very few exceptions to which SFFA has agreed, the vast majority of documents identified by Harvard do not belong under seal.

A.      **Evidence Regarding Harvard's Use of "One-Pagers"**

Harvard asks this Court to seal *all discussion* of the way it uses "one-pagers" to racially balance its class of admitted students. "One-pagers" are documents that compare admissions statistics for the current year to similar statistics from the prior year, including applicants and admits by gender, anticipated major, legacy status, race, and more. *See, e.g.*, Ex. 48. One-pagers are used by admissions personnel to see how the tentatively admitted class compares to the prior year's admitted class. Harvard argues that these exhibits should be sealed because they would otherwise "provide the public with a manipulable set of data" and might "motivat[e] applicants to, for example, falsely represent their intended concentration," and they would "be of significant interest to Harvard's competitors, who will inevitably attempt to leverage it for their advantage." Mot. 15-16.

This argument is highly misleading. Harvard is not seeking to simply seal the numbers on the one-pagers; it seeks to seal *all discussion*, including deposition testimony, about how these documents are used. *See* SJ Memo 36-37; SMF ¶¶ 130-135, 240-242; Connolly Ex. 9, at 311-312, 314-315

---

[6] Harvard's reference to redactions in SFFA's opposition to Harvard's motion to dismiss (filed more than a year ago) is both misleading and irrelevant. It is misleading because many of the redactions were necessary to protect the identity of its members, former and future applicants to Harvard. *See* Doc. 204. It is irrelevant because the Court has an independent duty at this stage of the case to scrutinize a motion to seal on a document-by-document basis. Indeed, SFFA informed Harvard before the summary judgment filings that it could only redact from SFFA's documents that information that would permit the identification of the standing members.

(Fitzsimmons Deposition); Ex. 16 at 194-197; 199-201 (McGrath Deposition). But Harvard offers no basis for sealing any of this testimony, and none of the deposition excerpts disclose the specific numbers on any particular one-pager or any data that other universities could leverage to their advantage. Moreover, the use of very similar "daily reports" was front-and-center in *Grutter*. 539 U.S. at 318; *id.* at 390-392 (Kennedy, J., dissenting). Under Harvard's view, this discussion—key evidence for one of SFFA's core claims—will be redacted from the decisions of this Court and appellate courts. Harvard's argument is thus mere pretext for hiding inculpatory evidence from the public.

Nor can Harvard justify sealing the 24 "one-pager" exhibits themselves. Connolly Exs. 33, 36, 40-48, 59, 68, 70, 79, 80, 81, 89, 90, 97, 100, 101, 103, 223; *see also* SFFA SMF ¶¶ 131, 132 & 240; SFFA SJ Memo 37. Again, similar "daily reports" in *Grutter* were filed publicly and discussed extensively in the court opinions. *Grutter*, 539 U.S. at 318. Harvard's vague assertion that iterative aggregate data from five years ago is "granular" and could somehow be "manipulated" to a competitive disadvantage is speculative and unsupported by evidence (especially since Harvard routinely shares the end results of this process—including the concentrations of those admitted—on its own website). *See, e.g.,* Harvard College, *Harvard College admits 2,056 to Class of '21*, https://bit.ly/2yTg8Op (Mar. 30, 2017). Even if this argument had merit—which it does not—it would support only redaction of the concentration numbers. All other categories of information reflected in the sheets are things an individual cannot readily change—race, gender, legacy status, etc.

**B.    Harvard's Use of** ███████████

SFFA's motion for summary judgment shows that Harvard uses ███████████ to achieve racial balance. Harvard asks this Court to seal *all* evidence concerning this process—even though it is no secret that Harvard has a limited number of slots, that it reviews applications by dockets, that it generally must set targets based on yield rates, or that it must manage the admission totals at the end through its lopping process. *See* SFFA SMF ¶¶ 64-137; Connolly Ex. 117. Perhaps most egregiously,

Harvard asks the Court to seal all portions of SFFA's pleadings and the underlying deposition testimony that explain how Harvard uses ███████ in admissions. *See, e.g.*, SFFA SMF ¶¶ 168-171, 229-235, 240-243; SJ Memo 35-38; Connolly Ex. 16 at 199; *id.* Ex. 9 at 332. Harvard also demands the impoundment of related exhibits. *See, e.g.*, Connolly Exs. 39, 69 (███████████).

Harvard's basis for sealing all discussion about ███████ is that the documents "contain[] other sensitive information about Harvard, Admissions Office." Mot. Exs. B, C.[7] Again, these vague assertions—unsupported by *any* explanation of harm—cannot overcome the public's right to see evidence of racial discrimination in a civil rights trial. *See, e.g., Floyd*, 739 F. Supp. 2d at 381.

### C.  Communications Probative of Discrimination Against Asian Americans

Harvard asks this Court to seal numerous internal communications probative of whether Harvard discriminates against Asian Americans. Connolly Exs. 73, 76, 124, 126, 127, 129-132, 136, 137, 163, 225, and 227. Among the key documents at issue are:

- **Ex. 136:** Director McGrath forwards ███████████

This email is no doubt embarrassing to Harvard's Director of Admissions, but it identifies no applicants, discloses no trade secrets, and gives no applicants an unfair advantage in the admissions process. Harvard's unsupported assertion that this document must be sealed from view is frivolous. *See Kamakana*, 447 F.3d at 1179 ("embarrassment .... will not, without more, compel the court to seal its records"). Utah's Attorney General also supports unsealing this document. *See* Doc. 423.

- **Exs. 163 & 227:** This is an email conversation in which Harvard's Director of the Office of Institutional Research ███████████ Harvard public relations official ███████

This employee-to-employee communication is both incriminating and embarrassing to Harvard, but in no way implicates even the highly speculative harms that Harvard has asserted.

---

[7] Harvard says that paragraphs 231-233 of SFFA's Statement of Material Facts must be redacted because they contain "internal admissions data." Mot., Ex. C. Yet Harvard's discussion of internal admissions data never mentions these targeting documents. Mot. 15-16. Harvard thus does not explain what harm it might suffer from disclosure, and even if it did, that harm is outweighed by the importance of these documents to SFFA's racial balancing claims.

- **Ex. 129:** This email between admissions officers discusses ███████████████ ████████████████████████████████████████ Although Harvard says its sealing requests are "carefully calibrated to protect only correspondence from *non-parties* who had a legitimate expectation of privacy in what they sent," Mot. 11 (emphasis added), this email was sent between admissions officers and ███████████████████████████████. At most, ████████████████ ███████████; Harvard's attempt to seal it in whole is frivolous.

- **Exs. 73 & 124:** These emails contain discussion among a group of alumni interviewers that was forwarded to Dean Fitzsimmons, along with Fitzsimmons' reply. ██████████ ████████████████████████████████████████████████████████ ████████████████████████████ There is no basis to seal this highly relevant document.

- **Ex. 137:** In this email, Harvard's Director of Admissions claims that Harvard ████████ ████████████████████████████████████████████████████████ ███████████ Since no other aspect of the document identifies the applicant—and because it is probative of the way in which race is used in admissions—the document should be unsealed.

Harvard claims that these documents should remain sealed because they implicate the privacy rights of alumni interviewers and applicants. Mot., Exs. B & C. But SFFA has agreed to redact any information that might identify an applicant, and alumni interviewers are an integral part of Harvard's admissions process. Harvard does not carry its burden of showing that harm will result if their names are made public. Even if it could, the correct response would be to redact alumni interviewers' names, not to seal entire documents.[8] Harvard declined SFFA's provisional offer to do that before filing, which underscores that its stance is designed to avoid public disclosure of embarrassing documents.

**C.    Aggregate Admissions Data and Other Admissions Office Reports**

Harvard seeks to seal other documents that contain admissions data of varying types, including (1) demographic statistics, Connolly Exs. 32 & 139; Ellsworth Ex. 62; (2) lop list information, Exs. 96, 146, 147 & 152; (3) simple aggregate descriptive information about the data Harvard produced in

---

[8] Harvard also claims that similar correspondence from alumni interviewers and others must be sealed in whole, even though it permitted SFFA to publicly quote selections from those emails. *See, e.g.,* Connolly Exs. 130, 131, 132. This makes no sense, and further underscores how limited redaction at best would address all of Harvard's purported concerns.

this matter, Arcidiacono Decl. & Exs. A-B, and (4) test score data, Connolly Exs. 205 & 206. Harvard's motion does not explain why these first three types of documents need to be sealed, other than placing them under the "Documents containing other sensitive information about Harvard, Admissions Office" heading. Mot. Ex. B.[9] This is a plainly insufficient basis to seal aggregate data. Harvard claims the fourth category (test score data) is "internal admissions data," *id.*, but applicants and admissions consultants cannot manipulate test scores. Nor is it a secret that test scores play a role in admission.

Moreover, these documents are crucial to the public's understanding of the case. The data provide an overview of the demographics of applicants and admitted students, essential to understanding the breadth of Harvard's discrimination. The test score data is important for the same reason. And since SFFA alleges that Harvard engages in racial balancing during its lopping process, these statistics are vital to the public's evaluation of the evidence. Harvard has utterly failed to explain how aggregate data about its applicant and admit pool will compromise its ability to recruit top-flight students or cause competitive harm.[10] There is no basis for sealing.

### D.   Other Relevant Emails, Communications, Drafts, and Reports

Harvard seeks to maintain under seal internal communications between Harvard officials, several university reports, drafts of university reports, emails with admissions consultants and counselors, and emails involving other individuals. Connolly Exs. 38, 51, 55, 61, 66, 71, 75, 84, 99, 104, 119, 134, 144, 151, 158, 184, 189, 192, 202, 226; Ellsworth Exs. 43, 63, 65. There is no basis for sealing any of these documents, except for limited redactions to protect individual applicant's privacy Most of Harvard's proposed redactions are frivolous at best. Consider, for example:

---

[9] Harvard also places the Arcidiacono Declaration under the "internal admissions data" heading and his Exhibit A under the "internal admission data," "training materials, and "information about individual applicants" headings. Mot., Ex. B. But Harvard provides no explanation for why it has done so or why sealing is appropriate on any of these bases.

[10] Indeed, this type of information is given by Harvard to other schools ███████████████████
████████████████████████████████████████████████████████████████████████████

- **Ex. 189:** This is a March draft of Harvard's Report of the Committee to Study Race Neutral Alternatives. It is almost identical to the final report, which is filed on the public record. *Compare* Connolly Ex. 190 (final report) *with* Connolly Ex. 189 (draft report). Neither privacy interests nor competitive harm possibly require sealing the March draft.

- **Ex. 202:** This is an email from the Office of Institutional Research to the admissions office, ████████████████████████████████████████ It includes no personal information and, indeed, provides no information that cannot be gleaned from the Common Application, Universal Application, and expert reports in this case.

- **Ex. 144:** This is an email from ████████████████████████████████ ████ It contains no personal information and no information that might give any party or organization a competitive advantage. The redaction is baseless.

These examples reflect Harvard's cavalier approach to sealing documents and underscore its attempt to hide numerous documents merely by asserting generalized interests and by avoiding its legal obligation to engage in a document-by-document analysis of why this Court should seal documents. This Court should deny Harvard's request to seal all documents in this category, except to the limited extent redactions are necessary to safeguard applicant's identifying information.

## E.    Dean's Interest List

The Dean's Interest List identifies applicants who have been brought to Dean Fitzsimmons' attention, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████. Harvard required SFFA to redact all information describing the use of the Dean's Interest List in its summary judgment filings and continues to insist that much of this information must remain under seal. This includes paragraphs 295-300 of SFFA's Statement of Material Facts, Connolly Exs. 74 and 224, and portions of the Banks, Donahue, and Fitzsimmons depositions, among others.

The Dean's List is a key point of contention among the experts in this case and highly relevant to the availability of race-neutral alternatives. Harvard's motion to seal offers no specific arguments for why this information should be filed under seal. And indeed, its request is baseless. For example:

17



- **Ex. 74:** ███████████████████████████ It contains no information that could be used to identify any applicant. Nor does it, in its heavily redacted state, reveal any information that would harm Harvard's competitive standing.

- **Ex. 224:** This is an email between Dean Fitzsimmons and ███████████ ████████████████████████ Harvard asks this Court to seal the exhibit because it purportedly contains information about an individual applicant. Mot., Ex. B. But SFFA agreed to redact ████████████████████████████████████. Harvard rejected this proposal.

Harvard's embarrassment about ██████████████████████ does not justify sealing.

## F.    Admissions Office Training Materials

Harvard asks this Court to seal all of its admissions training materials. Mot. 13-15. These materials include Harvard's "reading procedures" (Connolly Ex. 29; Ellsworth Exs. 56-57), a "casebook," (Ellsworth Ex. 52), and a "casebook discussion guide" (Ellsworth Ex. 53), as well as quotations from these documents in expert reports. Harvard argues that disclosure would cause competitive injury by advantaging applicants, admissions consultants, and other universities. Mot. 13-15. Harvard's assertions of harm are conclusory and should be rejected. Moreover, much of this information has already been disclosed, either by the Office of Civil Rights, *see* Connolly Ex. 117 at 6-19, or by Harvard itself, *see* Doc. 388 at 10-11; Harvard SMF ¶¶ 23-81. At a minimum, the excerpts from these documents (which both parties referred to in their competing motions) should be unsealed.

Harvard also asks this Court to seal other admissions office materials. Connolly Exs. 28 (scoring guidelines for staff interviews), 93 (admissions office notes on a variety of subjects), and 125 (a presentation on how to consider race in the admissions process). Harvard again utterly fails to explain why these three particular documents should be sealed. That should be the end of the matter. Indeed, Harvard's attempt to seal Ex. 125 underscores its disregard for the rights of the public and its burden; the document specifically addresses ██████████████████████. That is the core issue in this case, and the public's right of access it at its zenith. *See Leucadia, Inc.*, 998 F.2d at 166.

**G.** 

Connolly Exs. 58, 113; SFFA SMF ¶¶ 189-193; SFFA MSJ 34. Harvard asks this Court to seal the fact

that it ███████████████████, Mot., Ex. B., but offers no explanation for why this

particular information must remain private. Thus, Harvard forfeits the argument. In any event, it is

unclear how other universities could use this information to gain a competitive edge over Harvard. At

a minimum, the Court should allow disclosure of SFFA's observation in its motion for summary

judgment of the fact that Harvard █████████████████████—a key

piece of evidence in this case about Harvard's use of race in the admissions process.

**H.   Admissions Officers' Names**

Incredibly, Harvard wants to seal the names of all "individual Harvard admissions officers

outside of senior leadership." Mot., Ex. C. Yet Harvard's motion presents *no argument* to support this

position, and indeed the names of its admissions officers are freely disclosed on Harvard's website

and in its own publications. Harvard's position is indefensible. *See In re Providence Journal Co.*, 293 F.3d

at 10. Indeed, Harvard *itself* disclosed many of the names it demanded SFFA seal in its own filing. *See*

Ellsworth Decl. ¶¶ 3, 4, 14, 16-18. This request is patently frivolous and should be denied.

**I.   Deposition Testimony**

In the last paragraph of its motion to seal, Harvard asks this Court to seal extensive deposition

testimony filed in support of SFFA's motion for summary judgment. Mot. 18. Bizarrely, Harvard's

motion does not inform the Court (1) what depositions it is asking the Court to seal, (2) the specific

pages of deposition testimony Harvard wants the Court to seal, and (3) the basis for each of its sealing

requests. This is forfeiture. *See Bradford & Bigelow*, 109 F. Supp. 3d at 447.[11] Even ignoring forfeiture, Harvard's reasoning is conclusory. It asserts—without *any* additional explanation—that all of the testimony it wants sealed is appropriate to "protect applicant privacy, third party privacy, or to protect from disclosure detailed non-public facts about the admissions process that, if disclosed, could harm Harvard for all the reasons discussed above." Mot. 18. This falls well short of Harvard's burden to provide a document-by-document "factual demonstration of potential harm." *Anderson*, 805 F.2d at 7.

### J.    Documents That Could Identify Applicants Should Remain Under Seal.

SFFA assents to the sealing and redaction of the materials Harvard identified in its Exhibit A. These documents reveal personally identifiable information about applicants. Indeed, SFFA agreed before it filed for summary judgment that the dockets and summary sheets should remain under seal, and Harvard's purposeful failure to disclose this to the Court in a false attempt to claim that SFFA does not care about applicant privacy is regrettable.[12] Shortly after Harvard filed its Motion to Seal, the parties conferred and agreed to jointly move to unseal four additional exhibits, subject to privacy-related redactions (medical information and the name of an unrelated individual). Connolly Exs. 78, 110, 118, 140. Should this Court unseal most of the documents at issue, SFFA will work expeditiously with Harvard to redact any such information prior to filing the exhibits on the public docket.

### CONCLUSION

For the foregoing reasons, this Court should deny Harvard's motion to seal, with the limited exceptions noted above.

---

[11] Although Harvard sent SFFA an email requesting redactions to roughly 90 pages in a dozen depositions, this is no substitute for a motion to seal filed in court. *Bradford & Bigelow*, 109 F. Supp. 3d at 447. Moreover, Harvard has not provided SFFA with the basis for any of its deposition redactions. It offers only conclusory and general reasons, rather than specific justifications for each excerpt. *See* Mot. 18. This is an insufficient basis for sealing reams of relevant testimony.

[12] Harvard agreed that SFFA could include some quotes from these documents in its expert reports and summary judgment filings. Given that agreement, the Court should also unseal similar quotes in SFFA's SMF ¶¶ 690-698, as well as Appendix C of the Arcidiacono report. SFFA agrees that the names of high schools and class years should be redacted from all of these discussions to ensure that the applicants cannot be identified.

Dated: June 29, 2018                           Respectfully submitted,

                                               /s/ William S. Consovoy

Adam K. Mortara                                William S. Consovoy
BARTLIT BECK HERMAN PALENCHAR & SCOTT          Thomas R. McCarthy
LLP                                            J. Michael Connolly
54 West Hubbard Street, Suite 300              CONSOVOY MCCARTHY PARK PLLC
Chicago, IL 60654                              3033 Wilson Boulevard, Suite 700
312.494.4400                                   Arlington, Virginia 22201
adam.mortara@bartlit-beck.com                  703.243.9423
                                               will@consovoymccarthy.com
John M. Hughes                                 tom@consovoymccarthy.com
BARTLIT BECK HERMAN PALENCHAR & SCOTT          mike@consovoymccarthy.com
LLP
1801 Wewatta Street, Suite 1200                Patrick Strawbridge BBO #678274
Denver, CO 80202                               CONSOVOY MCCARTHY PARK PLLC
303.592.3100                                   Ten Post Office Square
john.hughes@bartlit-beck.com                   8th Floor South PMB #706
                                               Boston, MA 02109
                                               617.227.0548
Paul M. Sanford BBO #566318                    patrick@consovoymccarthy.com
BURNS & LEVINSON LLP
One Citizens Plaza, Suite 1100 Providence,
RI 02903                                       Michael H. Park
617.345.3000                                   CONSOVOY MCCARTHY PARK PLLC
psanford@burnslev.com                          745 Fifth Avenue
                                               Suite 500
                                               New York, NY 10151
                                               212.247.8006
                                               park@consovoymccarthy.com

*Attorneys for Plaintiff Students for Fair Admissions, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ William S. Consovoy
William S. Consovoy