# Exhibit 8

HOME / THE LAWSUIT /

# Key Points



TRIAL EXHIBIT

P467

SFFA v. Harvard

## The law of the land, supported broadly

==Harvard's lawful admissions policies consider many factors, including race, to evaluate each applicant as a whole person== with the goal of seeking excellence, expanding opportunity, and bringing together profoundly different students to live with and learn from one another. The Supreme Court has consistently recognized that a class that is diverse on multiple dimensions, including on race, transforms the educational experience of students from every background and prepares graduates for an increasingly pluralistic world, and that an applicant's race can be considered as one of an array of factors in assessing the entirety of a student's application. There is broad support for those goals. In a recent Pew survey, 71% of Americans said efforts to embrace diverse student bodies were 'a good thing'. And two-thirds of Asian-Americans in a recent Gallup poll indicated support for consideration of race in admissions.

## A strong commitment to diversity

Harvard College directs extraordinary resources and staff to recruiting and admitting a student body that is diverse and high achieving, for example, investing deeply in financial aid to allow every admitted student to attend regardless of ability to pay.

## An extraordinary applicant pool

The large majority of the 40,000+ applicants to Harvard College are academically qualified, requiring the College to consider more than grades and test scores. In a recent admissions cycle (in which there are fewer than 2,000 available slots): more than 8,000 domestic applicants had perfect GPAs; over 3,400 applicants had perfect SAT math scores; and over 2,700 applicants had perfect SAT verbal scores.

## Increase in Asian-Americans

The percentage of Asian-Americans in Harvard College's admitted classes has grown significantly (by 27%) since 2010, and Asian-Americans comprise nearly 23% of the 2022 admitted class.

## Expert analysis supports Harvard

Professor David Card, a nationally recognized expert and economics professor at the University of California at Berkeley, comprehensively **analyzed** Harvard

College's admissions database and concluded there was no discrimination against Asian-Americans.

## One person, one vote

Harvard admissions officers evaluate each applicant individually and assign ratings on a variety of metrics, such as academic qualifications, personal attributes, extracurricular activities, and athletic activities based on a whole person review. Admissions decisions are made by a simple majority vote, and each member of Harvard's diverse 40-person admissions committee has one vote.

## Race-neutral means less diverse

After studying more than a dozen race-neutral alternatives, a Harvard committee found that none of these practices "could promote Harvard's diversity-related educational objectives as well as Harvard's ... admissions program while also maintaining the standards of excellence that Harvard seeks in its student body."

## Office of Institutional Research documents: A preliminary and incomplete analysis

The OIR documents represent a preliminary and incomplete analysis OIR was conducting without the benefit of the full admissions database or a full understanding of the admissions process. The OIR documents themselves directly acknowledge various missing data and aspects of the admissions process that are not taken into account, and the OIR staff have confirmed that the work was preliminary and incomplete. This work was not part of any "internal investigation," and none of the documents cited in the summary judgment papers was created at the request of Harvard's Office of the General Counsel. Again, SFFA attempts to distort and mislead in its suggestions that the analysis showed discrimination or was somehow improperly stopped. As Dr. Card's analysis shows, when all the data and information are included and analyzed, no evidence of discrimination exists.

## Personal rating

The personal rating reflects a wide range of valuable information in the application, such as an applicant's personal essays, responses to short answer questions, recommendations from teachers and guidance counselors, alumni interview reports, staff interviews, and any additional letters or information provided by the applicant. Harvard uses this information to understand the applicant's full life story, for example, where the student grew up, what opportunities or challenges they faced in their families, communities, and secondary school, and what impact they might have both here at Harvard and after they graduate, as citizens and citizen-leaders of our society.

Alumni interviewer and admissions officer personal ratings, although similar in name, vary widely because they are based on different information. Thousands of Harvard alumni perform an extremely valuable service as volunteers interviewing applicants to Harvard College from their communities. The alumni interviewer personal rating reflects what the interviewer has learned about the applicant during the interview, while the admissions officer rating considers the full range of information in the application (listed above). Any alumni interviewer also sees only a tiny percentage of the applicants in the pool. They evaluate these applicants in comparison to those few other applicants they have interviewed, while the admissions committee has before it a much fuller range of the talented applicants Harvard is fortunate enough to attract.

## A faulty statistical model

Mr. Blum's case hinges on a statistical model that deliberately ignores essential factors, such as personal essay or teacher recommendations, and omits entire swaths of the applicant pool (such as recruited athletes or applicants whose parents attended Harvard) to achieve a deliberate and pre-assumed outcome. Months of investigation failed to produce any documentary or testimonial support for SFFA's accusation that Harvard intentionally seeks to limit the number of Asian-Americans or discriminates against them. To the contrary, the evidence forcefully demonstrates that Harvard values the diversity and myriad contributions that Asian-American students—like students of all other backgrounds— bring to its campus, and that Harvard seeks and succeeds in recruiting and enrolling exceptional Asian-American students as well as students of all other backgrounds.

## An obligation to protect applicant privacy

Harvard, like every college and university across this country, has an obligation to protect the extensive personal information applicants entrust to us in the admissions process. Sensitive student information has been produced in this litigation, and while names and directly identifying information have been redacted, other information remains that could lead to outside parties identifying specific students. Not one page of 100,000 pages of internal Harvard documents reflects any systematic effort to discriminate against Asian-Americans. In seeking to protect the confidentiality of a small fraction of these 100,000 pages of documents, Harvard also shares the reasonable expectation of our alumni that their private correspondence with the University should remain private, rather than be used by SFFA to drive sensational headlines that seek to distract from the complete lack of actual evidence supporting their claims.