# Exhibit 10

**Highly Confidential - For Attorneys' Eyes Only**                1

```
 1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2                    BOSTON DIVISION

 3
      --------------------------------x
 4
      STUDENTS FOR FAIR ADMISSIONS,
 5    INC.,

 6              Plaintiff,
                                        Civil Action No.
 7    vs.                                1:14-cv-14176

 8    PRESIDENT AND FELLOWS OF HARVARD
      COLLEGE (HARVARD CORPORATION);
 9    and THE HONORABLE AND REVEREND
      THE BOARD OF OVERSEERS,
10
                Defendants.
11
      --------------------------------x
12
          - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY -
13

14              DEPOSITION OF RAKESH KHURANA, a

15         witness called by the Plaintiff, taken

16         pursuant to the applicable provisions of

17         the Federal Rules of Civil Procedure,

18         before James A. Scally, RMR, CRR, a

19         Notary Public in and for the Commonwealth

20         of Massachusetts, at the offices of

21         WilmerHale, 60 State Street, Boston,

22         Massachusetts, on Thursday, April 27,

23         2017, commencing at 9:06 a.m.

24
```

```
 1   had a separate institution for the education of
 2   American Indians at its founding?
 3        A.   Yes.
 4        Q.   And that for the first couple centuries of
 5   the school's existence, it did not educate women?
 6        A.   Yes.
 7        Q.   And that under the presidency of Abbott
 8   Lawrence Lowell, the Harvard administration
 9   restricted the numbers of Jewish students and barred
10   African-American men at the college from residing in
11   freshman dormitories?  Does it --
12        A.   Yes.
13        Q.   -- include that history?
14             What do you know about the history of Jewish
15   discrimination in the Harvard admissions process?
16             MS. ELLSWORTH:  Objection.
17        A.   That Harvard discriminated against people who
18   identified as Jewish.
19        Q.   And what -- what have you read about that?
20             MS. ELLSWORTH:  Objection.
21        A.   Could you ask the question?
22        Q.   What have you read about that?  What is the
23   source of your knowledge of that discrimination?
24             MS. ELLSWORTH:  Objection.
```

```
 1      A.   Scholarship on the subject.
 2      Q.   The book by Jerome Karabel, "The Chosen"?
 3      A.   That would be one example.
 4      Q.   Have you read that book?
 5      A.   Yes.
 6      Q.   Do you have any reason to doubt his
 7   conclusions about the history of what happened with
 8   respect to Jewish discrimination?
 9              MS. ELLSWORTH:  Objection.
10      A.   No.
11      Q.   In fact, he relied on a number of documents
12   from Harvard itself; correct?
13              MS. ELLSWORTH:  Objection.
14      A.   I believe so.
15      Q.   Letters and other documents in the Harvard
16   archives?
17              MS. ELLSWORTH:  Objection.
18      A.   I believe so.
19      Q.   Do you know whether or not -- or do you
20   recall, when you read that book, whether or not at
21   the time that Harvard was restricting the number of
22   Jewish students it was doing so under a holistic
23   admissions process?
24              MS. ELLSWORTH:  Objection.
```

```
 1      A.  Yes.
 2      Q.  In fact, does the book describe the fact that
 3  the holistic admissions process was adopted in part
 4  to permit the school to identify who was Jewish in
 5  the applicant pool?
 6              MS. ELLSWORTH:  Objection.
 7      A.  I believe that's how the book characterizes
 8  the -- one of the reasons for the holistic admissions
 9  process.
10      Q.  Do you have any basis for disputing that
11  characterization?
12              MS. ELLSWORTH:  Objection.
13      A.  Yes.
14      Q.  And what is the basis for your -- for
15  disputing that characterization?
16      A.  That there were other reasons for adopting a
17  holistic admissions process as well.
18      Q.  So I mean do you -- is it your belief that
19  the holistic admissions process had nothing to do
20  with identifying who was Jewish in the applicant
21  pool?
22      A.  No.
23      Q.  You think that was one of the reasons?
24      A.  Yes.
```

```
 1        Q.   You just don't think it was the only reason?
 2        A.   Yes.
 3        Q.   On page 6 of this report, there's a reference
 4   to an argument that Harvard made in the Grutter v.
 5   Bollinger case in a block quote in the middle of the
 6   page.  Do you see that?
 7        A.   Yes.
 8        Q.   And in it, it says, "The educational benefits
 9   of student diversity include the discovery that there
10   is a broad range of viewpoints and experiences within
11   any given minority community - as well as learning
12   that certain imagined differences at times turn out
13   to be only skin deep."
14        A.   May I read this paragraph?
15        Q.   Yeah, please.  (Pause.)
16             Do you see the reference that I just read to
17   the educational benefits of student diversity, about
18   there being a broad range of viewpoints and
19   experiences within any given minority community?
20        A.   Yes.
21        Q.   Okay.  Do you agree with that statement?
22        A.   In general, yes.
23        Q.   And is that one of the educational benefits
24   of diversity that Harvard is attempting to achieve
```

```
 1  COMMONWEALTH OF MASSACHUSETTS                    SUFFOLK, SS.

 2

 3              I, JAMES A. SCALLY, RMR, CRR, a
     Certified Shorthand Reporter and Notary Public duly
 4   commissioned and qualified in and for the
     Commonwealth of Massachusetts, do hereby certify that
 5   there came before me on the 27th day of April, 2017,
     at 9:06 a.m., the person hereinbefore named, RAKESH
 6   KHURANA, who provided satisfactory evidence of
     identification as prescribed by Executive Order 455
 7   (03-13) issued by the Governor of the Commonwealth of
     Massachusetts, was by me duly sworn to testify to the
 8   truth and nothing but the truth of his knowledge
     concerning the matters in controversy in this cause;
 9   that he was thereupon examined upon his oath, and his
     examination reduced to typewriting under my
10   direction; and that this is a true record of the
     testimony given by the witness to the best of my
11   ability.
                 I further certify that I am neither
12   attorney or counsel for, nor related to or employed
     by, any of the parties to the action in which this
13   deposition is taken, and further, that I am not a
     relative or employee of any attorney or counsel
14   employed by the parties hereto or financially
     interested in the action.
15

16
         My Commission Expires:  April 8, 2022
17

18

19
                         _____
20                       James A. Scally, RMR, CRR
                         CSR/Notary Public
21

22

23

24
```