# Exhibit 15

```
 1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
 2                    BOSTON DIVISION

 3
      --------------------------------x
 4
      STUDENTS FOR FAIR ADMISSIONS,
 5    INC.,

 6            Plaintiff,
                                         Civil Action No.
 7    vs.                                1:14-cv-14176

 8    PRESIDENT AND FELLOWS OF HARVARD
      COLLEGE (HARVARD CORPORATION);
 9    and THE HONORABLE AND REVEREND
      THE BOARD OF OVERSEERS,
10
              Defendants.
11
      --------------------------------x
12
          - HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY -
13

14                DEPOSITION OF CATHERINE DREW

15         GILPIN FAUST, a witness called by the

16         Plaintiff, taken pursuant to the

17         applicable provisions of the Federal

18         Rules of Civil Procedure, before James A.

19         Scally, RMR, CRR, a Notary Public in and

20         for the Commonwealth of Massachusetts, at

21         Harvard University, Massachusetts Hall,

22         Cambridge, Massachusetts, on Friday,

23         March 10, 2017, commencing at 8:52 a.m.

24
```

```
 1  dispositive factor in admissions?
 2       A.   It prevents any single characteristic from
 3  being dispositive.
 4       Q.   Do you know --
 5       A.   They are all seen in a broad context.
 6       Q.   Do you know how -- do you know that -- what
 7  do you know about the origin of Harvard's holistic
 8  admissions process?
 9       A.   I know it's been around for a long time.
10       Q.   Are you familiar with the work of Jerome
11  Karabel?
12       A.   Yes.
13       Q.   Are you familiar with his book The Chosen?
14       A.   I am.  I have not read it.  I know of it.
15       Q.   Are you -- are you generally aware that the
16  holistic admissions process was used for a time in
17  the 20th century to discriminate against Jewish
18  applicants?
19            MS. ELLSWORTH:  Objection.  I
20       object to the entire line of
21       questioning.
22            MR. STRAWBRIDGE:  The objection's
23       noted.
24       Q.   Do you know whether that's true?
```

1    A.   I'm a historian.  I would not rely on the
2  interpretation of a single historian unchallenged.  I
3  have not done that historical work myself, and
4  therefore I would not presume to make judgment about
5  its accuracy.
6    Q.   Do you know whether Harvard has ever
7  acknowledged that its holistic admissions process was
8  used to discriminate against Jewish applicants in the
9  early 20th century?
10            MS. ELLSWORTH:  Objection.
11   A.   I do not know.
12   Q.   Okay.  Do you know whether prior Harvard
13  presidents have acknowledged that the use of a
14  holistic admissions process was inappropriate with
15  respect to Jewish applicants during the 20th century?
16            MS. ELLSWORTH:  Objection.
17   A.   I do not know.
18   Q.   Do you agree that it would be inappropriate
19  to use a holistic admissions process to discriminate
20  against Jewish applicants, for example?
21            MS. ELLSWORTH:  Objection.
22   A.   I believe that the holistic admissions
23  process is one that, by looking at the whole student
24  and the variety of dimensions that make up a class,

```
 1   is the best way to give full consideration to
 2   students of all backgrounds.
 3       Q.  Is it possible that a holistic admissions
 4   process could be abused?
 5               MS. ELLSWORTH:  Objection.
 6       A.  You're asking me to comment on abstractions
 7   and hypothetical situations.  I don't live in the
 8   world of hypotheticals.  I live in the world of what
 9   has happened, what is happening.
10       Q.  Well, but you don't know what happened with
11   respect to the holistic admissions process of Jewish
12   applicants in the 20th century?
13               MS. ELLSWORTH:  Objection.
14       A.  I would argue that the entire context in the
15   1920s is so different from our own time, it would be
16   very -- you'd have to be very careful in making
17   direct comparisons between how admissions worked and
18   how Harvard worked and drawing a line of analogy
19   between those two times.  I'd want to dig in -- if I
20   were to make such an argument, I would want to dig
21   deeply into the entire history and operation.  I
22   don't believe that has been done.  And so I don't
23   want to draw conclusions from it.
24       Q.  To your knowledge, Harvard has never dug into
```

```
 1   the history of how Jewish applicants were treated in
 2   the 20th century?
 3       A.  Not to my knowledge.
 4           MS. ELLSWORTH:  Objection.
 5       Q.  I'm sorry.  Can you just repeat your answer?
 6       A.  Not to my knowledge.  I would say not to my
 7   knowledge with the kind of depth and rigor that I
 8   would want to see.
 9       Q.  Do you think Harvard should look into that?
10           MS. ELLSWORTH:  Objection.
11       A.  I'd be perfectly happy to have Harvard look
12   into it.
13       Q.  Has anyone ever asked Harvard to look into
14   that in your time as president?
15       A.  I have -- they have not asked me, to my
16   recollection.
17       Q.  Do you think it's important for Harvard to
18   understand its history and how it treated certain
19   groups?
20       A.  I do think --
21           MS. ELLSWORTH:  Objection.
22       A.  I do think it's important for Harvard to
23   understand its history.
24       Q.  Is that a commitment that should come from
```

```
 1  COMMONWEALTH OF MASSACHUSETTS                    SUFFOLK, SS.

 2

 3              I, JAMES A. SCALLY, RMR, CRR, a
    Certified Shorthand Reporter and Notary Public duly
 4  commissioned and qualified in and for the
    Commonwealth of Massachusetts, do hereby certify that
 5  there came before me on the 10th day of March, 2017,
    at 8:52 a.m., the person hereinbefore named,
 6  CATHERINE DREW GILPIN FAUST, who provided
    satisfactory evidence of identification as prescribed
 7  by Executive Order 455 (03-13) issued by the Governor
    of the Commonwealth of Massachusetts, was by me duly
 8  sworn to testify to the truth and nothing but the
    truth of her knowledge concerning the matters in
 9  controversy in this cause; that she was thereupon
    examined upon her oath, and her examination reduced
10  to typewriting under my direction; and that this is a
    true record of the testimony given by the witness to
11  the best of my ability.
                I further certify that I am neither
12  attorney or counsel for, nor related to or employed
    by, any of the parties to the action in which this
13  deposition is taken, and further, that I am not a
    relative or employee of any attorney or counsel
14  employed by the parties hereto or financially
    interested in the action.
15

16
         My Commission Expires:  April 8, 2022
17

18

19
                         _____
20                       James A. Scally, RMR, CRR
                         CSR/Notary Public
21

22

23

24
```