**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION**

STUDENTS FOR FAIR ADMISSIONS, INC.,

               Plaintiff,

   v.

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE (HARVARD CORPORATION),

               Defendant.

Civil Action No. 1:14-cv-14176-ADB

**<u>HARVARD'S OPPOSITION TO SFFA'S MOTIONS IN LIMINE</u>**

The Court's order denying summary judgment (Dkt. 566) reflects the need for numerous factual disputes to be resolved at trial—including, as relevant here, the dispute between Harvard's and SFFA's statistical experts and disputes concerning a set of documents prepared by individuals within Harvard's Office of Institutional Research ("OIR").  SFFA's motions in limine effectively seek to foreclose the Court's full consideration of those disputes by keeping important evidence out of the record.  The Court should deny SFFA's motions and permit the full airing of evidence that will be necessary for the fair adjudication this case warrants.

## I.   SFFA'S MOTION NO. 1 IS MOOT

In light of the Court's ruling on summary judgment (Dkt. 566), and SFFA's representation that its founder and President, Edward Blum, "has no relevant information to offer at this trial" (Mot. 1), Harvard and SFFA have agreed to remove Mr. Blum from their respective witness lists.  SFFA's first motion in limine, to preclude Harvard from calling Mr. Blum as a witness, is therefore moot.

## II.   SFFA'S MOTION NO. 2, TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING APPLICATION FILES AND THE PERSONAL RATING, SHOULD BE DENIED

One of the principal disagreements between the statistical experts in this case is whether the personal rating assigned by admissions officers reflects bias against Asian-American applicants.  SFFA's expert, Dr. Peter Arcidiacono, attempted to analyze three ratings that applicants receive from admissions officers: the academic, extracurricular, and personal ratings.  His regression models found that Asian-American ethnicity was associated with *stronger* academic and extracurricular ratings, but slightly weaker personal ratings, than the data in the model would otherwise suggest.  Dr. Arcidiacono then hypothesized—without any basis for the obvious inconsistency—that factors outside the data explained the estimated *positive* effect of Asian-American ethnicity on the academic and extracurricular ratings, but not the estimated

negative effect on the personal rating.  Dr. Card points out the inconsistency in Dr. Arcidiacono's interpretations of the three models and argues that, in fact, factors outside the data explain all three effects.  As the Court recognized in denying summary judgment, the resolution of that dispute (and many others) between Dr. Card and Dr. Arcidiacono will be a key issue for trial.

SFFA's second motion in limine attempts to pretermit the Court's consideration of both experts' views, by seeking to exclude Dr. Card's opinion that factors outside the data—as opposed to bias against Asian-American applicants—explain Dr. Arcidiacono's regression results for the personal rating.  SFFA tries to justify that extraordinary request on the premise that Dr. Card's opinion relies on "portions of applications Harvard refused to produce," such as applicants' essays and recommendation letters.  That is incorrect.  SFFA's motion fails because Dr. Card's opinion relies *not* on information in undisclosed application files—which Dr. Card of course never reviewed—but on documents, testimony, and data to which SFFA had equal access.

1.     SFFA's motion starts with an attempt to relitigate the Court's discovery rulings. During discovery, SFFA sought production of 1,600 application files for the classes of 2018 and 2019.  Dkt. 284; Dkt. 285.[1]  The Court concluded that "[r]equiring Harvard to redact and produce 1600 files at [that] time [was] disproportionate to the demonstrated need."  Dkt. 326 at 2.  The Court instead directed Harvard to produce 80 application files of its own choosing from the class of 2018 cycle, another 80 from the class of 2019 cycle, and 160 files chosen by SFFA from each cycle—a total of 480 files.  *Id.*   But although it denied SFFA's request for additional files, the Court invited SFFA to "renew [its] request once it … reviewed the application files"

---

[1]     SFFA originally moved to compel production of 6,400 application files.  Dkt. 64; Dkt. 65.  The Court denied SFFA's motion as moot with leave to renew on October 30, 2015 (Dkt. 113), and SFFA filed a renewed motion seeking production of 1,600 application files on April 10, 2017 (Dkt. 284; Dkt. 285).

that Harvard produced.  *Id.*  SFFA never accepted that invitation.  If SFFA thought it needed additional files, it should have availed itself of the opportunity to request them, rather than using its dissatisfaction with the Court's discovery rulings as an excuse for an eleventh-hour attempt to exclude expert testimony on a key issue in this case.

2.      SFFA's attempt to parlay its failure to request additional discovery into a basis for excluding Dr. Card's opinions fails because, despite SFFA's accusations, neither Harvard nor Dr. Card is relying on unproduced application files.  Contrary to SFFA's argument (Mot. 5), Dr. Card is *not* relying on a "positive inference" from unproduced application files "to assume" that information in those files explains applicants' personal ratings.  Rather, Dr. Card's opinion on this issue is that Dr. Arcidiacono's model of the personal rating cannot support an inference that the personal rating reflects bias against Asian-American applicants—in other words, that Dr. Arcidiacono's results are instead attributable to factors that cannot be included in a statistical model.  *See* Mot. Ex. 2 (Card Rebuttal) ¶ 7 (Dr. Arcidiacono's model is "not capable of reliably determining whether the personal rating is in fact 'biased'").  That is, of course, the same conclusion Dr. Arcidiacono reached with respect to his models of the academic and extracurricular ratings.  Dr. Card reached that conclusion for two main reasons, neither of which had anything to do with information in unproduced application files.

*First*, Dr. Card explained that the personal rating reflects a great deal of information that cannot be quantified and thus cannot be included in a statistical model.  *See, e.g.*, Ex. 1 at 271:11-275:11 (Card Dep.).  Dr. Arcidiacono himself agreed that "the personal rating … is difficult to measure directly[.]"  Ex. 2 at 37 (Arcidiacono Report).  Dr. Card reached that conclusion based not on information in undisclosed application files but on sources as available to SFFA as they are to Harvard, including extensive deposition testimony that the personal rating

relies on non-quantifiable information such as essays, the content of recommendation letters (not just the numerical ratings assigned to some of those letters), and written comments from alumni or staff interviews (not just the numerical ratings from those interviews).[2]  *See, e.g.*, Ex. 3 ¶ 147 & n.122 (Card Report); Card Rebuttal ¶ 40 & nn.30-31.[3]

*Second*, Dr. Card corroborated his interpretation of Dr. Arcidiacono's results by analyzing the same data to which SFFA had access.  SFFA asserts (Mot. 3) that "there is no evidence in the record that Asian-American applicants fare more poorly" on factors that inform the personal rating.  But Dr. Card found that, on average across the entire pool of applicants, Asian-American applicants are less strong than White applicants across factors that *are* quantified and that inform the personal rating—which suggests they are also less strong across *unquantifiable* factors that inform the personal rating, and thus that the results of Dr. Arcidiacono's personal rating regression are likely due to those unquantifiable factors.  *See* Card Rebuttal ¶¶ 28-30, 46-50, 52-53.  Dr. Card also observed that Dr. Arcidiacono's own analysis shows that "non-academic variables that are important to the personal rating (like the teacher, guidance counselor, and alumni interview ratings) shift the unexplained gap towards zero."  *Id.* ¶ 51.  He explained that, given the trend established by Dr. Arcidiacono's analysis, "it is likely that more non-academic variables would have the same effect" if it were possible to quantify such variables and thus include them in the statistical model.  *Id.*

---

[2]     *See, e.g.*, Ex. 4 at 164:11-165:2 (McGrath 2015 Dep.); Ex. 5 at 245:18-246:20, 248:6-24 (Fitzsimmons Dep.); Ex. 6 at 359:16-360:9 (McGrath 2017 Dep.); Ex. 7 at 80:3-18 (Banks Dep.); Ex. 8 at 60:14-20 (Walsh Dep.); Ex. 9 at 121:2-6 (Bever Dep.).

[3]     Dr. Card also noted that, according to Dr. Arcidiacono's own model, factors in the data explain almost *twice* as much about the academic rating as about the personal rating—making it "indefensible" for Dr. Arcidiacono to attribute the positive effect of Asian-American ethnicity in his academic rating model, but not the negative effect in his personal rating model, to factors outside the data.  Card Rebuttal ¶¶ 39, 42.

Ignoring all of this, SFFA offers a grossly misleading account of Dr. Card's opinions. For example, SFFA accuses Dr. Card (Mot. 5) of having "admitted he only believes race does not influence the personal score because Harvard's Dean of Admissions assured him it did not." In reality, Dr. Card's extensive review of documents and testimony, as well as the applications that were produced, supports his conclusion that the results of Dr. Arcidiacono's personal rating regression reflected not any actual effect of race but rather the effect of factors that cannot be captured in a statistical model.

3.      SFFA also attempts to argue (Mot. 3-4) that Dr. Card's conclusion was legally "impermissible."  As a threshold matter, SFFA's arguments speak only to the weight that the Court should afford Dr. Card's analysis; they supply no basis to limit the scope of Dr. Card's testimony.  In any event, SFFA misstates the law when it suggests that Dr. Card cannot criticize Dr. Arcidiacono's regression for its inability to account for the key, unquantifiable factors that inform the personal rating.  Far from suggesting that Dr. Card should be precluded from offering his opinion, the Supreme Court's decision in *Bazemore v. Friday*, 478 U.S. 385 (1986), on which SFFA relies, recognized that where a regression does not control for critical factors—as is true of Dr. Arcidiacono's attempt to analyze the personal rating—it may be "so incomplete as to be inadmissible as irrelevant."  *Id.* at 400 n.10; *see also Palmer v. Shultz*, 815 F.2d 84, 101 (D.C. Cir. 1987) ("the relevance of a factor to the selection process" may be "so obvious that the defendants, by merely pointing out its omission, can defeat the inference of discrimination created by the plaintiffs' statistics").  The First Circuit has likewise observed that, "[w]hile a litigant need not include every conceivable independent variable in [a regression] analysis, the major independent variables must be considered, … not only to render the statistical study

probative, but also to save it from being dismissed as irrelevant." *Wessmann v. Gittens*, 160 F.3d 790, 805 n.8 (1st Cir. 1998) (citations omitted).[4]

In short, Dr. Card is not relying on information in application files that the Court determined Harvard was not required to produce, and his opinion appropriately points out crucial defects in Dr. Arcidiacono's analysis that make his conclusions unreliable—defects that are central to the dispute between the experts. SFFA is of course free to cross-examine Dr. Card regarding his opinions at trial, but it has shown no basis to exclude those opinions from the courtroom. SFFA's motion in limine is no more than a thinly veiled attempt to prevent the fundamental weaknesses in its expert's work from being exposed.

## III.   SFFA'S MOTION NO. 3, TO PRECLUDE HARVARD'S FACT WITNESSES FROM TESTIFYING ABOUT THE OIR ANALYSES, SHOULD BE DENIED

SFFA's third motion in limine seeks to preclude Harvard from "elicit[ing] undisclosed expert testimony" regarding documents created by employees in Harvard's Office of Institutional Research ("OIR"). Mot. 6. SFFA mischaracterizes both the record and the law and seeks one-sided relief that would allow it to invoke the OIR documents while stifling Harvard's response. The motion should be denied.

SFFA's motion rests largely on the premise that, "[d]uring his deposition, Dean [Rakesh] Khurana held himself out as having expertise in logit regressions by offering off-the-cuff

---

[4]   *See also Cooper v. Southern Co.*, 390 F.3d 695, 719 (11th Cir. 2004) ("*Bazemore* … did not hold that any statistical report, no matter how many critical variables were missing, should automatically present a jury question, indicating that there are 'some regressions so incomplete as to be inadmissible as irrelevant.'"); *Koger v. Reno*, 98 F.3d 631, 637 (D.C. Cir. 1996) ("Courts have not … understood *Bazemore* to require acceptance of regressions from which clearly major variables have been omitted[.]"); Daniel L. Rubinfeld, *Reference Guide on Multiple Regression*, *in* Federal Judicial Center, *Reference Manual on Scientific Evidence* 303, 314 (3d ed. 2011) ("Failure to include a major explanatory variable that is correlated with the variable of interest in a regression model may cause an included variable to be credited with an effect that actually is caused by the excluded variable.").

criticisms of OIR's" supposed "conclusion."[5]  Mot. 8.  But Dean Khurana was not presenting

himself as an expert witness; he was explaining his actions as a percipient witness.  SFFA's

counsel asked Dean Khurana a series of questions about whether and when he had seen the OIR

analyses, how he had reacted to them, and why—questions that he answered relying on his own

background and experiences.  For example, when Dean Khurana testified that he recalled seeing

OIR tables like those shown to him at his deposition, which he described as "an examination of

… the admittance of students," the following colloquy ensued:

> Q.      …  And what do you remember about this examination?
> …
> A.      Just that I didn't think that this was – analysis was done appropriately.
> Q.      And why didn't you think that?
> A.      There's limitations, a lot of limitations to doing what are called fitted models like this.

Ex. 10 (Khurana Dep.) at 253:13:20.  A few minutes later, that discussion continued:

> Q.      When you say there are a lot of problems with a fit model such as these, what specific problems, if any, do you recall thinking about when you looked at tables like the ones in this report?
> A.      That models like this violate statistical and hypothesis testing.

*Id.* at 256:9-14.  In other words, Dean Khurana commented on the OIR analyses in the context of

answering questions about how he had reacted to them and why.  There is nothing impermissible

about this testimony.

SFFA's summary judgment briefs focused heavily on how Harvard officials,

including Dean Khurana and Dean Fitzsimmons, reacted to the OIR analyses—in Dean

Fitzsimmons's case, in 2013; and in Dean Khurana's case, when he was shown some of

the analyses in 2014 upon assuming the deanship.  *See* Pltf.'s Mem. in Support of its Mot.

---

[5]      In actuality, OIR did not reach any "conclusion" that Harvard was discriminating against Asian-American applicants; nor did OIR even seek to address that question.  *See* SJ Mem. 38; Def.'s Mem. in Opp. to Pltf.'s Mot. for S.J. (Dkt. 435) 19-23; SJ Reply 4-5.

for S.J. (Dkt. 413) 15-18; Pltf.'s Mem. in Opp. to Harvard's Mot. for S.J. (Dkt. 449) 10-11; Pltf.'s Reply Mem. in Support of Mot. for S.J. (Dkt. 510) 11-12; SJ Reply 5.  To the extent SFFA presses a similar narrative at trial, arguing that the reactions somehow show Harvard's intent to discriminate against Asian-American applicants, Harvard's witnesses should be permitted to respond—in answering questions from either SFFA's counsel or Harvard's—just as Dean Khurana did at his deposition: by discussing their personal impressions of the OIR analyses' limitations and how those impressions affected their reactions.

To the extent SFFA is arguing that Harvard's fact witnesses cannot be permitted to discuss scientific or technical concepts in conveying their reactions to the OIR analyses, that is incorrect.  As the First Circuit has explained, "Rule 26 uses the term expert 'to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters.'"  *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003).  "That definition does not encompass a percipient witness who happens to be an expert."  *Id.*  Thus, "a party need not identify a witness as an expert so long as the witness played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events."  *Id.* at 113-114.  That is the capacity in which Dean Khurana and other fact witnesses would testify about their reactions to the OIR analyses.

SFFA's authorities are not to the contrary.  First, SFFA quotes Federal Rule of Evidence 701 as prohibiting fact witnesses from testifying "based on scientific, technical, or other specialized knowledge"—but the rule actually refers to "scientific, technical, or

other specialized knowledge *within the scope of Rule 702*." Fed. R. Evid. 701(c)

(emphasis added). SFFA omits the italicized phrase. As the First Circuit held in *Gomez*,

a fact witness's testimony about events in which he participated is not testimony "within

the scope of Rule 702," even if it reflects the witness's expertise. Second, SFFA cites

*Perez-Perez v. Popular Leasing Rental, Inc.*, 993 F.2d 281 (1st Cir. 1993), which stands

for the basic proposition that expert testimony must be disclosed. But the testimony at

issue in *Perez-Perez* was squarely within the scope of Rule 702; it was based on the

witness's medical expertise and his "review of [defendant]'s medical records" after

litigation began. *Id.* at 286. That is not true here.

      If SFFA wishes to argue that Harvard officials' reactions to the OIR analyses

somehow show Harvard's intent to discriminate against Asian-American applicants, then

Harvard's fact witnesses should be permitted to respond by answering questions—from

either SFFA's counsel or Harvard's—about their personal experiences with the OIR

analyses, including the bases for their reactions. Alternatively, if Harvard is precluded

from eliciting any fact witness testimony regarding the OIR analyses, then the Court

should preclude *both* parties from eliciting testimony regarding the OIR analyses. The

Court should reject SFFA's request to present its side of the story without response.

Respectfully submitted,

/s/ Seth P. Waxman

| | |
|---|---|
| William F. Lee (BBO #291960) | Seth P. Waxman (*pro hac vice*) |
| Felicia H. Ellsworth (BBO #665232) | Paul R.Q. Wolfson (*pro hac vice*) |
| Andrew S. Dulberg (BBO #675405) | Danielle Conley (*pro hac vice*) |
| Elizabeth Mooney (BBO #679522) | Brittany Amadi (*pro hac vice*) |
| Sarah R. Frazier (BBO #681656) | Daniel Winik (*pro hac vice*) |

WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6687
Fax: (617) 526-5000
william.lee@wilmerhale.com
felicia.ellsworth@wilmerhale.com
andrew.dulberg@wilmerhale.com
elizabeth.mooney@wilmerhale.com
sarah.frazier@wilmerhale.com

WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel: (202) 663-6800
Fax: (202) 663-6363
seth.waxman@wilmerhale.com
paul.wolfson@wilmerhale.com
danielle.conley@wilmerhale.com
brittany.amadi@wilmerhale.com
daniel.winik@wilmerhale.com

Debo P. Adegbile (*pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 295-6717
Fax: (212) 230-8888
debo.adegbile@wilmerhale.com

Dated:  October 1, 2018

*Counsel for Defendant President and
Fellows of Harvard College*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Seth P. Waxman
Seth P. Waxman