Exhibit

"PAGE # 01"

"File in CASE 1:14-CU-14176-ADB"

STATE OF SOUTH CAROLINA
COUNTY OF RICHLAND

FILED

COURT OF COMMON PLEAS
5th JUDICIAL CURCUIT

LAWRENCE L. CRAWFORD          07 MAR 13   AM 8:54
           PLAINTIFF
                BARBARA A. SCOTT
                 C.C.C. & G.S.

RESPONSE TO MOTION TO
TO MAKE MORE DEFINITE
AND CRETAIN

AMENDED COMPLAINT

vs.

Mr.&Mrs. Joseph Abram III, and
or Mr.&Mrs. Herbert Lee, and or
Sylvia Lee, and or Mr. Brunson,
and or April Monroe, and or
Michael Lee, and or William
Tetterton, and or Cylena Lee
          RESPONDENT(S)

CASE No. 06-CP-400-0552

FILE INE CASE NO.

09-1500

TO: THE COURT OF COMMON PLEAS,
     THE S.C. ATTORNEY GENERAL,

       PLEASE TAKE NOTICE, that the plaintiff in the above captioned matter, Lawrence L. Crawford, intends to file claim against the above captioned defendants, in pursuant to all relevant sections of The South Carolina Tort Claim Act.

     The Post Office address of the claimant herein presently is:

          LAWRENCE L. CRAWFORD
          #300839 WD-D Rm. 188
          Lieber, P.O. Box 205
          Ridgeville, S.C. 29472

     For the time being the plaintiff is representing himself.

     The time when and the place where such claim arose, and the nature of the claims, are as follows:

     Before the plaintiff address the issues, the plaintiff brings the court's attention to Exhibit No.(1). A duplicate of this letter and 2 copies of a motion for sanctions against the defendants, has been sent to the Richland County Clerk of Court, asking her to file and assign a case number. These sanctions address the issue being levied in this case. Since the defendants by profession and or association connected with the Clerk of Court, the Clerk is impeding, hindering, obstructing, and making every effort to defeat this action and the due course of justice to aid the parties involved. She is also a defendant on the Motion for Sanctions. It has been sent to her under certified No.7002 2410 0006 8102 1107, by Edward Rutland on behalf of the plaintiff to ensure she received it. The sanctions address the issues presently before the court and it's findings will have a crucial bearing on this case.

     Furthermore, there is a Writ of Habeas Corpus pending also

1

addressing these issues levied against the defendants being reviewed in the U.S. District Court, to include the granting of an Ex Parte hearing to address these allegations before the court in case No.0: 06-cv-2457-TLW-BM. This case addresses the legal issues but it does not address the claim of damages that are being requested in the Court Of Common Pleas. Both these cases have a crucial bearing and are essentially material in determining the matters presently before the court. It's findings will serve to prove, once and for all, whether the allegations made by the plaintiff are meritorious or frivolous and vexatious. It will also allow the plaintiff to address these issues without the weight of an onerous conviction in place, giving the plaintiff freedom of movement in obtaining additional evidence to properly address the issues in the court. It will also nullify any concern over there being other available remedies, and or any concern that any ruling on the part of the Court of Common Pleas may serve to invalidate the present conviction. There is also the issue of the statute of limitations. If the case is dismissed, it would automatically place the plaintiff beyond the time frame mandated by the statute of limitations to initiate the action prejudicing the proceedings. Therefore the plaintiff motions pursuant to rule 59(e) and 15(b) that the proceedings be held in abeyance until the conclusion of the 2 aforementioned relevant cases.

Referring back to the issues of the claim. The defendants captioned above, did commit by malicious, criminal action, and or failure to take action by duty, in acts of gross negligence and deliberate indifference, which said acts did result in the plaintiff's false imprisonment for the charge of murder, and or injuries produced therefrom.

All the defendants named above, to include William Tetterton, in malicious, criminal acts of gross negligence and deliberate indifference, conspired with, and or counselled, sand or encouraged, and or aided and abetted Sylvia Lee in the stealing of the plaintiff's assets in the form of his Social Security benefits, in acts of Breach of Trust With Frauduent Intent pursuant to S.C. Code Ann§16-13-230. This occurred from the time of the plaintiff's arrest in January 2000 until April 2003, $1600.00 per month, deposited in the Bank Of Ridgeway in Blythewood S.C., deposited in Sylvia Lee's checking account for the plaintiff and his dependants.

Please take notice of Exhibit No.(9), a portion of the standard contract form for Social Security benefits. This is the type of contract that "ALL" payees are required to "voluntarily" sign (emphasis added). It is clear from the contract when misappropriated, it is a violation of federal law, and state law by Breach of Trust, punishable by fine, imprisonment, or both. It is perspicuous these funds were required to be used solely for the plaintiff and his dependents, yet for approximately 4 years none of them were. Instead Sylvia Lee used them for herself and to pay the crooked lawyer William Tetterton, who under the table also gave the crooked cops, Cort Korley, David Thomley, and John Meadors, Mr.Giese, Mr.Moake, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glenn Rodgers, and Alma Parrish "a piece of the pie". All either received a portion or had knowlege of the act yet did nothing to prevent it from occurring even after the fact.

2

Once the corrupt officials come across "a victim and or prospective money maker", who they feel they can control and or manipulate, they refer this client to William Tetterton. He then gives the corrupt officials a portion of those finances collected for that referral. They in turn work together at breaking various laws to assist the referred person, in a good ole' boy system of justice, to promote the parties involved, perverted, corrupt, judicial ventures, that are tainted with unjust ulterior malicious motives, to hinder any due course of justice not supported by them, or that interfere with any common scheme or design they are attempting to place into effect. The parties aforementioned did this to prevent the plaintiff from being able to hire outside counsel of his choice. They did this also to prevent the plaintiff from making bail because they knew was the plaintiff was free he would go after the evidence that would concretely expose all their criminal acts perpetrated against the plaintiff in the court, and prevent criminal and civil prosecution and action from being levied against them. It is the plaintiff's constitutional right to hire competent out side counsel of his choice if he could afford to do so. It is the plaintiff's constitutional right to make bail if he could afford to do so. This is not Guantonomo Bay! There was a bond agent willing to work with the plaintiff if the plaintiff's finances were not stolen by the defendant. The defendants deprived the plaintiff of theses sacred inalienable rights of law.

Furthermore, these stolen finances also would have been used to maintain the plaintiff's mortgage, perservance of the plaintiff's vehicles, and other property the plaintiff owned as a pre-trial detainee. Because the parties involved stole the plaintiff's finances, all the plaintiff owned was lost. In this country you don't jail and detain a man for the purpose of robbing him. In this aspect the parties are guilty of strong arm robbery in pursuant to S.C. Ann§16-11-330 in part.

Please take notice of Exhibit No.(10). This is a copy of a letter faxed to William Tetterton, by Brana Hyme on behalf of the plaintiff, requesting Sylvia Lee to stop breaking the law, -corroborating with the state and county officials. Instead of William Tetterton taking proper legal action to stop these crimes, he threatened Brana Hyme with possible jail, spooked her, and terrified her with threats if she helped, or continued to help me in violation of 42 U.S.C.§1985(2).

Please take notice of Exhibit No.(6), a letter mailed to William Tetterton and filed in the court(s) in case(s) where William Tetterton acted as legal counsel for Sylvia and or Cylena Lee. He knew of Sylvia Lee stealing the plaintiff's assets to pay him for Sylvia and Cylena's case. He knew he was receiving misappropriated funds. He knew of my desire to have Sylvia Lee prosecuted. He knew of my desire to have Michael Lee prosecuted for the incest and Criminal Sexual Assault upon the plaintiff's minor daughters. William Tetterton was an ex-solicitor in Kershaw County. This is also why they referred Sylvia to him. He is formerly connected to the 5th Circuit Solicitor's Office. He knew what steps to take and had the power and or influence to initiate the process of due justice, but failed to do so. This document

No.(7), the 11 page Motion To Be heard filed March 12, 2002, and
Exhibit No.(8), the Motion For A SLED Investigation. These
documents and piles of others were filed in case(s) No.(s)
01-DR-28-0065; 02-DR-28-098; G646899, 900, and 901. These filed
documents, known of and or viewed by all the defendants involved,
prove that they knew of Sylvia Lee's stealing the plaintiff's
assets. They knew of Michael Lee's sexual assault and incest upon
the plaintiff's minor daughters, knew of my repeated request and
demand for justice. Yet they did nothing, except break state and
federal law, to conceal, conspire in, aid and abet in, during and
or after the fact, in crimes of moral turpitude, that will be
further elaborated on in this document, to hinder, impede,
obstruct, and defeat the due course of justice, under color of
law, in violation of the plaintiff's rights to equal protection
of the laws.

The defendants named above, to include William Tetterton,
did conspire to supply, to encourage, and or counsel, and or aid
and abet, Cort Korley, Pam Company, Jean Cato, David Thomley,
John Fellers, Ann Millikin, Glen Rodgers, Alma Parrish, Peggy
Knox, John Meadors, Mr. Giese, and Mr. Moake, to produce and use
evidence that was obtained from an illegal search and seizure at
the plaintiff's trial, for which there was no search warrant
presented and or left at the plaintiff's residence the time the
supposed evidence was seized which is a requirement by law. Cort
Korley and John Fellers called the plaintiff a "nigger cult
leader" and a "nigger Jim Jones", stating the plaintiff was
attempting to start a cult in their county and they were going to
find a way to stop me. These same persons later said to the
plaintiff, "we know you're innocent, but we are going to find a
way to make you pay for some kind of crime no matter what." The
illegal evidence was used at the plaintiff's trial the week of
March 22nd-29th, 2003, held in Camden S.C.. All the parties
previously listed had knowledge of the incident and trial. The
social workers charged the plaintiff and Sylvia Lee with 2 counts
of Neglect which was later dismissed. The evidence in the Neglect
case and the murder case was the same. They accumulated it in a
file at SLED. They were required as wards of the court by duty,
to be concerned about the rights of all parties involved. William
Tetterton was Sylvia's attorney for the neglect case. Even though
he was not the plaintiff's attorney, it was his duty as a ward of
the court and ex-solicitor to protect the interest of the decease
child, and the other child sexually assaulted by Michael Lee. The
nature of the evidence seized was material to this duty. It was
the defendants duty as social workers, wards of the courts,
parents, close relatives and the like, that if they seen or knew
individuals were acting under color of law, to deprive
individuals of rights protected by the equal protection of the
laws clause, to take steps to prevent such action from taking
place, and or to bring it to the attention of someone with the
power and authority to prevent this injustice. The plaintiff was
not under legal arrest, but he was detained and restricted in
movement. He was not allowed to go to the bathroom without an
escort. He was not permitted to drive away from the hospital
without an escort. He was forced to go to the police station for
questioning against his will even though he told the police he
did not want to talk to them without a lawyer present. Any person
with limited understanding would conclude from these events he

4

was not free in 14176 ADB invoking 4th amendment protection. William Tetterton was an ex-solicitor and knew what to look for in regard to evidence. He knew what steps to take to prevent the injustice, yet done nothing. Sylvia and the other defendants knew of this incident, yet did nothing to address it. All maliciously, criminally, in acts of gross negligence and deliberate indifference just continued in breaking the law and or allowing it to be broken. The officials involved entered the plaintiff's home without permission, concent, or warrant, took pictures and seized evidence, while the plaintiff was seized and or detained by authorities. Such illegal evidence is "fruit of a poisonous true", and never should have been used at the plaintiff's trial Unitd States v. Brady, 842 F2d 1313, 1314(D.C.Cir.1988) citing Gomez v. Turner, 672 F2d 134, 141(D.C.Cir.1982); United States v. Most, 876 F2d 191(D.C.1989); United States v. Clyburn, 24 F3d 613; Dalia v. United States, 441 U.S. 238, 255, 99 S.Ct.1682, 1692, 60 L.Ed.2d 177(1979); Mapp v. Ohio, 81 S.Ct. 1684(1961); United States v. New York Telephone Co., 434 U.S. 159, 179-180, 98 S.Ct.364, 376, 54 L.Ed.2d 376; Silverman v. United States, 365 U.S. 505, 81 S.Ct.679, 5 L.Ed.2d 734 (1961); Weeks v. United States, 232 U.S. 383, 34 S.Ct.341, 58 L.Ed. 652; Rochin v. People of the State of California, 1952, 343 U.S. 165, 173, 72 S.Ct.205, 210, 96 L.Ed. 183; Wolf v. Colorado, 1949, 338 U.S. 25, 69 S.Ct.1359, 93 L.Ed. 1782 R.C. Ohio§ 2905-34; Skinner v. Railroad Labor Executives Assoc., 109 S.Ct.1402, 1414, 103 L.Ed.2d 639(1989).

The defendants named above, did conspire, with each other and Cort Korley, David Thomley, John Fellers, Jean Cato, Peggy Knox, Ann Millikin, Glenn Rodgers, Alma Parrish, John Meadors, Mr. Geise, and Mr. Moake, in Camden S.C., in the family court, under case No.01-DR-28-0065, in acts of Criminal Unlawful Neglect, Conspiracy To Commit Criminal Unlawful Neglect, pursuant to S.C. Code Ann§20-7-50; S.C.Code Ann§16-1-40; S.C. Code Ann§16-1-55, also in acts of Incest after the fact pursuant to S.C. Code Ann§16-15-20; S.C. Code Ann§16-1-40; S.C. Code Ann§16-1-55, also in acts of Criminal Sexual Conduct, numerous counts, after the fact, pursuant to S.C. Code Ann§16-3-655; S.C. Code Ann§16-1-40; S.C. Code Ann§16-1-55, by not testing Michael Lee to the DNA samples taken from Korresha Crawford, noted in SLED file No.55010014 check list sheet. The conspiracy began in both Columbia S.C. and Camden S.C.. The failure to test him occurred in Columbia S.C. It began from January 2000 until this very date. Even though the plaintiff made numerous request, the plaintiff did not discover the request were ignored until the date of his trial March 29,2004. They are continuous acts and are dual jurisdictional crimes. These samples according the SLED DNA lab, were sent back to John Fellors the Kershaw County coroner, after SLED repeatedly made attempts to notify and obtain samples from Michael Lee. SLED made this repeated request to John Fellers, John Meadors, and the 5th Circuit Solicitor's Office, but they failed in their duty to test those samples in efforts to impede, hinder, and defeat the due course of justice, and as payment to Michael Lee to give false testimony, in acts of perjury(statute not cited), in efforts to falsely convict and imprison the plaintiff. This was also done to prevent the plaintiff from getting free to go after the evidence that would convict them for their criminal acts, and in attempts to avoid civil action being levied against them. This was also done so

5

there could be Michael Lee at the evidence on the record that would prevent Michael Lee from being placed in care with the plaintiff's remaining minor child he already sexually assaulted, so he could continue to sexually assault her, or place her in risk of such sexual assault, as a twisted, perverted, sexual deviate reward for his perjured testimony, and as part of the under the table deal they made with Sylvia Lee, to include William Tetterton and social workers, to get Sylvia Lee custody of the children, if she would help them coax them into giving perjured testimony(see Baptist medical records). The SLED DNA Lab said the samples were preserved. If the defendants did not destroy the evidence of their guilt, in the form of these DNA samples, once returned, they still can be tested to Michael Lee. The defendants all knew of the existence of the DNA samples. They knew of the assault Michael Lee perpetrated against the plaintiff's minor daughters. It was all the defendants involved duty as social workers, and or wards of the court, and or parents, grandparents, or close relatives and the like to demand and seek the completing of the testing of those DNA samples to protect my children. Yet in collaboration with these corrupt officials, under color of law, they failed in this duty in malicious acts of gross negligence and deliberate indifference. It was crucial to their wicked purpose and design that Michael Lee be not tested to that DNA, because proof presents itself that indicate they falsified the autopsy, claimed she was never pregnant, and there was no sign of damage to her uterus, and or signs of spontaneous abortion. Any sign of pregnancy would have proved they falsified the autopsy, that she contracted gestational diabetes causing said spontaneous abortion, and her bleeding to death accompanied by hypovolemic shock from her blood sugar levels dropping from 70dm/ml to 17dm/ml and Michael Lee's sexual assault is what truly killed her, and these devils and snakes concealed this in the autopsy in violation of 18 U.S.C.§1001, in acts of assessory after the fact to murder pursuant to S.C.Code Ann§16-3-10; S.C.Code Ann§16-3-655; and S.C.Code Ann§16-1-40. Placenta or fetal tissue of any kind is heterogeneous, possessing the DNA of both mother and father. If Michael Lee's DNA showed up in any of those samples, it would have produced conclusive proof they falsified the autopsy. This appears to also be the reason why they did not test him to those DNA samples.

The defendants named above did conspire with each other and Dr. Joel Sexton, Cort Korley, David Thomley, John Fellers, Jean Cato, Peggy Knox, Ann Millikin, Glen Rodgers, Alma Parrish, John Meadors, Mr.Giese, and Mr.Moake, to commit acts of Destruction and or Desecration Of Human Remains in pursuant to S.C.Code Ann§16-17-600 (A)(3) and or S.C.Code Ann§15-17-60. This occurred in the examination conducted by Dr. Joel Sexton and his assistant in Newberry County, his place of vocation, in late January, early February 2000. The incident occurred then, but the crime was not discovered until the time of the plaintiff's trial March 25,2004, in Camden S.C.. The statute of limitations would run from the time the crime, the incident, was discovered, warranting criminal and or civil action. These devils, these snakes, these dogs, in malicious, criminal, acts of evil gross negligence and deliberate indifference, slit!, cut open like a pig!, in acts of mutilation and desecration, the dead body of an 11 year old african american child, to pour blood in her tissue,

6

and then take pictures afterward, to falsely claim blood seeped into her tissue, to frame her religious fanatic, love the Lord thy God with all thy heart, soul, mind, and strength, proud to be father, behind religious and racial hatred. The emergency room doctor specifically said, noted even in the trial transcript, that there were no such bruising on her back. The emergency room doctor never could have missed injuries of the manitude the autopsy falsely allege. The E.R. doctor was the first to examine her yet stated after examination that there were no bruises on her back at all, not one. This is an egregious inconsistency that clearly point to the assertions made by the plaintiff as being true. The plaintiff filed numerous documents in case(s) No.(s) 01-DR-28-0065; 02-DR-28-098; G646899, 900, and 901 in Camden S.C. informing all defendants of the inconsistencies, and made numerous request for a second autopsy and investigation. The defendants under color of law ignored the documents and request. It was William Tetterton's duty as attorney for the neglect for Sylvia to ascertain the truth of what happened to my child with all the inconsistencies. Just like the plaintiff did they should have demanded a second autopsy. Yet they did nothing except break the law and or allowed the others to break the laws of this state and under color of law, in violation of the plaintiff's right to equal protection of the laws, hindered, impeded, obstructed, and did all they could to defeat the due course of justice.

The defendants named above did conspire with each other and Cort Korley, David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glen Rodgers, Alma Parrish, John Meadors, Mr.Giese, and Mr.Moake, in malicious, criminal acts of gross negligence and deliberate indifference, falsified the document, Exhibit No.(3), and used this document as a means of placing Michael Lee back with the plaintiff's remaining minor child, exposing her to risk, harm, and danger, as well as psychological and physical danger. This is a blatant criminal act of Criminal Unlawful Neglect pursuant to S.C.Code Ann§20-7-50. All the defendants involved knew that Michael Lee sexually assaulted the plaintiff's daughters. If they would have stated the truth, and placed in the document their knowledge of Michael Lee's assaulting them, the Foster Care Division would have not allowed them to place Michael Lee and the plaintiff's remaining minor child in the same residence, especially with the plaintiff making numerous objections and complaints in writing and filing them with all the relevant courts. William Tetterton and the parties aforementioned were there at all proceedings, and or had knowledge of the proceedings. Tetterton could have prevented this as well as the other defendants, or they could have brought it to the attention of someone who could have prevented it. The defendants falsified this document, concealing the truth, saying her assault was by an "UNKNOWN" perpetrator. This was part of the under the table deal with Sylvia Lee. They would work to get her custody of the children, and escape prosecution, if she would aid them against the plaintiff, to include aiding to solicit false testimony from the children to have the plaintiff convicted, to include her stealing the plaintiff's assets, to keep the plaintiff from making bail or hiring counsel of his choice, to prevent the plaintiff from getting free to go after the evidence

that would criminally convict them of this same violation of 18 U.S.C. §1001. As stated Incest is a crime of moral turpitude pursuant to S.C. Code Ann §16-15-20. This goes beyond incest. This snake and sexual deviate, sexually assaulted the plaintiff's minor children, in acts of Criminal Sexual Conduct pursuant to S.C. Code Ann §16-3-655 and these devils, crooked, corrupt, lawless officials concealed and covered his crimes under color of law, in defiance to the plaintiff's rights of equal protection of the laws, to defeat the due course of justice. Please note Exhibit No. (4). This is the letter from SLED F.O.I. Department. Note that the Governor's Office records and the Guardian At Litem records containing these falsified documents are in this file. This is another reason why the defendants work extensively to prevent the plaintiff from obtaining this file. SLED file 55010014 proves that they knew of Michael Lee's sexual assault upon the plaintiff's children, to include that the file had evidence that proved my innocence, and instead of taking legal action against Michael Lee and producing the file, they worked to conceal and cover up his crimes, in malicious criminal acts of gross negligence and deliberate indifference. This is a dual jurisdictional crime. The falsifying of the document occurred in Camden S.C., but the submitting the document to the Foster Care Division occurred in Columbia S.C.. This is a continuous crime of Criminal Unlawful Neglect. It began with the falsifying of the document June 25, 2001 and continues until this present date. The plaintiff's minor child A.C. is still a victim of this cruel, criminal injustice. The Equal Protection Of The Laws Clause extends to the innocent as well as to the guilty. It extends to the supposed criminal as well as to the law abiding citizen <u>State v. Middleton</u>, 207 S.C. 478, 36 S.E.2d 742(1946); <u>Eslinger v. Thompson</u>, 340 F.Supp. 886(D.S.C.1972) aff'd 476 F2d 225(4th Cir.1973); <u>McLaughlin v. Florida</u>, 379 U.S. 184, 85 S.Ct.283, 13 L.Ed.2d 222(1964). Even though the plaintiff was detained, by law, the plaintiff was entitled to equal protection of the laws, to have the attacker of the plaintiff's minor children brought to justice. The plaintiff had the right to not be subject to what was essentially strong arm robbery. They failed to follow state and federal laws to include the policies of their own agencies. Please take notice of Exhibit No. (5), the SLED intake sheet. At the bottom of the sheet, though incorrectly stated, it tells of the assault, as do numerous documents in this file. They further prove the defendants knew and done absolutely nothing to bring Michael Lee to justice except conspired to break the law or allow the others to break the law to impede, hinder, obstruct, and defeat the due course of justice.

The defendants named above did conspire with each other and John Fellers, Cort Korley, David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glen Rodgers, Alma Parrish, John Meadors, Mr. Giese, and Mr. Moake, in malicious, criminal acts of gross negligence and deliberate indifference, to suppress evidence that proved the plaintiff's innocence, in the form of SLED file 55010014, in efforts to maliciously have the plaintiff falsely convicted, kidnapped!, in violation of S.C. Code Ann §16-3-910. In this file were numerous documents. to include the death certificate, which would have prove the allegations in the indictment as to time and place of particular averments,

8

which are crucial elements of the offense, must be proven, and must be passed upon by the Grand Jury before a person may be lawfully convicted for the offense of murder State v. Rector, 158 S.C. 212, 155 S.E. 385(1930); S.C.Code Ann§19-17-20; S.C.Code Ann§19-17-30; State v. Rallo, 403 S.E.2d 653(1991); State v. Ham, 259 S.C. 118, 191, S.E.2d 13(S.C.1972); State v. Sutton, 333 S.C. 192, 508 S.E.2d 283(S.C.App.1998); State v. Pierce, 207 S.E.2d 414; State v. Blakeney, 33 S.C. 111, 11 S.E. 637 infra, State v. Stewart, 26 S.C. 129 S.E. 468; State v. Faile, 43 S.C. 52, 20 S.E. 798; State v. Adams, 277 S.C. 115, 283 S,E.2d 582(1981). Thus it would have vitiated the conviction. It would have also produced evidence to confirm they falsified the trial transcript to ensure to conviction was unjustly affirmed in the S.C. Court of Appeals. It would have produced the coroner's notes that would have explained why the coroner showed up at the plaintiff's bond hearing for the 2 counts of neglect, after the autopsy was fully completed and testified at that hearing that no alleged beating killed the plaintiff's child, that at most is "may" have been a contributing factor. The file would have produced evidence in the form of the Florence Sheriff Dept. report and the Baptist Hospital records that proved there was no sign of sexual assault on Cylena Lee, that she was a virgin, and committed perjury in efforts to make herself look like a victim on the witness stand, instructed and coaxed by the defendants, to include William Tetterton, to ensure that the plaintiff would be unjustly convicted, kidnapped, for false charges of murder.(see enclosed Exhibit No.(12), portion of Baptist records). This evidence was crucial to the plaintiff's defense. This file was hidden at SLED in Columbia S.C. and was not discovered by the plaintiff until about December 2003 and or about January 2004. It was hidden since the time of the plaintiff arrest. The plaintiff went on the record to request this file at his competency hearing in Columbia S.C. March 19,2004 and John Meadors blatantly lied on record stating he did not know what file the plaintiff was talking about.

This issue is also based upon the principle that defendants are to be given a meaningful opportunity to present a complete defense. To protect this right, the United States Supreme Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence" United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct.3440, 73 L.Ed.2d 1193, 1203(1982).

In this regard defendants have the right to request and obtain from the prosecution evidence that material to the guilt of the defendant or relevant to the punishment to be imposed Brady v. Maryland, 373 U.S. 83, 83 S.Ct.1194, 10 L.Ed.2d 215(1963). Even absent of request, prosecutors have a constitutional duty to give the defendant exculpatory evidence which would raise a reasonable doubt about his guilt United States v. Augurs, 427 U.S. 97, 96 S.Ct.2392, 49 L.Ed.2d 342 (1976); State v. Jackson, 396 S.E.2d 101 (S.C.1990).

In South Carolina, under Rule 608(c), of S.C. Rules of Crim. Pro., evidence of character, conduct, and bias of witnesses state in haec [v]erba:

"Evidence of bias, prejudice, or any motive to
misrepresent the witness may be shown to impeach the witness either by,
examination of the witness or by other evidence otherwise
adduced".

In Brady and Augurs, the prosecution failed to disclose
exculpatory evidence. In the case of United States v. Bagley, 105
S.Ct. 3375, the prosecution failed to disclose evidence that the
defense might have used to impeach the government's witness by
showing bias or perverted interest. The court stated:
"impeachment evidence, however, as well as exculpatory evidence,
falls within the Brady rule" Giglio v. United States, 405 U.S.
150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104(1972). Such evidence is
"evidence favorable to the accused" Brady supra, so that if
disclosed and used effectively, it may make the difference
between conviction and acquittal ct.Napue v. Illinois, 360 U.S.
264, 269, 79 S.Ct.1173, 1177(1959). The defendants knew of this
evidence existence. Yet, in criminal acts to prevent their
corrupt fails from going to jail, to protect Michael Lee
from being prosecuted for Breach of Trust, and to protect Sylvia Lee
from being prosecuted for Criminal Sexual Conduct, under color of
law, in violation of the plaintiff's rights to equal protection
of the laws they hid this file and openly in acts of perjury
denied it's contents, to impede, hinder, obstruct, and defeat the
due course of justice. The kidnapping statute under S.C.Code
Ann§16-3-910 is broad enough to include and cover the common law
crime of false imprisonment(see S.C.Code Ann§16-3-910).
Kidnapping is a continuous offense. It commences from the time
one is wrongfully deprived of freedom and continuous until
freedom is restore. Every issue alleged in this action is a
significant part of that false imprisonment. Therefore, since the
plaintiff is still falsely imprisoned by these actions, the
statute of limitations would not commence until the plaintiff's
freedom is restored State v. Tucker, 334 S.C. 1, 512 S.E.2d 99
(S.C.1999).

The defendants named above did conspire with each other
and John Fellers, Cort Kortley, David Thomley, Jean Cato, Pam
company, Peggy Knox, Ann Millikin, Glenn Rodgers, Alma Parrish,
John Meadors, Carol Theume, Mr.Giese, and Mr.Moake, in malicious,
criminal acts of gross negligence and deliberate indifference.
did falsify the plaintiff's trial transcript. The defendants
either took out, and or modified, and or altered, and or deleted
any and all errors on the part of the trial court that would
serve to vitiate and or make the conviction infirm to ensure that
the plaintiff would remain criminally and unjustly convicted,
kidnapped! There were so many errors on the part of the trial
court the conviction on direct review could not have possibly
stood and the sentence and conviction would have had to be
vacated. One of the crucial changes they made was the testimony
given by the pathologist Joel Sexton. The pathologist clearly
testified at trial that the initial incident and or assault have
had to occur about 7:00P.M. in Kershaw County, but the death
occurred in Richland County as outlined in his presented autopsy.
They also deleted and or altered any testimony by the pathologist
that would clearly show he was negligent in not documenting any
signs of the sexual assault perpetrated by Michael Lee,
purposely, maliciously omitted by the pathologist in
collaboration with the other listed parties. They did this so
that upon direct review it would appear from the record that the

state met it's burden on proving the crucial elements of time and place of death, which burden in truth they failed to meet. They also did this because the plaintiff produced an Advance Auto Parts purchase history possessing time and date clearly showing the plaintiff was in Columbia S.C., 2 hours away the time the incident occurred, that established a concrete alibi and clearly proved the witnesses Cylena, Michael, Quinta, and Aerialle were lying on the stand in acts of perjury, coaxed by the defendants, due to they all stating the plaintiff never left the home that evening untruthfully placing the plaintiff at the scene. When you add in the travel time of 1 hour, one way, we are looking at a minimum of 3 hours the plaintiff had to be gone that evening. By the defendants testifying the plaintiff never left at all that evening, it caught them in their perjury so they had to alter the transcript that this not be shown. The death certificate, the autopsy, the Providence Hospital records, and even the plaintiff's sentencing sheet clearly show the assault and death occurred on 2 different dates in 2 different counties, yet the indictment that is fatally defective and the criminally altered transcript states contrary State v. Platt supra; State v. Blakeney supra. This act is a violation of 28 U.S.C.§1001, is Sham Legal Process(statute omitted), and kidnapping pursuant to S.C.Code Ann§16-3-910. All the defendants involved already knew of the deeds and criminal acts of all the various parties in the Family Court and General Sessions Court.  Any person would reasonably assume people capable of the falsifying of court documents could and would falsify a trial transcript, yet they made themselves a part of the various criminal acts. When it comes to conspiracy and the accomplice liability doctrine "the hand of one is the hand of all." Carol Theume, John Meadors, Mr.Giese, Mr.Moake, and the 5th Circuit Solicitor's Office produced this criminally falsified transcript. This occurred in the S.C. Court of Appeal, in Columbia S.C. in the late part of 2004 and or early part of 2005. The defendants did this under color of law, in violation of the plaintiff's rights of equal protection of the laws, to impede, hinder, obstruct, and defeat the due course of justice.

The defendants named above did conspire with each other and Dr. Joel Sexton, Janice Ross?(his assistant), John Fellors, Cort Korley, David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glen Rodgers, Alma Parrish, John Meadors, Mr. Giese, and Mr.Moake, in malicious criminal acts of gross negligence and deliberate indifference by ordering and or authorizing an autopsy and or post mortem examination they did not have the authority to order because they were out of their jurisdiction to order it. Thus they are again guilty of desecration and destruction of human remains pursuant to S.C.Code Ann§16-17-600(A)(3). This is also a violation of S.C.Code Ann§17-5-260; S.C.Code Ann§17-5-250; and S.C.Code Ann§17-7-10. The autopsy was ordered by John Fellors the Kershaw County coroner who was out of his jurisdiction in that the death occurred in Richland County. It is not the plaintiff's contention that under no circumstance this could not be done. What the plaintiff does contend, is that in order for the Kershaw County coroner to be invested with proper authority to order the autopsy, the Richland County coroner had to properly transfer

that if a jurisdiction change or transfer was properly and legally done, it had to be in writing, and such written transfer of jurisdiction had to be filed with the clerk of court in both Richland an Kershaw counties in order for said transfer to be able to stand up to legal mandates and requirements of law. This was not done. Therefore the coroner John Fellors and or Dr. Sexton and his assistant did not even have proper authority by law to do the autopsy. William Tetterton was an ex-solicitor. He knew the law quite well. He knew the death occurred in Richland County. He was Sylvia and Cylena Lee's attorney. He handled many cases of this nature before. He knew of the plaintiff's concerns over the autopsy and my questioning it's validity, yet he done nothing about this breach of law. The other defendants knew of this matter as well. It was their duty as offials involved in the case, as wards of the court, as parents and or close relatives to take action, to investigate the facts, and to ensure that the due course of justice was not in any way compromised. Pursuant to S.C.Code Ann§17-5-260, the county coroner and or examiner of the county where the death was found shall make immediate inquiry into the cause and manner of death and shall reduce his findings to writing on forms provided for this purpose retaining a copy for his files 1962 Code§17-166; 1972(57) 3064. Pursuant to S.C.Code Ann§17-5-250, power to determine, the county examiner and or coroner of the county where the death is found shall have the power to determine that an autopsy shall be made in addition to the powers invested in other law enforcement officials to order an autopsy 1962 Code§ 17-165; 1972(57) 3064. In pursuant to S.C. Digest, a coroner has authority to gather evidence at the scene of the crime and preserve it for trial; however, he may not withhold it from the investigating officers Opinion No.4483 Code 1962§ 17-91. Thus we have the coroner's notes listed in SLED file 55010014.

Atty. Gen. 1963 provides: Coroner of Kershaw County was limited to his jurisdiction to Kershaw County and was not authorized to grant permission for an autopsy on person who died in Richland County 1962-63 Opinion Atty. Gen. 105. Pursuant to Atty. Gen. 1952 under 1952§17-91 provides: If a person is injured in one county and dies in another, the coroner of the county where the person dies or where the body is found should take the initiative and make such inquiry as to what caused the death as he considers proper 1952-53 Op. Atty. Gen.58. Pursuant to S.C.Code Ann§17-7-10, the coroner in the county of which the injury was inflicted has no authority to order an autopsy or post mortem examination of a person, if said person is taken out of the county or state for treatment and dies in another county or state 1978 Op. Atty. Gen. No. 78-68 pg. 94. The plaintiff's daughter was alive, in a coma, and fading fast when she arrived at the Richland County hospital. Therefore the Kershaw County coroner,John Fellers, did not have the authority to order the autopsy. It should have been ordered by the Richland County coroner. The autopsy was conducted in Newberry County by Dr. Joel Sexton and was ordered January 26,2000. This act also was done in conjunction with the false imprisonment and or Kidnapping. Since the kidnapping is a continuous offense and the plaintiff is still imprisoned the statute of limitations would not apply. John Fellers and Cort Korley threatened that they would work with various parties involved to frame the plaintiff even though they

clearly stated they knew the plaintiff was innocent. This is why they violated the law in ordering it. Their intent from the start was to manipulate it's findings in efforts to have the plaintiff kidnapped and falsely imprisoned, under color of law, in violation of the plaintiff's rights to the equal protection of the laws, to impede, hinder, obstruct, and defeat the due course of justice.

The defendants named above did conspire with each other and John Fellers, Cort Korley, David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glen Rodgers, Alma Parrish, John Meadors, Mr.Giese, and Mr.Moake, in malicious, criminal acts of gross negligence and deliberate indifference, did solicit false testimony from Cylena, Michael, and Quinta Lee, knowing it was false, so much until they knew that they had to suppress SLED file 55010014 because it produce concrete evidence that it was perjured, in efforts to maliciously have the plaintiff falsely imprisoned, kidnapped, in violation of S.C.Code Ann§16-3-910. This was done in Camden S.C. during the plaintiff's trial held from March 22nd-29th, 2004. This was also done to prevent the plaintiff from getting free to go after evidence that would convict them of their crimes, and prevent civil action from being levied against them. This was done also as a malicious effort to attack the plaintiff behind religious and racial hatred. The prosecution at numerous points during the trial attacked the plaintiff's religious beliefs calling them evil, oppressive, dominating, controlling, and other such derogatory words. They did this in concert with the desire and effort of Cort Korley and John Fellers who called the plaintiff a "nigger cult leader", and "nigger Jim Jones", claiming the plaintiff was endeavoring to start a cult in their county. Again they stated they knew the plaintiff was innocent, but they were going to find a way to make me pay for a crime whether the plaintiff was innocent or not. South Carolina "STILL" Jim Crow justice at it's best. In S.C. Rules Of Evidence Rule 610, pursuant to Religious Belief or Opinion provides:

"Evidence of the belief or opinions of a witness on matters of religion is not admissable for the purpose of showing that by reason of their nature the witness credibility is impaired or inhanced".

The U.S. Constitution prohibits such act if the beliefs of the party in question do not break any established laws (see U.S.C.A. amend(s). 1 and 14). It is a requirement that cannot be deemed to be satisfied by mere notice and or hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony and or evidence known to be perjured and or false, and or unconstitutional. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation Brady v. Maryland supra; United States ex rel Almeida v. Baldi, 195 F2d 815; United States ex rel Thompson v. Dye, 221 F2d 763; Mooney v. Holohan, 294 U.S. 103, 112; Pyle v. Kansas, 317 U.S. 213, 215-216; Alcorta

v. Texas, 355 U.S. 28. The defendants who were going to do this before they did it. It was a malicious, criminal, premeditated act. They had the power to stop it and not be a part of it. It was Tetterton's duty as an ex-solicitor and ward of the court by the code of professional ethics to take action to prevent this cruel act. Yet he did nothing due to being paid off with misappropriated funds. All the parties listed did this under color of law, in violation of the plaintiff's rights to equal protection of the laws, to impede, hinder, obstruct the due course of justice to have the plaintiff kidnapped!

The defendants named above did conspire with each other and John Fellers, Cort Korley, David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glen Rodgers, Alma Parrish, John Meadors, Mr.Giese, and Mr.Moake, in criminal, malicious acts of gross negligence and deliberate indifference, did instruct and or coaxed Michael Lee as to what to say once he took the witness stand to prevent and protect him from placing on the record any statements the would validate he was guilty of Criminal Sexual Conduct 1st degree. This boy, egregiously coaxed by an adult who knew what the elements were, like a pro, this boy strategically avoided giving away the truth of his physical sexual assault upon the plaintiff's child, specifically, the physical battery, aggravated force, and aggravated coercion, which provide the crucial elements for Criminal Sexual Conduct 1st degree. It's obvious he was coaxed and instructed in what to say to prevent testimony of this nature on the record that would require that he be tried as an adult. At his age, and as the man who raised him I know for certain Michael Lee had no knowledge of the aggravated circumstances related to the offense and how do avoid them, but on the witness stand that day he did. This makes the all the parties listed assessories after the fact to Criminal Sexual Conduct pursuant to S.C.Code Ann§16-3-655. The defendants did this in Camden S.C. during the plaintiff's trial March 22nd-29th, 2004, in efforts to have the plaintiff kidnapped, under color of law, in violation of the plaintiff's rights of equal protection of the laws, to prevent the attacker of the plaintiff's children from being prosecuted, to impede, hinder, obstruct, and defeat the due course of justice. They all knew and had a part in it.

The defendants named above did conspire with each other and John Fellers, Cort Korley, David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glen Rodgers, Alma Parrish, John Meadors, Mr.Giese, and Mr.Moake, and did instruct Cylena Lee to file a false report of CSC, supposedly of the plaintiff perpetrating this lie upon her person. This makes the defendants guilty of filing a false report(statute omitted). The girl was a virgin when last in the plaintiff's care. This is also indicated in the Baptist Hospital records. This is another reason they suppressed the SLED file No.55010014. The Florence Sheriff Dept. records were there of her making this false claim and there being no evidence of such found. It is obvious since she was the one first said to be the one home the time the fake conjured up crime occurred, their desire was to make her look like a victim to manipulate the jury and play upon their sympathy in order to give her more credibility at the plaintiff's trial as she gave her perjured testimony. This was done in Camden S.C. the week of March 22nd-29th, 2004, and design to enhance the plot of

14

kidnapping and their close acquaintence, they also were to prevent the plaintiff from getting free to go after evidence that proved their guilt, have them jailed and levy civil action against them. This was also none to prevent the plaintiff from taking legal action against Sylvia, Michael, a her other close relatives, in collaboration with the corrupt officials, under color of law, in violation of the plaintiff's rights to equal protection of the laws, to impede, hinder, obstruct, and defeat the due course of justice.

The defendants named above, did conspire, with each other and John Fellers, Cort Korley, David Thomley, Jean Cato, Pam Company Peggy Knox, Ann Millikin, Glenn Rodgers, Alma Parrish, John Meadors, Mr.Giese, and Mr.Moake, in Camden S.C. the conspiracy began June 25, 2001, was carried over to Marion County, Marion S.C. in their placing the plaintiff's child with Sylvia Lee, from on or about January 2003 through the time the 2 counts of neglect was dismissed against Sylvia Lee, in violation of the court order issued in the Family Court, in case No.01-DR-28-0065, in acts of Criminal Unlawful Neglect pursuant to S.C.Code Ann§20-7-50, which was an act associated with the kidnapping pursuant to S.C.Code Ann§16-3-910, as part of that deal to solicit false testimony to have the plaintiff unjustly, falsely, convicted in his trial conducte March 22, 2004. This was done under color of law , in violation of the plaintiff's rights to equal protection of the laws, also in efforts to impede, hinder, obstruct, and defeat the due course of justice.

The defendants named above did conspire with each other and Dr. Joel Sexton, Janice Ross?(his assistant), John Fellers, Cort Korley, David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glen Rodgers, Alma Parrish, John Meadors, Mr. Giese, and Mr.Moake, did in malicious, criminal acts of gross negligence and deliberate indifference, worked in concert with each other during and or after the fact, to prevent the pathologists who conducted the autopsy, to purposely, maliciously, not put in writing and or document signs of the sexual assault that Michael Lee perpetrated upon the plaintiff's minor child, to include purposely not documenting in the autopsy whether the plaintiff's 11 year old daughter possessed a vaginal hymen, which would serve to validate proof as to whether or not Michael Lee repeatedly raped her at every opportunity he got. The plaintiff's daughter was 11 years old. She had to have a vaginal hymen. Absence of such is clear proof of the rapes perpetrated against her. This was done as part of the under the table deal to protect Michael Lee from prosecution for his crimes of Criminal Sexual Conduct, also as a reward to solicit perjured testimony to have the plaintiff kidnapped and falsely imprisoned. This act is part of the conspiracy to commit kidnapping, and the kidnapping itself. It occurred in the autopsy done in Newberry County ordered by Fellers, conducted by Sexton on January 26, 2000. The pathologist inadvertently place on the record during the plaintiff's trial, testimony that clearly show he knew of the sexual assault. but purposely, in acts of gross negligence, maliciously, in collaboration with the corrupt officials did not document this crucial evidence. This present an additional motive as to why they had to falsify the the plaintiff's trial transcript. It was in effort to protect the crooked pathologist

15

who they knew falsified the autopsy to aid their minor child, and perverted design. Even A.C., the plaintiff's remaining minor child, told them that Michael sexually assaulted her. The laws of South Carolina are clear and certain. By what's outlined in the statutes of the various sex crimes, such as Incest and Criminal Sexual Conduct, that no individual who commit or is guilty of such crimes, are not allowed to be in the vacinity and or care of other children, especially if it's one he already sexually assaulted. This is pure gross negligence, criminal in nature, and would expose the plaintiff's child to clear imminent and present danger of possible future sexual assault. Yet the defendants and parties involved in their lawlessness and blatant disregard for my child's safety and laws of this state, to aid, encourage, abet Sylvia Lee in stealing the plaintiff's assets, got the children, and basically push off her 2 counts of neglect for her part on coaxing the children into giving perjured testimony at the plaintiff's trial, behind religious and racial hatred, these snakes and rats, placed Michael Lee in the same home with my child, exposing her to danger, by not documenting the sexual assault, and whether or not she had a vaginal hymen present. He married Mr. Brunson was at the various hearings and trial. Sylvia Lee, in their union benefited from the misappropriated funds, knew of the acts of sexual assault upon the plaintiff's child, yet did nor said nothing as they place the plaintiff's child and Michael Lee in a home under his authority in Marion S.C. area. The evidence to prove this and that it was done in violation of the court order, would be the kids school records. The school records will show the names of the parents and or guardians, the place of residence, and when they arrived there. Compare this to the court order and the date the charges were dismissed and it will show the violation. It was the prosecutors duty to go after any and all evidence of any crimes and not arbitrarily for ulterior motives be selective and manipulative. It was the social workers duty, in the interest of the children involved, to ensure that any evidence of sexual assault against a child be documented. It was William Tetterton's duty as a ward of the court and ex-solicitor to see that all evidence of any alleged crimes related to the cases, for which he was even hired as counsel, by the code of professional ethics to ensure all evidence of the crimes were documented. It was Sylvia's, Cylena's, and the other defendants duty as parent and or close relatives to ensure this was done or at least make an attempt to notify authorities who may have had the power to correct the injustice of this deficiency. Yet they all did nothing except make themselves a part of the crimes listed in this document, collaborating with the corrupt officials, under color of law, on violation of the plaintiff's right to equal protection of the laws, to impede, hinder, obstruct, or defeat the due course of justice. This was also done so there would be nothing documented by record producing evidence that would prevent Michael Lee from being placed in care with the plaintiff's child. Without there being anything documented the parties would lie, and falsely claim they were ignorant of the facts, so as to give such a reason why they did not pursue any criminal action against Michael Lee. Korley, Thomley, Fellers, Meadors, Giese, Moake, and the other officials would not be compelled by duty to act, due to there not being tangible evidence documented requiring them to

16

The defendants named above did conspire with each other and John Fellers, Cort Korley, David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glen Rodgers, Alma Parrish, John Meadors, Mr.Giese, and Mr. Moake, in malicious, criminal acts of gross negligence and deliberate indifference, in Camden S.C., March 22nd-29th, 2004, at the plaintiff's trial, to produce falsified evidence in the form of a statement said to have been given by the plaintiff, in efforts to have the plaintiff kidnapped and then later assassinated as previously outlined. This supposed statement, criminal produce, in Sham Legal Process(statute omitted), was never made by the plaintiff, never signed by the plaintiff, one foreign, mysteriously produced like "Adam's house cat", for which the plaintiff was never given a copy of the time it was supposedly made because the plaintiff never made it. No signed waiver of Miranda rights was produced, yet they used this falsified evidence at the plaintiff's trial, to cross-examine the plaintiff on the witness stand, to make the plaintiff look like a liar, to destroy the plaintiff's credibility before the jury, in order that the plaintiff be further kidnapped!, and falsely convicted. This was done in violation of S.C.Code Ann§§18-15-50; S.C.Code Ann§19-1-80; S.C.Code Ann§19-1-90; State v. Scott, 237 S.E.2d 886; State v. Easler, 471 S.E.2d 207; State v. Henderson, 334 S.E.2d 517; State v. Greene, 499 S.E.2d 817. This document is "fruit of a poisonous tree", compromises the whole proceedings, and should have never been allowed State v. Cox, 335 S.E.2d 809; State v.McLaughlin, 413 S.E.2d 819 at 821; State v. Torrence, 406 S.E.2d 315 at 319, 326-328. This was a malicious act, purposely done in defiance to known law, under color of law, in violation of the plaintiff's right to equal protection of the laws, to impede, hinder, obstruct, or defeat the due course of justice.

The defendants named above did conspire with each other and John Fellers, Cort Korley, David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glenn Rodgers, Alma Parrish, John Meadors, Mr.Giese, and Mr.Moake, in Camden S.C., from February 2000 until this present date, in malicious, criminal acts of gross negligence and deliberate indifference, in acts of kidnapping and false imprisonment, in cases G646899, 900, and 901 of the Court Of General Sessions, detained and commenced with a trial against the plaintiff, in acts of prosecutional misconduct, knowing fully well they did not have the authority and or Subject Matter Jurisdiction, due to they being beyond the (180) day time frame allotted by the S.C. Constitution and S.C. Rules of Court, because they failed to obtain a "[W]ritten" order of continuance pursuant to the constitutional provisions, to continue the cause.

In pursuant to Article V§4 of the S.C. Constitution:

"IT IS ORDERED that all criminal cases in the state of South Carolina shall be disposed of within (180) days from the date of the defendant's arrest. Provided, however, that the Circuit Court may continue the criminal case beyond (180) days by "written"(emphasis added) order if the court determines that exceptional circumstances exist in the case. This order does not create or define a right of a defendant to a speedy trial"(see

17

This has nothing to do with a speedy trial issue. It's simply a matter of state and S.C. Constitutional law. S.C.Code Ann§1-7-730 and S.C.Code Ann§17-13-150 require that the prosecuting body fulfill and see that all the duties, requirements, and rules of criminal procedure, and the S.C. Constitution are adhered to and completed within the courts.

The provisions of the S.C. Constitution shall be taken, deemed, and construed to be mandatory and or prohibitory, and not merely directory, except where made directory or permissory by it's own terms. "Shall" is mandatory. Words must be given their plain meaning unless something in the [t]ext require a different interpretation. Robinson v. Shell Oil Co., 117 S.Ct. 843, 846(1991); Article 12§2 S.C.Const.; United States v. Meyers, 106 F3d 936, 941(C.A.10 1997); Seckinger v. The Vessal Excalibur, 483 S.R.2d 775 (S.C.App.1997); United States v. Ron Pair Enterprises Inc., 109 S.Ct. 1026, 1030(1989); S.C.Const. Article 1§23; State v. Carson, 317 S.C.430, 431, 454 S.E.2d 888, 889(1995).

Since there was no "WRITTEN" order of continuance issued within the (180) time frame required by law for the murder or neglect charges, and the plaintiff wrote the Kershaw County Clerk of Court to check, the trial court lacked Subject Matter Jurisdiction and a trial should have never taken place and the plaintiff should be free today. The plaintiff was arrested February 2000. That gave the prosecution until August 2000 to try the case. Yet the plaintiff was not brought to trial until March 2004, 4 years past the time frame allotted by law. The parties employed by the Dept. Of Social Services, to aid in the scheme and plot of kidnapping, unjustly kept the 2 counts of neglect levied against the plaintiff in place knowing fully well once the plaintiff was unjustly indicted for murder, they never intended to pursue the neglect any further. The bond for the 2 counts of neglect was unjustly, excessively set at $250,000.00, 2½ times higher than the murder bond, in violation of the plaintiff's 8th amendment rights. The S.C. Constitution mandate by law the the cases were suppose to have been resolved within (180) days in pursuant to Article V§4. It was their duty and responsibility that before that 180 day period expired, to dismiss the charges or get before a judge to obtain a "written" order of continuance. This was never done in violation of established law, knowingly, maliciously, to prevent the plaintiff from making bail to go after evidence of their crimes to avoid prosecution and civil action being levied against them, in Guantonomo Bay tactics, in blatant defiance of law, under color of law, in violation of the plaintiff's rights to equal protection of the laws, in efforts to impede, hinder, obstruct, or defeat the due course of justice.

The defendants named above did conspire with each other and Dr. Joel Sexton, Janice Ross?(his assistant), John Fellers, Cort Korley, David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glen Rodgers, Alma Parrish, John Meadors, Mr.Giese, and Mr.Moake, in Camden S.C., from February 2000 until this present date, in acts of kidnapping and false imprisonment, in malicious criminal acts of gross negligence and deliberate

18

indifference, did commit sham illegal "action of such
Carolina Code of Laws(statute omitted). It is perspicuous by the
aforementioned issues of concern that the plaintiff should have
never been made to endure a cruel, wicked, evil, lawless, unjust
trial for murder, especially one that does not exist which
resulted in permanent life time injuries and disability to the
plaintiff. This case will reveal that the plaintiff child died of
natural causes and this was criminally concealed or suppressed in
the autopsy, behind the criminal deeds of under the cover, behind
the sheets, evil Khu Khlux Khlansmen, a wicked criminal attempt
to attack a man behind religious and racial hatred. State and
federal statutes make it criminal to act willfully under color of
law to deprive persons of rights protected by the U.S.
Constitution and laws of the United States and encompasses rights
protected by the Due Process Clause of the 14th Amendment United
States v. Lanier, U.S. Tenn. 1997 , 117 S.Ct. 1219, 520 U.S.259,
137 L.Ed.2d 432 on remand 114 F3d 84 on remand, 123 F3d 945;
Pickings v. Penn. R. Co., C.C.A. 3(P.A.) 1945, 151 F2d 240,
rehearing denied 152 F2d 753; McShane v. Moldovan, C.A. Mich.
1949, 172 F2d 1016. Attacking the plaintiff behind such religious
and racial hatred is an action that must not go unanswered by the
courts. The plaintiff's religious beliefs may have been strange.
They may have been unpopular, but they did not break any laws.
The plaintiff was clearly unjustly punished under color of law
for the free exercise thereof, rights, immunities, and privileges
secured by the laws of the United States. Fiorino v. Turner, D.C.
Mass. 1979, 476 F.Supp. 962; Williams v. United States, C.A.
5(FLA.) 1950, 179 F2d 656 cert. granted 71 S.Ct. 70, 340 U.S.
850, 95 L.Ed. 622 aff'd 71 S.Ct. 341 U.S. 97, 95 L.Ed. 774

Under this section declaring that whoever, under the color
of any law, willfully subjects an inhabitant of "any state" to
deprivation of any rights or immunities secured by U.S.C.A.
Const. Amend.14 or laws of the United States, shall be subject to
state penalty, the rights referred to include the right to be
tried by a legally constituted court, right not to be deprived of
liberty without and or by corrupted Due Process, and the right
not to be arrested by an officer acting arbitrarily without cause
or for an ulterior purpose Brown v. United States, C.A. 6 (Tenn.)
1953, 204 F2d 247.

When an officer, knowing a warrant to be illegal,
groundless, or fictitious, willfully uses his authority and or
instrument of arrest and incarcerate an accused, such action is
deprivation of the rights of the accused to liberty and a
violation of this section and neither threat, nor violence is a
necessary ingredient of the offense under such circumstances.
United States v. Ramey, C.A. 4 (W.VA.) 1964 336 F2d 512; cert
denied 85 S.Ct. 649, 379 U.S. 972, 13 L.Ed.2d 564. These actions
presented, done under color of law, serve to deny the plaintiff
equal protection of the laws against unjust prosecution, to
impede, hinder, obstruct, or defeat the due course of justice,
and is an act of kidnapping and false imprisonment.

The defendants named above did conspire with each other
and Dr. Joel Sexton, Janice Ross, John Fellers, Cort Korley,
David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin,
Glen Rodgers, Alma Parrish, John Meadors, Mr.Giese, and Mr.Moake,

19

in criminal, malicious acts of gross negligence and deliberate indifference, did commit Conspiracy to Commit Murder, and Assault With Intent To Kill(2 counts) pursuant to S.C.Code Ann§16-13-230; S.C.Code Ann§16-1-40; S.C.Code Ann§16-1-55; S.C.Code Ann§16-17-722(b). This occurred in Lee County while the plaintiff was housed at Lee County Correctional Center, in Bishopville S.C., in April 2004, and at Lieber Correction Inst., in Dorchester County May and or June of 2004, and the possibility exist the conspiracy is still in action awaiting the right opportunity to strike. Once the plaintiff was kidnapped, unjustly convicted and imprisoned, Cylena, Sylvia, Michael, Gert, Herbert Lee, and the Abrams, paid for hire and or contracted from the outside, other inmates to kill and or assassinate the plaintiff while incarcerated. Their plan, scheme, or attempt, was to make it look like the plaintiff was killed by a simple prison altercation that accidentally ended up in my death. People get kill in prison all the time. This was done to end my appeal process and prevent the plaintiff from getting free to go after evidence to criminally convict them and prevent civil action from being levied against them. Witness(es) tipped the plaintiff off to the assassination plot. The witness(es) told the plaintiff,"Priest, there's a hit out on you". What made the plaintiff know the threat was real, and not something conjured up was other information this person told the plaintiff. The plaintiff stayed to himself. I told or talked to no one about my case or conviction. I wasn't at Lee but for under 2 weeks then. The witness had specified personal information about me my family and my trial proceedings, that no one there should have known, was not in my S.C.D.C records, that was not noted in any media of any kind that only my immediate ex-family would or could have known. He knew the plaintiff had a scare on the outside of his left wrist independent of the injuries that resulted from my false imprisonment. He told a story, and or information, that was a variation of the lie Cylena Lee testified on the witness stand at the plaintiff's trial. Cylena Lee testified at the plaintiff's trial that the plaintiff would beat his deceased daughter with a stick, and always made her watch when this was done, that I made her watch and no one else every time this was done. This lie and perjured testimony was no in the papers or on the news in any fashion. The defendants gave the contracted assassins a variation of this lie told by Cylena Lee thus clearly tying her to the would be assassins. Nevertheless, the defendants even lied to the contracted assassins. The defendants attempted to make the plaintiff into a child molester. They lied to the assassins and did not tell the would be assassins that the plaintiff was convicted of murder. This also proves that had no knowledge of my case from the media, because if they did, they would have known the plaintiff was convicted for murder and not child molestation. They said the plaintiff was convicted for child molestation, because everybody knows child molesters don't do well in prison. Inmates would consider it a badge of honor to kill a child molester. Now the lie, story, and perjured testimony changes and instead of Cylena allegedly being made to watch me as I supposedly disciplined Korresha, now she in collaboration with the other defendants tell the assassins I would sexually assault "ALL" of my children, boys and girls alike, since they were all toddlers, and as I supposedly assaulted each child, male and female alike, I would make all the other children sit and watch

20

as I took turns sexually assaulting each child, every time I assaulted them. Gee!, by the God I serve! If I was one of the assassins that would have incited me to anger too. Everytime I think about these devils and these dogs, these "so-called" defendants, and what they did to my family the rage at times seems immeasurable. This child was one of the most sweetest young ladies I knew, that walked the planet. Now by their evils this woman foolishly made herself a part of a genuine murder plot behind a bogus homicide these devils conjured up. Now I got to put this girl who was once the delight of her father's eyes in jail. The people whom I once loved lives are now ruined as you ruined mine. This nightmare will never be over for me. Every day that I live I will be forced to live it knowing I had to put the most precious people who were once in my life in jail. Behind what you people did I will never know a day of happiness. I will hunt you devils down with the law until the last of my dying days until you are brought to justice. There is no place you can hide. No rock you can crawl under. I will not physical touch you. The trap and snare you set for me, will now be turned on you all, and I will see you imprisoned for the remainder of your days.

Referring back to this issue. This was a variation of the story Cylena told at trial tying her to the assassins. You had to be there to have known of it. Since the would be assassins came with this information, it made me know the threat was real. The plaintiff then asked the informant, "Who ordered and or contracted the hit?" The informant said, "Cylena and her peoples". Even though the other defendants may not have had direct contact in orchestrating the actual "hit". Fellers, Korley, Thomley, Meadors, Giese, Moake, and Tetterton, did have the influence and or clout to ensure that the plaintiff was sent to one of the worst institutions for violence in the state of South Carolina. With all the criminal acts perpetrated by them against the plaintiff in the courts, in their religious and racial hatred, and eminent risk of their imprisonment if the plaintiff ever get released, they do have motive. Shortly after the plaintiff was notified of the "hit", at Lee, that was scheduled against him, the plaintiff was mysteriously moved from Lee C.I. to Lieber C.I.. The plaintiff thought it was a godsend. Yet inside I knew if the threat was genuine no matter where I go it would follow me. I asked the case worker at Lieber why was I moved. The case worker said there was a "red flag" on my file. I asked her, "what did that mean?" It turns out that one of Cylena's relatives was employed at the Lee County facility. This appears to be the source of the assassins connection from the outside. The case worker would not tell me the name of the employee, but what she did tell me is that the person knew me even though I did not know him, the person said some horrific thing about me, and gave them the impression he or she could not control their rage if we both remained at Lee. The plaintiff contends this person whoever it may be, already contracted the "hit", and then placed information in his S.C.D.C. file to divert suspicion and make it appear they were being open if somehow the "hit" failed and he or she was exposed. This person did not expect S.C.D.C. to move as fast as they did, and before the "hit" was completed I was inadvertently move to early.

Approximately a month passed. One day the plaintiff

noticed an inmate got transferred, who was at Lee Correctional Center the short time the plaintiff was there. The plaintiff came into the cafeteria and over heard this transferred inmate talking about me, the alleged child molestation acts, and over heard his efforts to get addition help to fulfill the contracted "hit". Since the plaintiff was not a small guy, I guess they got a little scared when they realized my size, figuring one of them could not do the job alone. The plaintiff then brought the knowledge of the plot and what I overheard to the attention of the prison chaplain. He brought it to the attention of the warden. The warden brought it to the attention of an investigator, and then the incident and investigation was documented in the plaintiff's S.C.D.C. file. The plaintiff did not give the investigator the name of the informant. I was dealing with people who had an inside connection in S.C.D.C., and the life of this informant would have been placed in instant danger of assassination as my life was. The informant and other witnesses will be called to testify once the proceedings are confirmed in the court.

Nonetheless, by the accomplice liability doctrine "the hand of one is the hand of all". The plaintiff will not give the name of the confidential informant until this case is confirmed in the court, and the plaintiff can guarantee the he be moved out of harms way to avoid these devils trying to kill him too. This is a cruel, malicious criminal act, done in collaboration with the corrupt officials, under color of law, in violation of the plaintiff's rights to equal protection of the laws, in efforts to impede, hinder, obstruct, and defeat the due course of justice.

The defendants named above did conspire with each other and Dr. Joel Sexton, Janice Ross, John Fellers, Cort Korley, David Thomley, Jean Cato, Pam Company, Peggy Knox, Ann Millikin, Glen Rodger, Alma Parrish, John Meadors, Mr.Giese, and Mr. Moake, besides the Conspiracy to Commit Murder pursuant to S.C.Code Ann§16-15-20, did in malicious, criminal acts of gross negligence and deliberate indifference, did inflict pain upon the plaintiff as a pretrial detainee, in Camden S.C. from February 2000 until April of 2004, in violation of the plaintiff 8th and 14th amendment rights of the U.S. Constitution and the laws of Due Process. By Due Process law and the U.S. Constitution, a pretrial detainee [c]annot be subject to punishment of any description and or of any kind.City v. Revere, 463 U.S. at 244, 103 S.Ct. at 2983; Martin v. Gentile, 349 F2d 863, 870(4th Cir.1988) citing Bell v. Wolfish, 441 U.S. at 538-540, 99 S.Ct. at 1873-75. The defendants in acts of gross negligence and deliberate indifference, and committing acts of breaking the law, inflicted immeasurable psychological pain, suffering, as well as mental and emotional distress on the plaintiff as a pretrial detainee. It is well established that the unjust affliction of psychological pain and mental as well as emotional distress on the plaintiff as a pretrial detainee, and or negligence are cognizable and compensable under S.C. Tort Claim Act and or under§1983, even in absence of physical injury.Carey v. Piphus, 435 U.S. 247, 264, 98 S.Ct. 1042, 55 L.Ed.2d 252(1978); see Gray v. Spillman, 925 F2d 90, 94(4th Cir.1999)("noting that even in the absence of physical injury plaintiff may prove actual damages under§1983" based on

"mental suffering")(quoting Memphis Community School District v.
Stachura, 477 U.S. 299, 307, 106 S.Ct.2537, 91 L.Ed.2d 249(1986).

   In two opinions and a series of orders, the district court
enjoined numerous MCC practices and conditions. With respect to
pretrial detainees, the court held that because they are presumed
to be innocent and held only to ensure their presence at trial
"any deprivation or restriction****rights beyond those which are
necessary for confinement "alone", must be justified by
compelling necessity". United States ex rel Wolfish v. Levi, 439
F.Supp. 114, 124(1977) quoting Detainees Of Brooklyn House Of
Detention v. Malcolm, 520 F2d 392, 397 (C.A.2 1975). The
defendants must make a show of compelling necessity. You don't
jail a man to rob him and conspire to have him killed. Qualified
immunity is available to government officials and or witnesses
who are sued for damages under S.C. Tort and §1983 for their
performance of discretionary functions unless unlawfulness of
their acts or omissions were apparent in light of pre-existing
state and federal laws 42 U.S.C.A. §1983 Arnold v. South Carolina
Dept. Of Corrections, 843 F.Supp. 110.

   Insomuch, these deliberate and malicious acts perpetrated
against the plaintiff as a pretrial detainee nearly drove the
plaintiff out of his mind. The plaintiff suffers now from
insomnia even until this very day, and cannot sleep without
medication, due to the constant worry and anxiety to his wits
and, wondering whether the plaintiff's child is safe, whether or
not she's been repeatedly raped, due to the defendant's criminal
acts. Even until this present date Michael Lee has not prosecuted
for the repeated rape and sexual assault upon the plaintiff's
children. Also, Sylvia Lee has not been prosecuted for her
stealing of the plaintiff's assets. These acts were committed by
the defendants and parties listed, and were meant and designed to
punish the plaintiff way before he was ever convicted of a crime
behind religious and racial hatred. They were meant and designed
to inflict immeasurable psychological pain, distress, anguish,
and mental suffering on the plaintiff as a pretrial detainee.
Psychologist have recently completed a study on the prisoners
held at Guantonomo Bay and Abu-Grave. Their finding were that
psychological and mental torture was just as painful, just as
long term damaging as physical pain.

   In regard to the defendants and other parties conspiring,
counselling, aiding, abetting, etc., with the prosecuting agents
and pathologist in preventing documentation of the crimes. In
order to state a cognizable claim for mal-practice, a plaintiff
must allege acts or omissions sufficiently harmful to evidence
deliberate indifference to a serious medical need and or
requirement. The Court of Appeal for the 4th circuit has also
considered this issue in the case of Miltier v. Beorn, 896 F2d
848(4th Cir.1990). In that case the court noted that the
treatment, omission, and or act, must be so grossly incompetent,
negligent, inadequate, or excessive as to "shock the conscience",
or to be intolerable to fundamental fairness. Estelle v. Gamble,
429 U.S. 97, 107(1976); Farmer v. Brennan, 511 U.S. 825,
837(1994).

   The District Court relied upon the "presumption of

innocence and the right of a pre-trial detainee to be free from conditions of confinement that are not justifiable by compelling necessity 573 F2d at 124 Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600(1996); Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130(1971). The Court set provisions to determine whether an act amounts to punishment in one form or the other, the court described the test traditionally applied to determine whether a governmental act is punitive in nature:

   "Whether the sanction involves an affirmative disability or restraint, whether it has been historically regarded as punishment, whether it come into play only on a finding of scienter, whether it's operation will promote the traditional aims of punishment-retribution and deterence, whether the behavior to which it implies is already a crime, whether an alternative purpose to which it may be rationally is assignable for it, and whether it appears excessive to the relation of the alternative purpose assigned are all relevant to the inquiry and may often point in a specific direction Kennedy v. Mendoza-Martin supra, 372 U.S. at 168, 83 S.Ct. at 567; Fleming v. Nestor, 363 U.S. 603, 613-614, 80 S.Ct. 1367, 1374-1375, 4 L.Ed.2d 1435(1960) cf. Deveau v. Braisted, 363 U.S. 144, 160, 80 S.Ct. 1146, 1154, 4 L.Ed.2d 1109(1960).

   For these devils involved, to include the pathologist and corrupt officials, to take part in various capacities to the aforementioned crimes, to include Conspiracy to Commit Murder, Assault With Intent to Kill, Criminal Sexual Conduct, to interfere with, impede, hinder, and obstruct justice, in acts of unauthorized mutilation of the remains of an 11 year old child, and hide the repeated rape and sexual assault perpetrated upon that 11 year old child and her 10 year old sibling, and allow the perpetrator of the crime to again gain repeated and continual access to the victim "SHOCKS THE CONSCIENCE". Then to allow these criminal acts, these gross acts of negligence and deliberate indifference, to be used as a means to inflict punishment, distress and mental anguish on the plaintiff as a pre-trial detainee defy fundamental fairness. The defendants are not immune.

   These were cruel violent acts perpetrated, initiated and willfully intended to annihilate and destroy the plaintiff. The acts committed were maliciously done with full intent to oppress, defame, slander, deform, and destroy the character of, and destroy the plaintiff for his religious beliefs which were strange and unpopular to the parties involved. They used repeated acts of defraudment, treachery, thievery, falsifying evidence, perjury, prosecutional misconduct, suppressing evidence favorable to and that proved my innocence, and every wicked, wanton act that could be possibly conjured up under the sun, to include attempting and or conspiring to have the plaintiff murdered while falsely imprisoned to cover up their lawlessness, to prevent prosecution and or damages from being levied against them upon the plaintiff's release. They made every effort to maliciously, wrongfully and purposefully, inflict immeasurable pain, suffering, mental anguish, shame, degradation, and degeneration upon my soul, as well as eliminate every source of growth and or

productivity in life the plaintiff owned and or produced these acts of lawlessness expose the plaintiff's remaining minor child to continuous risk of rape and sexual assault from a psychotic individual, who would do anything to conceal and hide his evils from the scrutiny of the public eye, and the involved parties protected and aided him in doing so, to include having the plaintiff falsely imprisoned, kidnapped!, to protect themselves.

  The plaintiff was a Nazarite Priest, with a vow unto death of purity, separation, and consecration, like Samuel, Daniel, Samson, John The Baptist, and the Apostle Paul, found in the Book Of Numbers, a Messianic Jew, a vow unto death of not allowing his hair to be touched and or cut, a vow of not allowing myself to be polluted by being placed among prison population, with the wicked, perverted and abased and they all knew this. By my faith I was required to be willing to die before I allowed myself to be violated. All indication by their acts of defraudment, treachery, and cruel misconduct at breaking the laws of this state amount to this being their specific intent. Their attempt was to force the plaintiff to take his life, which attempt the plaintiff did make. This adds to the list of their numerous, negligent, criminal acts another count of Conspiracy to commit murder and Assault With Intent To Kill. If it were not for the guard finding the plaintiff before the plaintiff completed the act, the plaintiff would be dead today and the true perpetrator of my child's death would have gone unpunished. The plaintiff suffered and was unjustly made to endure irrefutable, irrevocable, irreparable damage to his hands, because he slit his wrist to keep his religious vow and behind the mental distress and psychological anguish. It's painful and difficult for the plaintiff to write, but in my righteous indignation against the injustice, tyranny, and oppression perpetrated against my soul, I will endure the pain and difficulty. I can't open tightly closed jars, or twist open objects without extreme difficulty or pain. Both my hands stay numb all the time, and I cannot hold objects in my hand for a prolong period of time without being in pain. It hurts to even clip my fingernails due to the extreme irreversible nerve damage that not even surgery could repair. I'm permanently scared as a daily reminder of my mental anguish and physical pain. I am permanently disabled due to their negligence. The plaintiff lost his home, land. cars, credit cards, and every single possession I owned in the world was in that house which was sold at auction. There was revenue that was lost that would have been made from the plaintiff's writings, a full length movie, a mini series, a full length animated feature like "The Lion King" done by Disney, over 100 pieces of music written by the plaintiff, most forever lost when my property was unjustly taken and auctioned. All was about to be placed on the market just before these devils criminally, unjustly, attacked me, but due to their negligence never made it. The plaintiff was embarking on a career as a writer, a scene play writer, song writer. Now with my hands being destroyed and or ruined, and the amount of difficulty and pain now involved in that enterprise that dream and vocation may now be ended, but at least most certainly hindered and or hampered. These materials never made it to the prospective designated companies and or market. There's no true way to determine the maximum income that was lost, but if we "goggle", it will give the average figures ventures on this level would bring. A successful movie and animated feature on the level of that which

was lost, the cost I alone can gross over 500 million dollars, and I had 2 such movies and an animated feature. This does not take into account the over 100 pieces of music or any other work that could have been written the time I remained Kidnapped. That places the plaintiff's potential losses well over a billion dollars.

The plaintiff had to undergo painful, tedious, physical therapy just to be able to get to the point of beginning to write again, all due to their negligence and evil. By what's right in the sight of God, these people need to be held in account for what they did. A clear message needs to be sent to this state, and any crooked corrupt official, who feels in his or her capacity they can act lawlessly under the color and guise of law, in criminal acts against the citizens of this state and country.

These in their ignorance, and cruel malicious indifference, towards what's right and justice, feel just because they are employees of the state, that they are above the law. They feel the can manipulate and terrorize law-abiding citizens to fulfil their own twisted, perverted means, fantasies and delusions of grandeur, deeming themselves God, judge, and jury, breaking every law imaginable to falsely imprison, kidnap, and bring someone to their perverted sense of corrupt justice. They made a farce and mockery of our judicial system, and what's right before God and His Holy Angels, they must not go unpunished. It could have just as easily been your child, your son, your daughter, your brother, father, or mother. It could have been you they did this to. Because they done these acts without the slightest bit of remorse or conscience, God knows how many others they've done this to. Somebody needs to have the courage and Love of God to put a stop to it. Let it be done here. Let this damnable breach be repaired, right now, in this court. For the sake of justice and fairness to the citizens of this state, and even this country, bringing these snakes to account must not be neglected. These people are a form of terrorist; modern day indigenous terrorist rooted deeply in our government, state judicial system and society. They are terrorist who by their nefarious intentions and corrupt enterprise decide to hold hostage and blow up like some fanatic suicide bomber an individual's life. A life they highjacked, captured by force, kidnapped, and like some jetliner ran it into the World Trade Center, in the form of our Constitution, the inalienable rights of all citizens, and the integrity of our judiciary. This must not be allowed! Someone needs to teach these devils they are not above the law, and their criminal acts and negligence will not be tolerated. These people are no better than "Al Qeida" and the corrupt regimes that permeate the Islamic Peninsula, and those ignorant Islamic fundamentalist whose only goal is to plant the seeds of decay, death, and destruction of our judicial system. They must be made to answer for their crimes, carving up like a pig, desecrating the dead remains of an 11 year old african american child behind religious and racial hated.

Insomuch, due to their negligence, my child, my beloved child,...I missed half of her life. The times a young girl really needs her father present, encouraging her, supporting her, guiding her, teaching her, loving and nurturing her in her preteen and teen years. These are the times where she would have

26

faced her toughest challenges. She would have faced the toughest decisions related to morality, her religious beliefs, and the various other aspects of human life. Yet in their evil and wickedness they took my being there from me. They took my being there from her. It can never be returned or given back to either one of us. Her graduation; her sweet sixteen birthday; her first day of high school; her first crush; her first date; training and teaching her in sports, academics; teaching her to drive; taking her to concert or recitals; teaching her music by instrument or chorus; laughing together during the victories and joys of those years; crying together during the seeming defeats or struggles of those years; the time a father becomes a friend to his daughter and not just a father, I weep as I write, all have been taken from me, taken from her, never to return, never to be given back. They barred me unjustly by the use of falsified and court order from even writing her, even letting her know I'm thinking about her, missing her, and praying for her. I weep. You have no idea the magnitude and nature of the hurt, pain and suffering that by their evils they've caused me, inflicted upon my soul by their criminal deeds. Psychologist have determined that the human personality changes gradually every 6 months. Now she who is my child has become a stranger, and the man and father who loved, nurtured, and raised her has now become a fading shadow, a distant long lost and forgotten memory. No amount of money in the world would be enough to repair the amount of damage and harm these snakes caused my life, or be equivalent to what I lost. There are no women in the history of my life that I loved more than the 2 women, once of my household, who shared a portion of my meat, now lost, gone! And I'm forced and made to destroy them, jail them, for their part in this evil deception. A man who loves God, must exact justice and what's right even if it's against those of his own household who would pervert such justice. If I place them before the righteousness of God then I failed as a servant of God. The thought of what must be done consumes me with sorrow. My only hope and comfort may be that the amount given be of such a magnitude, and of such a nature that it will send a clear message to all those perverted souls, who would under the color of law, seek to repeat such evils and lawlessness against the citizens of our state, and or country, whose democracy grant them the right to be secure in their homes, and in the free exercise of their religious beliefs without fear of injustice or unwarranted attack. The parties involved in these injustices have driven the plaintiff to the point of death and or insanity a billion times over, The plaintiff until this day, still don't understand how in the world he did not go totally out of his mind, or how he survived these cruel ruthless acts perpetrated by the parties in their lawlessness. Surely there is a God, and somehow by His love, grace and mercy He sustained me. By the time I see my daughter she will be a grown woman who I won't know. Their money means nothing to me, it's blood money! You could never put a price on what I've lost, on what they stole from me. My only hope is somehow I'll be able to take what's given, by God's mercy, and use it for the total betterment of mankind to end some of the pain and suffering that presently presents itself in this seemingly, decaying, uncarring world that others are experiencing. Due to the irreparable damage done to my hands and wrist, as well as old and new spiritual wounds, it took me an extremely long time to prepare this document. It was first

27

written in pain, then the court told me I had to make the claim more definite. The psychological pain made it impossible for me to do. I had to dictate in tears as someone typed it for me. It causes me great mental and physical pain. Nevertheless in it's completion my soul is satisfied. Maybe, even though, in my soul the plaintiff knows he'll never be completely healed from the many hurts and pains, but maybe in my affliction I could end someone else's suffering. If so, let God's will be done and as Job said in the old testament,"though He slay me, yet will I trust Him".

In regard to tolling the statute of limitations. The plaintiff is kidnapped. The issues presented are connected to that kidnapping. Kidnapping is a continuous offense. It commences from the time the plaintiff is wrongfully imprisoned and does not stop until the time freedom is restored State v. Sutton supra. Also the plaintiff suffered a disability that resulted from the negligent acts of the parties involved. The plaintiff was not able to prepare documents of this nature until on or about December 2005. The statute of limitations would not commence to run against a plaintiff laboring under this present disability until such disability is removed Fricks v. Lewis, 26 S.C. 237, 1 S.E. 884(1887); Rowe v. Shcreiber, 139 F3d 1381, 63 Cr.L. 201(11th Cir.1998). Therefore the plaintiff is well within the boundaries of the statue of limitations to place forth claims of negligence, deliberate indifference, as well as psychological and or physical pain, also as it relates to distress and mental anguish. In order to recover damages for distress and mental anguish, and emotional injury suffered while in custody a plaintiff must first establish physical injury. The loss of monies, home property, crimes against myself and my children, damage to my hands, and the rest establish tangible and physical injury requiring payment for damages. see 42 U.S.C.§1997(e)(e) Henderson v. Sheahan, 196 F3d 839, 848-849 (7th Cir.2000). The plaintiff met the burden. Compensatory damages for mental and emotional distress causing physical injury, as it relate to negligence are proper under S.C. Tort Claim Act or under §1983 Daskalea v. District Of Columbia, 227 F3d 443, 444 (D.C.Cir.2000). Pursuant to Flateau v. Harrelson, 355 S.C. 197, 584 S.E.2d 413(Ct.App.2003), there can be no misunderstanding as to whether the plaintiff has a claim under the S.C. Tort Claim Act. The validity of the claim is clear.

The plaintiff hereby motions in pursuant to S.C. Rules of Civil Procedure Rule 57 and or S.C.Code Ann§15-53-10 through §15-53-140 for Declaratory Judgment and or Relief. The Declaratory Judgment Act should be liberally construed to accomplish it's intended purpose of affording a speedy and inexpensive method of deciding legal disputes and of settling legal rights and relationships, without awaiting a violation of the rights or a disturbance of the relationship Pond Place Partners Inc. v. Poole, 351 S.C. 1, 567 S.E.2d 881(S.C.App.2002). To state cause of action under the Declaratory Judgment Act, a party must demonstrate a justiciable controversy. This is all that is required. Holden v. Cribb, 349 S.C. 132, 561 S.E.2d 634(S.C.App.2002). A justiciable controversy When a concrete issue is present, there is a definite assertion of legal rights and a positive legal duty which is denied by the adverse party

Pond Place Partners Inc. v, Poole supra. Therefore this confirms the court's jurisdiction. Power v. McNair, 255 S.C. 150, 177 S.E.2d 551. The fact that other remedies are available does not preclude the granting of a declaratory judgment, but are factors to be considered by the court in the exercise of it's discretion Bank Of Augusta v. Satcher Motor Co. supra

Insomuch, when there exist a genuine controversy requiring judicial determination the court is not bound to refuse to exercise it's power to declare rights and other legal relations merely because there is another remedy available construing another former similar provision(1942 Code§660) Souther Ry. Co. v. Order Of Ry. Conductors Of America, 210 S.C. 121, 41 S.E.2d 774(S.C.1947). The fact that other remedies may exist and that other remedies may be available to the plaintiff are factors to be considered by the court. However, before declaratory relief may be denied in the discretion of the court on the grounds of the existence of other remedies, it must clearly appear that the asserted cumulative remedies are not only available to the plaintiff, but they are "speedy",and "adequate", as well as "suited" to the plaintiff's needs as declaratory relief costuing a former similar provision Southern Ry. Co. v. Order Of Ry. Conductors Of America supra.

With the defendants and parties involved compromising the plaintiff's appellate counsel and falsifying the trial transcript, a lot of the issues are no longer preserved for appellate review and the plaintiff's appellate process is stuck in limbo. Yes, there may also be the pending Writ Of Habeas Corpus, but the provisions and guarantee of those proceedings are not certain and even if it is late established it will not provide a "speedy" and "adequate means to obtain and go after that evidence before the parties involved make a criminal attempt to destroy or compromise it. The issues of controversy are the same issue previously highlighted in the plaintiff's first complaint. Since those issues of controversy were clear definite and certain the plaintiff did not list them again. The existing remedies are not "speedy", "adequate", or "suited" for the plaintiff's needs. The court can also see the issues of controversy that require declaratory judgment in the Motion to Motion filed in civil case No. 06-CP-40-0549 on page(s) 10 through 21 of that document.

Inasmuch, granting further relief based upon Declaratory Judgment in pursuant to S.C.Code Ann§15-53-120(A), declaratory judgment or decree may be granted whenever necessary or proper. The application and or motion therefor shall be by petition to the court having jurisdiction to grant it. Each day the plaintiff remains incarcerated, kidnapped by these devils he is at risk of being assassinated. The threat though dormant is not gone. If the application, petition, or motion be sufficient the court shall, on reasonable notice, require an adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why further relief should not be granted forthwith Bank Of Augusta v. Satcher Motor Co. supra.

The plaintiff motions, request, and exercise his right to have a jury hear these issues to ensure fairness to all involved parties in pursuant to Rules of Civil Pro. Rule 38(a)(b).

The plaintiff hereby notify the court that this is a pendent or supplement jurisdictional case. The gross negligence, deliberate indifference, and false imprisonment issues will be heard in the Court Of Common Pleas. The U.S. Constitutional issue will be raised in the U.S. District Court.

The plaintiff motions for subpeonas in pursuant to S.C. Rule Of Civil Procedure Rule 45, and Ms Jeanne Hanna, the manger at the Dept. Of Social Services in Camden S.C. be called to appear and release the address of the other defendants, thereupon subpeonas be issued requiring them to appear. The plaintiff made this request is his first complaint and makes it again to include motioning for an extension of time in order to serve them. The plaintiff originally made this request well within the 120 days required for service in the last complaint.

In referring back to the actions of the defendants and other parties involved. The defendants failed to follow state as well as applicable federal law, and their own policies. Due to this they are not immune Clark v. S.C.Dept. Of Public Safety, 353 S.C.291, 598 S.E.2d 16. Pursuant to S.C.Code Ann§15-78-70(b), actual fraud, actual malice, intent to harm, or crimes involving moral turpitude are excluded from immunity.

The defendants were grossly negligent. Gross negligence is the intentional conscious failure to do something which is incumbent upon one to do, or the doing of a thing intentionally, that one ought not to do, It is also the failure to exercise slight care. Jinks v. Richland County, (S.C.2003) WL21910551. Malicious acts are excluded from immunity. Pritchette v. Lanier, (1991), 766 F.Supp. 442. As stated by Atty. Gen. Gonzales when it referred to dealing with President Bush, "No one is above the law". Immunity protects all, except the grossly incompetent, and or negligent, and those who knowingly break the law. Malley v. Briggs, 475 U.S.335 (1986). Prosecutors, state agents, police, Judges, etc., who under color of law, willfully deprive individuals of constitutional rights, break the law, and who are negligent, may be punished criminally and or in a civil action. Brisco v. Lahue, U.S. Ind. 1983, 103 S.Ct.1108, 460 U.S. 327, 75 L.Ed.2d 96. Private persons can be convicted for acts of negligence and or conspiring to deprive victims of civil rights, on allegations of collaboration with police or state agents, despite private persons incapacity to act under color of law. United States v. Lester, C.A.6 (KY) 1966, 363 F2d 68 cert. denied 87 S.Ct.705, 385 U.S. 1002 L.Ed2d 542 rehearing denied 87 S.Ct.951, 368 U.S.938, 17 L.Ed.2d 813. The Supreme Court held that all acts of the state are automatically under "color of law" no matter what the substantive rule. see Lugar v. Edmondson Oil Co., 457 U.S. 922, 928-30, 102 S.Ct.2744, 2749-50, 73 L.Ed.2d 482(1982).

In pursuant to 18 U.S.C.§1001 (1988 Ed.) provides:

"Whoever, in any manner, within the jurisdiction of any department or agency in the United States, knowingly and willfully falsifies, conceals, or cover up by any trick, scheme,

30

or device, a material fact, or make use of any false, fictitious or fraudulent statements or representations, or make use of any false writing or document, knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000.00 or imprisoned not more than 5 years or both".

This covers false statements or documents of any kind to include those falsehoods that pervert governmental functions. United States v. Gonzales, 520 U.S. 1, 5(1997); Brogan v. United States, 522 U.S. 398 (1998); United States v. Gilliland, 312 U.S. 96 (1941).

Pursuant to 42 U.S.C.§1985(2) provides:

"If two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating in any manner, the due course of justice, in any state or territory, with the intent to deny any citizen the equal protection of the laws, or to injure him in his property for lawfully enforcing or attempting to enforce the right of any person, or cause of a person, to the equal protection of the laws, an action for damages will lie" Brawer v. Horowitz, 535 F2d 830, 836-37(3rd Cir.1976).

Referring back to the issue of Breach Of Trust With Fraudulent Intent, pursuant to S.C.Code Ann§16-13-230, as it pertains to the defendants stealing the plaintiff's assets. To constitute the offense as to money and or property, there must be an appropriation thereof, accompanied with the fraudulent purpose to destroy the right of the true owner. State v. Butler,(1884) 21 S.C. 353; Bell v. Clinton Oil Mill, (1924) 129 S.C. 242, 124 S.E. 7. A breach of trust is when personal property and or monies of appreciable value and of which larceny may be committed is put into the possession of another; and when it is so put in her possession it becomes a trust, and while it so remains if she conceives the purpose to convert that property and or monies to her own use, and does it with the intent to deprive the owner of that property and or monies, then that is breach of trust with fraudulent intent. State v. Shirer, (1884) 20 S.C. 392. Breach of trust is larceny after trust, which includes all the elements of larceny, or in common parlance, stealing, except the unlawful taking at the beginning. State v. Owings, (S.C.1944) 205 S.C. 314, 31 S.E.2d 906.

All the issues thus presented produce evidence of guilt of the defendants, even prima facie, and or circumstantial. Regarding the defendants as to whether they did a particular act, knew of an act, or assisted in an act. Mere presence or a single act will suffice to support conspiracy conviction if circumstances permit inference that presence or act was intended to advance ends of the conspiracy, even though mere presence or mere association with conspirators will not itself support conspiracy conviction, U.S. v. Brinkley, 903 F2d 1130. The benefits of this conspiracy, and or aims, was to conceal Michael Lee's Sexual assault upon the plaintiff's children to keep him from being prosecuted; to steal the plaintiff's assets to prevent the plaintiff from getting free to go after evidence that would

31

be used to punish them criminally and used in civil action for kidnapping and other unlawful acts, to include bringing to account the acts of gross negligence and deliberate indifference on the part of the defendants. This shows a specific illegal objective, U.S. v. Schmidt, 947 F2d 362. To withdraw from conspiracy, the conspirators must do more than simply cease activity; there must also be affirmative action, and they making a clean breast to authorities, U.S. v. Zarnes, 33 F3d 1454. Not one defendant involved took affirmative action, nor did they make a clean breast to authorities once given notice by all the numerous filed documents in the court highlighting their acts. The burden of proving such is on the defendants, U.S. v. Granados, 962 F2d 767. Under Pinkerton theory of liability, conspirators can be held responsible for substantive crimes committed by his co-conspirators to extent those offenses were reasonably foreseeable consequences of acts, furthering unlawful agreement, even if he did not himself participate in substantive crimes. Since we are dealing with people who they knew already falsified court documents, it's reasonable to know they would falsify a trial transcript, especially after falsifying an autopsy. Since we are dealing with a cover up in an falsely alleged homicide, it's reasonable to believe these people would plot to kill the plaintiff to avoid prosecution. Also see S.C. Accomplice Liability Doctrine, "The hand of one is the hand of all". U.S. v. Masotto, 73 F3d 1233 cert. denied 117 S.Ct. 54, 136 L.Ed.2d 18; U.S. v. Bruno, 873 F2d 555 cert. denied 110 S.Ct.125, 493 U.S. 840, 107 L.Ed.2d 86; State v. Chavis, 277 S.C. 521, 290 S.E.2d 412(1982); State v. Hill, 268 S.C. 390, 234 S.E.2d 219(1977) cert. denied 434 U.S.870, 98 S.Ct.211, 54 L.Ed.2d 147(1977); State v. Nicholson, 221 S.C. 399, 70 S.E.2d 632(1952); State v. Legette, 285 S.C.465, 466, 330 S.E.2d 293, 294(1985); State v. Gilbert, 107 S.C.443, 446, 93 S.E.125, 126(1917); State v. Jennings, 515 S.E.2d 107(S.C.App.1999).

The "overt act" in conspiracy charges functions essentially to show the object of the conspiracy, and to show that the conspiracy is at work. There are numerous overt acts here, to include Breach Of Trust, falsifying documents, Incest, Criminal Sexual Conduct, Assault With Intent To Kill, Conspiracy To Commit Murder, avoiding prosecution, etc., even under color of law, U.S. v. Arboleda, 929 F2d 859. Under S.C.Code Ann§16-17-410, criminal conspiracy may be complete without proof of overt acts, such acts may nevertheless be shown. To establish sufficiently the existence of the conspiracy, proof of an expressed agreement is not necessary, and direct evidence is not essential, but conspiracy may be shown by circumstantial evidence, and the conduct of the parties and or defendants may consist of concert of action, State v. Fleming, (1963) 243 S.C. 265, 133 S.E.2d 800; State v. Lagerquist, (1971) 256 S.C. 69, 180 S.E.2d 882 cert. denied 404 U.S. 852, 30 L.Ed.2d 91, 92 S.Ct. 89; State v. Pluckett, (1960) 237 S.C. 369, 117 S.E.2d 369.

Inasmuch, the documents filed in the Kershaw County Courts clearly show all the defendants knew, they had knowledge. Instead of making efforts to correct these grossly negligent and criminal acts, in one way or the other, they continually made themselves a part of these malicious criminal acts. Pursuant to 42 U.S.C.§1986

provides:

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in the preventing of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured, or his legal representative, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful acts or refusal "MAY BE JOINED AS DEFENDANTS IN THE ACTION".

This is the lynch-pin language by conspiracy and §1986 that the defendants are liable and can be added as defendants in this action. Such a case should not be dismissed from the courts. To do so would present a manifest injustice, and or miscarriage of justice affecting the plaintiff's substantial rights. It would call into question the fairness, integrity, and public reputation of our judiciary, and cannot be allowed, <u>United State v. Promise</u>, 255 F3d 150(4th Cir.2001).

In order to establish a claim of negligence, the plaintiff must prove a duty of care owed by the defendants to the plaintiff, a breach of that duty by the defendants negligent acts and or omissions resulting in damages and the result of the acts. If the facts and inference drawn from the facts alleged on the complaint would entitle the plaintiff to relief on any theory, then the grant of a motion to dismiss for failure to state a claim is improper. <u>Bergstrom v. Palmetto Health Alliance</u>, 352 S.C. 221, 573 S.E.2d 805(S.C.App.2002); <u>Baird v. Charleston County</u>, 333 S.C. 519, 511 S.E.2d 69(1999); <u>Gentry v. Younce</u>, 337 S.C. 1, 522 S.E.2d 137(1999).

ADDITIONAL RELIEF SOUGHT:

There are 4 different medical issues they played a part in, in one form or the other. The plaintiff seeks 1.2 million for each offense. There are 16 different non-medical acts. The plaintiff seeks 300k in damages for each act. The plaintiff motions for an order and or injunction requiring that this case be left open to address any other issues that may come up in the near future that may have somehow been forgotten or overlooked in this action. The plaintiff motion for an order and or injunction requiring Sylvia Lee to return to the plaintiff his personal jewelry, the charm bracelet, wedding set, electronic equipment she stole,, and any of the plaintiff's clothing she has in her possession or replace these items. The plaintiff motions for an order and or injunction, left in place for the remainder of the plaintiff's life requiring the defendants to be responsible for any medical cost of any kind that may be needed as a result of their criminal acts. The plaintiff motions for an order and or injunction cancelling the restraining order placed on the plaintiff in case No. 02-DR-28-0065, and that the plaintiff's daughter and the plaintiff be brought to a designated place where to plaintiff can talk to and embrace his child without restraints. She is in no danger from her father. Her

33

Father loves her and just wants to see her.

THe plaintiff hereby motion to expand the record with the following:

*The plaintiff motion for an order and or injunction requiring SLED F.O.I. Dept. to release the SLED file No. 55010014, all documents contained therin, all 300+ pages.

*The plaintiff motions for an order and or injunction requiring the Kershaw County Coroner's Office, and or John Fellers, to return "ALL"(emphasis added) DNA samples taken from the plaintiff's daughter Korresha Crawford, and they be forwarded to the U.S. District Court to be held at a federal facility in the Writ of Habeas Corpus case, until the plaintiff can arrange to have them tested specifically by the lab the plaintiff has already chosen in the U.S. District Court case pending against these defendants.

*The plaintiff motions for an order and or injunction requiring the Kershaw County Clerk of Court to forward to the court and plaintiff a copy of all the documents filed in case(s) No. 01-Dr-28-0065; 02-DR-28-098; G646899, 900, and 901, to include all records file the the cases against Sylvia Lee and Cylena Lee.

*The plaintiff motions for an order and or injunction requiring the 5th Circuit Solicitor's Office and or Att. General to forward a copy of the supposed search warrant that was used to obtain the evidence seized from the plaintiff's home.

*The plaintiff motion for an order and or injunction requiring the S.C. Attorney General' Office to obtain the audio to the plaintiff's trial proceedings and a reconstruction hearing be convened to examine to audio, and compare it ti the presented trial transcript.

All the aforementioned is a part of the relief sought in this action. They are issue that produce controversy, and present a requirement by duty of the defendants involved in total, so the plaintiff is permitted in fundamental fairness and to place back on track the due course of justice to request and to be granted each item of concern. The plaintiff seeks that the Court rule on each concern and or issue in pursuant to S.C. Rule(s) 59(e) and 15(b). The plaintiff prays the Honorable Court Of Common Pleas will grant these request.

RESPECTFULLY SUBMITTED
LAWRENCE CRAWFORD

MARCH 6,2007

34