1                    UNITED STATES DISTRICT COURT

2                    DISTRICT OF MASSACHUSETTS (Boston)

3                              No. 1:14-cv-14176-ADB

4

5    STUDENTS FOR FAIR ADMISSIONS, INC.,
             Plaintiff

6

7    vs.

8

9    PRESIDENT AND FELLOWS OF HARVARD COLLEGE, et al
             Defendants

10

11                         * * * * * * * * *

12

13

14               For Zoom Hearing Before:
                 Judge Allison D. Burroughs

15

16                    Status Conference

17               United States District Court
                 District of Massachusetts (Boston.)

18               One Courthouse Way
                 Boston, Massachusetts 02210

19               Friday, December 9, 2022

20

21                         * * * * * * * *

22

23          REPORTER: RICHARD H. ROMANOW, RPR
                    Official Court Reporter
                    United States District Court

24    One Courthouse Way, Room 5510, Boston, MA 02210
                    bulldog@richromanow.com

25

```
 1                    A P P E A R A N C E S

 2

 3   ADAM K. MORTARA, ESQ.
        125 South Wacker Drive
 4      Suite 300
        Chicago, IL 60606
 5      (773) 750-7154
        E-mail: Adam@mortaralaw.com
 6   and
     PATRICK STRAWBRIDGE, ESQ.
 7      Consovoy McCarthy PLLC
        8th Floor, South, PMB #706
 8      Ten Post Office Square
        Boston, MA 02109
 9      (617) 227-0548
        Email: Patrick@consovoymccarthy.com
10      For Plaintiff

11

12   FELISHA H. ELLSWORTH, ESQ.
     MICHELLE SANDER, ESQ.
13      Wilmer Cutler Pickering Hale and Dorr, LLP
        60 State Street
14      Boston, MA 02109
        (617) 526-6000
15      Email: Felisha.ellsworth@wilmerhale.com
     and
16   ARA B. GERSHENGORN, ESQ.
        Harvard Office of the General Counsel
17      Smith Campus Center, Suite 980
        1350 Massachusetts Avenue
18      Cambridge, MA 02138
        (617) 495-8210
19      Email: Ara_gershengorn@harvard.edu
        For Defendants

20

21

22

23

24

25
```

1      P R O C E E D I N G S

2      (Begins, 2:00 p.m.)

3      THE CLERK:  Civil Action 14-14176, Students for

4  Fair Admissions versus President and Fellows of Harvard

5  College, et al.  Would counsel identify themselves for

6  the record.

7      MR. MORTARA:  This is Adam Mortara for Student For

8  Fair Admissions, with me is my colleague, Patrick

9  Strawbridge of Consovoy McCarthy.

10      MS. ELLSWORTH:  Felicia Ellsworth and Michelle

11  Sander of Wilmer Hale, and for Harvard is Ara

12  Gershengorn from the Office of General Counsel at

13  Harvard.

14      THE COURT:  Okay.

15      So, guys, I just got back from a meeting last

16  night and I read your submissions, but what I did not

17  have time to do is go back and look at each page of the

18  transcript to which the letters correspond.  So, um, I

19  guess my apologies for my semipreparation today.  But I

20  know you both had additional arguments to make that

21  wasn't contained in the letters, so I thought that we

22  could do that today and then I could circle back on any

23  transcripts that weren't -- that were still not agreed

24  to.

25      Let me just see if I can take, um, a couple of

1    these.  There were some that -- and I don't know who is

2    going to talk, Mr. Strawbridge or Mr. Mortara, either

3    one of you, but SFFA didn't seem to respond to.  As an

4    example the discussion -- this is on Day 9, like I think

5    it's a 23 -9 --

6         MR. MORTARA:  Yes, your Honor, Mr. Strawbridge can

7    speak to that.

8         THE COURT:  So that's the one about the mom

9    getting surgery, where the mom lives, all of that?

10        MR. STRAWBRIDGE:  Yes, your Honor.

11        The reason we didn't respond to that is we had

12   conferred with Harvard's counsel before, we had checked

13   with Mr. Arcidiacano and he did not feel that that

14   needed to be sealed, um, and so we informed Harvard that

15   we did not think that that was necessary to keep that

16   under seal.  I did not realize they were still going to

17   seek to seal it, so, um, that's the only reason it

18   wasn't in our letter.

19        THE COURT:  So, Ms. Ellsworth, given the position

20   of the witness, do you still want that sealed?

21        MS. ELLSWORTH:  Yeah, we thought it was consistent

22   with the position we're taking that family member

23   medical information should be sealed.  So from our

24   perspective that should remain sealed as well.  If the

25   witness doesn't object and SFFA doesn't object, we don't

1    have a problem with it remaining public, but from a sort

2    of consistency point of view we thought it was the same

3    argument as to why that should remain sealed.

4         THE COURT:  All right.  Well if he doesn't care,

5    I'm going to unseal that.

6         And then, Ms. Sander, there's one other one.

7    Let's see.  (Reads.)  I thought there was one other one

8    that SFFA didn't respond to.

9         (Pause.)

10        All right.  Ms. Ellsworth, on, um, Day 12, 6-20 to

11   7-1, um, what's the rationale on keeping that sealed

12   since it has no identifying information?

13        MS. ELLSWORTH:  It's a specific reference to --

14   no, it doesn't have any identifying information, but in

15   connection with the surrounding conversation that this

16   is an e-mail somebody sent to Dean Karona, we thought it

17   could become clear at least to that individual, um, what

18   this was about.  I agree it doesn't reveal any specific

19   information.  But the context we thought brought it a

20   little closer to the line of somebody realizing that

21   they were being discussed about in court.

22        So it's not -- it really doesn't have to do with

23   what surrounds it as much as the fact that it actually

24   exposes the name and identity of an applicant.

25        THE COURT:  All right, I have to go back and take

1    a look at that.  Um --

2         MR. STRAWBRIDGE:  I'll just briefly say, your

3    Honor, not to bother the point too much.

4         THE COURT:  Go ahead.

5         MR. STRAWBRIDGE:  But because it -- obviously

6    students prepare applications and I think your Honor and

7    Harvard are in agreement that an applicant identifying

8    information should remain private, but, um, you know we

9    think that stuff that's close to the line is probably

10   not going to be sufficient under the standard that

11   applies here.  And that -- and I think we're in

12   agreement that it's not actually identifying.  So your

13   Honor obviously will take a look and make your decision,

14   but that's our view.

15        THE COURT:  Yeah, I'm inclined to agree with you

16   but I just want to take a look at it before I rule on

17   it.

18        MR. STRAWBRIDGE:  Understood.

19        THE COURT:  What did we start off with under seal,

20   is it 175 pages?  Do I remember that right?

21        MS. ELLSWORTH:  It's 175 or 140.  Let me just

22   double-check here.  In terms of the sidebars.  There's

23   145 pages of sealed sidebars.

24        THE COURT:  All right.  And given -- how many

25   pages continue to be in dispute?

```
 1        MS. ELLSWORTH:  I'd have to count them up, your
 2   Honor.
 3        THE COURT:  All right.  I just thought someone
 4   might know.
 5        MS. ELLSWORTH:  Numbers on the fly is not my
 6   strong point.
 7        THE COURT:  No, you don't need to count the
 8   number.  I'm just trying to figure out what percentage
 9   has been agreed to now and what's left?
10        Are we left with a small chunk or a big chunk?
11        MS. ELLSWORTH:  Small, I think it's between 25 and
12   30 pages, but not the entirety of each of those pages.
13   We'd be happy to submit sort of a highlighted version of
14   this if that would aid your review, we could send that
15   by e-mail or submit it under seal.
16        THE COURT:  I was going to have my law clerks do
17   it and I'm happy to have my law clerks do it, unless you
18   guys have already done it.
19        MS. ELLSWORTH:  We have already done it.  And we
20   shared that with SFFA.  We're happy to send that in.
21        THE COURT:  Mr. Strawbridge and Mr. Mortara, are
22   you guys okay with them sharing that so I don't have to
23   --
24        MR. MORTARA:  That's absolutely fine with us, your
25   Honor.  The remaining materials I think falls into only
```

1    three sort of subject matters that are scattered across

2    the transcripts.

3            THE COURT:  All right.  So how are you putting

4    those?

5            MR. MORTARA:  There's an exchange with the Office

6    of Civil Rights at the Department of Education.

7            THE COURT:  Yeah, the OCR discussion.

8            MR. MORTARA:  There's, um -- and I will try to be

9    objective about it.  There is the mistaken

10   factually-erroneous testimony given by various Harvard

11   witnesses about the documentation of the use of race at

12   the Harvard admissions office necessitating their return

13   to court and various discussions of that including a

14   discussion about the fact that at least one of Harvard's

15   lawyers knew that those statements were false when they

16   were made.  We'll call that the McGraf Fitzsimmons

17   discussion.

18           And then there is of course the very serious

19   allegation made by Mr. Lee that I took advantage of the

20   suicide of Dean Karona's brother in cross-examining him,

21   including Mr. Lee's statement that it was so public that

22   you could find in it Google in two seconds, your Honor's

23   later statement a couple of days later that that was not

24   in fact the case, and subsequent to that, confusingly to

25   me, Harvard is still saying this is private information,

1    Dean Karona penned a 2019 article in the Harvard Crimson

2    discussing his brother's suicide.  I don't understand

3    how it's private.  I'm really confused about this one.

4         THE COURT:  Okay.  So I have basically the same

5    three categories that you do.  I just want to make sure

6    we're on the same page about that.

7         Ms. Ellsworth, is that a fair characterization

8    from your perspective?

9         MS. ELLSWORTH:  Yes.  Well I don't know if it's a

10   fair characterization.

11        THE COURT:  We have the other three groups of

12   evidence that are left.

13        MS. ELLSWORTH:  If they're accurate, yes.

14        THE COURT:  Okay.

15        So, um, let's start with Dean Karona because that

16   does seem to be the most straightforward.

17        Is that -- I don't think that's private

18   information anymore, but I take it you're feeling that's

19   consistent with your general view about personal

20   information, like the, um, is that where we are on this?

21        MS. ELLSWORTH:  That's correct, your Honor.  It is

22   true that Dean Karona has been written about this

23   publicly, I think the privacy interests here is that of

24   Dean Karona and his family and the discussions

25   surrounding it at the sidebar which is different than a

1    self-authored sort of discussion about what that means

2    to him.  So I think it's different in kind from the fact

3    of the information.  The fact may have been public, we

4    said that at the time, it's true again now, the

5    discussion surrounding it, and this is the discussion of

6    the impact that may have had on Dean Karona when that

7    was brought up is -- that's just different in kind from

8    the fact that the information itself is public.  And so

9    we think it should remain under seal to protect Dean

10   Karona and his family's privacy interests.

11        THE COURT:  All right, I'm going to take a look at

12   that again but, um, because I can't remember -- if it's

13   just the fact of the suicide, I tend to agree with

14   Mr. Strawbridge and Mr. Mortara.  But, um, I can't

15   remember exactly what was disclosed in a more subjective

16   way about that, so I'll go back and take a look at that

17   as well.

18        MR. MORTARA:  Please do, your Honor.

19        MS. ELLSWORTH:  What's discussed is the impact the

20   questioning about that may have had on Dean Karona.

21        I also would just sort of point out that the

22   relevance to this case of that information is, as we

23   discussed at the sidebar and remains to be the case, is

24   lacking, altogether lacking, and so that's part of the

25   inquiry that I think the Court has to undertake in

1   determining whether it should remain under seal.

2        THE COURT:  I mean do you think that relevance is

3   it part of the inquiry?

4        MS. ELLSWORTH:  I think an important part of the

5   inquiry.  I think there's a sliding scale of importance

6   of the case to the public as well as protecting privacy

7   interests, it's a balancing, and that's within your

8   discretion as you know.

9        MR. MORTARA:  Your Honor, may I speak?

10       THE COURT:  Yup.

11       MR. MORTARA:  Your Honor, I can almost understand,

12  your Honor makes one comment about your Honor's

13  perception of Dean Karona's demeanor that first day, I

14  could almost understand that comment being sealed.

15  Almost.  I don't think it should.  But I can almost

16  understand that.  I fail to understand how a frankly

17  reckless and false allegation made about me by Mr. Lee

18  needs to be kept under seal when he is the one who made

19  it.  He called us the night before and told us about

20  this.  We told him straight up that we had no idea about

21  this.  He brings it into court.  He puts it on the

22  transcript.  He says things that are untrue.  And then

23  later on, your Honor, you point out that some of the

24  things he said are untrue.  I'm totally baffled as to

25  how a false allegation made about me personally and an

1  attack on my integrity and then a later statement by the

2  Court that one of the things that Mr. Lee said is not

3  true is somehow personal private information of Dean

4  Karona's.

5       Your Honor, a last point.  I could ask routinely

6  questions about the trial and questions about, for

7  example, my opinion of Mr. Lee.  I have always taken the

8  position that I cannot disclose what occurred that day

9  because it was under seal.  If it remains under seal, I

10 would like to know whether I am operating under a prior

11 restraint?

12      THE COURT:  All right, you just completely lost

13 me, Mr. Mortara.  Are we still talking about the suicide

14 in Dean Karona's family?

15      MR. MORTARA:  We are indeed.  You'll recall that

16 Mr. Lee came into court and he said I had, knowing about

17 Dean Karona's brother's suicide, taken advantage of it

18 in my cross-examination.  He said it was the first thing

19 that came up in Google.

20      And I told your Honor that I didn't know.  I in

21 fact waived work product, showed my outline, did an

22 extended description for you and Ms. Folan and Ms. Daly

23 about how I had no idea, expressed my personal view

24 about how I had personal experience with suicide and

25 would never do such a thing.  Your Honor accepted my

1    representation.  Two days later your Honor came back and

2    made a comment to Mr. Lee that it was not in fact the

3    first thing that would come up in Google and it took you

4    a long time to find out about it.  And that is amongst

5    the material Harvard thinks should remain sealed and we

6    do not.

7         THE COURT:  Okay, this is, um -- so you -- you

8    just referenced -- what I have is a, um -- I have just a

9    sketchy outline of what's contained where.

10         MR. MORTARA:  Page 7, Pages 6 to 12.

11         THE COURT:  Okay, so that's what I have, Pages 6

12   to 12.  So there's no other -- what you just said -- you

13   just mentioned two different days, and I have -- the

14   whole portion of what Harvard wants to keep sealed is

15   taking place on Day 7?

16         MR. MORTARA:  Day 9, Page 15, Lines 10 to 14, is

17   when your Honor comes back and points out to Mr. Lee

18   that he had said something that was inaccurate, which

19   was that it was easy to find on Google.

20         THE COURT:  Oh, right, I see it.

21         MR. MORTARA:  There is also one sentence on Day 9,

22   Page 18, Line 13, that is about the same subject matter.

23         THE COURT:  Okay, so those are the three places.

24   I will take a look at that.

25         MR. MORTARA:  Thank you, your Honor.

1          THE COURT:  All right, so that's Karona.  And now,

2     um, you want to move on?  Anyone have anything else you

3     want to say about that or do you want to move on to the

4     OCR stuff?

5          MS. ELLSWORTH:  No, your Honor, you'll read the

6     transcript and make your own determination.

7          THE COURT:  All right.  Um, who wants to be heard

8     first on the OCR?

9          MS. ELLSWORTH:  I'm happy to go first, your Honor,

10    since we're the ones trying to keep it under seal here.

11         THE COURT:  All right.

12         MS. ELLSWORTH:  Your Honor, so if you recall

13    there's a lot of the transcript that actually covered

14    this because it was revisited several times.  I know

15    Mr. Mortara and Mr. Strawbridge will make the point that

16    the exhibit in question was obtained via a public

17    records request and so it's a document that could be

18    made public.  I don't take a position on that.  What I'm

19    talking about and what we seek to maintain under seal is

20    the entirety of the discussion in which various

21    characterizations about what the reaction of Dean

22    Fitzsimmons was to an e-mail that was sent to him by an

23    individual who wasn't called to be a witness, that was

24    certainly hearsay, there are a lot of different

25    characterizations of the exhibit, and ultimately your

1   Honor kept it out on a variety of grounds including

2   under 403, but primarily because it had no relevancy

3   issue in this trial.

4         THE COURT:  Let me just interrupt here.  Just so

5   I'm clear, this is Day 3, Day 10, and, um --

6         MS. ELLSWORTH:  Day 14.

7         THE COURT:  Day 14.  Okay, those are the only

8   three references on that, that those are all the ones

9   that pertain to this?

10        MS. ELLSWORTH:  There is one stray reference to

11  it, I believe, it's actually mistranscribed, but we

12  propose redacting it anyway, um, and that is --

13        MR. MORTARA:  It's Day 14, 199.

14        MS. ELLSWORTH:  Day 14.

15        THE COURT:  Okay, so that we have Day 3, Day 10.

16  And is there more than one reference on Day 14?

17        MS. ELLSWORTH:  It's one word on Page 199 of Day

18  14.

19        THE COURT:  Okay.

20        MR. MORTARA:  But there's also the stuff at 198.

21        THE COURT:  198.  What I have is Lines 1 through 3

22  and Lines 19 through 20.  Are both of those references

23  to the OCR?

24        MS. ELLSWORTH:  Yes, that's correct.

25        THE COURT:  Okay.  All right.  Sorry to interrupt,

1   Ms. Ellsworth. Go ahead.

2       MS. ELLSWORTH:  No, no, that's fine, I'm sorry,

3   thank you for setting me straight on which pages we're

4   talking about.

5       So we think it's prejudicial to Harvard and to

6   Dean Fitzsimmons to have this unsealed, particularly

7   given the Court's ruling, um, and the discussion as the

8   only reason for its potential use was for the press

9   gallery, that was the reason it was kept under seal in

10  the first place.  I think those concerns still exist,

11  not just because of the possibility of the case making

12  its way back to the Court, which may or may not happen,

13  but because of the increased or the continuing public

14  attention on this case.

15      So I think allowing this whole -- these portions

16  of the sidebars in which there's a lot of accusations

17  made and about what Dean Fitzsimmons's response meant or

18  didn't mean, um, about what was meant or not meant by

19  the statement by Mr. Hudin, who of course wasn't there

20  to be cross-examined and isn't -- and also has his own

21  privacy interest in this.  And there's another

22  individual who's an admission's office employee who's

23  referenced in the sidebar discussions.  There's just a

24  lot of discussions about individuals here that have

25  again no relevance to the case, no probative value, as

the Court found, or at least the probative value to the
extent this had any was outweighed by the prejudicial
effect on Harvard and on the trial, and that prejudicial
effect again was the public release of it, not the way
in which you would considered it in evidence, but rather
the release of that information publicly.

So again looking to the sliding scale of
importance versus the private interests that exist in
maintaining it under seal, we think the entirety of
those discussions should remain under seal.

THE COURT:  All right.  Mr. Strawbridge or
Mr. Mortara?

MR. STRAWBRIDGE:  I'll handle this one, your
Honor.

THE COURT:  Okay.

MR. STRAWBRIDGE:  I think you anticipated somewhat
what the argument was going to be, which is simply that
the evidentiary standard is not the standard for
releasing it for purposes of -- especially once you have
an objection and a request on the record, um, like you
have now.  Evidentiary arguments are not, you know,
based upon the First Amendment or based on a common
access right to the press.  Obviously prejudicial
information is bantered about in appellate opinions and
in open court, um, presumably outside the presence of

1   the factfinder but not outside the presence of the media

2   or the press or the public.  And given the fact that all

3   these documents actually involve exchanges with public

4   officials, like we said, you know they're obtained via a

5   FOIA request, I just don't understand how this could

6   possibly satisfy the standard for sealing it, given how

7   heavy that standard is.

8        Lawyers make arguments all the time, lawyers may

9   characterizations of individuals all the time, it may or

10  may not have a role in terms of going to the factfinder

11  or being admitted into evidence, but it's a completely

12  distinct question and a much heavier burden once there's

13  a claim of press access involved.  And so that's our

14  position on that.

15       And obviously the same prior restraint that

16  Mr. Mortara referenced would seem to apply here.  This

17  is somehow so prejudicial that the order that they not

18  to turn it over to the press, that seems like a whole

19  other ball of wax and is not how we understood your

20  Honor's order today.

21       THE COURT:  Mr. Mortara was just waiting to pull

22  out that prior restraint argument.

23       MR. MORTARA:  Well, your Honor, it is honestly

24  extremely important to me.

25       THE COURT:  I hear you.  I hear you.

1       MR. MORTARA:  I have layed silent about something

2  that I feel very very strongly about for over four

3  years, and I would like to not be silent about it

4  anymore.

5       THE COURT:  We all recognize how difficult being

6  silent must be for you on this subject.

7       MR. MORTARA:  Particularly on the issue of

8  Mr. Lee's false allegations.

9       THE COURT:  I hear you on that.  All right.

10      MS. ELLSWORTH:  I'll remind everyone on the call

11  about local release 3.2, um, they can look it up

12  afterwards.

13      THE COURT:  I have to go look that up,

14  Ms. Ellsworth.

15      MS. ELLSWORTH:  It has to do with attorneys

16  commenting on witnesses or counsel on --

17      MR. MORTARA:  Wow, would that have applied to the

18  original allegation about Dean Karona, Ms. Ellsworth?

19      THE COURT:  Um, she doesn't need to answer that.

20  We're all going to assume that was a rhetorical

21  question.  But I hear you, Mr. Mortara.

22      All right.  The last one is, um, the McGraf-

23  Fitzsimmons dispute or whatever you want to call it.

24  Um, do you want to -- Ms. Ellsworth, do you want to go

25  first on that?

1          MS. ELLSWORTH:  Yeah, and part of -- I mean the --

2      I'm not sure we should so characterize it, there are

3      other witnesses who were not ultimately recalled,

4      ultimately Dean Fitzsimmons was also not recalled, but

5      that's a choice, that only Director McGraf was

6      ultimately recalled in connection with this.

7          I recognize that the allegations have been made,

8      um, numerous times.  We tried to be judicious in what we

9      thought should remain redacted, just certain lines of

10     some of the sidebars in which allegations about

11     untruthfulness are made, um, about both these witnesses

12     and about -- sometimes about counsel, and I hear some

13     more allegations like that today.  I don't think that

14     those allegations have any place, um, in the court.

15         But putting that aside, I don't think that there's

16     any relevance to having that information released

17     publicly.  There's a lot of standing about accusations

18     that doesn't seem to be important for the press to have.

19     And ultimately the witnesses that were recalled were

20     allowed to be questioned about their prior testimony and

21     about the testimony that they subsequently made, your

22     Honor found that in the opinion, and the First Circuit

23     has agreed that that was not a reason to rule any

24     differently in terms of on the merits of the case.  The

25     change in reading procedures was -- was treated by both

1    the appellate court and by this Court and in supporting

2    Harvard's position here.

3           So I think these are specific allegations about

4    specific witnesses, one of whom is now retired from

5    Harvard, um, their reputation for truthfulness, and we

6    think their privacy interests, and in particular the two

7    witnesses, Sharmine Kim and Chris Luvy, who were not

8    ultimately recalled and who I don't believe were called

9    out by name in Mr. Mortara's argument, and that that

10   information should remain sealed to protect the privacy

11   interests of those individuals.

12          THE COURT:  Mr. Mortara?  Mr. Strawbridge?

13          MR. MORTARA:  Your Honor, again I think I would

14   echo Mr. Strawbridge here, I don't understand how this

15   could possibly meet the standard.  Whether or not the

16   Court ultimately agreed with what was said, it seems to

17   me the public has a real interest in whether or not

18   Harvard's witnesses told the truth.  You remember the

19   exchange with Director McGraf about whether anything was

20   written down anywhere in the admissions office about

21   using race and why we had to call everybody back.  I

22   think if somebody were indeed writing the book about

23   this trial to deprive them of this information and the

24   back and forth with the lawyers, particularly when, as

25   Ms. Ellsworth notes, I basically repeated all the same

1    allegations in closing argument in February, seems very

2    very strange.  I'm not quite sure what the effort is

3    here, but it doesn't come close to meeting the standard

4    for preventing the public from finding out what the

5    lawyers said to you the factfinder surrounding the

6    trial.

7          THE COURT:  Okay.  So, guys, I don't want this to

8    linger, I want to resolve these issues as quickly as we

9    can.

10         So, Ms. Ellsworth, when do you think you can send

11   over the highlighted portions for me?

12         MS. ELLSWORTH:  I can send it right now, your

13   Honor, I'll send it right in to Ms. Folan, and I'll copy

14   counsel.

15         THE COURT:  All right, so she'll send that.

16         Is it, um -- obviously there's some of what the

17   press was initially seeking that's going to be unsealed.

18   Do you all want to unseal what you agree can be unsealed

19   now or do you want to do it as a package once all these

20   objections are resolved?

21         MR. MORTARA:  I think probably it would be better

22   to do it as a package if it's going to be done quickly.

23         THE COURT:  Okay.  So what I would like to do, if

24   possible, I'm hoping to spend sometime around the

25   holidays working, um, so I'd like to, if possible, set

1    up a hearing on this towards the end of next week, I'll

2    give you my rulings, you can make whatever objections

3    you have on the record, and then we can release whatever

4    we're going to release by the end of next week.

5           Does that make sense to everybody?

6           MR. MORTARA:  Fine with us, your Honor.

7           MS. ELLSWORTH:  It's fine with us, your Honor.

8           There is a request that you might not have had a

9    chance to see yet from the reporters committee, to have

10   a redacted public version of what parties agree need not

11   be sealed publicly, which would be I think a version of

12   what we're going to send to Ms. Folan right now, but

13   with the portions highlighted and then redacted.  I

14   don't take a view on whether your Honor should act on

15   that motion.  But there is a request to have that sooner

16   rather than later.  But we're fine with waiting until

17   next week and doing it all at once, particularly since

18   it seems like --

19          THE COURT:  Yeah, I mean I didn't -- I saw that

20   they filed something, it was captioned as a "motion to

21   intervene," right?

22          MS. ELLSWORTH:  That's correct.

23          THE COURT:  So I saw the motion to intervene but

24   didn't read into the weeds of it.  But now you're

25   telling me there was more to it than that?

1       So what we're thinking is that, um -- and again I

2   haven't read it.  But you're saying that at some point

3   at the end of the day they want to be able to see how

4   much was redacted and in what context?

5       MS. ELLSWORTH:  I don't want to speak for what

6   they're actually looking for, I just know that when we

7   met and conferred with them they wanted a redacted

8   public version filed.  We of course couldn't make that

9   filing or provide that to them until the portions that

10  both parties agreed can be unsealed were in fact

11  unsealed by the Court, in case the Court had a different

12  view.  So that is just one interim step that they

13  thought in order to be able to argue about why further

14  things should be unsealed.

15      If we're going to do this all in a span of a week

16  it's probably easier here to do it all at once and

17  probably better, but I just wanted to make you aware of

18  that request.

19      THE COURT:  So obviously we could unseal certain

20  things without making it clear to them what remained

21  under seal or we could do what they're asking for, which

22  in some ways actually seems easier.  But what's your

23  position on their requests?  And I -- I'm asking you

24  about that generally because you're unencumbered about

25  whatever rulings I end up making, so.  But do you have a

```
1    thought on it at this point?
2         THE COURT:  Are you asking us, your Honor?
3         THE COURT:  I was starting with Harvard, then I
4    was going to go to you.  If you want to go first, you
5    can, Mr. Mortara.
6         MR. MORTARA:  I'll go first.
7         THE COURT:  Okay.
8         MR. MORTARA:  Our view is that of course the stuff
9    that the parties don't think should be sealed, and
10   provided the Court agrees, should be released.  To me
11   it's just a logistics issue why do two if we're going to
12   do another one next Friday?  And it is just going to
13   leave them question-begging about what remains sealed.
14        THE COURT:  So when we do release it, do you
15   envision releasing it in that kind of way, like
16   releasing all the sidebars with redactions, or are you
17   just -- like how are you envisioning it's going to be
18   released?
19        MR. MORTARA:  Well of course if your Honor follows
20   our position, there would be only one redaction.  But I
21   think it will be released with redactions.  I had
22   understood your Honor's suggestion of a hearing next
23   week to be a suggestion that we have a public hearing
24   next week where objections would be laid on the record
25   about your decision to unseal things.
```

1    THE COURT:  Well what I was actually -- what I was

2    thinking -- that wasn't what I was thinking.  What I was

3    thinking was that we have one more sealed hearing where

4    I could give you my rulings and you could have one more

5    shot at it, or put your objections on the record, and

6    then we could do a public hearing in the hour after

7    that.  But I was going to give you a chance to have a --

8    to have a conversation amongst ourselves before that

9    happened.

10    MR. MORTARA:  Understood.  I think at this point

11    we would -- our position is that we're sort of

12    indifferent as to whether there's an initial release and

13    a subsequent one, it's really up to the Court's

14    convenience.  7 days when the press has waited 4 1/2

15    years and apparently only got interested in this a few

16    weeks ago, I'm not sure is that big of a deal.

17    THE COURT:  Okay.

18    Anything you want to add to that, Ms. Ellsworth?

19    MS. ELLSWORTH:  No.

20    THE COURT:  Okay.  So why don't we do this.  She's

21    going to -- I'll have a few days to look at it.  Just

22    for the sake of not putting anybody under any crazy

23    pressure, why don't we meet again, this group, on the

24    15th and then, um, we can schedule a more public hearing

25    on that for the next day.  And if something happens on

```
 1    Thursday that makes us want to cancel Friday, we can
 2    just go ahead and do that.
 3         Does that make sense?
 4         MR. MORTARA:  Works for us, your Honor.
 5         THE COURT:  Um, Karen, I think I'm wide open on
 6    Thursday, right?
 7         THE CLERK:  Yeah, we have a sentencing at 11:30,
 8    and that's it.
 9         THE COURT:  A sentencing?  I thought you moved it
10    from Thursday to Wednesday.  Is that the one?
11         THE CLERK:  No, that's a different one.
12         THE COURT:  Who's being sentenced on Thursday?
13         THE CLERK:  Nicole Benton.
14         THE COURT:  Oh, yeah, at 11:30 on the 15th?
15         THE CLERK:  Yes.
16         THE COURT:  Okay.
17         MR. MORTARA:  Your Honor, I have a small request
18    about the 16th when you're ready?
19         THE COURT:  Okay, let's start with the 15th.  I'm
20    wide open except for, you know, about say an hour at
21    11:30.  Do you want to do it earlier than that?
22         MS. ELLSWORTH:  If we could do it before then,
23    that would be better.
24         THE COURT:  How about 10:00?
25         MR. MORTARA:  Mr. Strawbridge, are you okay?
```

1     MR. STRAWBRIDGE:  I'm okay as well, your Honor.

2     THE COURT:  Okay.  I'm very flexible.  No one has

3  to like contort their schedules to do this if it's not a

4  good time.  But hearing no objections, we'll have this

5  group on Thursday the 15th.

6     And then, um -- well now I'm looking at any Friday

7  and it's a bit of a mess.

8     Would you guys want to do this Thursday, then have

9  a more public hearing scheduled for Thursday afternoon

10  at 2:00?

11     MR. MORTARA:  Works for me, your Honor.

12     MS. ELLSWORTH:  I am tied up in the afternoon.  I

13  I can try and move it on Thursday.

14     MR. MORTARA:  My issue with Friday, your Honor, is

15  probably not being tied up in the similar way to

16  Mr. Ellsworth, but it's the last day of school and I

17  promised my daughter I would take her to see Avatar 2,

18  and I'd rather not be a liar about that.  I have to pick

19  her up at about 3:00 Eastern and take her to a 3-hour

20  movie.

21     THE COURT:  Okay, let's, um -- what about having a

22  public hearing at 10:00 on the 15th and doing this group

23  sometime on the 14th?

24     MR. MORTARA:  Works for me, your Honor.

25     MS. GERSHENGORN:  I'm in Judge O'Toole's courtroom

1   in a trial, um, on that day, I think, with a witness,

2   but I don't know -- if we can do it later?  I don't know

3   how quickly it's going to be moving.  And obviously, you

4   know, if we need to do it then, then Ms. Ellsworth can

5   cover for me.

6          THE COURT:  I always like to see you, Ara.

7          MS. GERSHENGORN:  Thank you.  I think the

8   government is resting today, but I'm not sure.  I think

9   it's been a week.  But it's estimated to be a three-week

10  trial, so.

11         (Pause.)

12         MS. GERSHENGORN:  If we can do later that day just

13  to sort of protect.

14         And maybe, Karen, and I apologize, I was going to

15  actually bother you, but I don't know if there's a way

16  for me to zoom in from the courtroom and I was wondering

17  whether the reception issue is horrible.  But if I'm

18  down there, maybe there's a way to do that.  Maybe I can

19  find that out off-line?

20         THE CLERK:  Um, I'm not sure, to be honest.  Like

21  from your phone, you mean, or you could --

22         MS. GERSHENGORN:  No, like a zoom room or

23  something like that.

24         THE CLERK:  Um, I don't believe we have anything

25  like that.

```
1          MS. GERSHENGORN:  Yeah.
2          THE CLERK:  Not that we get good reception anyway.
3          THE COURT:  Well I can always do this from the
4     courtroom, right, and then couldn't you put the zoom
5     like up on the screen?
6          THE CLERK:  Yeah, and then she could come into the
7     courtroom, you mean?
8          THE COURT:  Right.
9          Hold on, let's just see if we can, um --
10         Ms. Ellsworth, is everybody else, except for
11    Mr. Mortara, okay on the 15th?  Are you busy in the
12    afternoon, Ms. Ellsworth, is that what you said?
13         MS. ELLSWORTH:  So is the 15th a Thursday, right?
14         THE COURT:  Yeah.
15         MR. MORTARA:  I'm okay on Thursday, but if it's
16    the 15th in the afternoon, that's a problem for me.
17         THE COURT:  All right.
18         Is everybody -- Ms. Ellsworth, are you busy the
19    afternoon of the 15th?
20         MS. ELLSWORTH:  Yes.  And again it's something
21    that I could -- I can try and move it.
22         THE COURT:  No, I'm happy to -- I'm accommodating
23    him and I'm trying to accommodate my own kids on the
24    afternoon of the 14th, so I'm happy to accommodate
25    whatever it is you have going too.  You don't have to be
```

1    the only on unaccommodating.

2           Starting what time are you busy on the 15th?

3           MS. ELLSWORTH:  So I am tied up on the 15th -- I

4    could be free beginning at about 4:00 p.m., so I could

5    do it in the later afternoon.

6           THE COURT:  No, when are you --

7           MS. ELLSWORTH:  I'm sorry, it's from 1:00 till

8    4:00.

9           THE COURT:  1:00 through 4:00.

10          So what if we got together at, um, 9:00, this

11   group, and then we had a public hearing scheduled for

12   10:30?

13          MR. MORTARA:  Works for me.

14          MS. ELLSWORTH:  All on the 15th?

15          THE COURT:  Yes.

16          MS. ELLSWORTH:  That's fine.  Thank you.

17          THE COURT:  So 9:00 would be, we'll call that,

18   "Private SFFA" and 10:30 will be "Public SFFA."

19          Karen, before you schedule that, does that work

20   for me?

21          THE CLERK:  On the 15th, right?

22          THE COURT:  Yes.

23          THE CLERK:  Yes.

24          THE COURT:  So we have SSFA at 9:00, SSFA at

25   10:30, and Benton at 11:30, right?

```
 1          THE CLERK:  Yup.
 2          THE COURT:  And there's no -- I guess I should
 3     wait and see how much, if any, we leave redacted, but do
 4     people think that 10:30 to 11:30 is going to be enough
 5     to deal with the First Amendment people, an hour?
 6          MR. MORTARA:  I would think so given that there's
 7     only about five total subject matters.
 8          THE COURT:  I thought there were three.
 9          MR. MORTARA:  Well there's three after you get rid
10     of Professor Acidiacona's grandmother and the one
11     exchange with a parent to Dean Karona.
12          THE COURT:  Okay.  Okay.  All right.
13          All right, let's do that.  If for some reason I
14     have an issue with this or run into anything when I look
15     at the transcript, I'll circle back.  But let's try to
16     do that.
17          MS. ELLSWORTH:  Thank you, your Honor.
18          MR. MORTARA:  Thank you, your Honor.
19          THE COURT:  Anything else for today?
20          (Silence.)
21          THE COURT:  Okay.  All right.
22          Thank you, gang.  The case is recessed for today.
23          (Ends, 2:35 p.m.)
24
25
```

1          C E R T I F I C A T E

2

3       I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

4   hereby certify that the forgoing transcript of the

5   record is a true and accurate transcription of my

6   stenographic notes, before Judge Allison D. Burroughs,

7   on Friday, December 9, 2022, to the best of my skill and

8   ability.

9

10

11   /s/ Richard H. Romanow 01-13-23
     _____
12   RICHARD H. ROMANOW  Date

13

14

15

16

17

18

19

20

21

22

23

24

25