UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 14-cv-14176-ADB |
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE (HARVARD CORPORATION), | * * * * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER
ON REPORTERS COMMITTEE MOTION FOR RECONSIDERATION**

BURROUGHS, D.J.

Plaintiff Students for Fair Admissions, Inc. ("SFFA") filed this action against Defendant President and Fellows of Harvard College ("Harvard"), alleging that Harvard's undergraduate admissions process violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq*. [ECF No. 1].  The Court held a 15-day bench trial from October 15, 2018 to November 2, 2018. See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll. (Harvard Corp.), 397 F. Supp. 3d 126, 132 (D. Mass. 2019), aff'd sub nom. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 980 F.3d 157 (1st Cir. 2020), cert. granted, 142 S. Ct. 895 (U.S. Jan. 24, 2022) (No. 20-1199).  On September 30, 2019, the Court issued its Findings of Fact and Conclusions of Law and entered judgment for Harvard on all counts.  Id.  SFFA appealed the Court's judgment, first to the First Circuit, and after the First Circuit affirmed, Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 980 F.3d 157 (1st

1

Cir. 2020), to the Supreme Court. The Supreme Court granted *certiorari* on January 24, 2022 and heard arguments on October 31, 2022, Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 142 S. Ct. 895 (argued Oct. 31, 2022). The Supreme Court has not issued its ruling.

On December 7, 2022, the Reporters Committee for Freedom of the Press ("Reporters Committee") moved to intervene for the limited purpose of unsealing the transcripts of sidebar proceedings during trial ("Motion to Intervene"), [ECF No. 703], which the Court had kept under seal as a matter of course, see [ECF No. 654 (Trial Tr. Day 14) at 184:10–12]. On December 19, 2022, the Court ruled that all but a few limited excerpts of the sidebar transcripts would be unsealed,[1] and finding that it had essentially provided the relief requested, denied the Motion to Intervene ("December 19 Order"). [ECF No. 711]. Currently pending before the Court is the Reporters Committee's Motion for Reconsideration of the December 19 Order ("Motion for Reconsideration"). [ECF No. 713]. For the reasons set forth below, the Reporters Committee's Motion for Reconsideration is GRANTED in part and DENIED in part.

---

[1] Of the 15 trial days, the parties agreed that nothing from days 1, 2, 4, 5, 8, 13, or 15 needed to remain sealed. See [ECF Nos. 701–02]. The parties further agreed to keep sealed a portion from day 6. [ECF No. 701 at 1; ECF No. 702 at 2; ECF No. 711]. Harvard asked that additional excerpts from days 3, 7, 9, 10, 11, 12, and 14 remain sealed. [ECF No. 701 at 1]. Following the December 19 order, what remains sealed is the agreed upon excerpt from day 6 and some materials from days 7 and 10. [ECF No. 711]. Additionally, the Court held two sealed status conferences about the sidebar transcripts. The Court unsealed the entire transcript from the December 9 status conference, see [ECF No. 720–21], and kept limited excerpts of the transcript from the December 15 status conference under seal, see [ECF No. 726].

I.   BACKGROUND

In November 2022, the Court received a letter from a non-party requesting that the Court unseal the sidebar transcripts, [ECF No. 691],[2] and then several more letters from other non-parties, including the Reporters Committee, supporting the request, [ECF Nos. 693, 698–99]. Both parties responded, with Harvard requesting that the full sidebar transcripts remain under seal, [ECF No. 692], and SFFA requesting that more limited portions remain under seal, [ECF No. 694].  The Court held a November 21, 2022 status conference, attended by non-parties, at which the Court directed the parties to, by December 9, 2022, meet and confer to identify for the Court which portions of the sidebar conferences they wished to remain under seal.  See [ECF No. 700].  A second status conference was set for December 9, 2022.  [Id.].  After meeting and conferring, the parties filed letters on December 5, 2022, explaining that they agreed that one excerpt should remain under seal, but disagreed as to other excerpts, which Harvard asserted should remain under seal and SFFA asserted should not.  [ECF Nos. 701–02].

On December 7, 2022, the Reporters Committee moved for leave to intervene, pursuant to Federal Rule of Civil Procedure 24(b), "for the limited purpose of asserting the rights of the press and public to access sealed judicial records in this matter, including transcripts of the sidebar proceedings held during trial[.]" [ECF No. 703 at 1].[3]  The Motion to Intervene specifically requested that the Court:

---

[2] Upon request from the Supreme Court after *certiorari* was granted, the Court transmitted the full case record to the Supreme Court, with a letter noting that the transmitted record included "sealed or confidential" materials.  [ECF No. 690].  As is typical, the Court had previously transmitted an abbreviated record for appeal to the First Circuit in October 2019.  See [ECF No. 675].

[3] In its Motion for Reconsideration, the Reporters Committee describes the purpose of its proposed intervention in even more limited terms: that is, to "oppos[e] restrictions on the public's right to access the sidebar transcripts[.]"  [ECF No. 713 at 1].

3

> (1) order that the parties file on the public docket the portions of the Sidebar Transcripts that neither party seeks to maintain under seal, with proposed redactions accompanied by justifications detailed enough that the Reporters Committee and other representatives of the press and public may meaningfully respond in writing; (2) provide for a subsequent hearing on the merits at which representatives of the press and public can be heard, alongside the parties; and (3) thereafter, issue a final, public written ruling—supported by "particularized findings" that are "specific enough to permit a reviewing court to determine whether sealing was appropriate"—identifying those discrete portions of the Sidebar Transcripts, if any, that the Court determines must remain sealed to protect an overriding interest.

[ECF No. 703 at 4 (quoting United States v. Kravetz, 706 F.3d 47, 60 (1st Cir. 2013))]. The Motion to Intervene was opposed by Harvard and unopposed by SFFA. See [id. at 6; ECF No. 726 at 4:2–17].

At the second status conference on December 9, 2022 regarding the parties' positions on redactions, which was sealed, the Court scheduled a second, sealed status conference for December 15, 2022 and a separate, public hearing to occur the same day. [ECF No. 708]; see [ECF No. 717]. At the status conference on the morning of December 15, 2022, the Court informed the parties of its proposed redactions to the sidebar transcripts and gave the parties an opportunity to respond and to put any objections on the record. [ECF No. 726]. At the public hearing that followed, the Court again explained its planned redactions, and allowed non-parties to be heard. During the hearing, the Reporters Committee and another non-party asked the Court to unseal the transcripts of the December 9, 2022 and December 15, 2022 status conferences. See [ECF No. 717].

On December 19, 2022, the Court entered an order with its final ruling regarding which of the contested sidebar excerpts would be unsealed and which would remain under seal. [ECF No. 711]. In sum, the Court ruled that the majority of the sidebar transcripts would be unsealed, but that limited excerpts from three trial days would remain under seal. [Id.]. The December 19 Order provided the legal standard the Court applied in reaching its ruling, described the three

4

categories of information being kept under seal, and explained the Court's findings as to why it was keeping each category under seal. [Id.]. The Order also noted that the parties had agreed that the bulk of the sidebar transcripts should be unsealed, but that one excerpt should remain under seal. [Id.]. The Court directed the parties to file on the public docket, within two business days, the sidebar transcripts redacted in accordance with the Order, [id.], which the parties did on December 21, 2022, [ECF No. 712].

In the same Order, the Court denied the Reporters Committee's Motion to Intervene as moot without prejudice. [ECF No. 711]. On December 29, 2022, the Reporters Committee filed its Motion for Reconsideration. [ECF No. 713]. SFFA filed a response, stating that it had no position on the Motion for Reconsideration, but re-stating its objection to unsealing identifying information about applicants. [ECF No. 719]. Harvard did not respond to the Motion for Reconsideration.

On January 11, 2023, a non-party renewed the request made at the December 15, 2022 public hearing that the Court unseal the transcripts from the December 9, 2022 and December 15, 2022 sealed status conferences with the parties. [ECF No. 717]. Following consultation with the parties, the transcript for the December 9, 2022 status conference was unsealed on January 13, 2023, see [ECF No. 721], and on January 18, 2023, the transcript from the December 15, 2022 status conference was filed on the public docket with limited redactions, see [ECF No. 726].

## II.  DISCUSSION

"A federal district court has the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment." Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D.

5

Mass. 2000); see Fed. R. Civ. P. 54(b); see also Pérez-Ruiz v. Crespo-Guillén, 25 F.3d 40, 42 (1st Cir. 1994) ("Interlocutory orders . . . remain open to trial court reconsideration . . . .").

### A.  Intervention

The December 19 Order unsealed the vast majority of the sidebar transcripts. Once the Court unsealed those documents, it denied as moot, but without prejudice, the Reporters Committee's Motion to Intervene for the limited purpose of unsealing court records, [ECF No. 703], on the assumption that the Court had addressed the issues that motivated the motion. The Motion for Reconsideration, however, indicates that the Reporter Committee believes that the relief afforded is incomplete. See [ECF No. 713]. Without reaching the merits of the arguments made by the Reporters Committee in its Motion for Reconsideration, the Court will, in the exercise of its discretion, GRANT permissive intervention to allow the Reporters Committee to participate in the pending appeals concerning sealing. See Fed. R. Civ. P. 24(b)(1)(B) (the court "may[,]" on a timely motion, "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."); In re Bos. Sci. Corp. ERISA Litig., 254 F.R.D. 24, 33 n.82 (D. Mass. 2008) ("Permissive intervention is 'wholly discretionary,' and a court should consider whether intervention will prejudice the existing parties or delay the action." (quoting In re Sonus Networks, Inc. Sec. Litig., 229 F.R.D. 339, 345 (D. Mass. 2005))).

### B.  Unsealing Sidebar Transcripts and Related Materials

As to the merits, prior to the issuance of the December 19 Order, the parties agreed that the bulk of the sidebar transcripts should be unsealed and the Court unsealed all of the agreed upon materials. The parties also agreed, and the Court accepted, that any identifying information about applicants should be remain under seal.

Throughout this litigation, the Court has been and continues to be cognizant of the need for transparency, but also that the First Amendment right of public access to certain documents filed in civil litigation is "qualified" and that the common-law right of access to judicial records "is not absolute.'" Doe v. Mass. Inst. of Tech., 46 F.4th 61, 67 (1st Cir. 2022) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597–98 (1978)) (further citation omitted). "[P]ublic monitoring of the judicial system [through public access to judicial records] fosters the important values of 'quality, honesty and respect for our legal system.'" Siedle v. Putnam Invs., Inc., 147 F.3d 7, 9–10 (1st Cir. 1998) (quoting FTC v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 410 (1st Cir. 1987)). However, "[i]mportant countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." Id. at 10 (citation omitted). When considering issues of sealing, "a court must carefully balance the competing interests that are at stake in the particular case." Id. (first citing Nixon, 435 U.S. at 599; and then citing In re Globe Newspaper Co., 920 F.2d 88, 96 (1st Cir. 1990)); see also United States v. Vinas, No. 08-cr-00823, 2017 WL 1969665, at *2 (E.D.N.Y. May 11, 2017) (explaining that in the context of a criminal proceeding, "[t]he rights of access afforded by the common law and First Amendment are not absolute, . . . and the need for disclosure may be overcome where the party seeking to seal the documents can show that there are 'countervailing factors' (in the common law framework), or that sealing is necessary to preserve 'higher values' (in the First Amendment context)." (first quoting United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995); and then quoting United States v. Alcantara, 396 F.3d 189, 200 (2d Cir. 2005))); Press-Enter. Co. v. Super. Ct. of Cal., Riverside Cnty., 464 U.S. 501, 510 (1984) (holding, as to sealing criminal proceedings, "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.").

Here, the portions of the sidebar transcripts that remain under seal reflect the Court's efforts to balance the competing interests at stake.  See Siedle, 147 F.3d at 10.  The Court articulated its reasons for keeping certain items under seal in the December 19 Order, and expands on that reasoning here.

Currently, the majority of the transcripts of the sidebars and the status conferences addressing the sealing issue have been unsealed.  There are three narrow categories of sidebar-related information that remain sealed: (1) inflammatory quotations from a memorandum, on purloined Harvard letterhead, sent to the Harvard Dean of Admissions from a Department of Education Office of Civil Rights (OCR) representative (less than two pages of trial transcript and eight lines of text from the December 15, 2022 status conference), (2) information relating to the death by suicide of a witness' family member (less than six lines of text from both the trial transcript and the December 15 status conference transcript), and (3) information related to an anonymous letter about my own application to Harvard, as well as personal information about my family (again, less than two total pages of trial transcript).

Beginning with the communication between the OCR representative and the Harvard Dean of Admissions, in deciding to keep this information sealed, the Court, in the December 19 Order, found as follows:

- **Trial Day 10, 122:2–11, 122:17–123:1, and 123:20 will remain sealed.**  This set of excerpts concerns an email sent to Dean Fitzsimmons from an individual who had worked on the Office for Civil Rights investigation referenced in this case.  The email contained a "joke memo," prepared as if it were written by someone who worked in the Harvard admissions office and making it seem like that employee was inappropriately satirizing Asian-American applicants.  The parties' discussions about the substance of this document, its relevance, and the propriety of its admission will all be unsealed.  Only the direct quotes from the email, which were read into the record, will remain under seal.  The material is dated, it implicates the interests of a third party who was never cross-examined at trial, and its relevance to the case is limited only to the Dean's response, which shall be unsealed.  Further, the offensive attempt at humor includes inappropriate and inflammatory language that does not need to be repeated or aired.  The

specific words used are not relevant to the case—the salient information is the recipient's reaction to the email, which will be unsealed.  Finally, although not the driving force, the Court also considers in this calculus the potential prejudice to Harvard, who has opposed disclosure, as there is a risk that the views expressed in this email, on Harvard stationary, could be imputed to Harvard by unfamiliar readers.  See In re Los Angeles Times Commc'ns LLC, 28 F.4th 292, 297 (D.C. Cir. 2022) (the court should consider the possibility of prejudice to the party opposing disclosure); see also Zapp v. Zhenli Ye Gon, 746 F. Supp. 2d 145, 150 (D.D.C. 2010).  Though the fact that this document may be available from other sources cuts against sealing, Los Angeles Times, 28 F.4th at 297, the Court finds that, in sum, the scale tips in favor of keeping these limited excerpts under seal in this proceeding, which is all that is within the control of the Court.  In addition to the direct quotes, the name of the Harvard employee that was used in the text by the third-party author shall also remain sealed.  Accordingly, to protect the privacy and integrity of this uninvolved individual, their name will be redacted from lines **121:23, 123:6, and 125:6 of the Day 10 Transcript**.

To further elaborate on this reasoning, the content of the communication was hearsay. The declarant did not testify and was not cross-examined.  In the Court's view, it would have been admissible, even in a bench trial, only to illustrate the impact of the communication on the recipient.  Here, the recipient's reaction was "I am stunned[,]" [ECF No. 647 at 123:5–6], which the Court concluded was ambiguous, particularly given that it was a response to an inflammatory communication from a regulator.  The Court determined that any relevance of this equivocal response was substantially outweighed by the prejudicial content and context of the communication itself.

In addition, the words of the communication were offensive.  When determining what should be unsealed, the Court concluded that the impact on the recipient of the email, which was the only relevant aspect of the communication relevant to the issues before the Court, could be understood without repeating offensive rhetoric that did not bear on the resolution of the important legal principles at issue.

Weighing in favor of unsealing was the fact that the statements were made by an OCR employee and available through a FOIA request.  The Reporters Committee may disagree with

9

how the Court weighed these factors, but it made its best effort at a reasoned decision (which resulted in almost everything on this topic being unsealed beyond the direct quotes from the communication, which were both offensive and inadmissible hearsay and left nothing under seal that the Court considered in resolving the parties' claims).

Since the Court issued the December 19 Order and the Reporters Committee filed its Motion for Reconsideration, the content of the memorandum written by the OCR employee has been made public in a magazine article. Now that the language is not only available through a FOIA request, but has also appeared in a publication with a broad, national audience, the justification for keeping it sealed has been significantly lessened and the Court will unseal it. See In re L.A. Times Commc'ns LLC, 28 F.4th 292, 297 (D.C. Cir. 2022) ("[W]hen a court is presented with a motion to seal or unseal, it should weigh (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." (alteration in original) (quoting MetLife v. Fin. Stability Oversight Council, 865 F.3d 661, 665 (D.C. Cir. 2017))). Nevertheless, the Court will continue to keep sealed the name of the now-deceased associate admissions officer whose stationary was used, which was not disclosed in the article. Although there has not been a specific request for the name of this uninvolved third party, to ensure a complete record, the Court finds that the public's right to access the name does not outweigh the privacy interests implicated. See Kravetz, 706 F.3d at 62 ("'[P]rivacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records.' Third-party

10

privacy interests, in particular, have been referred to as 'a venerable common law exception to the presumption of access . . . .'" (first alteration in original) (citations omitted)). **Trial day 10, 122:2–11, 122:17–123:1, and 123:20** will be unsealed but for the references to the name of the now deceased Harvard admissions officer whose stationary was used **(Trial day 10, 121:23, 123:6, and 125:6).** Similarly, **the two excerpts from the December 15 status conference at 6:24 and 16:15** that quote the communication will also be unsealed, while references to the name of the now-deceased Harvard admissions officer will remain under seal **(December 15 status conference, 17:4, 17:5, 17:8, 17:18, 17:23, and 17:25).**

The second category of excerpts that remain under seal, **Trial Day 7, 7:9–11 and 11:4–6, and December 15 status conference, 5:22–24 and 6:2–4,** concerns the Court and counsel's characterizations of a witness' reaction to questions about a relative's death by suicide. In keeping these limited excerpts from the sidebar transcripts under seal, the Court found as follows:

- **Trial Day 7, 7:9-11 and 11:4-6 will remain sealed.** At trial, certain testimony touched on a suicide in a witness's family. Thereafter, during a sidebar concerning this line of questioning, Harvard's counsel, Mr. Lee, and the Court each referenced their subjective impressions of the impact of this questioning on the witness. As the Court has already noted, the privacy rights of third parties can limit the presumptive right of access to judicial records, and, in making this determination, a court may consider the sensitivity of the information, the nature and degree of the harm, the reliability of the information, and the interest that the public has in the information. Kravetz, 706 F.3d at 62 (citations omitted). The Court will unseal this sidebar but for those subjective characterizations of the witness's reaction to the questioning, which have no relevance or value to the public, and the unsealing of which would unnecessarily intrude on the witness's privacy.

The Reporters Committee appears to object to the Court's finding that "the privacy rights of third parties" justify keeping this information sealed, because they involve the "Court's characterization of a witness's demeanor" and "members of the public could just as well have witnessed [the examination] for themselves by attending the trial." [ECF No. 713 at 7 n.5

11

(emphasis omitted)]. Additionally, the Reporters Committee argues that these excerpts have "'relevance or value to the public' . . . in evaluating how the Court managed an emotionally charged line of questioning at trial, as well as one counsel's objection that counsel for the opposing party had behaved inappropriately—the performance of an official function that squarely implicates the public's right to superintend the judiciary." Id. (citation omitted).  As noted above, this witness's reaction was to a line of questioning related to an irrelevant and private family matter that had no bearing on the legal issues in dispute.  The Court's management of this examination at trial is discernable from the transcript of that examination.  The Court's and counsel's subjective characterizations of that testimony are therefore totally irrelevant, and the Court will keep this information sealed.

Finally, the last category of sealed excerpts concerns a sidebar about an anonymous letter that was sent to reporters while the case was being tried.  See [ECF No. 711].  The letter accurately stated that I had applied to Harvard and been rejected, which the Court disclosed to the parties early in the litigation.  The Court kept the sidebar discussion about this letter sealed as applicant information[4] and based on my family's privacy interests.  The letter itself was

---

[4] For present purposes, applicant information includes the names and potentially identifying information for applicants to Harvard as well as the names of individual applicants or potential applicants associated with SFFA.  Although the Reporters Committee motion only asks for reconsideration of the court's ruling on trial sidebars, it also references SFFA membership and related applicant information.  For clarity, the parties throughout have kept applicant and SFFA membership information confidential.  This case was based on associational standing and there were no individual plaintiffs.  Consistent with this approach, SFFA relied on statistical data to make its case and called no applicant witnesses and did not present any applications to illustrate individual candidates who it argued should have been admitted over others that were.  The identities of SFFA members were provided to Harvard pretrial only for purposes of determining standing.  Further, to the Court's knowledge, individual applicants and SFFA members have not consented to having their identities revealed in this litigation.  The fact that an organization is litigating an issue does not mean that every member of that organization supports all aspects of lawsuits entered in to by the organization such that total membership should be disclosed.  At root, this category, applicant and SFFA member information, involves the rights of third parties

intentionally mean-spirited, and included personal family information, as well as inaccuracies and unfounded conclusions, many of which pertained to my father, which were difficult to address or understand, given the author's anonymity.

While the letter appears to have been written to show that I had some bias against Harvard and should therefore be disqualified, the parties reviewed the letter, and concluded, independently, that its contents did not warrant a request for recusal, and therefore did not make such a motion.  The fact that neither party moved for recusal distinguishes this case from Arkansas Teacher Retirement System v. State Street Bank & Trust Co., 404 F. Supp. 3d 486 (D. Mass. 2018), cited by the Reporters Committee, see [ECF No. 713 at 3, 6], in which another session of this court unsealed sidebar transcripts in the context of a motion for recusal.  In Arkansas Teacher, a party moved for recusal, primarily based on the substance of a conversation the court had with a party held at sidebar during a hearing, which the party alleged constituted an *ex parte* communication that could create the appearance of bias.  Ark. Tchr. Ret. Sys., 404 F. Supp. 3d at 494–95.  Prior to the recusal motion, the court had sealed the relevant sidebar transcript "because the colloquy did not relate to any pending motion[.]"  Id. at 512 n.16.  After the recusal motion was filed, the court unsealed the transcript, explaining that the "discussion became central to [the party's] sealed motion for recusal, which relates to respect for the legal

---

– an interest that outweighs any right of access.  See United States v. Kravetz, 706 F.3d 47, 62 (1st Cir. 2013) (Third-party privacy interests are "a venerable common law exception to the presumption of access[.]" (citation omitted)); see also In re Bos. Herald, Inc., 321 F.3d 174, 191 (1st Cir. 2003) (declining to find a common law right to disclosure of judicial records, in part because "disclosure sought . . . information pertain[ing] not only to [a party], but also to his wife and children.").  The trial testimony of the student amici and any testimony related to specific applications is public. [5] Of the sealed sidebars, the contents that will now remain under seal includes the following: Trial day 6, 6:21–7:11, 7:21–8:5; Trial day 7, 7:9–11, 11:4–6; and Trial day 10, 121:23, 123:6, 125:6.  As to the status conference transcripts concerning the sidebar transcripts, the contents that will remain under seal are: December 15 status conference, 5:22–24 and 6:2–4, and the name referenced in 17:4, 17:5, 17:8, 17:18, 17:23, and 17:25.

system[,]" and therefore implicates "the presumption of a public right to court records[.]" Id. Here, as noted above, no party argued or even suggested that the content of the letter warranted recusal. While disclosure of materials relevant to a court's disposition of a motion, whether relating to recusal or another issue, may well foster "respect for our legal system," this consideration is absent here.

The members of the press that received the letter reported that I had applied to and been rejected from Harvard, but did not publish the contents of the letter. As a result, the contents of the letter are not public. None of the factors to be considered in determining whether unsealing is appropriate weigh in favor of unsealing the sidebar discussion concerning the letter. See, e.g., In re L.A. Times Commc'ns LLC, 28 F.4th at 297. The Court will unseal the portion of transcript where the parties state their positions on recusal, **Trial Day 6, 6:17 through the beginning of 6:21** and **Trial Day 6, 7:12–20,** but keep the remaining portions of the sidebar related to the letter, **Trial Day 6, 6:21–7:11, 7:21–8:5,** under seal.

### III.   CONCLUSION

Accordingly, the Reporters Committee's Motion for Reconsideration, [ECF No. 713], is GRANTED in part and DENIED in part.[5]

**SO ORDERED.**

April 27, 2023                                                /s/ Allison D. Burroughs
                                                              ALLISON D. BURROUGHS
                                                              U.S. DISTRICT JUDGE

---

[5] Of the sealed sidebars, the contents that will now remain under seal includes the following: Trial day 6, 6:21–7:11, 7:21–8:5; Trial day 7, 7:9–11, 11:4–6; and Trial day 10, 121:23, 123:6, 125:6. As to the status conference transcripts concerning the sidebar transcripts, the contents that will remain under seal are: December 15 status conference, 5:22–24 and 6:2–4, and the name referenced in 17:4, 17:5, 17:8, 17:18, 17:23, and 17:25.