1                    UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MASSACHUSETTS

2

3
                                        )

4  STUDENTS FOR FAIR ADMISSIONS, INC.,   )
                                        )

5        Plaintiff,            )
                                        ) Civil Action

6  v.                            ) No. 1:14-cv-14176-ADB
                                        ) Pages 1 to 23

7  PRESIDENT AND FELLOWS OF         )
  HARVARD COLLEGE, et al.,        )

8                                         )
         Defendants.           )

9                                       )

10

11        BEFORE THE HONORABLE ALLISON D. BURROUGHS
              UNITED STATES DISTRICT JUDGE

12

13

14                 STATUS CONFERENCE
                    **REDACTED**

15

16                 December 15, 2022
                    9:03 a.m.

17

18        John J. Moakley United States Courthouse
              One Courthouse Way

19           Boston, Massachusetts 02210

20

21

22            Linda Walsh, RPR, CRR
            Official Court Reporter

23    John J. Moakley United States Courthouse
             One Courthouse Way

24        Boston, Massachusetts 02210
            lwalshsteno@gmail.com

25

1    APPEARANCES:

2   On Behalf of the Plaintiff:

3        CONSOVOY MCCARTHY PLLC
         By: Patrick Strawbridge, Esq.
4        Ten Post Office Square
         Boston, Massachusetts 02109
5        617-227-0548
         patrick@consovoymccarthy.com
6
         ADAM K. MORTARA, ESQ.
7        125 South Wacker Drive, Suite 300
         Chicago, Illinois 60606
8        773-750-7154
         adam@mortaralaw.com
9

10   On Behalf of the Defendants:

11       WILMER CUTLER PICKERING HALE AND DORR LLP
         By: Felicia H. Ellsworth, Esq.
12           Michelle Sandals, Esq.
         60 State Street
13       Boston, Massachusetts 02109
         617-526-6000
14       felicia.ellsworth@wilmerhale.com

15       HARVARD OFFICE OF THE GENERAL COUNSEL
         By: Ara B. Gershengorn, Esq.
16       Smith Campus Center, Suite 980
         1350 Massachusetts Avenue
17       Cambridge, Massachusetts 02138
         617-495-8210
18       ara_gershengorn@harvard.edu

19

20

21

22

23              Proceedings reported and produced
                 by computer-aided stenography.
24

25

```
 1                     P R O C E E D I N G S
 2            THE COURT:  This is Civil Action 14-14176, Students
 3     for Fair Admissions versus Harvard.
 4            Will counsel identify themselves for the record.
 5            MR. MORTARA:  Your Honor, Adam Mortara here for
 6     Students for Fair Admissions, along with my co-counsel from
 7     Consovoy McCarthy, Patrick Strawbridge.
 8            MS. ELLSWORTH:  Good morning, Your Honor.  Felicia
 9     Ellsworth and Michelle Sandals from WilmerHale, joined by Ara
10     Gershengorn from the Office of General Counsel.
11            THE COURT:  Okay.  I have been through the transcripts.
12     I thought about this carefully.  I researched what case law
13     there is, which turns out to be more limited than one would
14     have expected, and I'm going to tell you what I have decided.
15     I'm going to preface that by telling you that I would love some
16     buy-in from all of you.
17            I mean, I think obviously you are both going to have
18     the right to appeal it.  You both are probably going to be
19     equally unhappy about what I've done.  But if it is appealed,
20     obviously everything stays under seal until the appeal
21     resolves, or at least large portions of it, depending on what's
22     appealed.
23            I will tell you what I am keeping under seal.  And as
24     I say, I would love some buy-in on this if we can get there.  I
25     understand if we can't.
```

1          And we still have to deal with the motion to intervene

2     filed by the press people.  Neither one of you has taken a

3     position on the motion to intervene.  Do I take it it's

4     unopposed?

5          MS. ELLSWORTH:  We opposed the intervention portion of

6     it, Your Honor.  It's laid out in the papers, our position.  So

7     we opposed intervention.  We indicated we didn't oppose being

8     ordered to file something on the docket once you had ruled on

9     the pending dispute over sealing.  But we do oppose

10     intervention on behalf of Harvard.

11          THE COURT:  Okay.

12          MR. STRAWBRIDGE:  SFFA does not oppose the

13     intervention.  I think they put that in their pleading, too.

14     We informed them before they filed that we don't oppose their

15     intervention.  Frankly, I just think they're entitled for a

16     limited purpose to intervene on that, but that's our position.

17     We are not going to file anything else.

18          THE COURT:  Okay.  I'll go back and take a look at

19     that again, hopefully before the next hearing.

20          MS. ELLSWORTH:  I'm sorry.  Just to clarify, we also

21     do not intend to file any further papers.

22          THE COURT:  I got that.  They've also asked that

23     everything be sort of filed with redactions being clear.  I

24     think that's a fair request, but we can -- if you want to

25     circle back on that when you hear what I've done, you can.

1          All right.  What I have -- I mean, I think you all

2    note a lot, and I will put this in the order afterwards, but my

3    take on the whole thing is that there's generally a right to

4    public access.  It's not absolute.  It clearly tilts towards

5    transparency, but I think it vests a fair amount of discretion

6    and the Court requires me to balance competing interests.

7    Nothing really says what those competing interests are other

8    than to sort of say it's specific to the case.

9          And one of the things that is -- one of the predominant

10   things for allowing a motion -- for allowing things to be kept

11   under seal are various third-party interests.  So that's where

12   I start with on the law.

13         I am only going to keep under seal, subject to hearing

14   from you all again during this call, excerpts from two

15   different days.  The two days -- we can start with -- do you

16   guys need to pull the transcripts up in front of you?

17         The first day is going to be day 7, and what I am

18   going to keep under seal on day 7 -- if anyone needs me to slow

19   down while they're pulling up the transcripts, let me know.  I

20   want to be clear about this.  I'm going to keep under seal from

21   day 7 page 7, lines 9 to 11, which is -- I'll read it to you.

22   It's when Mr. Lee says, ████████████████████████████████

23   ███████████████████████████████████████████████████████████

24   ██████████████████████████████

25         That is -- and then the other thing I'm going to keep

1    under seal from that same day is page 11, lines 4 through 6

2    where I say, ██████████████████████████████████

3    ███████████████████████████████████████████

4    ███████████████████████████████████

5          And I'm keeping those two things out because they are

6    purely Mr. Lee and my subjective observations of Mr. Khurana.

7    They are not relevant to anything.  There's no substance to

8    them that's of any import to anyone.  And I feel like that --

9    the fact of his brother's suicide is public, but his emotional

10   reaction to that when talking about it is clearly a matter of

11   privacy, of no import to the public whatsoever.  So that's the

12   first one.

13         The second one is day 10.  The excerpts are as

14   follows:  Page 122, lines 6 to 11 and 7 to 25.  And the last --

15   the last piece of that sentence goes on to the very top line of

16   page 123.

17         MS. ELLSWORTH:  Your Honor, do you mean 17 to 25?

18         THE COURT:  I meant -- I'm sorry.  What did I say?

19         MS. ELLSWORTH:  You said 7 to 25.

20         THE COURT:  Sorry.  Let me do that again.  6 to 11 and

21   17 through the end of that page through line 1 on page 123.

22         MS. ELLSWORTH:  Okay.

23         THE COURT:  And then line 20, the portion in quotes

24   which is "132-pound lineman."  So what I have kept out is the

25   quotes from the document, just the quotes from the document.

1    What's left gives everybody a very fair flavor of what

2    happened, that there were sort of stereotypical, anti-Asian,

3    bad attempt at a joke, and then that the issue is

4    Mr. Fitzsimmons' reaction -- reaction to that, which I've left

5    in.  So the only thing out of the direct quotes -- there's

6    enough in there to give a characterization, a pretty complete

7    characterization of what happened, but I still think that it's

8    dated -- it's a third-party interest of Mister -- is it Hibino

9    or Hibino?  I'm not sure how you pronounce it.

10         MS. ELLSWORTH:  Hibino.

11         THE COURT:  Hibino.  It's -- it implicates his

12   interest.  He wasn't cross-examined.  Exactly what he said

13   really isn't important to the discussion.  What's important is

14   that a reader can know that it was inappropriate, anti-Asian,

15   stereotypical, poor attempt at a joke.  I don't think any of

16   that -- I think the reader needs to know that, and I think that

17   Dean Fitzsimmons' reaction to that is fair game, but I don't

18   think there's any need to release the actual content of the

19   document.  If somebody wants to go and find it on their own

20   FOIA request, they can.  But I'm not -- I'm not -- given the

21   balance between the third-party interest, Dean Fitzsimmons'

22   interest, and trying to balance that with what the public needs

23   to know, I'm keeping out the direct quotes.  Less than a page,

24   way less than a page, actually, and that's where I am on it.

25         So, Mr. Strawbridge, do you want to -- what are you

1   going to do next?

2        MR. STRAWBRIDGE:  I think that the redactions on first

3   blush seem fine to us.  It does not seem like the kind of thing

4   that we would ever take an appeal on.  I maybe just need a

5   little bit of clarification on that last point.  Really, this

6   is just -- I need to advise my client.

7        I understand Your Honor's discussion to be directed at

8   the discussion that was on the record at the trial, and I

9   understand the reasoning there.  Since we are independently

10  holding this document, if I am under some other obligation not

11  to otherwise disclose it apart from the transcript of the

12  hearing, I guess I would need to take that into account.

13       We haven't really thought about that and haven't done

14  anything, but if this is a document that we are somehow -- that

15  we obtain publicly that we are forbidden from otherwise using,

16  I guess I need to be respectful of Your Honor or understand

17  that so that we can figure out if we can do anything else.

18       But if your order is just limited to the content of

19  the transcript itself, then I don't think we have anything else

20  to say at this point.  I think we're satisfied that you've

21  applied the law and I think that would be the end of it.

22       THE COURT:  Well, Ms. Ellsworth can jump in on this,

23  but I don't actually think I have the authority to order you

24  not to disclose it.  I'd prefer that you didn't, but you got it

25  on a FOIA request.  I don't know what limitations came with the

1   FOIA production.  You're subject to those, I guess.  But I'm

2   not sure that I have the authority to order you not to disclose

3   what's essentially, you know, a public document.

4          MR. STRAWBRIDGE:  We don't have any intention to do

5   so.  I just wanted to make sure --

6          THE COURT:  I wish you wouldn't, but I don't know that

7   I have the authority to keep you from doing it.  And I can just

8   see if I did, Mr. Mortara would be all worked up, but I'm

9   seeking to avoid that this morning.

10          MR. MORTARA:  Your Honor, you would be surprised to

11   discover that Mr. Hibino's email is not what gets me worked up

12   about what's been under seal.

13          THE COURT:  I know what gets you worked up.  I know

14   what gets you worked up.  I think you're overworked up about

15   it.  I've read it over and over again myself, and I don't think

16   there were any aspersions cast on you or your reputation that

17   you think there were, but it becomes a moot point unless

18   Ms. Ellsworth can convince me otherwise.

19          Ms. Ellsworth, your view on what's next here?

20          MS. ELLSWORTH:  I first have a question or

21   clarification on this set of redactions.

22          THE COURT:  Yes.

23          MS. ELLSWORTH:  So I'm looking on page one-twenty --

24   the bottom of 121 and the beginning of 122 there's additional

25   quoted material from that document.

1          THE COURT:  Okay.  Hold on.  Let me see if I missed

2     any of it.  Hold on.  Let me just see how I got there.

3          MS. ELLSWORTH:  It starts on page -- it's really 122,

4     lines 2 through 5 that I think are also quoting from the

5     document.

6          THE COURT:  Where are we?  Give me that again.

7          MS. ELLSWORTH:  122, lines 2 through 5.

8          THE COURT:  122.  Well --

9          MS. ELLSWORTH:  I just wanted to make sure you had

10    considered that.

11         THE COURT:  I have considered it.  What I'm trying to

12    do is give them a flavor of it without really being awful about

13    it, I guess.

14         MS. ELLSWORTH:  And I guess what I would say is I

15    understand your ruling and I agree with your articulation of

16    the law, Your Honor, and the discretion that's afforded to you.

17    I think for consistency, if we're keeping this entire, whatever

18    we're calling this document, out, it seems like the entirety of

19    it should be out.

20         THE COURT:  Yeah.  I actually -- I think you're right.

21    I'll take your point on that.  So I would also -- so I'll add

22    to that lines 2 through 5.  It was because there wasn't a

23    closed quote.  I was sort of losing myself in that, but I'm

24    happy to add that.

25         MS. ELLSWORTH:  And then on page 121 there is another

1    portion.  It's a different document.  And, again, I just want

2    to clarify or confirm that you're making a different ruling on

3    that document, which I think is a cover note to the --

4         THE COURT:  Yes, I'm making a different ruling on that

5    document.  I want to give the public, the press, who's ever

6    interested in this, a full flavor of what happened so that they

7    can -- I think that Dean Fitzsimmons' reaction to that is fair

8    game.  I think the parties do a very able job of articulating

9    their competing views of how that could be taken.  I wanted

10   that fully out there.  So I did differentiate between the two

11   documents.

12        MS. ELLSWORTH:  Okay.  So, Your Honor, I mean, I think

13   we'll probably have to -- the rulings you've made I understand.

14   You know, obviously we disagree with them.  Whether we'll take

15   them any further, I think I need to confer with the client on

16   that.  I'm happy to do that now, if you'd like, or we can do it

17   later.  I don't know that we intend to go to the mat on any of

18   this.  This has all come up because of the press interest and

19   not some sort of ongoing dispute between the parties.  If you

20   want to take a five-minute recess, we can sort of do that or

21   whatever is the best for you.

22        THE COURT:  What time is the next -- did we schedule

23   the next one?  10:00 or 10:30?

24        MS. ELLSWORTH:  10:00.

25        THE COURT:  Do you want to just jump back on at like

1    ten of 10:00 or five of 10:00?

2            MS. ELLSWORTH:  That's fine for me.  Does that work

3    for you, Ara?

4            MS. GERSHENGORN:  Yes, that's fine.  Thanks very much.

5            THE COURT:  Karen, do we need to change the time of

6    the Zoom call or can we all just jump on a little early?

7            THE CLERK:  Well, this is a separate Zoom link.  I did

8    two so people couldn't get on this one.

9            THE COURT:  All right.

10           THE CLERK:  So we can still use this one for the

11   sealed stuff and then use the other when we're done, jump on.

12           THE COURT:  Can we jump on the other one and only let

13   these people in?

14           THE CLERK:  Uh-huh.

15           THE COURT:  And can we do it at ten of 10:00 without

16   sending out another link?

17           THE CLERK:  Yes.

18           THE COURT:  What would people prefer?  Break now or

19   just giving them some time and letting --

20           MR. STRAWBRIDGE:  We have no position on this, Your

21   Honor.

22           THE COURT:  Ms. Ellsworth or Ms. Gershengorn, either

23   one of you, do you care?  I am just trying to give you a little

24   more time.  I don't want to put you under a five-minute

25   timeframe.

 1          MS. ELLSWORTH:  Why don't we plan at 9:50 to get on

 2     the public Zoom link with just this group and then we'll let

 3     you know if there's anything different to discuss, and then we

 4     can go on the public hearing.

 5          THE COURT:  Okay.

 6          MS. ELLSWORTH:  Your Honor's request that to the

 7     extent that we don't have an issue with it or don't intend to

 8     take it up any further, then you would like us to be able to

 9     say that, so I just wanted to have some time.

10          THE COURT:  Right.  What I would like to be able to do

11     is, you know, put it on the docket sooner rather than later if

12     there's not going to be an appeal on it.  But I think -- yeah,

13     so I would like to get it done.

14          MS. ELLSWORTH:  So the one other question I have is

15     you are maintaining under seal the portion that at least the

16     parties agreed could be maintained under seal that we discussed

17     last week; right?

18          THE COURT:  That's day 6; right?

19          MS. ELLSWORTH:  Yes.

20          THE COURT:  Yes, that will stay under seal, and

21     then -- I mean, I did not go back and review the things that

22     you agreed could be unsealed.  So I'm working off a list of

23     what was in dispute, and I think I've looked through that list

24     accurately.

25          MR. STRAWBRIDGE:  This is Patrick.  Just, I think

```
 1    that -- I think that the parties were in agreement with respect
 2    to the day 6 excerpts, that those were applicant-identifying
 3    information, which, of course, we have a very strong interest
 4    in protecting.
 5          THE COURT:  Right.  So what I did not do was I
 6    didn't -- I didn't look at anything that you agreed on either
 7    way, agreed to keep sealed or agreed to unseal.  I only looked
 8    at the excerpts that were in dispute.
 9          MS. ELLSWORTH:  That's fine.
10          THE COURT:  Okay?
11          MR. STRAWBRIDGE:  I mean, I assume the press is going
12    to raise that issue.  It might be just worth noting, if
13    Ms. Ellsworth agrees, I think all that is what we consider
14    applicant-identifying information, which I think at the last
15    hearing the press indicated they weren't particularly
16    interested in that anyway, but if you want to make a record on
17    that part remaining under seal --
18          THE COURT:  I'm happy -- I mean, I would even go so
19    far, depending on your view of it -- I mean, I'm happy -- the
20    fact that that letter was out there was, you know, covered in
21    the press.  I'm happy to say that it concerns our discussion of
22    that letter.  I mean, you know, that would help keep the, you
23    know, the forces at bay.  And I do intend --
24          MS. ELLSWORTH:  I think you did that, Your Honor.  I
25    think you did that at the public hearing two weeks ago.
```

1          THE COURT:  I -- also, I do intend to sort of
2    generally describe to them what I'm keeping under seal.  I want
3    to give them as -- I want to discourage further action on these
4    topics.  And it's such a limited amount that I'm now keeping
5    under seal that I don't think anybody really has cause to
6    complain, but the press seems -- this is a principle they often
7    stand strongly on.  So, all right.  So we'll rejoin at ten of
8    10:00, okay, on the public link.
9          MR. STRAWBRIDGE:  Thank you.
10          THE COURT:  Thanks, everyone.  Recess for now.
11          MS. ELLSWORTH:  Thank you.
12          (Recess taken from 9:21 to 9:52 a.m.)
13          THE COURT:  I don't think we need to call the case
14    again.  So I guess, Ms. Ellsworth, where are we?
15          MS. ELLSWORTH:  So we might need to call the case
16    because there are a few places that I want -- I think there are
17    a few additional redactions that might be, or at least I would
18    like to argue for, for consistency on that day 10.
19          THE COURT:  Okay.  Go ahead and call the case, please,
20    Karen.
21          THE CLERK:  Okay.  This is Civil Action 14-14176, SFFA
22    versus Harvard.
23          Will counsel identify themselves for the record.
24          MR. STRAWBRIDGE:  For SFFA, Patrick Strawbridge, along
25    with Adam Mortara.

1          MS. ELLSWORTH:  For Harvard, Felicia Ellsworth and

2    Michelle Sandals and Ara Gershengorn from the Office of General

3    Counsel.  May I proceed, Your Honor?

4          THE COURT:  Yes, go ahead.

5          MS. ELLSWORTH:  So we're on day 10 of the sealed

6    sidebar.  There are two --

7          THE COURT:  Okay.  Hold on.  I have to pull day 10

8    here.

9          MS. ELLSWORTH:  Page 121 is where it begins.

10         THE COURT:  Hold on.  I'm not sure what I did with

11   that pile.  Of course it's the one pile I can't find.  I can't

12   put my hands on these -- on the -- all right.  Go ahead.

13         MS. ELLSWORTH:  On page 123, Your Honor, in line 20

14   you indicated the quote from the document that's being redacted

15   on the previous page, the 132-pound lineman  quote would be

16   redacted.

17         THE COURT:  Yes.

18         MS. ELLSWORTH:  On lines 16 and 17 in that same

19   paragraph, there's another quote from what's being redacted on

20   the previous page, which is just another AA CJer.

21         THE COURT:  I'm going to leave that one in.

22         MS. ELLSWORTH:  Okay.

23         THE COURT:  I want there to be a full flavor of that

24   without going into the real specifics of it.  And the AA CJer

25   part is already in at other places.

```
 1          MS. ELLSWORTH:  So then on -- a little higher up on
 2    page 123, there's a reference to another third party.  So I
 3    think for consistency with the sort of basis for your ruling
 4    about Mr. Hibino's email, there's a reference to ████████
 5    "██████ passed away a few years ago."  It's a former employee
 6    of the admissions office.  That's her personal information.
 7    She died in 2008 I believe it is.  So I suggest that the
 8    reference to that sentence, "██████ passed away a few years
 9    ago and I had forgotten she had such a sense of humor" should
10    be redacted to protect third-party privacy.
11          THE COURT:  Well, the thing is it doesn't have
12    anything to do with her; right?  He says it wasn't her.  He
13    stole the paper, stole the stationery.  I can see my way clear
14    to taking out her name, but I don't see that it prejudices her
15    in any way.  She's -- there's so much of this left in that one
16    understands that she didn't have anything to do with it.
17          MS. ELLSWORTH:  So her name appears on 123, 121, and
18    125, ██████, three different times.
19          THE COURT:  I mean -- I mean, it doesn't have anything
20    to do with her.
21          MS. ELLSWORTH:  It doesn't, but it's a transcript that
22    has her name in it.  It has her full name on the preceding
23    page; right?  ████████████████ -- oh, sorry.  ██████████████,
24    at one time the associate director of admissions, and then it
25    talks about ██████ sense of humor.  There's references to
```

1    this uninvolved third party, deceased third party, sort of no

2    relation to this case, and her own personal information.  It

3    seems both on the law and also for consistency that that

4    information should also not be made public.

5            THE COURT:  Mr. Strawbridge, what's your view of

6    taking out just her name in those three places?

7            MR. STRAWBRIDGE:  I don't know that we have a strong

8    view on this, but I think that given Your Honor's prior

9    rulings, the disclosure of the fact that somebody worked for

10   the Harvard Admissions Office is not top secret.  It's actually

11   the subject of massive amounts of testimony and other writing

12   about this trial.  I think it's slicing the baloney a little

13   thin is our official position.

14           THE COURT:  I'm going to remember that one.  I don't

15   know.  I mean, I'll take her name out if you want, but I

16   just -- I don't really see that it --

17           MS. ELLSWORTH:  Listen, we think that for the privacy

18   interests of a third party, in particularly something like this

19   that is now being sought after -- you know, in the normal

20   course maybe nobody would have looked at it, but given the

21   dispute that's arisen over this, to have this person's name out

22   there in connection with an otherwise partially redacted

23   discussion that may be the subject of some interest, it seems

24   unnecessary.

25           THE COURT:  But also --

1            MR. STRAWBRIDGE:  I do need to -- sorry.

2            THE COURT:  Go ahead, Mr. Strawbridge.

3            MR. STRAWBRIDGE:  I just wanted to respond to that.  I

4    don't think the fact that the press is asking questions about

5    it can provide any additional basis for sealing it.

6            THE COURT:  You know, I -- she's completely not

7    involved in this, but I will -- because I think it doesn't

8    matter and it is a third party, I'll take it out.  So 121.

9    Where else?

10            MS. ELLSWORTH:  So it's 121, and her name is on line

11    23.

12            THE COURT:  Yeah.

13            MS. ELLSWORTH:  123, line 6.

14            THE COURT:  Okay.  Hold on a second.  123, okay.

15            MS. ELLSWORTH:  And 125, line 6.

16            THE COURT:  Okay.

17            MS. ELLSWORTH:  Well, I don't know what Your Honor had

18    in mind in terms of how to proceed mechanically or

19    operationally from here.  We could prepare a less redacted or

20    less highlighted version of this and submit it to

21    Mr. Strawbridge and to Ms. Folan to make sure we correctly

22    identified your rulings in terms of where on the lines and

23    pages things are going to be redacted.

24            I want to make sure our notes are correct on this

25    before we -- I don't know what kind of ruling or order you're

1  planning to make on it.  And so we're happy to do that, and we

2  could do that by the end of the day today to just make sure we

3  are all on the same page literally and figuratively.

4       THE COURT:  Let me go through them one more time, and

5  if you want to wait -- I will try to get an order out on it by

6  tomorrow, if you want to hold up on that.  But if you want to

7  file it today, which would be great, we can be very clear about

8  what we're keeping out.

9       MS. ELLSWORTH:  I'm happy to wait for your order, Your

10 Honor.  I just wanted to make sure that we knew the order of

11 operations.

12      THE COURT:  Is that all right with you,

13 Mr. Strawbridge, if she waits until I get my order out, or do

14 you think it's more pressing than that?

15      MR. STRAWBRIDGE:  I guess I don't have a position.

16 The difference between today and tomorrow doesn't seem material

17 to me.

18      THE COURT:  I'm not positive I can get it out

19 tomorrow, but that will be my -- if not tomorrow, Monday.

20      MS. ELLSWORTH:  And just to be clear, Your Honor, the

21 order would be here's what I am keeping under seal --

22      THE COURT:  And why.

23      MS. ELLSWORTH:  -- and why, and then accompanying the

24 order would you be attaching or are you going to be directing

25 the parties to file the transcripts?

```
1           THE COURT:  I could do either, but I would prefer to
2     direct the parties to do it.
3           MS. ELLSWORTH:  Okay.  That's fine.  We're happy to do
4     it.  I need to confer with Mr. Strawbridge about that, but I
5     think we would want until early next week to just ensure that,
6     once we see the fullness of your order, that we in fact would
7     go ahead and file as opposed to trying to take some further
8     action.  I don't think currently we intend to do that, but I do
9     want to just make sure we see the order before we have to --
10          THE COURT:  I don't want this to linger too long.
11          MS. ELLSWORTH:  Understood.  If it could be like
12    Tuesday or Wednesday of next week, that's enough time.
13          THE COURT:  How about we give you 48 hours after I get
14    my order out?
15          MR. STRAWBRIDGE:  That's what I was going to suggest,
16    Your Honor, so I think it's a great idea.
17          THE COURT:  All right.
18          MS. ELLSWORTH:  48 hours.  If your order is on a
19    Friday, would that include the weekend?
20          THE COURT:  48 work hours.
21          MS. ELLSWORTH:  That would be fine.  Thank you.  I
22    appreciate it.
23          THE COURT:  Let's say weekday hours because I don't
24    know when anybody works these days.
25          MS. ELLSWORTH:  Or two business days.
```

1          THE COURT:  Do you want me to go through again -- I'm

2     going to go through this carefully on the record about what I'm

3     keeping out and why.

4          MS. ELLSWORTH:  I don't think we need -- at least from

5     Harvard's perspective, particularly since you'll be issuing an

6     order as well, I don't think we need to go through that exercise.

7          THE COURT:  Okay.  I want to go through the exercise.

8     Karen says not many people are signed up for this public hearing.

9          THE CLERK:  So far there's seven people in there.

10         THE COURT:  So I want to go through it.

11         Ms. Ellsworth, I took a quick look.  I'm not sure

12    where I see either one of you actually responded to the motion

13    to intervene, but I've looked at what they've asked for, which

14    is three things, and we're basically giving them the three

15    things they want.  So I am going to deny the motion for

16    intervention as unnecessary at this point.

17         MS. ELLSWORTH:  That's fine.  I think our response is

18    in their Local Rule 36(b) conference.

19         THE COURT:  Okay.  All right.  I thought he said their

20    motion.  I have their motion in front of me and couldn't find

21    it.  Oh, wait.  Let's see.  Yes, I see it.  You're right.

22    Okay.  I see it.  Okay.

23         So we're at 10:02.  Karen, do you want to let in the

24    seven?

25              (Adjourned, 10:02 a.m.)

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3            I, Linda Walsh, Registered Professional Reporter

4    and Certified Realtime Reporter, in and for the United States

5    District Court for the District of Massachusetts, do hereby

6    certify that the foregoing transcript is a true and correct

7    transcript of the stenographically reported proceedings held in

8    the above-entitled matter, to the best of my skill and ability.

9            Dated this 9th day of January, 2023.

10

11

12            /s/ Linda Walsh

13            Linda Walsh, RPR, CRR

14            Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25